DOC NO
REC'D/FILED    10,11

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

2002 MAR -4  PM 4: 25

J W SKURNIEWITZ
CLERK US DIST COURT
WD OF WI

| | | |
|---|---|---|
| NEIL GAIMAN and MIRACLES AND MARVELS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 02-C-0048-S |
| | ) | |
| TODD McFARLANE, TODD McFARLANE PRODUCTIONS, INC., TMP INTERNATIONAL, INC., and McFARLANE WORLDWIDE, INC. | ) | |
| | ) | |
| Defendants-Counterclaimants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IMAGE COMICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANTS TODD McFARLANE, TODD McFARLANE PRODUCTIONS, INC.,
TMP INTERNATIONAL, INC. AND McFARLANE WORLDWIDE, INC.**

---

Defendants Todd McFarlane, Todd McFarlane Productions, Inc. ("TMP"), TMP

International, Inc. ("TMPI") and McFarlane Worldwide, Inc. (together, the "McFarlane

Defendants"), by their attorneys LaFollette Godfrey & Kahn, hereby submit their Answer,

Affirmative Defenses, and Counterclaims:

# ANSWER[1]

1.      The McFarlane Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint.

2.      The McFarlane Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint.

3.      The McFarlane Defendants admit that Mr. McFarlane is a resident of Arizona and the principal shareholder and president of TMP, TMPI and McFarlane Worldwide, Inc, and deny the remaining allegations of Paragraph 3 of the Complaint.

4.      The McFarlane Defendants admit the allegations in paragraph 4 of the Complaint except they state that the street address for TMP is 40 West Baseline Road.

5.      The McFarlane Defendants admit that TMPI is a Michigan corporation and deny the remaining allegations in paragraph 5 of the Complaint.

6.      The McFarlane Defendants admit that McFarlane Worldwide, Inc. is a Michigan corporation and deny the remaining allegations in paragraph 6 of the Complaint.

7.      The McFarlane Defendants admit that Image Comics, Inc. is a California corporation with a principal place of business as alleged in paragraph 7 of the Complaint, admit that Mr. McFarlane is a shareholder Image Comics, Inc., and deny the remaining allegations of paragraph 7 of the Complaint.

---

[1]     To avoid duplication and the filing of additional court papers, the McFarlane Defendants are filing a combined answer even though two of them—TMPI and McFarlane Worldwide, Inc.—have never had any contact with either plaintiff and are, for the most part, without knowledge or information sufficient to form a belief as to the truth of the allegations against them.

8.      Paragraph 8 of the Complaint defines the term "McFarlane Corporate Defendants" for use in the Complaint.  The McFarlane Defendants admit that plaintiffs sometimes use that term in the Complaint.

9.      The McFarlane Defendants deny the allegations in paragraph 9 of the Complaint except that they admit that Mr. McFarlane has an ownership interest in TMP, TMPI and McFarlane Worldwide, Inc.

10.     The McFarlane Defendants deny the allegations in paragraph 10 of the Complaint.

11.     The McFarlane Defendants deny the allegations in paragraph 11 of the Complaint.

12.     The McFarlane Defendants deny the allegations in paragraph 12 of the Complaint except they admit that some of them have been involved in different aspects of the production of a comic book series entitled *Spawn*® or the production of goods related to that series.

13.     The McFarlane Defendants admit that this Court has exclusive jurisdiction under 28 U.S.C. § 1338 for an action arising under the copyright laws of the United States and the Lanham Act.

14.     The McFarlane Defendants admit that this Court has jurisdiction under 28 U.S.C. § 1331 for actions arising under the laws of the United States.

15.     The McFarlane Defendants admit that there is complete diversity of citizenship between the plaintiffs and defendants but are without knowledge or information sufficient to form a belief as to the truth of the allegation that the amount in controversy in this action is greater than $75,000.

16.     The McFarlane Defendants admit that this Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367(a) but affirmatively allege that

to the extent that the Court does have supplemental jurisdiction over any state law claims here, the Court should decline to exercise that jurisdiction.

17.     The McFarlane Defendants admit that this Court has jurisdiction under 28 U.S.C. §§ 2201-02 for declaratory counts.

18.     For purposes of this case only, the McFarlane Defendants do not dispute venue in this Court.

19.     For purposes of this case only, the McFarlane Defendants do not dispute the personal jurisdiction of this Court.

20.     The McFarlane Defendants deny the allegations in paragraph 20 of the Complaint, except they admit that Issue 9 of *Spawn* contains a character named Angela.  Further answering, the McFarlane Defendants state that Issue 9 contains an unnamed Spawn character and a character named Count Nicholas Cagliostro.

21.     Paragraph 21 of the Complaint alleges conclusions of law requiring no response, and on such basis, the McFarlane Defendants neither admit nor deny such allegations.  To the extent Paragraph 21 of the Complaint is construed to contain factual allegations, the McFarlane Defendants deny that Plaintiffs own any rights to any intellectual property involving a character named Angela or to any issues of the *Spawn* or *Angela* comic book series or derivative works that contain the Angela character.

22.     Paragraph 22 of the Complaint alleges conclusions of law requiring no response, and on such basis, the McFarlane Defendants neither admit nor deny such allegations.  To the extent Paragraph 22 of the Complaint is construed to contain factual allegations, the McFarlane Defendants deny that Plaintiffs own any rights to any intellectual property involving a character named Cogliostro or to any issues of the *Spawn* comic book series or derivative works that

contain the Cogliostro character. Further answering, the McFarlane Defendants state that Issue 9 of *Spawn* contained a character named Count Nicholas Cagliostro. Mr. McFarlane was unhappy with the character's name and personality; accordingly, Mr. McFarlane subsequently changed the character's name to Count Alessandro di Cogliostro and changed the character's personal traits.

23.    Paragraph 23 of the Complaint alleges conclusions of law requiring no response, and on such basis, the McFarlane Defendants neither admit nor deny such allegations. To the extent Paragraph 23 of the Complaint is construed to contain factual allegations, the McFarlane Defendants deny that Plaintiffs own any rights to any intellectual property involving a character named Medieval Spawn or to any issues of the *Spawn* comic book series or derivative works that contain the Medieval Spawn character.

