DOC NO
REC'D/FILED

2002 MAR 12  PM 3: 25

J W SKOTNSWTEZ
CLERK US DIST COURT
WD OF WI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NEIL GAIMAN, a resident of Wisconsin, and MARVELS AND MIRACLES, LLC, a Wisconsin Limited Liability Company, | ) ) ) ) |
| Plaintiffs, | ) )    **Case No. 0200048 S** |
| v. | ) ) |
| TODD MCFARLANE, a resident of Arizona, and TODD MCFARLANE PRODUCTIONS, INC., and Arizona corporation, TMP INTERNATIONAL, INC., a Michigan corporation, MCFARLANE WORLDWIDE, INC., a Michigan corporation, and IMAGE COMICS, INC., a California corporation, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

---

# IMAGE COMICS, INC.'S BRIEF IN SUPPORT OF ITS MOTION
# TO DISMISS FOR FAILURE TO STATE A CLAIM
# PURSUANT TO F.R.C.P. 12(b)(6)

---

OCOLIB1\RSF\259999.01

## I.    **INTRODUCTION**

This case is about the intellectual property rights to two sets of unrelated comic book characters, the "Spawn properties" and "Miracleman." Image Comics, Inc. ("Image") is a licensee of either co-defendant, Todd McFarlane, or co-defendant Todd McFarlane Productions ("TMP"), and previously published *Spawn* comic books. As a matter of policy, Image does not own the intellectual property rights to any of the characters featured in its books. Image should be dismissed from the Complaint, as it is not well pleaded against Image.

Plaintiffs' lead count, "moral rights," is asserted under the Berne Convention, the U.S. Copyright Act of 1976 ("the Act") and unspecified foreign law. Under the Berne convention, copyright holders are limited to whatever rights are given to nationals where the claim is pursued (i.e., U.S. law applies to all comers within the United States). Under U.S. law, moral rights are greatly limited, both as to what rights are vindicated and as to what copyrightable works qualify for protection. Plaintiffs assert the moral right of attribution, failing to note that comic books with unnumbered and substantial print runs (alleged to exceed 1,100,000 in paragraph 35 of the Complaint) are outside the scope of protection of the Visual Artist Rights Act of 1990 ("VARA"). 17 U.S.C. §§ 101, 106A.

Counts II and III, for copyright infringement, disclose a statute of limitations bar in the pleadings. Plaintiffs correctly pleaded that Image last published comic books with the Spawn properties in 1997. As a second reason, under the Copyright Act, plaintiffs may not sue a co-owner's licensee.

Counts IV and V fail because Image does not own rights to any characters that it publishes, and only owns its own name and logo. Plaintiffs' complaint repeatedly refers to the actions of Mr. McFarlane. He has declared that he never held himself out as acting on Image's behalf to obtain any intellectual rights to either the Spawn or Miracleman characters. The only pleading against Image is

OCOLIB1\RSP\159999.01

that it once sent Gaiman a memo with a settlement offer, which Plaintiffs plead that Gaiman rejected. A rejected offer cannot supported a fraud or contract claim.

Count VI, "reverse palming off," fails for two reasons. Plaintiffs do not allege the prior existence of Spawn trademarks used in interstate commerce and exploited by them. Moreover, as a matter of law, Image cannot be liable for infringement to a putative co-creator. Plaintiffs reading of section 43(A) of the federal Lanham Act would make it inconsistent with federal copyright law.

Count VII, false advertising, is preempted by the Copyright Act. VARA (*supra*) specifically limits what works are entitled to the moral rights of attribution. Comic books are not among the works protected, and the state false advertising count contains no "extra element" that would survive preemption. Further, that claim is barred by Wisconsin's three-year statute of limitation.

Count VIII, promissory estoppel, also preempted by the Copyright Act.

Count IX, declaratory judgment, fails because there is no present justiciable controversy between Image and Plaintiffs. Referencing paragraph 94 of the Complaint:

a.-b.   Image has no interest in who is declared owner of the Spawn properties, as it does not have any ownership interest in any properties itself.

c.      A licensee has no duty to provide an accounting to the licensor's co-owner, and the statute of limitations has run anyway. 17 U.S.C. §§ 201, 507(b).

d.-f.   Image has no interest in who is declared the owner of Miracleman. Image has no contracts relating to the Miracleman properties, will not publish any works incorporating those properties during the pendency of these proceedings, and will gladly be bound by whatever rulings pertaining to rights to Miracleman that might later be issued against its co-defendants.

