

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**NEIL GAIMAN, and
MARVELS AND MIRACLES, LLC,**

    Plaintiffs,

v.

Case No.: 02-C-0048-S

**TODD MCFARLANE,
TODD MCFARLANE PRODUCTIONS,
INC., TMP INTERNATIONAL, INC.,
MCFARLANE WORLDWIDE, INC., and
IMAGE COMICS, INC.,**

    Defendants.

---

**PLAINTIFFS' BRIEF IN RESPONSE TO
DEFENDANT IMAGE COMICS' MOTION TO DISMISS
AND IN SUPPORT OF PLAINTIFFS' RULE 56(f) MOTION**

---

## I. INTRODUCTION

    Defendant Image Comics, Inc. ("Image") is using plaintiff Neil Gaiman's ("Gaiman") name and reputation as a writer to promote certain of its publications without paying Gaiman for that use. At the same time, Image is denying Gaiman authorship credit for other publications to which Gaiman unquestionably contributed and is, again, failing to pay Gaiman for that contribution. Nevertheless, Image brings its motion, improperly styled as a motion to dismiss (Image has presented purported evidence outside the pleadings), seeking to be let out of the case before formal discovery has even begun. Image has no legal basis for seeking to dismiss Gaiman's claims for violations of the Lanham Act and Wisconsin's false advertising statute. And the extrinsic evidence Image submits only reinforces the conclusion that additional discovery is needed before the Court can render judgment on Gaiman's claim of copyright

infringement. For these reasons, Image's motion must be denied in its entirety or continued pending further discovery.

## II. FACTUAL BACKGROUND

Gaiman is a critically-acclaimed novelist and comic book author. (January 24, 2002 Complaint ("Compl.") ¶ 29.) His works include the novels "Good Omens" and "American Gods," which were listed on the Sunday (London) Times and New York Times' bestseller lists, respectively. (Id.; April 4, 2002 Declaration of Neil Gaiman ("Gaiman Decl.") ¶ 4.) Gaiman's comic books have sold millions of copies and he has received numerous awards for his work. (Compl. ¶¶ 29, 35.)

At issue in this case are some of Gaiman's comic book creations. Gaiman authored all or a portion of the scripts for *Spawn* Issues 9 and 26 and *Angela* Issues 1, 2 and 3. (Id. ¶¶ 32, 36, 37.) He has obtained federal copyright registrations for all of those scripts. (Id. ¶¶ 39-40.) Image is now reprinting *Spawn* Issue 26 and, separately, *Angela* Issues 1, 2 and 3 in softcover books containing multiple comic book issues. (Id. ¶¶ 36-37; April 4, 2002 Affidavit of Brenda Allen-Johnson ("Johnson Aff. ¶ 2, Exs. A, B.) Image's book containing *Angela* Issues 1, 2 and 3 is entitled "Angela's Hunt." (Id. ¶ 2; Gaiman Decl. ¶ 4.) Image uses Gaiman's notoriety as an author to promote the book, stating on the back cover:

> NEIL GAIMAN, best known for his comic book cult classic *Sandman*, wrote this popular mini-series about the warrior angel Angela. Gaiman, who has won several awards for his fantasy fiction books, now writes screen adaptations including the critically acclaimed *Princess Mononoke* animated feature and *Neverwhere*, a six-part series for BBC television.

(Id.; Johnson Aff., Ex. A.) Image continues to use Gaiman's name and reputation to tout the book on the inside of the back cover, writing, in part:

2

> *Sandman*, Gaiman's comic book cult classic, won not only the prestigious Eisner Award for best writer from 1991 to 1994, but also the World Fantasy Award for the story in *Sandman* #19; the only comic to have been so honored. He has also authored the Eisner-winning *Signal to Noise* and *Death: The High Cost of Living*.

(Id.) Image has never paid Gaiman for its use of his name and biography in connection with its promotion of the sales of *Angela's Hunt*, nor did Image ever obtain Gaiman's consent to use that information. (Gaiman Decl. ¶ 4.)

Image is also currently reprinting *Spawn* Issue 26, including the copyrighted portion of the script authored by Gaiman, as part of a softcover comic book collection, entitled "Pathway to Judgement." (Id. 5; Johnson Aff. ¶ 4, Ex. B.) Image has never given Gaiman credit for his authorship of *Spawn* 26. Instead, Image has attributed authorship of the story for that issue solely to defendant McFarlane. (Gaiman Decl. ¶ 5.)

