IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NEIL GAIMAN, a resident of )
Wisconsin, and MARVELS AND )
MIRACLES, LLC, a Wisconsin )
Limited Liability Company, )
)
        Plaintiffs, )  Case No. 0200048 S
)
v. )
)
TODD MCFARLANE, a resident of )
Arizona, and TODD MCFARLANE )
PRODUCTIONS, INC., and Arizona )
corporation, TMP INTERNATIONAL, )
INC., a Michigan corporation, )
MCFARLANE WORLDWIDE, INC., )
a Michigan corporation, and IMAGE )
COMICS, INC., a California )
corporation, )
)
        Defendants. )
)

---

# IMAGE COMICS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION

## TO DISMISS FOR FAILURE TO STATE A CLAIM

### PURSUANT TO F.R.C.P. 12(b)(6)

### AND

### OPPOSITION TO PLAINTIFFS' MOTION TO DELAY

### RENDERING JUDGMENT ON SAME

---

## I. SUMMARY OF ARGUMENT

Plaintiffs meet themselves coming and going. Initially, their lead count was for "Moral Rights" for alleged failure to list Mr. Gaiman by name as a co-creator of various Spawn characters. Now they withdraw that claim. They substitute new ones alleging that yes, they received credit but now *that* is actionable! Indeed, the formerly complained-of omission is now discovered not to have occurred, but Image is liable nonetheless. It seems that no matter what Image has done it must be dragged into a dispute between two putative co-owners as a pressure tactic. Whether Image failed to list Mr. Gaiman by name, or did list him, matters not as Plaintiffs will have Image in the dock. These newly-manufactured right of publicity claims not only fail the "straight face" test, but Plaintiffs' prior pleading reveals that Defendants at the very least had implied consent to use Mr. Gaiman's name.

In response to Image Comics, Inc.'s ("Image") opening brief, Plaintiffs have withdrawn the following causes of action, which will not be addressed further:

| | |
|---|---|
| COUNT I: | Moral Rights |
| COUNT IV: | Breach of Contract |
| COUNT V: | Fraud |
| COUNT VIII: | Promissory Estoppel |
| COUNT IX: | Declaratory Judgment |

Opp. at 4. Plaintiffs Opposition omits any mention, one way or the other, regarding the Declaratory Judgment count. Id. However, the Amended Complaint's Count XI, "Declaratory Judgment – Miracleman," is pleaded only against "McFarlane and the McFarlane Corporate Defendants." First Amended Complaint ("FAC") ¶ 105. By definition, the "McFarlane Corporate Defendants" (a new term) do not include Image. FAC ¶ 8. Moreover, this is consistent with

1

Image's position: it has never had anything to do with publishing any Miracleman titles. Motion to Dismiss ("MTD") at 4.

Image opposes Plaintiffs' efforts to have the Court delay ruling upon this Motion pending discovery. Plaintiffs cite as justification the submission of Mr. McFarlane's declaration. That declaration was submitted in support of Image's efforts to have the breach of contract and fraud counts dismissed. As Plaintiffs have withdrawn those counts, any discovery regarding those issues would be moot. Further, it is immaterial whether Image is a direct licensee of Mr. McFarlane, or a sub-licensee of one his companies. In either case, the Copyright Act precludes suit against a co-owner or his licensees (and by implication, sublicensees). Delay will not save Plaintiffs' copyright infringement claims against Image, as they have now adopted Image's position on both the facts and law on those counts.

Image renews its motion to dismiss all of Plaintiffs' remaining counts (referencing the Amended Complaint) on the following grounds:

COUNTS II, III (Copyright Infringement). Plaintiffs now agree, and have adopted Image's position, that at most they have pleaded that Gaiman is a co-owner of the Spawn characters. MTD at 2-3; FAC ¶ 66. Plaintiffs further cite to the same authorities as originally put forward by Image: 17 U.S.C. § 201 and Edward B. Marks Music Corp. v. Jerry Vogel Corp., 140 F.2d 266, 268 (2d Cir. 1944). Those authorities hold that proper recourse is to seek an accounting and division of profits against the co-owner (not Image), which Plaintiffs have now done by addition of their new Count I against Defendant McFarlane.

