IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

NEIL GAIMAN and
MARVELS AND MIRACLES, LLC

             Plaintiffs,

v.

TODD MCFARLANE,
TODD MCFARLANE PRODUCTIONS, INC.,
TMP INTERNATIONAL, INC.,
MCFARLANE WORLDWIDE, INC., and
IMAGE COMICS, INC.

             Defendants.

MEMORANDUM AND ORDER
02-C-48-S

---

Plaintiffs Neil Gaiman and Marvels and Miracles, LLC commenced this action against defendants Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc., McFarlane Worldwide, Inc., and Image Comics, Inc. for copyright infringement, violations of the Lanham Act, Wisconsin's false advertising and privacy laws and misappropriation. Before the Court is defendant Image Comics's motion to dismiss the complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Jurisdiction is pursuant to 28 U.S.C. §§ 1331 and 1367. The following allegations of the complaint are accepted as true for purposes of this decision.

BACKGROUND

Plaintiff Neil Gaiman is an author of comic books. Because of his fame he was contracted by defendant Todd McFarlane, the originator of the Spawn® series of comics, to write issue #9 ("Spawn 9") of the series. For this issue Gaiman developed several characters: "Medieval Spawn," a derivative of defendant McFarlane's "Spawn" character, "Angela," and "Cogliostro." In total plaintiff developed the story line for Spawn 9 along with the aforementioned character's attributes and rough appearances. McFarlane provided the final artwork embodying plaintiff's visions and storyline.

Spawn 9 proved wildly successful, and as a result, plaintiff subsequently was requested to do a set of comics featuring the Angela character as lead ("the Angela series"). Plaintiff proceeded to script and create three issues in the Angela series, which also proved quite successful. Defendant, partially owned by McFarlane, published both Spawn 9 and the Angela series.

In both Spawn 9 and the Angela series plaintiff Gaiman received credit as story author. Additionally, plaintiffs have alleged that Gaiman performed partial work on the script for Spawn issue #26 ("Spawn 26"). Spawn 26 and the Angela series are each republished in graphic novel format, a book medium that collects several comic series story arcs, entitled *Pathways to Judgement* [sic] and *Angela's Hunt*, respectively. *Angela's Hunt* contains a brief biography of plaintiff Gaiman on its cover, to which he never

2

consented. Gaiman also never gave permission to defendant to republish his work collectively, and was never credited for his work on Spawn 26 in the original comic or in the graphic novel.

These works resulted from an oral contract between plaintiff Gaiman and defendant McFarlane. At the time plaintiff was initially requested to work on the Spawn series, he was routinely writing for D.C. Comics's "Sandman" series of comics. McFarlane agreed to better the rates that D.C. was paying plaintiff for his work on Sandman, as well as give him attribution for his work as well as any derivative works created therefrom.

In 1997 plaintiff received a memo from defendant outlining royalty payments that were substantially less than those originally promised by defendant McFarlane. Because of the differences, plaintiff Gaiman instituted negotiations with McFarlane which culminated in a series of signed faxes between them. The agreement reached essentially promised royalties in line with those D.C. was presently paying in addition to a promise of attribution for any future exploitation of the Angela character by McFarlane. Furthermore, plaintiff reserved rights to exploit the Angela and Medieval Spawn characters apart from McFarlane and the other defendants.

Despite this agreement plaintiffs allege that defendant fails to render an appropriate accounting of royalties, to use Gaiman's

work and name without his permission, and fails to provide Gaiman with proper attribution for other exploitation of his work.

MEMORANDUM

As a preliminary matter the parties have submitted affidavits with their Rule 12(b)(6) memoranda. Rule 12(b) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . ." Whether an affidavit is excluded from consideration is within the Court's discretion. <u>Levenstein v. Salafsky</u>, 164 F.3d 345 (7th Cir. 1998). Because plaintiffs pursuant to Rule 56(f) have moved for an extension for further discovery if the Court considers defendant's affidavit, all affidavits are excluded from consideration and the Court will only consider the amended complaint pursuant to Rule 12(b)(6). Plaintiffs' Rule 56(f) request is accordingly moot.