24.    The McFarlane Defendants admit the allegations in paragraph 24 of the Complaint except that they are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the contributions of Alan Moore, Mr. Gaiman, and Mark Buckingham to the *Miracleman* series.

25.    Paragraph 25 of the Complaint alleges conclusions of law requiring no response, and on such basis, the McFarlane Defendants neither admit nor deny such allegations. To the extent Paragraph 25 of the Complaint is construed to contain factual allegations, the McFarlane Defendants deny that Plaintiffs' own any rights to any intellectual property involving the *Miracleman* comic book series or any characters contained therein, including derivative works.

26.    The McFarlane Defendants admit that the *Miracleman* comic book series was published by Eclipse Comics, are without knowledge or information sufficient to form a belief as to the allegations regarding agreements with Mr. Gaiman, Alan Moore, or Mark Buckingham, and deny the remaining allegations of Paragraph 26 of the Complaint.

27.    The McFarlane Defendants admit that TMP purchased all the assets of Eclipse Comics from the Trustee in the Eclipse Comics bankruptcy and acquired tangible property that had been in Eclipse Comics' possession, including property used in the publishing of the *Miracleman* comic book series, and affirmatively allege that this purchase of assets included all copyrights and trademarks owned by Eclipse Comics related to the *Miracleman* comic book series. The McFarlane Defendants deny the remaining allegations in paragraph 27 of the Complaint.

28.    The McFarlane Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29.    The McFarlane Defendants deny the allegations of Paragraph 29 of the Complaint except that Mr. McFarlane and TMP (a) admit that in 1992, Mr. McFarlane, acting on behalf of himself and TMP, entered into an oral agreement with Mr. Gaiman regarding a collaboration on the production of an issue of *Spawn* (b) admit that at the time, Gaiman was a recognized comic book writer, and (c) are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Gaiman's awards and publications.

30.    The McFarlane Defendants deny the allegations in paragraph 30 of the Complaint except that Mr. McFarlane and TMP admit (a) that Mr. McFarlane and Mr. Gaiman agreed to collaborate in the production of Issue 9 of *Spawn*, with Mr. McFarlane principally responsible for the artwork and Mr. Gaiman principally responsible for the script, (b) that Mr. McFarlane agreed that Mr. Gaiman would be compensated for his work on Issue 9, and (c) that Mr. McFarlane agreed that Mr. Gaiman would be recognized for his contribution to Issue 9.

31.    The McFarlane Defendants deny the allegations in paragraph 31 of the Complaint and affirmatively allege that Mr. Gaiman received proper attribution for his contribution to Issue 9 of *Spawn.*

32.    The McFarlane Defendants deny the allegations in paragraph 32 of the Complaint except they admit that after consultation and collaboration with Mr. McFarlane regarding the characters and story line for Issue 9 of the *Spawn* comic book series, Mr. Gaiman contributed a script for that issue to be merged with Mr. McFarlane's original artwork.  In addition, they admit that Mr. Gaiman submitted some crude thumbnail sketches for various sequences in the issue.

33.    The McFarlane Defendants deny the allegations in paragraph 33 of the Complaint, except they admit that after consultation and collaboration with Mr. McFarlane regarding the characters and story line for Issue 9 of  *Spawn* comic book series, Mr. Gaiman contributed a script for that issue to be merged with Mr. McFarlane's original artwork.  In addition, they admit that Mr. Gaiman submitted some crude thumbnail sketches of an unnamed character for various sequences in the issue.

34.    The McFarlane Defendants deny the allegations in paragraph 34 of the Complaint, except they admit that after consultation and collaboration with Mr. McFarlane regarding the characters and story line for Issue 9 of *Spawn* comic book series, Mr. Gaiman contributed a script for that issue to be merged with Mr. McFarlane's original artwork.

35.    The McFarlane Defendants deny the allegations in paragraph 35 of the Complaint and affirmatively allege that Issue 9 of *Spawn* was released in March of 1993, not March of 1994.

36.    The McFarlane Defendants deny the allegations in paragraph 36 of the Complaint except they admit that Mr. Gaiman contributed some unsolicited text that eventually was merged

into the main body of text and original artwork in Issue 26 of the *Spawn*.  Further answering, the McFarlane Defendants state that Mr. Gaiman did not request attribution for his unsolicited materials but did receive payment for them.

37.    The McFarlane Defendants deny the allegations in paragraph 37 of the Complaint except they admit that Mr. Gaiman, in consultation and collaboration with Mr. McFarlane and others, prepared scripts which were merged with original artwork prepared by others into three issues of a comic book series entitled *Angela* published in North America and the United Kingdom.

38.    The McFarlane Defendants deny the allegations in paragraph 38 of the Complaint except they admit that Mr. Gaiman never signed a work-for-hire agreement.

39.    The McFarlane Defendants admit that Mr. Gaiman filed for and obtained copyright registrations identified in paragraph 39, deny the validity of these copyright registrations, deny that Plaintiffs own any copyright interest purportedly identified by these registrations, and deny the remaining allegations in paragraph 39 of the Complaint.

40.    The McFarlane Defendants admit that Mr. Gaiman filed for and obtained copyright registrations identified in paragraph 40, deny the validity of these copyright registrations, deny that Plaintiffs own any copyright interest purportedly identified by these registrations, and deny the remaining allegations in paragraph 40 of the Complaint.

41.    The McFarlane Defendants deny the allegations in paragraph 41 of the Complaint except they admit that Mr. McFarlane and/or TMP have obtained federal copyright registrations in all relevant comic books, including Issues 9 and 26 of *Spawn* and Issues 1, 2 and 3 of *Angela*.

42.    The McFarlane Defendants deny the allegations in paragraph 42 of the Complaint except that they admit that in February of 1997 Larry Marder of Image Comics sent a memo to

Mr. Gaiman, which document speaks for itself.  To the extent that any allegations in paragraph 42 are inconsistent with the contents of that memo, the McFarlane Defendants deny the same. The McFarlane Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the terms of Mr. Gaiman's contract with DC Comics.