OCOLIB1\RSP\259999.01

## II.    ARGUMENT

Plaintiffs pleading reveals absolute defenses, barring their ability to recover. "If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes identical facts." Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 (9th Cir. 1997). Here, Plaintiffs' pleading reveals that their claims are definitionally excluded by statute, are time barred, preempted by federal law, or fail to meet threshold requirements. They therefore fail to state a claim upon which relief can be granted, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, must be dismissed at the outset.

### A.    Plaintiffs' Moral Rights Claim Fails Because Comic Books Are Not Protected Under the Visual Artists Rights Act ("VARA") Of 1990

#### 1.    Image's unnumbered comic books exceed 200 copies

Comic books are not within the scope of works protected under the VARA. Section 106A of the modified Copyright Act provides the following in relevant part:

"(a)    Rights of Attribution and Integrity...the author of a work of visual art-

(1)    shall have the right

(A)    to claim authorship of that work..."

(emphasis added). 17 U.S.C. § 106A. Consequently, only authors of limited works of "visual arts" are entitled to claim the moral right of attribution.

Comic books, however worthy, are not "visual art." A "work of visual art" is defined by Section 101 of the Copyright Act as modified by VARA. That section provides the following in pertinent part:

"[a] 'work of visual art' is –

> a painting, drawing, print or sculpture, existing in a
> single copy, in a limited edition of 200 copies or fewer
> that are signed and consecutively numbered by the
> author..."

17 U.S.C. § 101. As pleaded, Image's comic books have substantial print runs, with Plaintiffs alleging that 1,100,000 copies of *Spawn* Issue Number Nine were sold. Compl. ¶ 35. Neither are comic books individually numbered and signed, as with a lithograph, by the author(s). Since the print runs are alleged to exceed 200 copies, they do not qualify as "visual art."

VARA also defines what is not a "work of visual art." That same definitional section provides the following in pertinent part:

> "A work of visual art does not include –
> (A)(i) any...book, magazine, newspaper, periodical...or
> similar publication"

17 U.S.C. § 101. Image's *Spawn* series was issued periodically, and is "similar" to a magazine. Therefore, under VARA, the *Spawn* comic books are explicitly defined as not encompassing "visual art." Plaintiffs therefore are not entitled to vindicate "moral rights" under VARA.[1]

## 2.    Under the Berne Convention Plaintiffs' claim collapses into whatever rights are given under U.S. copyright law.

In essence, the Berne Convention is an international equal protection treaty. Signatories must give claimants the same rights as those afforded to the signatories' own citizens. Put another way, under the Berne

---

[1] We also note that Miracles & Marvels, the alleged assignee of Mr. Gaiman's intellectual property rights to Miracleman (Compl. ¶ 54), may not vindicate moral rights. Under VARA, only "authors" and not "copyright owners" per se are entitled to rights of attribution. 17 U.S.C. § 106A(b).

OCOLIB1\RSF\259999.01

Convention, rights asserted under foreign copyrights are limited to whatever protections the U.S. gives its own copyright holders. Berne Convention (Paris Text) Art. 5(1). U.S. courts may not vindicate foreign copyright law rights, which may provide greater protection to "moral rights" of attribution. *See eg.*, Murray v. British Broadcasting Corp., 906 F. Supp. 858, 865 (S.D.N.Y. 1995), *aff'd.* 81 F.3d 287, 293 (2nd Cir. 1996)("[T]he need to apply foreign law to this case militates in favor of dismissal."); ITSI T.V. Prods., Inc. v. California Auth. of Racing Fairs, 785 F. Supp. 854, 866 (E.D. Cal. 1992), *aff'd. in part, rev'd. on other grounds*, 3 F.3d 1289 (9th Cir. 1993)(Court declined to "enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so.") Since the U.S. does not provide "moral rights" of attribution for comic books with substantial print runs (*supra*), Plaintiffs' claim under the Berne convention must be dismissed for failure to state a claim.[2]

Plaintiffs cite to section *6bis* of the Berne Convention is inapposite. That section provides the following:

> "(1) Independently of the author's economic rights, and even after the transfer of the said rights, the author shall have the right to claim authorship of the work and to object to any distortion, mutilation, or other modification of, or other derogatory action in relation to, the said work, which would be prejudicial to his honor or reputation."

However, nowhere does the Berne Convention require the United States to override its own copyright law.

---

[2] All of this, of course, ignores the fact that Plaintiffs allege violation of *U.S.* copyrights, not foreign ones. Compl. ¶ 39.