*Angela's Hunt* and *Pathway to Judgement* are both currently on sale. Mr. Gaiman first learned of Image's publication of *Angela's Hunt* when he saw a comic book dealer selling the book at the "Aggiecon" fantasy and science fiction convention during the week of March 22, 2002. (Id. ¶4.) At the same time, the web site for defendant Todd McFarlane Productions, Inc. ("TMP") promotes the fact that Image is currently reprinting *Spawn* Issue 26. (Johnson Aff. ¶ 3, Ex. C.) As shown in the Affidavit of Brenda Allen-Johnson filed with this brief, copies of both publications were purchased through Amazon.com and a local comic book store just last week. (Id. ¶¶ 1, 4.)

3

## III. ARGUMENT

Along with this response, plaintiffs have filed two motions: 1) a motion for leave to file an amended complaint, and 2) a motion to refuse judgment or permit additional discovery pursuant to Rule 56(f). The Amended Complaint would withdraw plaintiffs' claims against Image for derogation of moral rights, breach of contract, promissory estoppel, and fraud. Plaintiffs will not address those claims here. Plaintiffs have <u>not</u> withdrawn Gaiman's claims against Image for copyright infringement, violation of the Lanham Act, and false advertising in violation of Wisconsin law. In addition, the Amended Complaint would add claims for common law misappropriation and violation of Gaiman's right of privacy under Wis. Stat. § 895.50. The new claims are based upon the recently discovered evidence regarding Image's unauthorized use of Gaiman's name and biography to promote *Angela's Hunt*. All of these remaining claims survive Image's motion to dismiss. Moreover, additional discovery is necessary if the court chooses to address the extrinsic evidence Image presents to refute Gaiman's copyright infringement claims.

A.   **Image's Motion is Actually a Motion for Summary Judgment.**

Image has styled its motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), but Image is actually seeking summary judgment. As part of its motion, Image has filed the Declaration of Todd McFarlane, in which defendant McFarlane asserts that Image – a company of which he is president – is protected from charges of infringement because Image is allegedly his licensee. (Decl. of Todd McFarlane, ¶ 2.) That declaration is the sole support for the new facts Image presents.

Federal Rule of Civil Procedure 12 provides: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the

4

motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." As the Court knows, a motion for summary judgment pursuant to Rule 56 shall only be granted where there is no genuine dispute of material fact and judgment is appropriate as a matter of law. Mosher v. Dollar Tree Stores, 240 F.3d 662, 666 (7th Cir. 2001).

**B.   Plaintiffs Must Be Permitted Discovery Before Any Ruling On Image's Motion to Dismiss Gaiman's Copyright Infringement Claims.**

Plaintiffs have filed a motion to refuse judgment or for a continuance to permit discovery to be taken regarding Image's status as McFarlane's licensee. Rule 56(f) provides for such relief in the event that a party cannot present facts due to the need for additional discovery. Fed. R. Civ. P. 56(f). In this case, plaintiffs have had no opportunity to take discovery regarding the purported license between McFarlane and Image.

Image bases much of its argument for dismissing plaintiffs' copyright infringement and Lanham Act claims upon its alleged status as a licensee of McFarlane.[1] Yet Image's brief and supporting declaration are wholly inadequate and conclusory regarding the exact nature of the purported license. Image states in its brief that it is "a licensee of *either* co-defendant, Todd McFarlane, or co-defendant Todd McFarlane Productions." (Br. at 2 (emphasis added).) Which one is it? Image does not tell us, but the answer is potentially fatal to Image's argument regarding Gaiman's copyright infringement claim. Neither party has claimed that Todd McFarlane Productions ("TMP") is an author of the works at issue. Because a licensee is only protected from copyright infringement if it receives a license from an <u>owner</u> of the copyright, any license from TMP would not protect Image from plaintiffs' claim. See generally Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 140 F.2d 266, 268 (2nd Cir. 1944)

---

[1] As discussed in Section C of this brief, Image's Lanham Act argument fails regardless of Image's status as a licensee.

003.351691.1

(assignee of <u>copyright co-owner</u> may not be prohibited from exploiting work); <u>Donna v. Dodd, Mead & Co., Inc.</u>, 374 F. Supp. 429, 430 (S.D.N.Y. 1974) ("a joint <u>owner</u> of a copyright and his licensees cannot be liable to a co-owner for infringement") (emphasis added).