COUNT VII (False Designation of Origin Pursuant to Lanham Act § 43(A)). The "reverse palming off" claim fails for two reasons. Plaintiffs do not allege the prior existence of Spawn trademarks used in interstate commerce and exploited by them. Moreover, as a matter of law, Image cannot be liable for infringement to a

2

putative co-creator. Plaintiffs' reading of section 43(A) of the federal Lanham Act would make its application override federal copyright law.

COUNT VIII (State Law False Advertising), is preempted by the Copyright Act. The Visual Artists Rights Act of 1990 ("VARA") specifically limits what works are entitled to the moral rights of attribution. Comic books are not among the works protected, and the state false advertising count contains no "extra element" that would survive preemption.

COUNT IX-X (Violation of State Statutory and Common Law Right to Publicity), fails because Plaintiffs' pleading demonstrates express prior consent to use of Gaiman's name, and because the First Amendment precludes Plaintiffs' control of "Gaiman's biographical information."

## II. ARGUMENT

Plaintiffs' pleadings reveal absolute defenses, barring their ability to recover. Their amended pleading reveals that 1) their copyright claims are precluded by statute, 2) their "reverse passing off" claim does not meet predicate pleading requirements, 3) the state false advertising claim is preempted by federal law, and 4) the right of publicity claims are negated by Plaintiffs' pleadings indicating consent. They therefore fail to state a claim upon which relief can be granted, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, must be dismissed.

### A. Plaintiffs' Amended Copyright Infringement Claims Are Precluded By 17 U.S.C. Section 201, Making Further Discovery Immaterial To Determination Of Those Claims

Each co-owner has an independent right to exploit the works, subject only to an accounting and division of profits. 17 U.S.C. § 201. Under the 1976 Copyright Act ("Copyright Act"), a co-owner may not sue the other owner's licensees, as that would defeat the statutory scheme of encouraging independent

3

exploitation. Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 140 F.2d 266 (2d Cir. 1944)("A joint owner of a copyright and his licensees cannot be liable to a co-owner for copyright infringement because a copyright owner cannot infringe his own copyright"). Taking Plaintiffs pleadings as true, Gaiman is a co-owner, and may not sue Image, a licensee of co-defendants.

### 1. Whether Image is a licensee or sub-licensee of a McFarlane Corporate Defendants, Plaintiffs may not sue

Plaintiffs now adopt Image's interpretation that Gaiman was arguing in effect that he was a joint author, and therefore a co-owner of the Spawn Properties. FAC ¶ 66. They also adopt the same authorities as Image (17 U.S.C. § 201 and Marks Music), but reach the wrong result. Plaintiffs argue that while one may not sue a co-owner, or the co-owner's licensees, their sublicensees are perhaps fair game. "Licensees" must be read broadly to include sublicensees,[1] otherwise McFarlane (through his license to Image), would be infringing his own copyright. This he cannot do by definition. Marks Music, 140 F.2d at 266.

### 2. There are no allegations that Image exceeded the scope of its license

Nowhere do Plaintiffs plead that Image exceeded the scope of any license granted by McFarlane. Instead, they speculate that this might have occurred, citing to S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1087-88 (9th Cir. 1989). Image first cited S.O.S. for the proposition that Plaintiffs' proper remedy is to seek an accounting and division of profits from its putative co-owner. This Plaintiffs have now done. S.O.S. dealt with a licensee who circumvented copy protection features on software. The S.O.S. court found that a prohibition on

---

[1] i.e., Under the McFarlane Declaration, according to Plaintiffs, it is material whether Image is a licensee of Mr. McFarlane directly, or a sub-licensee of one of his companies. Opp. at 5 ¶ 2.

4

reverse engineering was an implied condition of granting the license. None of that is even remotely applicable here.