Rule 12(b)(6) allows for dismissal of a complaint prior to any responsive pleadings if plaintiffs fail "to state a claim upon which relief can be granted." Such motions, brought at the start of proceedings, are designed to test the sufficiency of the complaint. "In appraising the sufficiency of the complaint . . . the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which

4

would entitle him/her to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). Plaintiffs need not demonstrate their entitlement to a favorable judgment, only that they have a cognizable claim. See Trevino v. Union Pacific R. Co., 916 F.2d 1230, 1234 (7th Cir. 1990).

Defendant challenges the sufficiency with respect to Counts II and III alleging copyright infringement, count VII alleging violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), count VIII alleging violation of Wis. Stat. § 100.18 prohibiting fraudulent representations, count IX alleging violation of Wisconsin's right to privacy, Wis. Stat. § 895.50, and count X alleging violation of the common-law tort of misappropriation.

## I. Counts II and III: Copyright Infringement

Section 106 of the Copyright Act (17 U.S.C. § 106) provides that "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work . . . (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale. . . ." Where there are two authors who collaborated to create a single unitary work, it is considered a joint work, and each author is a co-owner of the work. Id. § 101, 201(a).

Plaintiffs allege that defendant violated their rights in the "Angela," "Cogliostro," and "Medieval Spawn" characters and the various comics in which they appear. Defendant counters that defendant Todd McFarlane, apparent co-owner of the copyright in the characters and comics, granted plaintiffs at least an oral (and hence non-exclusive) license to reproduce the copyrighted works, and accordingly, cannot be held liable for infringement. This is an affirmative defense not pertinent to the complaint's sufficiency. Plaintiffs have not pled any facts that conclusively point to the existence of such a license which would negate their claim for infringement. Accordingly, it is certainly reasonable to infer from the allegations pled that defendant was without authority to reproduce plaintiffs' copyrighted works. Counts II and III are pled sufficiently to state a viable claim upon which relief can be granted.

## II. Count VII: Lanham Act § 43(a)

Plaintiffs allege defendant engaged in "reverse palming off," also known as "reverse confusion." Section 43(a) of the Lanham Act provides in relevant part:

> (1) Any person who, on or in connection with any goods, . . . uses in commerce . . . any false designation of origin . . . which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . shall be liable in a civil action by any such

>     person who believes that he or she is likely to be
>     damaged by such act.

Three elements are necessary to state a claim for relief under §43(a):

>     (1) that the defendant used a false designation of origin
>     or false description or representation in connection with
>     goods or services; (2) that such goods or services
>     entered interstate commerce; and (3) that the plaintiff
>     is a person who believes he is likely to be damaged as a
>     result of the misrepresentation.

Kennedy v. National Juvenile Det. Ass'n, 187 F.3d 690, 695-96 (7th Cir. 1999). In applying these elements to reverse confusion the Seventh Circuit noted that "[o]ne situation in which an author could file a Lanham Act claim, as opposed to a copyright infringement claim, would be to ensure that his name is associated with a work when the work is used. . . ." Id. at 696. That is precisely the claim plaintiffs make here.

Neither party disputes that defendant has distributed the disputed works in commerce. Plaintiffs' complaint notes that credit was given plaintiff Gaiman as author of the stories in Spawn 9 and the Angela series as well as *Angela's Hunt*, the graphic novel collecting the Angela series comics. This initial attribution coupled with plaintiff Gaiman's alleged fame is sufficient to allow an inference of public confusion or deception regarding plaintiffs' general allegations of lack of attribution in subsequent exploitation found in paragraph 57. Comic book fans who follow the Spawn mythology could potentially be deceived as to the origins of

7

plaintiff Gaiman's characters if, having read Spawn 9 and the Angela series, they subsequently see the characters embodied therein without Gaiman's name attached. Accordingly, plaintiffs have sufficiently stated a viable claim upon which relief may be granted.