43.    The McFarlane Defendants deny the allegations in paragraph 43 of the Complaint.

44.    The McFarlane Defendants deny the allegations in paragraph 44 of the Complaint except they admit (a) that Mr. McFarlane, acting on his own behalf, met with Mr. Gaiman in Oakland, California in or around April 1997, and (b) that Mr. Gaiman sent Mr. McFarlane a letter on or around May 5, 1997, which letter speaks for itself.  To the extent any of the allegations in paragraph 44 are inconsistent with the contents of that letter, the McFarlane Defendants deny such allegations.

45.    The McFarlane Defendants deny the allegations in paragraph 45 of the Complaint except they admit (a) that in July of 1997, Mr. McFarlane and Mr. Gaiman had one or more telephone conversations regarding rights in the Angela, Cogliostro, and Medieval Spawn characters and the *Miracleman* comic book series, (b) that Mr. Gaiman faxed a letter to Mr. McFarlane on or about July 15, 1997, which letter speaks for itself.  To the extent any of the allegations in paragraph 45 are inconsistent with the contents of that letter, the McFarlane Defendants deny such allegations.  The McFarlane Defendants deny that any of these oral or written communications between Mr. McFarlane and Mr. Gaiman constituted a legally binding "offer" or "acceptance" of a contract.

46.    The McFarlane Defendants deny the allegations in Paragraph 46 of the Complaint except they admit that Mr. McFarlane faxed a letter to Mr. Gaiman after he received the letter alleged in paragraph 46 of the Complaint.  Mr. McFarlane's letter speaks for itself, and thus the

McFarlane Defendants deny any allegations in paragraph 46 of the Complaint that are inconsistent with the contents of that letter.

47.    The McFarlane Defendants deny the allegations in paragraph 47 of the Complaint except they admit that later on that same day Mr. Gaiman faxed another letter to Mr. McFarlane, which letter speaks for itself.  To the extent any of the allegations in paragraph 47 of the Complaint are inconsistent with the contents of that letter, the McFarlane Defendants deny such allegations.

48.    The McFarlane Defendants deny the allegations in paragraph 48 of the Complaint.

49.    The McFarlane Defendants deny the existence of a 1997 agreement between Mr. Gaiman and any defendant, admit that certain materials and money were sent to Mr. Gaiman in August of 1997, are without knowledge or information sufficient to form a belief as to the present custody of the *Miracleman* materials, and deny the remaining allegations in paragraph 49 of the Complaint.

50.    The McFarlane Defendants deny the allegations in paragraph 50 of the Complaint except they admit that in October of 1997 TMP filed trademark applications for the name Miracleman, which applications speak for themselves.  To the extent that any of the allegations in paragraph 50 of the Complaint are inconsistent with the contents of those applications, the McFarlane Defendants deny such allegations.  The McFarlane Defendants further state that TMP decided to file the trademark applications after it learned that Mr. Gaiman had fraudulently induced it in July of 1997 to pay him certain moneys and transfer to him certain *Miracleman* materials, all as more fully alleged in the Counterclaim.

51.    The McFarlane Defendants deny that Mr. Gaiman has any ownership rights in the Angela, Cogliostro or Medieval Spawn characters and deny the allegations in paragraph 51 of

the Complaint except that they admit one or more of these characters has appeared in a live-action motion picture entitled "Spawn," an HBO animated series entitled "Spawn," comic art publications and/or toy figures.

52.    The McFarlane Defendants deny the allegations in paragraph 52 of the Complaint except they admit that in July 2001, TMP filed an intent-to-use application for a federal trademark application for Miracleman, which application speaks for itself.  To the extent any of the allegations in paragraph 52 of the Complaint are inconsistent with the statements in that application, the McFarlane Defendants deny such allegations.

53.    The McFarlane Defendants admit that one or more of them intend to use the Miracleman intellectual property through the sale of publications and products but deny that any such sales have occurred to date and deny the remaining allegations in paragraph 53 of the Complaint.

54.    The McFarlane Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint except that they deny that Mr. Gaiman received any rights, including copyrights, from them.

55.    The McFarlane Defendants deny the allegations in paragraph 55 of the Complaint.

56.    The McFarlane Defendants deny the allegations in paragraph 56 of the Complaint except that they admit that they published a poster featuring the Miracleman character.

57.    The McFarlane Defendants deny that Plaintiffs have any ownership interest in any intellectual property related to the Angela, Cogliostro, Medieval Spawn and Miracleman characters, or any comic book series or other publications or related products in which any of these characters appear and therefore deny the allegations in paragraph 57 of the Complaint.