OCOLIB1\RSP\259999.01

As part of the legislative history of the Berne Convention Implementing Act ("BCIA"), the House "Committee state[d] unequivocally that Berne is not self-executing, that domestic law is not in any way altered except through the implementing legislation itself, and that the implementing legislation is absolutely neutral on the issue of the rights of Paternity and integrity."[3] The BCIA itself states that the adherence of the United States to the Berne Convention and passage of the BCIA "do not expand or reduce any right of an author" to assert the rights of attribution and integrity in any copyrightable work.[4]

### 3.    Plaintiffs identify no applicable foreign law, and U.S. courts only have subject matter jurisdiction to apply U.S. law.

U.S. copyrights are territorial in scope, and limited to U.S. territory. 4 Nimmer & Nimmer § 17.02 "Nimmer on Copyright,"(Matthew Bender & Co., Inc. 2002)(hereafter, "Nimmer"). The U.S. Constitution confers authority upon Congress to provide for laws granting copyrights. Art. § I, Sec. 8, U.S. Constitution. Congress, in turn, has conferred authority upon U.S. courts to hear copyright cases arising under that authority. 28 U.S.C. § 1338(a). Nowhere do Plaintiffs recite the authority giving this Court to adjudicate this case applying foreign copyright laws. To the contrary, in the section of their Complaint entitled, "II. Jurisdiction and Venue Requirement," Plaintiffs cite to authority "for actions arising under the laws of the United States." Compl. ¶¶ 13-14.

---

[3] Nimmer § 8D.02[C] citing H. Rep. (BCIA), p. 38.

[4] Id. citing BCIA, § 3(b).

**B.**  **Plaintiffs' Claims for Copyright Infringement Are Time Barred And Cannot Be Asserted Against A Co-Owner's Licensee**

**1.**  **Plaintiffs' claims are beyond the three year statute of limitation**

Plaintiffs' claims are time barred. Plaintiffs pleaded that all of the alleged acts of infringement by Image occurred between 1992 and 1997. Compl. ¶¶ 29-36, 50. However, the statute of limitation for copyright infringement is three years. 17 U.S.C. § 507(b). Since Image last published a *Spawn* comic book in 1997, even assuming the allegations to be true, they fail to state a claim.

**2.**  **Plaintiffs' claims cannot be asserted against a co-owner's licensee**

Gaiman's pleading admits that he is at most a co-owner of a joint work. "A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Nimmer describes joint authorship as "joint laboring in furtherance of a preconcerted common design." 1 Nimmer § 6.03. Gaiman pleads that the parties worked together to create these characters, and so at most he is a co-owner of the *Spawn* properties.

Plaintiffs pleaded that Gaiman is a co-creator, or joint author, of the Spawn Properties. For example, paragraph 34 of the Complaint states the following in its entirety:

> "Gaiman completed the story for Spawn issue nine in or around the fall of 1993. Gaiman then provided scripts and thumbnail sketches to McFarlane. McFarlane, in conjunction with the other Defendants, set about having artwork prepared in a manner instructed by Gaiman's script, treatment and thumbnail sketches. During the

8

preparation of such derivative works, <u>Defendants and
Defendants' representatives relied heavily on Gaiman's
treatments, scripts and thumbnail sketches.</u>"

(emphasis added). As pleaded, Gaiman is at most a joint author and co-owner of
the works. "The authors of a joint work are co-owners of copyrights in the work."
17 U.S.C. § 201(a).

Each co-owner has an independent right to exploit the works, subject only to
an accounting and division of profits. 17 U.S.C. § 201. Under the 1976 Copyright
Act ("Copyright Act"), a co-owner may not sue the other owner's licensees, as that
would defeat the statutory scheme of encouraging independent exploitation.
<u>Edward B. Marks Music Corp. v. Jerry Vogel Music Co.</u>, 140 F.2d 266 (2d Cir.
1944)("A joint owner of a copyright and his licensees cannot be liable to a co-
owner for copyright infringement because a copyright owner cannot infringe his
own copyright"). Taking Plaintiffs pleadings as true, Gaiman is a co-owner, and
may not sue Image, a licensee of co-defendants.

**C.    Plaintiff's Allegation That They Rejected A Settlement Offer
From Image Cannot Support A Breach Of Contract Or Fraud
Claim**

Image is a small company providing a creative outlet for freelance
artists to publish their works. Other than its "Image-Eye" trademark and name,
Image does not own any intellectual property in the works that it publishes. The
artists contracting with Image own their works' intellectual property rights. Image
charges a small fee for publishing and receives a limited non-exclusive license to
publish the artist's comic books.