The Declaration of Todd McFarlane also fails to clear up this issue. McFarlane does not explain the terms of the alleged license and does not even state that Image is a licensee for the specific works and characters in dispute. Nor does McFarlane inform us whether the license is written or oral, or provide the Court with a copy of any documents memorializing the license. These details matter. A licensee of a joint author may still be liable for copyright infringement if it exceeds the scope of its license. <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081, 1087-88 (9th Cir. 1989). In addition, the Copyright Act specifically provides that an exclusive license <u>must</u> be in writing to be valid. <u>See</u> 17 U.S.C. § 204(a) (transfer must be in writing) and 17 U.S.C. § 101 (defining "transfer of copyright ownership" to include "exclusive license"). <u>See also</u> <u>Nimmer</u> § 10.03[A].

The only way for plaintiffs to learn these essential facts is to take additional discovery. At this early stage in the proceedings, the parties have not even made their initial document disclosures pursuant to Rule 26(a). Those disclosures are due tomorrow, April 5, 2002. Nor have the parties previously noticed any depositions or served any discovery requests. (<u>See</u> Affidavit of Jeffrey A. Simmons ¶ 5.) However, plaintiffs intend to notice defendant Todd McFarlane's deposition for April 30, 2002. Accordingly, it is appropriate for the Court to either deny Image's motion in its entirety or grant a continuance while plaintiffs takes the necessary discovery regarding the details of Image's alleged license.

**C.   Gaiman's Copyright Infringement Claim is not Time-Barred.**

Image also incorrectly asserts that Gaiman's copyright infringement claims are barred by the Copyright Act's three-year statute of limitations because, in their reading of the

003.351691.1

complaint, the last infringing act occurred in 1997. However, Image ignores that plaintiffs specifically pled that the acts of infringement are *ongoing*. (Compl. ¶ 51.) This fact is confirmed by Gaiman's recent discovery that Image is currently selling reprints of his Spawn and Angela comics in the *Pathway to Judgement* and *Angela's Hunt* graphic novels. (Gaiman Decl. ¶ 5.) Accordingly, Gaiman's infringement claim against Image is not time-barred. See Taylor v. Meirick, 712 F.2d 1112, 1118 (7th Cir. 1983) (only last infringing act need occur within the limitations period).

**D.  Gaiman's Lanham Act Claim is Permitted in the Seventh Circuit.**

The remainder of Gaiman's claims should not be dismissed. Gaiman's Lanham Act claim against Image is based upon Image's failure to give him authorship credit for his contribution to the script of *Spawn* 26. (Compl. ¶¶ 36, 75.) Image agrees with this characterization, stating in its brief, "[t]he gravamen of Plaintiffs' [Lanham Act] claim is that Image allegedly failed to credit Gaiman with a creation credit." (Def.'s Br. at 10.) While Image gets the facts right, it gets the law wrong. Image contends that Gaiman cannot bring a claim against Image unless he alleges that he has a valid trademark in the *Spawn* marks. That is not the law in the Seventh Circuit.

In Kennedy v. National Juvenile Detention Ass'n, 187 F.3d 690, 696 (7th Cir. 1999), the court clearly stated that a Lanham Act claim may be properly alleged in precisely the circumstances present here. The court wrote: "One situation in which an author could file a Lanham Act claim, as opposed to a copyright infringement claim, would be to ensure that his name is associated with a work when the work is used; this is known as a 'reverse palming off' claim." Id. at 696. See also Melville B. Nimmer & David Nimmer Nimmer on Copyright § 8D.03[A][2] (2001) ("Section 43(a) of the Lanham Act . . . may be invoked whenever an author's composition is published without being accompanied by his name.").

003.351691.1

To state a claim for reverse palming off in violation of § 43(a), "a plaintiff must prove . . . : (1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation." Kennedy, 187 F.3d at 695-96. Plaintiffs have pled all three elements in the Complaint. The Complaint alleges: (1) that the defendants "published . . . Spawn® issue 26 without attribution to Gaiman" (Compl. ¶ 36) and that they "used a false designation of origin in connection with their exploitation of . . . Spawn® issue 26;" (id. ¶ 75); (2) that "such falsely designated goods have entered and significantly impacted upon interstate commerce" (id. ¶ 77); and (3) that "Gaiman has suffered and will continue to suffer injury as a direct and proximate result of Defendants' conduct." (Id. ¶ 78.) Gaiman's damages stem from the fact that "in reverse palming off cases, the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." Smith v. Montoro, 648 F.2d 602, 607 (9th Cir. 1981).