### 3. There is no requirement that Image's license be written or exclusive

Plaintiffs correctly state that "the Copyright Act specifically provides that an exclusive license must be in writing to be valid." Opp. at 6 ¶ 2. True, but irrelevant. Image may have a non-exclusive, oral license from McFarlane, and it is still immune to suit from Plaintiffs under 17 U.S.C. § 201. Plaintiffs provide (as they cannot) no authority to the contrary. Consequently, under authority they now adopt, Plaintiffs fail to state a claim against Image, the licensee of Plaintiffs' co-owner (Compl. ¶ 66), and Counts II and III must be dismissed.

### B. Plaintiffs' "Reverse Passing Off" Count Fails To State A Claim

Plaintiffs take issue with Image's authority. Nowhere does Image argue that "registration of a trademark" is a prerequisite for recovering on a Lanham Act claim. Opp. at 8 ¶ 2. Rather, Image's argument is that one must have a valid trademark, established through common law rights or otherwise, before one can recover for trademark infringement (including false designation of origin). Rice v. Fox Broadcasting Co., et al., 148 F. Supp. 2d 1029, 1064 (C.D. Cal. 2001). Nor is it true that none of Image's authorities dealt with deprivation of authorship claims. Rice was cited, as it is the most recent "screen credit" case where a plaintiff alleged a "reverse passing off" type of false designation of origin. In Rice, as in this case, plaintiff complained of an alleged failure to give him attribution.

Plaintiffs criticize the use of Ninth Circuit authority, note that "the Seventh Circuit has not addressed the issue," and then cite to the same cases put forward by Image! Smith, the seminal Ninth Circuit "screen credit" case, found reverse

5

passing off for failure to give an actor "star billing." Smith v. Montoro, 648 F.2d 602 (9th Cir. 1981). The Smith court assumed that the "star" plaintiff had established a common law service mark. Id. Plaintiffs do not plead that they are movie stars with a common law or registered service mark for entertainment services. Instead, Plaintiffs allege a likelihood of confusion between Image's product and Plaintiffs' own non-existent product.

Other authority demonstrates that claims of infringement are founded upon commercial use in interstate commerce (i.e., selling to the public). In Lamothe, the "defendants [did] not dispute that the plaintiffs and [defendant] [were] competitors in the relevant market." Lamothe v. Atlantic Recording Corp., 847 F.2d 1403, 1406. Nowhere do Plaintiffs ever plead that they sold issues of the *Spawn* properties to the public. Plaintiffs do not plead infringement of a preexisting trademark, so an action for trademark infringement (i.e., false designation of origin) cannot be stated. Rice, 148 F. Supp. 2d at 1064.

C. **Plaintiffs' Amended False Advertising Claim Under Wisconsin State Law Is Preempted By The Copyright Act**

Plaintiffs' false advertising claim is preempted by the Copyright Act. VARA *(supra)* specifically limits what works are entitled to the moral rights of attribution. 17 U.S.C. §§ 101, 106A. Comic books do not meet the definition of the category of works protected, indicating Congressional intent not to extend such rights to works outside the ambit of "visual art." Id. Under the "extra element" test, the false advertising count does not survive preemption of state law.

Plaintiffs quote Professor Nimmer selectively, implying that he conclusively agrees with their position that VARA's preemption is limited only to works of visual art. Opp. at 10 ¶ 2. But Professor Nimmer points out that Plaintiffs' interpretation leads to the absurd result that works not covered by VARA could

OCOLIBI\RSF\362150.03

receive greater protection under state law than those specially protected under federal law! Professor Nimmer states the following in relevant part:

> "Yet a policy argument could be constructed <u>for the opposite conclusion</u>, as it would be ironic for such unqualifying works to claim possibly greater remedies under state law than qualifying works receive under the Visual Artists Rights Act of 1990 itself!"