### III. Count VIII: False Advertising

Wisconsin Stat. § 100.18(1) provides that

> No person, firm, corporation or association . . . with intent to sell, distribute [or] increase the consumption of . . . [any] merchandise . . . or anything offered by such person, firm, corporation or association . . . directly or indirectly, to the public for sale . . . shall make, publish, disseminate, circulate, or place before the public . . . in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase [or] sale . . . of such . . . merchandise . . . which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

It is asserted that the omission of plaintiff Gaiman's name from any product or comic embodying any of the disputed characters or storylines is an untrue and misleading statement insofar as it implies that he was not the creator of the character or storyline. The facts as pled sufficiently state a claim under this provision. Defendant is alleged to be engaged in the business of distributing for sale various comics, including Spawn 9, 26, and the Angela

series. At the very least, Spawn 26, alleged to be partially written by plaintiff Gaiman, fails to attribute to him any contributions he may have made.

Defendant does not focus its attack on the sufficiency of these allegations, but rather suggests that the Copyright Act preempts this state-law cause of action. Preemption is governed by § 301 of the Copyright Act:

> . . . [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are [covered by the Act] . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C.A. § 301(a) (West 1996). While the right of attribution does not appear in § 106, it is mentioned in § 106A, the Visual Artists' Rights Act ("VARA"). Section 301(f) addresses preemption with regards to VARA:

> . . . [A]ll legal or equitable rights that are equivalent to any of the rights conferred by section 106A *with respect to works of visual art* to which the rights conferred by section 106A apply are governed exclusively by [VARA]. . . . [N]o person is entitled to any such right or equivalent right *in any work of visual art* under the common law or statutes of any State.

17 U.S.C.A. § 301(f)(1) (West 1996) (emphasis added). With respect to both sections, further provision is made explicitly exempting from preemption any rights that are not equivalent to those granted pursuant to the Copyright act. 17 U.S.C. §§ 301(b)(1), (3), (f)(2)(B). The language of VARA in § 106A explicitly limits its

9

applicability to visual works of art. Giving a reading to the emphasized language that simply reiterates that VARA is only applicable to visual works but does not correspondingly limit the extent of preemption renders the language unnecessary. In keeping with the cannon of construction that language should be given effect where possible and not read as superfluous, the italicized language above suggests that preemption of any rights of attribution by the Copyright Act is limited solely to works of visual art. Any potential state law right similar to attribution for works other than visual is not preempted. Defendant has presented no applicable case law suggesting otherwise. Furthermore, while defendant quotes Nimmer's well-respected copyright treatise as advocating a more expansive construction of preemption, Nimmer initially suggests that "federal pre-emption is generally inapplicable to state laws of unfair competition of the passing off variety, defamation, invasion of privacy, and contracts." 3 <u>Nimmer on Copyright</u>, § 8D.02[B] (2001). The state law at issue effectively protects plaintiffs from passing off. Accordingly, plaintiffs' valid state law false advertising claim is not preempted.

### IV. Count IX: Invasion of Privacy

The Wisconsin right of privacy invoked by plaintiffs involves "[t]he use, for advertising purposes or for purposes of trade, of

the name, portrait or picture of any living person, without having first obtained the written consent of the person. . . ." Wis. Stat. § 895.50(2)(b). Defendant argues that plaintiffs have conceded preemption if plaintiff Gaiman consented to the use of his name. However, plaintiffs have not specifically pled that defendant had any sort of written permission. Accordingly, plaintiffs' claim is sufficiently stated.

## V. Count X: Misappropriation of Image

Defendant includes misappropriation of image with the right to privacy claim. The elements are substantially the same: the aggrieved party's name and image are used without consent. However, the tort of misappropriation of image, also known as the right of publicity, focuses on the value of one's name rather than the right of one to be left alone. See Hirsch v. S.C. Johnson & Son, Inc., 90 Wis. 2d 379, 280 N.W.2d 129 (1979). Regardless, the protection remains the same, and the discussion of the right to privacy is equally applicable here. Plaintiff has sufficiently stated a claim of misappropriation upon which relief may be granted.

Accordingly, defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.

Neil Gaiman et al. v. Todd McFarland et al.
Case No. 02-C-48-S

ORDER

IT IS ORDERED that defendant Image Comics's motion to dismiss is DENIED.

Entered this 3rd day of May, 2002.

BY THE COURT:

_____
JOHN C. SHABAZ
District Judge