## COUNT I:  DEROGATION OF MORAL RIGHTS

58.    The McFarlane Defendants deny the allegations in paragraph 58 of the Complaint.

59.    The McFarlane Defendants deny the allegations in paragraph 59 of the Complaint.

60.    The McFarlane Defendants deny the allegations in paragraph 60 of the Complaint.

## COUNT II:  COPYRIGHT INFRINGEMENT — "ANGELA"

61.    The McFarlane Defendants deny the allegations in paragraph 61 of the Complaint.

62.    The McFarlane Defendants deny the allegations in paragraph 62 of the Complaint.

63.    The McFarlane Defendants deny the allegations in paragraph 63 of the Complaint.

## COUNT III:  COPYRIGHT INFRINGEMENT "COGLIOSTRO" AND "MEDIEVAL SPAWN"

64.    The McFarlane Defendants deny the allegations in paragraph 64 of the Complaint.

65.    The McFarlane Defendants deny the allegations in paragraph 65 of the Complaint.

66.    The McFarlane Defendants deny the allegations in paragraph 66 of the Complaint.

## COUNT IV:  BREACH OF CONTRACT

67.    The McFarlane Defendants deny the allegations in paragraph 67 of the Complaint.

68.    The McFarlane Defendants deny the allegations in paragraph 68 of the Complaint.

69.    The McFarlane Defendants deny the allegations in paragraph 69 of the Complaint.

70.    The McFarlane Defendants deny the allegations in paragraph 70 of the Complaint.

## COUNT V:  FRAUD

71.    The McFarlane Defendants deny the allegations in paragraph 71 of the Complaint.

72.    The McFarlane Defendants deny the allegations in paragraph 72 of the Complaint.

73.    The McFarlane Defendants deny the allegations in paragraph 73 of the Complaint.

74.    The McFarlane Defendants deny the allegations in paragraph 74 of the Complaint.

## COUNT VI:  VIOLATION OF THE LANHAM ACT § 43(A)

75.    The McFarlane Defendants deny the allegations in paragraph 75 of the Complaint.

76.    The McFarlane Defendants deny the allegations in paragraph 76 of the Complaint.

77.    The McFarlane Defendants deny the allegations in paragraph 77 of the Complaint.

78.    The McFarlane Defendants deny the allegations in paragraph 78 of the Complaint.

79.    The McFarlane Defendants deny the allegations in paragraph 79 of the Complaint.

80.    The McFarlane Defendants deny the allegations in paragraph 80 of the Complaint.

## COUNT VII:  STATE LAW FALSE ADVERTISING

81.    The McFarlane Defendants deny the allegations in paragraph 81 of the Complaint.

82.    The McFarlane Defendants deny the allegations in paragraph 82 of the Complaint.

83.    The McFarlane Defendants deny the allegations in paragraph 83 of the Complaint.

84.    The McFarlane Defendants deny the allegations in paragraph 84 of the Complaint.

85.    The McFarlane Defendants deny the allegations in paragraph 85 of the Complaint.

## COUNT III:  PROMISSORY ESTOPPEL

86.    The McFarlane Defendants deny the allegations in paragraph 86 of the Complaint.

87.    The McFarlane Defendants deny the allegations in paragraph 87 of the Complaint.

88.    The McFarlane Defendants deny the allegations in paragraph 88 of the Complaint.

89.    The McFarlane Defendants deny the allegations in paragraph 89 of the Complaint.

90.    The McFarlane Defendants deny the allegations in paragraph 90 of the Complaint.

## COUNT IX:  DECLARATORY JUDGMENT

91.    The McFarlane Defendants admit the allegations in paragraph 91 of the
Complaint.

92.    The McFarlane Defendants deny the allegations in paragraph 92 of the Complaint.

93. The McFarlane Defendants deny the allegations in paragraph 93 of the Complaint.

94. The McFarlane Defendants deny the allegations in paragraph 94, and

Subparagraphs 94(a), (b), (c), (d), (e) and (e) [sic].

95. The McFarlane Defendants deny each and every allegation of the Complaint not

expressly admitted herein.

## PRAYER

The McFarlane Defendants deny that Plaintiffs are entitled to any relief in this action.

## AFFIRMATIVE DEFENSES

1. Each of Plaintiffs' claims fail to state a claim upon which relief can be granted

because, among other things:

    a. Plaintiffs' Derogation of Moral Rights claim is barred because comic books are not within the scope of works protected under the Visual Artist Rights Act of 1990 ("VARA"), 17 U.S.C. §§ 101, 106A.

    b. Plaintiffs' Lanham Act "reversing palming off" claim fails because Plaintiffs do not allege prior existence of the trademarks at issue and prior exploitation by them.

    c. Plaintiffs' copyright infringement claims are fatally defective because any copyright ownership interest that Mr. Gaiman could have claimed in the Angela, Cogliostro, or Medieval Spawn intellectual property, or in any issues of the *Spawn* or *Angela* comic books, would have been, at most, limited to the claim of a joint author of a joint work under Section 101 of the Copyright Act. The other joint authors would have included Mr. McFarlane and/or TMP. Copyright law does not permit one joint owner to sue another joint owner for copyright infringement.

    d. The State Law False Advertising claims are preempted by the Copyright Act, which governs moral rights of attribution in works of visual arts.

2. Plaintiffs' copyright ownership claims—erroneously characterized as

infringement claims—are barred by the three-year statute of limitations contained in 17 U.S.C. §

507(b). His claims for an ownership interest in the comic books and comic book characters at

issue in this lawsuit all accrued no later than December of 1994 and more likely as early as November of 1992.

3.    Plaintiffs' Derogation of Moral Rights and Lanham Act claims are barred by the applicable statute of limitations, specifically section 893.93(1)(b), Stats., because such claims, if any existed, accrued upon the publication of Issues 9 and 26 of *Spawn* and Issues 1 through 3 of *Angela*, all of which took place more than six years prior to the filing of this action.

4.    Plaintiffs' State Law False Advertising claims are barred by the applicable statute of limitations, specifically section 100.18(11)(b), Stats., because such claims, if any existed, accrued upon the publication of Issues 9 and 26 of *Spawn* and Issues 1 through 3 of *Angela*, all of which took place more than three years prior to the filing of this action.

5.    Plaintiffs' claims are barred because any claims for money owed to Plaintiffs have been paid, satisfied and discharged by payment to Plaintiffs.  In the alternative, Plaintiffs' claims are barred by the doctrine of accord and satisfaction in that the McFarlane Defendants duly paid, satisfied, and discharged plaintiffs' claims by full payment to plaintiff.

6.    Plaintiffs' copyright infringement claims are barred by Mr. Gaiman's commission of fraud on the U.S. Copyright Office to the detriment of the McFarlane Defendants and by the doctrine of "unclean hands" in that Mr. Gaiman knowingly obtained separate copyright registrations for contributions to joint works while willfully concealing from the Copyright Office, among other things, the following material facts:

    a.    that the comic book scripts and other works covered by Mr. Gaiman's copyright registration applications were, at most, contributions to a "joint work" in that each comic book was, under Section 101 of the Copyright Act, "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole";

    b.    that one or more of the McFarlane Defendants was, at the very least, a joint owner of the copyright in the comic books covered by Mr. Gaiman's registration applications; and

c.      that one or more of the McFarlane Defendants had previously publicly claimed the copyright in each of the comic books covered by Mr. Gaiman's copyright registration applications and, moreover, had made that public claim of copyright ownership at least years before the filing of Mr. Gaiman's applications.