Image never owns the intellectual property of the characters that it publishes,
and only owns its own name and logo. As McFarlane's licensee, Image could give
no consideration regarding rights to Miracleman, and was not a party to any of the

9

alleged contracts.[5]  McFarlane Decl. ¶ 4.  It therefore could not be in breach. Plaintiffs only specific pleading regarding Image is that it sent a memo to Gaiman, which he rejected.  Compl. ¶ 43.  Instead, Plaintiffs generally allege that McFarlane acted "on behalf of himself of the other Defendants."  Compl. ¶ 45. This is overcome by Mr. McFarlane's declaration that he never told Gaiman that was representing for acting on Image's behalf.  McFarlane Decl. ¶ 5.

For the same reasons, since whatever representations McFarlane allegedly made were not made on Image's behalf, it cannot possibly be liable for fraud.  Id.

### D.    Plaintiffs' Reverse Palming Off Claim Fails To State A Claim

#### 1.    Plaintiffs do not plead prior existence of a valid trademark.

Plaintiffs' claim of "reverse palming off" fails for two separate and independent reasons.  The gravamen of Plaintiffs' claim is that Image allegedly failed to credit Gaiman with a creation credit.  Compl. ¶ 59.  First, Plaintiffs do not allege prior existence of *Spawn* marks owned and exploited by them.  "As a prerequisite to a claim based on infringement of trademark, however, a plaintiff must first establish that he or she has a valid, protectable mark."  Rice v. Fox Broadcasting Co., et al., 148 Supp.2d 1029, 1064 (C.D. Cal. 2001)(screen credit case).  Nowhere do Plaintiffs allege that they first used a trademark in interstate commerce before the alleged acts by Image.  To the contrary, the 24 page Complaint makes clear that the basis for Plaintiffs' claim is an alleged failure to be listed "as a creator in *Spawn*."  Compl. ¶ 30 (emphasis added).  Without prior use of the trademark in interstate commerce, there are no rights to be infringed upon. Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).

---

[5]  The Court may consider matters outside the pleadings or a motion to dismiss.  Fed. R. Civ. Proc. 12(b).

OCOLIB1\RSF\259999.01

2.    **Plaintiffs may not sue their co-owner's licensee.**

Second, as a licensee of co-creator, Image cannot be liable for infringement to the other putative co-creator. "One joint author thereby obtains the right to use or license that portion of the joint work which was the sole creation of the other joint author." 1 Nimmer § 6.06[A].  Co-creators, as co-owners of a copyrighted joint work, are entitled to independently exploit the work.  17 U.S.C. § 201.  Each joint author is then subject to an accounting to the other and division of profits. S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086 (9th Cir. 1989); Weismann v. Freeman,  868 F.2d 1313, 1318 (2d Cir. 1989)("[A]n action for infringement between joint owners will not lie because an individual cannot infringe his own copyright").  The statutory framework contemplates only that joint authors are accountable to one another, and leaves their respective licensees (who may lack knowledge of the other author) out of any disputes. Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 140 F.2d 266 (2d Cir. 1944)("A joint owner of a copyright and his licensees cannot be liable to a co-owner for copyright infringement because a copyright owner cannon infringe his own copyright.") (emphasis supplied).  Plaintiffs pleadings at most Gaiman is a "co-creator" (Compl. ¶¶ 32, 34), making him at most a potential joint author. Plaintiffs' attempt to artfully plead around the copyright limitation against suing a co-owner's licensee violates the Copyright Act, and fails to state a claim.

E.    **Plaintiffs' False Advertising Claim Under Wisconsin State Law Is Preempted By The Copyright Act And Time Barred**

1.    **The scope of preemption is broad.**

In order to avoid collisions between federal and state interpretation of copyright law, the scope of preemption is broader than that given against infringement.  "[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection." Selby v. New Line Cinema,

11

Corp., et al., 96 F. Supp. 2d, 1053, 1057 (C.D. Cal. 2000). In other words, the scope of preemption is broader than the scope of protection. Endemol Entertainment B.V. v. Twentieth Television Inc., 48 U.S.P.Q.2d 1524, 1526 (C.D. Cal. 1998).