The Ninth Circuit case law cited by Image is not on-point. None of those cases address a reverse palming off claim for authorship attribution. In fact, contrary to Image's argument, the Ninth Circuit has expressly held that "registration of a trademark or service mark is not a prerequisite for recovery under section 43(a)." Smith, 648 F.2d at 605 (emphasis added).

Image has also incorrectly stated the law regarding the effect of a co-creator/license on a Lanham Act claim. The cases cited by Image all stand for the proposition that a party cannot bring a claim in copyright against the licensee of a co-creator. The cases say nothing about the ability to state a claim under the Lanham Act. Image's assumption that

8

copyright rules automatically transfer to the context of a reverse palming off claim is unfounded, because "the Copyright Act and the Lanham Act address different harms." Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775, 781 (2nd Cir. 1994). While copyright law allows an author to control who publishes, sells or uses a work, "[t]hrough a Lanham Act action an author may ensure that his or her name is associated with a work when the work is used." Id.

Although the Seventh Circuit apparently has not addressed the issue, the Ninth Circuit has expressly held that licensees of co-owners may be liable for reverse palming off under § 43(a) where the licensees "may have been involved in affixing an incomplete designation of authorship." Lamothe v. Atlantic Recording Corp., 847 F.2d 1403, 1408 (9th Cir. 1988). It is difficult to believe – especially at this early stage in the proceedings – that Image, as the publisher of the works at issue, was not involved in omitting Gaiman's name from the authorship credits for *Spawn* 26 and *Pathway to Judgement*. Regardless, "[w]hether the licensees affixed the incomplete authorship or had knowledge of the false designation of origin are matters best left to the trier of fact to resolve." Id.

E.  **Gaiman's State Law False Advertising Claim is Not Preempted by the Copyright Act.**

The Copyright Act does not preempt Gaiman's false advertising claim under Wis. Stat. § 100.18(1). In the Seventh Circuit, a right provided by state law is preempted only if two conditions are satisfied: "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in [17 U.S.C.] § 102. Second, the right must be equivalent to any of the rights specified in [17 U.S.C.] § 106." Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 674 (7th Cir. 1986). The right provided by Wisconsin's False Advertising Statute escapes the second prong of that preemption test.

9

As Image concedes, Gaiman's claim under Wis. Stat. § 100.18(1) is an effort to protect his right to receive attribution for his authorship of *Spawn* 26 and *Pathway to Judgement*. Wisconsin's statute prohibits individuals and corporations from publishing books, magazines or similar items containing a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1). Image's act of giving defendant McFarlane sole credit for authoring the story in *Spawn* 26 and *Pathway to Judgement* clearly deceives and misleads readers into believing Gaiman made no contribution to the works.

Image bases its preemption argument on an erroneous reading of the Copyright Act. According to Image, Gaiman's claim under the Wisconsin statute must be preempted by the Copyright Act because the Visual Artists Rights Act of 1990 ("VARA"), which amended the Copyright Act, provides a limited right of attribution to authors of certain works of visual art. On the contrary, VARA expressly limits the scope of preemption to "works of visual art" <u>covered</u> by the statute. Specifically, the Copyright Act provides: "all legal or equitable rights that are equivalent to the rights conferred by [VARA] with respect to works of visual art *to which the rights conferred by [VARA] apply* are governed exclusively by [VARA]." 17 U.S.C. § 301(f)(1). VARA's legislative history confirms this conclusion, stating that "'the new Federal law will not preempt State causes of action relating to works that are *not covered by the law*.'" <u>Nimmer</u> § 8D.06[F][2] at 8D-92 (quoting H.R. Rep. No. 101-514, 101st Cong., 2d Sess. 21 (1990) (emphasis added)).

As Image argues repeatedly in its brief, comics books are <u>not</u> among the works defined as "works of visual art" covered by VARA. (Br. at 2, 4, 13.) Accordingly, VARA's provisions in the Copyright Act do not preempt Gaiman's right to seek a remedy for false attribution under Wisconsin's False Advertising statute.