3 Nimmer § 8D.06[F][2] at 8D-92 (emphasis supplied). That is exactly what Plaintiffs seek. They argue that Wisconsin's state false advertising law should vindicate the moral right of attribution, when Congress has already evidenced an intent to tightly circumscribe that right.[2]

Moreover, the federal legislative history indicates an intent to preempt state end runs:

> "[T]he enactment of a *uniform federal law* . . .; A *single federal system* is preferable to state statutes or municipal ordinances on moral rights because creativity is stimulated more effectively on a uniform, national basis."

(emphasis added by Professor Nimmer) H.R. Rep. No. 101-514, 101st Cong., 2d. Sess. 21 (1990) (quoted by 3 Nimmer § 8D.06[F][2] at 8D-93 n. 217). Plaintiffs' urging that Wisconsin state law trump federal copyright law would do just that. And given the broad scope of preemption, any ambiguities must be resolved in favor of preemption. <u>Selby v. New Line Cinema Corp., et al.</u>, 96 F.Supp.2d 1053, 1057 (C.D. Cal. 2000).

---

[2] As stated by Representative Markey, "I would like to state that we have gone to extreme lengths to very narrowly define the works of art that will be covered." H.R. Rep. No. 101-514, 101st Cong., 2d. Session 11 (1990) quoted by 3 Nimmer § 8D.06[A][2] n. 45.1.

7

In the context of examining preemption according to the effective date of VARA, Nimmer argued for interpreting the statute to effectuate Congressional intent rather than just a formalistic application:

> "The bizarre upshot is that, during the time that federal rights were supposed to be exclusive, plaintiff was allowed to urge claims solely under state law!"

(exclamation in original) 3 Nimmer § 8D.06[F][2] at 8D-91 n. 209.12. Plaintiffs' argument would turn Congressional intent upside-down, and permit broad moral rights under state law where Congress intended that there be none. This would deter creativity by overriding the "uniform, national basis" limiting such rights to works of visual art.

### D. Plaintiffs' Right Of Publicity Claims Are Similarly Preempted Because Gaiman Consented To The Use Of His Name

Plaintiffs concede their right of publicity claims are preempted by copyright law if Gaiman consented to use of his name. Opp. at 12 ¶ 2 ("preemption only occurs in instances where the author consented to use of the material...") Plaintiffs then state that "Gaiman never consented to Image's use of his name or biographical material..." Id. They forget their recently amended Complaint, which states in relevant part the following:

> "The inside title page for the Angela series identify Gaiman as the author of the stories."

FAC ¶ 41. Nowhere do Plaintiffs complain about that use of Gaiman's name. Moreover, Plaintiffs allege that they agreed in 1997 that "you [McFarlane] will make your best efforts to ensure that there is a 'created by Neil [Gaiman] & Todd' credit for Angela in her appearances in other comics, or other media." FAC ¶ 51 (emphasis added).

8

Plaintiffs' pleading against Image's co-defendants (that promissory estoppel claim is now withdrawn against Image) shows that Gaiman <u>agreed</u> and seeks enforcement of an alleged promise to give him attribution (i.e., use his name) for Angela publications. Paragraphs 80 and 83 states the following in relevant part:

> "80. McFarlane and the McFarlane Corporate Defendants promised Gaiman under the 1997 Agreement <u>ongoing attribution for his works</u>, ...on-going rights and entitlements in respect to the character Angela..."

> "83. Injustice can be avoided only through enforcement of Defendants' promises."

Plaintiffs want it both ways. They want the Court to force Image's licensors to give Plaintiffs credit by name, and at the same time hold Image liable for doing just that. Their pleading demonstrates express prior consent to using Gaiman's name to promote the individual works. They at least have impliedly consented to such use for the collective publication, *Angela's Hunt*, as their pleading insists that Gaiman be given credit by name on a going forward basis. FAC ¶¶ 80, 83. Under Plaintiffs' own authority, their right of publicity claims are therefore preempted. Counts IX and X should therefore be dismissed.