7.      Plaintiffs' Derogation of Moral Rights, Lanham Act, and State Law False Advertising claims are barred because Mr. Gaiman always received appropriate attribution for his contributions to the *Spawn* and *Angela* comic book issues.

8.      Plaintiffs' Breach of Contract, Fraud, and Promissory Estoppel claims, if any exist, are barred by Plaintiffs' own fraudulent inducement and unclean hands in knowingly misrepresenting DC Comics' and industry standards regarding royalties for derivative characters in a comic book series, all as more fully set forth in the Counterclaim.

9.      Plaintiffs' breach of contract, fraud and promissory estoppel claims, if any exist, are barred by the statute of frauds.

10.     Plaintiffs' breach of contract, fraud and promissory estoppel claims, if any exist, are barred by applicable statutes of limitation.

11.     Plaintiffs' claims are barred by the equitable doctrines of waiver, estoppel and latches.

12.     Plaintiffs' claims are barred by its own failure to perform its obligations under the agreements at issue in this lawsuit.

13.     With full knowledge of all facts in any way connected with or relating to the matters alleged in the Complaint, Plaintiffs duly acquiesced and confirmed in all respects any and all purported acts and/or omissions of defendants alleged in the Complaint, if any such acts or omissions there were or are.

14.     Mr. Gaiman has failed to act in good faith with respect to the matters alleged in the Complaint.

## COUNTERCLAIMS OF TODD McFARLANE
## AND TODD McFARLANE PRODUCTIONS, INC.

Having answered the Complaint and asserted various affirmative defenses, defendants-counterclaimants Todd McFarlane and Todd McFarlane Productions, Inc. ("TMP") allege as follows:

### Parties and Jurisdiction

1.      Mr. McFarlane is a citizen of Canada and a resident of the state of Arizona.

2.      TMP is an Arizona corporation with its principal place of business in Arizona.

3.      On information and belief, plaintiff-counterclaim defendant Neil Gaiman is a citizen of Great Britain and a resident of Wisconsin.

4.      On information and belief, plaintiff-counterclaim defendant Marvels and Miracles, L.L.C. ("M&M") is a Wisconsin limited liability company having a principal place of business in Wisconsin.

5.      This Court has exclusive jurisdiction over the subject matter of this counterclaim under 28 U.S.C § 1338(a) because it is an action arising under the copyright laws of the United States.  For the declaratory judgment claims, this Court has jurisdiction under 28 U.S.C. §§ 2201-02.

### The Origins of Todd McFarlane's *Spawn*

6.      From the mid 1980s to the early 1990s, Todd McFarlane worked as the graphic artist and/or writer on a variety of comic books, including *The Incredible Hulk* published by Marvel Enterprises, Inc. d/b/a Marvel Comics and *Batman* published by DC Comics. Eventually, he became the sole writer and graphic artist on Marvel Comics' *Amazing Spider-Man*.

7.      In 1991, Mr. McFarlane left Marvel Comics to become an independent artist. One year later, he launched a new comic book series, *Spawn*. The first issue sold 1.7 million copies, making it one of the bestselling independent comic books in history.

8.      *Spawn* follows the afterlife of Al Simmons, once a top operative for the U.S. government who was betrayed and murdered by his own men. Down in Hell, Simmons makes a bargain: in exchange for the privilege of returning to Earth to see his wife he must become a "Hellspawn" and lead Hell's army in the upcoming Armageddon. Simmons, now known as Spawn, returns to Earth to discover that, in a cruel twist of fate, five years have passed and his widow has married his best friend. The comic book series follows his struggles between his curse as a Hellspawn and his desire to do good on Earth.

9.      Mr. McFarlane was the sole creator, writer and graphic artist of Issue 1 of *Spawn*, which debuted in May of 1992.

10.     Mr. McFarlane and TMP own all copyrights in the *Spawn* series and the character Spawn, beginning with Issue 1 of *Spawn*, which is covered by U.S. copyright registration TX 4-243-065. Mr. McFarlane is identified as the owner of the copyright. A true copy of the certificate of copyright registration for Issue 1 of *Spawn* is included in as Exhibit A in the Appendix to Answer of the McFarlane Defendants (the "Appendix"). Mr. McFarlane and TMP hereby incorporate the contents of the Appendix into this Counterclaim, which become part of this Answer and Counterclaim for all purposes.

11.     Copyright registrations obtained by Mr. McFarlane and TMP for the *Spawn* series cover more than one hundred issues of that comic book and related series and include, for example:

| Spawn Issue No. | Publication Date | Certificate of Registration |
| --- | --- | --- |
| 2 | June 1992 | TX 4-243-066 |

| Spawn Issue No. | Publication Date | Certificate of Registration |
|---|---|---|
| 3 | August 1992 | TX 4-243-067 |
| 4 | September1992 | TX 4-255-762 |
| 5 | October 1992 | TX 4-256-099 |
| 6 | November 1992 | TX 4-256-098 |
| 7 | January 1993 | TX 4-256-097 |
| 8 | March 1993 | TX 4-256-096 |
| 9 | March 1993 | TX 4-256-095 |
| 10 | May 1993 | TX 4-256-100 |
| 11 | June 1993 | TX 4-256-092 |
| 12 | July 1993 | TX 4-256-091 |

### Mr. Gaiman's Involvement in *Spawn* Issue No. 9

12.    In 1992, Mr. McFarlane invited several comic book writers, including Mr. Gaiman, to each collaborate with him in the production of an issue of *Spawn*. Under the proposal, each writer would write a script for a single issue of the comic book and Mr. McFarlane would create the artwork for that issue. The intent was for each writer to collaborate with Mr. McFarlane in such a way that their respective contributions would be merged together into inseparable or interdependent parts of a unitary whole, namely, a single issue of *Spawn*.

13.    Mr. Gaiman accepted Mr. McFarlane's offer and began work on *Spawn* Issue 9.

14.    During the creative process, Mr. Gaiman and Mr. McFarlane discussed potential characters and themes and plot lines. They specifically discussed the creation of a female character to be known as Angela, a minor elderly male character in robes initially named Count Nicholas Cagliostro, and an unnamed Spawn character from the Middle Ages who would appear in a brief episode set in the past.