Other courts have held that state law claims similar to Plaintiffs' have been preempted. For example, in the Fourth Circuit, the court held that a state law claim for conversion of a doctoral dissertation's "ideas and methods" was preempted. U.S. ex rel Berge v. Board of Trustees of the Univ. of Alab., 104 F.3d 1453, 1463 (4th Cir. 1996), cert denied, 52 U.S. 916 (1997). In another case, developers of ideas for commercial use of an aggressive Chihuahua dog could not sue Taco Bell for misappropriation when those ideas were communicated in copyrightable story boards, shirts and other tangible works of authorship because claims fell within the subject matter of copyright. Wrench LLC v. Taco Bell Corp., 26 F. Supp. 2d 787, 789 (W.D. Mich. 1998). The Wrench court held that absent a preexisting contractual or fiduciary relationship, the unfair competition claim was preempted. Id.

## 2.    The "extra element" test is not met

Preemption occurs where there is no "extra element." The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . and come within the subject matter of copyright as specified by sections 102 and 103 . . . ." 17 U.S.C. § 301(a). Since under the U.S. Constitution federal courts have exclusive subject matter jurisdiction for copyright claims, federal authority is binding on the issue of preemption. Preemption analysis employs a two-part test to determine whether the Copyright Act preempts particular state law claims. Preemption occurs when: (1) the work at issue comes within the subject matter of copyright, and (2) the rights granted under state law are equivalent to any

12

of the exclusive rights within the general scope of copyright set forth in the Act. Selby, 96 F. Supp. 2d at 1057. Under the first part of the test, there is no doubt that comic books are "literary works" subject to protection under the Copyright Act. 17 U.S.C. § 101.[6]

Plaintiffs' claims are indistinguishable from rights given under the Copyright Act. To avoid preemption under the second part of this test, "the state claim must protect rights which are qualitatively different from the copyright rights. The state claim must have an 'extra element' which changes the nature of the action." Del Madera Properties v. Rhoades & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987). Copyright owners have the exclusive right to reproduce and distribute the work, and to create sequels (i.e., derivative works) to it. 17 U.S.C. § 106(1)-(3). In addition, under the Visual Artists Rights Act of 1990, which amended the Copyright Act, authors of certain works of "visual art" have the right of attribution. 17 U.S.C. § 106(A)(a).

Plaintiffs' false advertising claim is preempted by the Copyright Act. VARA (supra) specifically limits what works are entitled to the moral rights of attribution. 17 U.S.C. §§ 101, 106A. Comic books are expressly excluded from the category of works protected, indicating Congressional intent not to extend such rights to works outside the ambit of "visual art." Id. Under the "extra element" test, the false advertising count does not survive preemption of state law.

---

[6] "'Literary works' are works, other than audio visual works, expressed in words, numbers, or other verbal or numerical symbols . . . such as books, periodicals, manuscripts . . . in which they are embodied". 17 U.S.C. § 101.

3.    **The false advertising claim is time barred.**

Plaintiffs pleading complains of actions occurring from 1992 to 1997. Compl. ¶¶ 29-36, 50. However, the statute of limitation for false advertising is three years. Wis. Stat. § 100.18(11)(b)(3). That statute provides the following:

> "No action may be commenced under this section more than 3-years after the occurrence of the unlawful act or practice which is the subject of the action."

Plaintiffs plead unlawful acts occurring five years ago, and fail to state a claim.

F.    **Plaintiffs Promissory Estoppel Claim Is Preempted By The Copyright Act.**

Plaintiffs' remaining state law claim is preempted by federal copyright law. As noted above, for policy reasons the scope of preemption is broad. Under the "extra element" test, Plaintiffs' claim is indistinguishable in nature from those protected by copyright law. For example, paragraph 89 of the Complaint states the following in relevant part:

> "Gaiman did, in fact, reply on such promises, in that he, *inter alia*, authored Spawn issue nine at considerable cost of his own time, he conveyed his works to Defendants without a writer contract, and he did not pursue Defendant's for royalty payments . . ."

Authorship, conveyance of rights and three year limit to recover for infringement are all expressly covered by the Copyright Act. 17 U.S.C. §§ 101, 201, 201(d), 507(b). Plaintiffs' attempts to artfully plead to obtain a state six year statute of limitations is preempted by federal law. Plaintiffs promissory estoppel claim must therefore be dismissed.