10

Finally, Image's contention that Gaiman's claim is barred by the statute of limitations is contradicted by the pleadings and newly-discovered facts. Image incorrectly asserts that plaintiffs have limited their claim to acts occurring on or before 1997. On the contrary, Paragraph 51 of the Complaint specifically alleges that all of the defendants' acts are ongoing. The truth of that allegation is confirmed by plaintiffs' recent discovery that TMP's web site continues to advertise that reprints of *Spawn* 26 are available through Image; indeed, *Pathway to Judgement*, which incorporates *Spawn* 26, was being sold in Madison, Wisconsin just last week. (Johnson Aff. ¶ 4.)

### F. Gaiman Has Stated a Claim for Misappropriation and Right of Privacy in his Amended Complaint.

Plaintiffs' proposed amended complaint would add claims by Gaiman against Image for violating Gaiman's right to privacy pursuant to Wis. Stat. § 895.50 and appropriating Gaiman's name and identity for commercial purposes under the common law. Section 895.50 provides individuals with a cause of action for "[t]he use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person." Wis. Stat. § 895.50(2). Similarly, Wisconsin common law protects an individual from the unauthorized use of their name or identity where that individual's name has commercial value. See Hirsch v. S.C. Johnson & Son, Inc., 90 Wis. 2d 379, 397, 280 N.W.2d 129, 137 (1979).

Gaiman's claim stems from his recent discovery that Image is currently using his name and biography to promote *Angela's Hunt*, a collection of the three *Angela* comic books Gaiman authored. (Gaiman Decl. ¶ 4.) The facts Gaiman alleges clearly state a claim under both the statute and common law. Image is unquestionably using Gaiman's name for purposes of trade and/or advertisement, given that Image prominently displays Gaiman's name and

11

biography on the back cover and inside back cover of the book. (Johnson Aff., Ex. ___.) Gaiman's name has value, as he is a well-known author who is sometimes paid for his public appearances. (Gaiman Decl. ¶ 3.) And Image never obtained Gaiman's written consent to use his name in this fashion; in fact, Gaiman was not aware of the publication's existence until just last week. (Gaiman Aff. ¶ 4.)

Plaintiffs anticipate that Image will argue Gaiman's right of privacy and appropriation claim are preempted by the Copyright Act. If Image does so, it will be wrong. The Seventh Circuit in <u>Baltimore Orioles</u> held that claims based on the right to publicity may be preempted by the Copyright Act. However, the court further held that preemption only occurs in instances where the author <u>consented</u> to use of the material being publicized. 805 F.2d at 676 nn.22 & 24 ("Because [the party] did not consent to the telecast . . . his right of publicity would not be subject to preemption."; "[a] player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product"). Indeed, in a case closely analogous to the one at hand, the Fifth Circuit held that the Copyright Act did not preempt recording artists' common law right to prevent the unauthorized use of their names and likeness to promote CDs, tapes, and music catalogues. <u>Brown v. Ames</u>, 201 F.3d 654, 659 (5th Cir. 2000). Because Gaiman never consented to Image's use of his name or biographical material, his misappropriation and right of privacy claims are not preempted.

## IV. CONCLUSION

For all of the reasons stated above, plaintiffs Neil Gaiman and Marvels and Miracles, LLC, respectfully request that the Court deny defendant Image Comics, Inc.'s motion

003.351691.1

to dismiss, or alternatively grant plaintiffs' motion pursuant to Rule 56(f) for a continuance to permit discovery to be taken regarding Image's status as McFarlane's licensee.

Dated this 4th day of April, 2002.

By: _____
Allen A. Arntsen
Jeffrey A. Simmons

*Attorneys for Plaintiffs*
*Neil Gaiman* and *Marvels and Miracles, LLC*

Of Counsel:
Mark Hellmann
Michael Rechtin
FOLEY & LARDNER
1 IBM Plaza
220 N. Wabash Suite 3300
Chicago, IL 60611
Tel: (312) 755-1900
Fax: (312) 755-1925

Kenneth F. Levin
Kenneth F. Levin and Associates
20 North Wacker Drive, Suite 2200
Chicago, IL 60606
Tel: (312) 984-6000
Fax: (312) 977-2990
email: KFL@2200.com

Address:
FOLEY & LARDNER
150 East Gilman Street
Madison, WI 53703
Tel: (608) 257-5035
Fax: (608) 258-4258

003.351691.1