Moreover, the First Amendment protects publication of truthful biographical facts about Gaiman. Nowhere does the right of publicity encompass such facts, and Plaintiffs provide no authority for the proposition that they must give consent to others' use of such "biographical information." FAC ¶ 102. To the contrary, Wisconsin's statute protects only the "name, portrait or picture" of a living person. Wis. Stat. § 895.50(2). The right of publicity claims must therefore be dismissed, as they would otherwise trench upon the First Amendment.

9

## III. CONCLUSION

For the foregoing reasons, Plaintiffs fail to state a claim on any remaining counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Defendant Image Comics respectfully requests that the Amended Complaint against it be dismissed with prejudice and without delay.

DATED: April 19, 2002                    BROBECK, PHLEGER & HARRISON LLP

By: _____
R. Scott Feldmann
Attorneys for Defendant
Image Comics, Inc.

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Irvine, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 38 Technology Drive, Irvine, California 92618-2301. On April 19, 2002, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED: **IMAGE COMICS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6); AND OPPOSITION TO PLAINTIFFS' MOTION TO DELAY RENDERING JUDGMENT ON SAME**

SERVED UPON: **SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Irvine, California. I am readily familiar with the practice of Brobeck, Phleger & Harrison LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

☐ (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by Sherman, Alexander & Associates LLC to receive documents to be delivered on the same date. A proof of service signed by the authorized courier will be filed with the court upon request.

☒ (BY FEDERAL EXPRESS) I am readily familiar with the practice of Brobeck, Phleger & Harrison for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

☒ (BY FACSIMILE) The above-referenced document was transmitted by facsimile transmission and the transmission was reported as complete and without error. Pursuant to C.R.C. 2009(i), I caused the transmitting facsimile machine to issue properly a transmission report, a copy of which is attached to this Declaration.

☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on April 19, 2002, at Irvine, California.

Patti L. Gruwell

11

OCOLIB1\RSF\262154.03

## PROOF OF SERVICE LIST

| | |
|---|---|
| Jeffrey A. Simmons, Esq.<br>Foley Lardner<br>Attorneys at Law<br>Verex Plaza<br>150 East Gilman Street<br>Madison, Wisconsin 53703-1481<br>Phone (608) 257-5035<br>Facsimile (608) 258-4258 | Attorneys for Plaintiffs<br>Neil Gaiman and<br>Marvels And Miracles, LLC |
| Kenneth F. Levin<br>Kenneth F. Levin and Associates<br>20 North Wacker Drive, Suite 2200<br>Chicago, Illinois 60606<br>Phone (312) 984-6000<br>Facsimile (312) 977-2990 | Attorneys for Plaintiffs<br>Neil Gaiman and<br>Marvels And Miracles, LLC |
| Mark Hellmann<br>Michael Rechtin<br>Joseph Talarico<br>Foley & Lardner<br>1 IBM Plaza<br>220 N. Wabash, Suite 3300<br>Chicago, Illinois 60611<br>Phone (312) 755-1900<br>Facsimile (312) 755-1925 | Attorneys for Plaintiffs<br>Neil Gaiman and<br>Marvels And Miracles, LLC |
| Michael Kahn, Esq.<br>Stinson, Mag & Fizzell<br>100 S. 4th Street<br>Suite 700<br>St. Louis, Missouri 63102<br>Phone (314) 259-4529<br>Facsimile (314) 259-4599 | Attorneys for Defendants<br>Todd McFarlane;<br>Todd McFarlane Productions, Inc.;<br>TMP International, Inc.; and<br>McFarlane Worldwide, Inc. |
| Todd G. Smith<br>LaFollette Godfrey & Kahn<br>One East Main Street<br>P.O. Box 2719<br>Madison, Wisconsin 53701-3911<br>Phone (608) 257-3911<br>Facsimile (608) 257-0609 | Attorneys for Defendants<br>Todd McFarlane;<br>Todd McFarlane Productions, Inc.;<br>TMP International, Inc.; and<br>McFarlane Worldwide, Inc. |

OCOLIB1\USF\262150.03