15.    The result of this collaboration was the creation of a joint work of authorship published in March of 1993 as *Spawn* Issue 9. A true copy of that issue of *Spawn* is included in the Appendix as Exhibit B. Mr. Gaiman understood at all relevant times that Mr. McFarlane and TMP World own the copyrights to *Spawn* Issue 9.

16.    When Mr. Gaiman submitted his script for Issue 9 to Mr. McFarlane, he acknowledged the collaborative nature of the work and Mr. McFarlane's ownership of the rights in the comic book.  He wrote:

> Don't feel bound by the rough layouts on the comic—that's more to give you a sense of what's happening than it's meant to be a set of thumbnails for you.
>
> When you've done rough pencils, I'm happy to go over it again and tidy up any dialogue; and obviously let me know if there's any continuity problems you can see.  It's your playground—I'm just in for an afternoon on the swings.

17.    The cover of Issue 9 of *Spawn* (*see* Exhibit B), is a full-page depiction of the character Angela.  Mr. McFarlane created this artwork.

18.    The Angela character first appears in Issue 9.  The unnamed Spawn character from the Middle Ages appears on several early pages in the issue, has about ten lines of dialogue, and is dressed in an armored version of the outfit worn by Spawn in Issues Nos. 1 through 8.  The Count Nicholas Cagliostro character appears on a few pages toward the end of the issue.

19.    The inside cover page of *Spawn* Issue 9 identifies Mr. Gaiman as the writer of the story and identifies Mr. McFarlane as the creator of the artwork.  At the bottom of that page is the following notice of copyright ownership:  "*Spawn* and its logo are trademark™ and copyright © 1993 Todd McFarlane Productions, Inc.  All rights reserved." (Exhibit B).

20.    Prior to publication of Issue 9 of *Spawn*, TMP purchased several print advertisements for that issue, including a full-page advertisement in the November 13, 1992 edition of COMICS BUYER'S GUIDE.  The top of the advertisement featured Mr. Gaiman's name and Mr. McFarlane's name.  The middle of the advertisement featured the cover of Issue 9, described above.  The bottom of the advertisement contained the copyright notice of ownership,

which read: "SPAWN™ is trademark and copyright © 1992 Todd McFarlane.  All rights reserved."

21.    Upon information and belief, Mr. Gaiman saw a copy of that advertisement around the time of its publication in November of 1992.

22.    Accordingly, by November of 1992 and certainly no later than March of 1993, Mr. Gaiman knew or should have known that someone other than himself was asserting sole ownership of the copyright in *Spawn* Issue 9.

23.    On April 12, 1996, Mr. McFarlane obtained a U.S. copyright registration TX 4-256-095 for *Spawn* Issue 9.  He is identified as the owner of the copyright.  A true copy of the certificate of copyright registration for Issue 9 of *Spawn* is included in the Appendix as Exhibit C.

24.    In 1996, TMP reprinted *Spawn* Issue 9, along with Issues 6, 7, 8 and 10 in Volume 2 of the *Spawn* trade paperback series ("*Spawn* Volume 2").  A true copy of the cover, title page and credits page of *Spawn* Volume 2 and the first two pages of the reprinted version of Issue 9 are included in the Appendix as Exhibit D.

25.    The credits page of *Spawn* Volume 2 identifies Mr. Gaiman as one of the writers of the stories and identifies Mr. McFarlane as the creator of the artwork.

26.    The title page of *Spawn* Volume 2 contains the following notice of copyright ownership:  "*Spawn*®, its logo and its symbol are registered trademarks of Todd McFarlane Productions, Inc.  All other related characters are trademark™ and copyright © 1996 Todd McFarlane Productions, Inc.  All rights reserved." (Exhibit D).

27.     Accordingly, by 1996, Mr. Gaiman once again knew or should have known that someone other than himself was asserting sole ownership of the copyright in *Spawn* Issue 9, including all of the characters contained therein.

28.     After publication of *Spawn* Issue 9, Mr. McFarlane coined the name Medieval Spawn for the unnamed Spawn character that had appeared in that issue.

29.     After publication of *Spawn* Issue 9, Mr. McFarlane changed the name of the Cagliostro character to Count Alessandro di Cogliostro and changed the character's personality to more closely approximate the character traits that Mr. McFarlane had originally described to Mr. Gaiman as opposed to the Cagliostro character in Mr. Gaiman's script.

### Mr. Gaiman's Involvement In Four Other *Spawn* Publications

30.     During 1994, Mr. Gaiman sent Mr. McFarlane an unsolicited letter containing some ideas for Mr. McFarlane's comic book, including the draft of a partial scene for an issue of *Spawn*.  In his cover letter to Mr. McFarlane, Mr. Gaiman ended his letter: "There.  File it away, use it if it works, dump it if it doesn't."

31.     Mr. McFarlane accepted Mr. Gaiman's invitation, included some of that scene in *Spawn* Issue 26, which was published in December of 1994, and paid Mr. Gaiman a fee for his contribution.  A true copy of this Issue 26 is included in the Appendix as Exhibit E.

32.     On January 20, 1995, Mr. McFarlane obtained a U.S. copyright registration TX 4-029-098 for *Spawn* Issue 26.  He is identified on the registration as the owner of the copyright.  A true copy of the certificate of copyright registration for Issue 26 of *Spawn* is included in the Appendix as Exhibit F.

33.     During 1994 and early 1995, Mr. Gaiman collaborated with several others associated with TMP in the production of Issues 1 through 3 of a *Spawn* derivative comic book

series published by TMP under the title *Angela* in December 1994 (Issue 1), January 1995 (Issue 2), and February 1995 (Issue 3). True copies of these three issues of *Angela* are included as Exhibits G, H and I in the Appendix.

34.     The inside title pages credits five separate artist collaborators for the issues of *Angela*, including "Story—Neil Gaiman."

35.     Mr. Gaiman participated in these collaborations with the understanding that the respective contributions of the various artist collaborators would be merged together into inseparable or interdependent parts of a unitary whole, namely, an issue of *Angela*. Mr. Gaiman also understood that Mr. McFarlane and TMP World own the copyrights to the *Angela* series.