O:COLIB1\RSP\259999.01

G.    **Plaintiffs' Declaratory Judgment Claim Fails Because No Actual and Justiciable Case Exists Between Plaintiffs And Image**

There is no present justiciable controversy between Image and Plaintiffs. Pursuant to statute, if there is no actual controversy between the parties, the Court lacks jurisdiction to find one. 28 U.S.C. §§ 2201-2202. Referencing paragraph 94 of the Complaint:

a.    Image has no interest in who is declared owner of the *Spawn* properties, as it does not have any ownership interest itself.

b.    As Image never owns copyrights to the characters it publishes, it has never applied for a copyright on any of them. Image does not own any copyrights to any of the *Spawn* or *Miracleman* properties for the court to adjudge invalid, unenforceable or a nullity.

c.    A licensee has no duty to provide an accounting to the licensor's co-owner, and the statute of limitations has run anyway. 17 U.S.C. §§ 201, 507(b).

d.    Image has no interest in who is declared the owner of *Miracleman.*

e.    Image has never received any intellectual rights to any character, much less rights to *Miracleman* allegedly assigned from the Eclipse bankruptcy.

f.    Image has not published any comic books featuring *Miracleman* (Compl. ¶ 24), and has no contracts or plans to publish any works relating to the *Miracleman* properties. Further, Image has offered to Plaintiffs not to publish any works incorporating the *Miracleman* properties during the pendency of these proceedings.

15

## III.  **CONCLUSION**

For the foregoing reasons, Plaintiffs fail to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Defendant Image Comics respectfully requests that the Complaint against it be dismissed with prejudice.

DATED:  March 12, 2002                     BROBECK, PHLEGER & HARRISON LLP

By:  R. Scott Feldmann
       R. Scott Feldmann
       Attorneys for Defendant
       Image Comics, Inc.

OCOLIB1\RSF\259999.01

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Irvine, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 38 Technology Drive, Irvine, California 92618-2301. On March 12, 2002, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED: **IMAGE COMICS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6)**

SERVED UPON: **SEE ATTACHED SERVICE LIST**

☒ (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Irvine, California. I am readily familiar with the practice of Brobeck, Phleger & Harrison LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

☐ (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by Sherman, Alexander & Associates LLC to receive documents to be delivered on the same date. A proof of service signed by the authorized courier will be filed with the court upon request.

☐ (BY FEDERAL EXPRESS) I am readily familiar with the practice of Brobeck, Phleger & Harrison for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

☒ (BY FACSIMILE) The above-referenced document was transmitted by facsimile transmission and the transmission was reported as complete and without error. Pursuant to C.R.C. 2009(i), I caused the transmitting facsimile machine to issue properly a transmission report, a copy of which is attached to this Declaration.

☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on March 12, 2002, at Irvine, California.

Patti L. Gruwell

17

## PROOF OF SERVICE LIST

Jeffrey A. Simmons, Esq.
Foley Lardner
Attorneys at Law
Verex Plaza
150 East Gilman Street
Madison, Wisconsin 53703-1481
Phone (608) 257-5035
Facsimile (608) 258-4258

Attorneys for Plaintiffs
Neil Gaiman and
Marvels And Miracles, LLC


Kenneth F. Levin
Kenneth F. Levin and Associates
20 North Wacker Drive, Suite 2200
Chicago, Illinois 60606
Phone (312) 984-6000
Facsimile (312) 977-2990

Attorneys for Plaintiffs
Neil Gaiman and
Marvels And Miracles, LLC


Mark Hellmann
Michael Rechtin
Joseph Talarico
Foley & Lardner
1 IBM Plaza
220 N. Wabash, Suite 3300
Chicago, Illinois 60611
Phone (312) 755-1900
Facsimile (312) 755-1925

Attorneys for Plaintiffs
Neil Gaiman and
Marvels And Miracles, LLC


Michael Kahn, Esq.
Stinson, Mag & Fizzell
100 S. 4th Street
Suite 700
St. Louis, Missouri 63102
Phone (314) 259-4529
Facsimile (314) 259-4599

Attorneys for Defendants
Todd McFarlane;
Todd McFarlane Productions, Inc.;
TMP International, Inc.; and
McFarlane Worldwide, Inc.


Todd G. Smith
LaFollette Godfrey & Kahn
One East Main Street
P.O. Box 2719
Madison, Wisconsin 53701-3911
Phone (608) 257-3911
Facsimile (608) 257-0609

Attorneys for Defendants
Todd McFarlane;
Todd McFarlane Productions, Inc.;
TMP International, Inc.; and
McFarlane Worldwide, Inc.

OCOLIB1\RSF\259999.01