36.     The inside title page of *Angela* Issue 2 contains the following notice of copyright ownership: "*Angela*, its logo and its symbol are registered trademarks™ and copyright © 1995 of Todd McFarlane Productions, Inc. All rights reserved." (Exhibit H).

37.     Accordingly, by January of 1995, Mr. Gaiman knew or should have known that someone other than himself was asserting sole ownership of the copyright in the *Angela* comic books, including all of the characters contained therein.

38.     On January 20, January 30, and March 8 of 1995, Mr. McFarlane obtained U.S. copyright registrations TX 4-429-099, TX 4-003-203, and TX 4-010-007 for, respectively, *Angela* Issues 1, 2 and 3. He is identified as the owner of the copyright. True copies of these three certificates of copyright registration for Issue 1, 2 and 3 of *Angela* are included in the Appendix as Exhibit J, K and L.

**Mr. Gaiman's Copyright Registrations**

39. In August of 2000, Mr. Gaiman filed nine separate copyright registration applications for a variety of alleged creations in connection with Issues 9 and 26 of *Spawn* and Issues 1 through 3 of *Angela.*

40. The U.S. Copyright Office approved Mr. Gaiman's nine copyright registration applications as follows:

| Description | Publication Date | Certificate of Registration |
|---|---|---|
| Script for Angela Issue 1 | December 1994 | TX 5-276-922 |
| Script for Angela Issue 2 | January 1995 | TX 5-276-923 |
| Script for Angela Issue 3 | February 1995 | TX 5-276-924 |
| Script for Spawn Issue 9 | March 1993 | TX 5-352-460 |
| Portion of Script for Spawn Issue 26 | December 1994 | TX 5-352-461 |
| Treatment for Angela series | N/A | TXu 966-576 |
| Thumbnail sketch of Angela 1 | N/A | VAu 481-446 |
| Thumbnail sketch of Angela 2 | N/A | VAu 481-424 |
| Thumbnail sketch of Angela 3 | N/A | VAu 481-439 |

True copies of these nine copyright registrations are included together in the Appendix as Exhibit M.

41. Mr. Gaiman filed these nine applications:

a. more than seven years after publication of *Spawn* Issue 9 (and thus more than seven years after Mr. Gaiman knew that someone else was claiming sole ownership of the copyright in that comic book),

b. more than six years after publication of *Spawn* Issue 26 (and thus more than six years after Mr. Gaiman knew that someone else was claiming sole ownership of the copyright in that comic book), and

c. more than five years after publication of Issues 1 through 3 of *Angela* (and thus more than five years after Mr. Gaiman knew that someone else was claiming sole ownership of the copyright in those three comic books).

42. Nowhere in Mr. Gaiman's nine copyright applications does he disclose to the U.S. Copyright Office that he is seeking a separate copyright registration in a portion of a previously registered joint work of authorship in which another party has already claimed ownership of the

copyright in the entire work. As such, Mr. Gaiman concealed material facts from the U.S.

Copyright Office in his applications to register purported copyrights in preexisting joint works.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment—Copyright Ownership—Spawn and Angela)

43.     Mr. McFarlane and TMP reallege and incorporate the preceding paragraphs of

their Counterclaim as the first paragraph of this claim.

44.     There is now an actual and justiciable controversy before this Court over who

owns the copyrights in Issues 9 and 26 of *Spawn* and Issues 1, 2 and 3 of *Angela*, including the

copyrights, if any, of the following three characters: Angela, Cogliostro and an unnamed Spawn

character from the Middle Ages subsequently named Medieval Spawn.

45.     The five comic books that are the subject matter of this claim are joint works

under Section 101 of the Copyright Act in that they are "works prepared by two or more authors

with the intention that the contributions be merged into inseparable or interdependent parts of a

unitary whole."

46.     At all relevant times, Mr. Gaiman understood and agreed that Mr. McFarlane and

TMP would own the copyrights in these comic books and their characters.

47.     Mr. McFarlane registered copyrights in the entire contents of all five issues of the

comic books that are the subject matter of this Count. He registered each such copyright more

than three years ago and all within five years of the date of first publication of that comic book,

and thus under Section 410(c) of the Copyright Act, 17 U.S.C. § 410(c) the certificates of

registration comprising Exhibits C, F, J, K, and L "constitute prima facie evidence of the validity

of the copyright and of the facts stated in the certificate."

48.    Far more than three years have elapsed since Mr. Gaiman knew or should have known that a party other than himself was asserting sole ownership of the copyrights in the five comics that are the subject matter of this Count.

49.    Mr. Gaiman obtained his nine copyright registrations as a result of fraud on the U.S. Copyright Office in that he obtained his copyright registration by knowingly misrepresenting or omitting material facts on the registration application that might have occasioned a rejection of the application if properly disclosed.

50.    These wrongfully obtained copyright registrations have caused prejudice to Mr. McFarlane and TMP by casting a shadow over their ownership of the copyrights and embroiling them in this litigation.

51.    Mr. McFarlane and TMP therefore seek a declaration of rights from this Court decreeing:

a.    That Todd McFarlane and TMP are the sole owners of all copyrights in Issues 9 and 26 of *Spawn* and Issues 1, 2 and 3 of *Angela*, including the Angela, Cogliostro and Medieval Spawn characters that appear in those comic books;

b.    That Mr. McFarlane's copyright registrations in Issues 9 and 26 of *Spawn* and Issues 1, 2 and 3 of *Angela*—namely, Exhibits C, F, J, K and L—are valid;

c.    That Mr. Gaiman's challenges to the validity of Mr. McFarlane's copyright registrations in Issues 9 and 26 of *Spawn* and Issues 1, 2 and 3 of *Angela*, and his attempt to assert ownership in the copyrights in those comic books, are barred by the three-year statute of limitations set forth in Section 501(b) of the Copyright Act, 17 U.S.C. § 501(b);

d.    That Mr. Gaiman's nine copyright registrations in "scripts" and "thumbnails" and "treatments" for Issues 9 and 26 of *Spawn* and Issues 1, 2 and 3 of *Angela*— namely, Exhibit M—are invalid and should be canceled by the U.S. Copyright Office.

## SECOND CLAIM FOR RELIEF
### (Fraud by Mr. Gaiman)

52.    Mr. McFarlane and TMP reallege and incorporate the preceding paragraphs of their Counterclaim as the first paragraph of this claim.

53.    During the spring and summer of 1997, Mr. Gaiman and Mr. McFarlane entered into discussions in an attempt to resolve certain disputes that had arisen concerning Mr. Gaiman's contentions that he should be paid additional money for his contributions to the five comic books at issue in this lawsuit, including royalty income received by TMP from licenses for toys and other products based on characters in those comic books.

54.    In an ultimately unsuccessful attempt to settle their differences, they engaged in an exchange of oral and written communications, certain excerpts of which plaintiffs have quoted in their Complaint.

55.    During those discussions and in an effort to fashion an acceptable settlement of all disputes, Mr. McFarlane expressed a willingness to make certain payments to Mr. Gaiman using payment formulas that Mr. Gaiman represented were based upon the contract that DC Comics used with its artists.

56.    On July 15, 1997, Mr. Gaiman sent to Mr. McFarlane a short letter outlining some of the terms of a proposed settlement.  Included in those terms was a paragraph addressing Mr. Gaiman's purported rights in the characters known as Cogliostro and Medieval Spawn, which immediately follows a paragraph addressing Mr. Gaiman's purported rights in Angela.  The two paragraphs read:

> You agree that with regard to the character of Angela, her appearances, spin-offs, merchandising and foreign translations of Spawn 9 or the Angela mini-series, that you'll be using the figures we put together based on the DC deal. * * *

> That my rights in Cogliostro and Medieval Spawn as above will be exchanged for your share of Miracleman. However, you will make all payments up until the date of exchange for the use of the characters, based on the same figures as above.

57.    For the reasons alleged above, Mr. McFarlane was surprised by Mr. Gaiman's contention that under the DC Comics contract he would have cognizable rights in and an entitlement to payments for Cogliostro or Medieval Spawn.

58.    Nevertheless, in the spirit of settlement, Mr. McFarlane wrote back later that day asking several questions about the DC Comics deal, including the following:

> Also, accounting on the Medieval Spawn will be done from a formula you said DC Comics uses on derivative characters, not the standard agreement of a new hero. Is this acceptable?

59.    Mr. Gaiman responded in writing as follows:

> Medieval Spawn accounting—yes, I should have put that in. (I'd formula him at 50% of Angela.)

60.    Although Mr. McFarlane and Mr. Gaiman never finalized their discussions into a binding contract, after receipt of Mr. Gaiman's second letter of July 15, 1997, and acting in reliance upon Mr. Gaiman's representations about his purported rights in the characters under the DC Comics deal, including payments he would have received, Mr. McFarlane paid Mr. Gaiman a large sum of money in the form of "royalties" on Medieval Spawn and shipped to him various materials relating to the *Miracleman* comic book that TMP had acquired through a bankruptcy court sale during the Chapter 7 liquidation of the Eclipse Comics, Inc., the publisher of *Miracleman.*

61.    Less than a month later, Mr. McFarlane learned that Mr. Gaiman had lied to him about the payments he would have received for Medieval Spawn under the DC Comics contract. In fact, as Mr. McFarlane learned in August of 1997, Mr. Gaiman would have received no payments for Medieval Spawn and would have had no cognizable rights in the fully-developed

Cogliostro character (who differed in important respects from the Cagliostro character who appeared in Issue 9).

62.    Mr. Gaiman thus made material misrepresentation of facts and obtained money from TMP on false pretenses.  Moreover, he fraudulently induced Mr. McFarlane to ship him valuable materials relating to *Miracleman* in exchange for rights that Mr. Gaiman never had or willfully overstated.

63.    Mr. McFarlane and TMP justifiably relied upon Mr. Gaiman's misrepresentations to their detriment.

64.    As a direct and proximate result of Mr. Gaiman's fraud, Mr. McFarlane and TMP have been damaged in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(Unjust Enrichment)**

65.    Mr. McFarlane and TMP reallege and incorporate the preceding paragraphs of their Counterclaim as the first paragraph of this claim.

66.    During the summer of 1997, Mr. McFarlane and TMP conferred a benefit upon Mr. Gaiman in the form of payments and delivery of materials related to *Miracleman*.

67.    Plaintiffs have obtained that benefit and profited as a result of it.

68.    The acceptance and retention by Plaintiffs of that benefit without compensation to Mr. McFarlane and TMP would be unjust.

69.    As a direct and proximate result of the foregoing, Plaintiffs have been unjustly enriched in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. McFarlane and TMP respectfully pray for the following relief:

a.   A declaration setting forth the rights of Mr. McFarlane and TMP in the copyrights in Issues 9 and 26 of *Spawn* and Issues 1, 2 and 3 of *Angela*, including all characters contained in those comic books;

b.   An order invalidating the nine copyright registrations obtained by Mr. Gaiman in various aspects of Issues 9 and 26 of *Spawn* and Issues 1, 2 and 3 of *Angela*;

c.   An award of compensatory damages in an amount to be determined at trial;

d.   An award of punitive damages;

e.   An award of their costs and attorneys' fees expended in this action to the extent permitted by law; and

f.   Such other and further relief as the Court deems just.


Dated:  March 4, 2002

LA FOLLETTE GODFREY & KAHN


Eugenia G. Carter
Todd G. Smith
One East Main Street, Suite 500
Madison, WI  53701
Tele:  (608) 257-3911
Fax:  (608) 257-0609

Attorneys for Todd McFarlane, Todd McFarlane
Productions, Inc., TMP International, Inc. and
McFarlane Worldwide, Inc.

OF COUNSEL:

Michael A. Kahn
Peter W. Salsich, III
Stinson, Mag & Fizzell
100 South 4th Street, Suite 700
St. Louis, MO 63102
(314) 259-4500 (Tel.)
(314) 259-4599 (Fax)

MN144334_1.DOC

30