35

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MAY 21 2002

NEIL GAIMAN and MARVELS AND )
MIRACLES, LLC,                )
                              )                    FILED
                              )         JOSEPH W. SKUPNIEWITZ, CLK
    Plaintiffs,               )         CASE #
                              )
    v.                        )
                              )         Case No. 02-C-0048-S
TODD McFARLANE, TODD          )
McFARLANE PRODUCTIONS, INC.,  )
TMP INTERNATIONAL, INC., and  )
McFARLANE WORLDWIDE, INC.     )
                              )
        Defendants-Counterclaimants, )
                              )
    And                       )
                              )
IMAGE COMICS, INC.,           )
                              )
        Defendant.            )

---

**BRIEF OF DEFENDANTS TODD McFARLANE, TODD McFARLANE
PRODUCTIONS, INC., TMP INTERNATIONAL, INC. AND McFARLANE
WORLDWIDE, INC. IN SUPPORT OF THEIR MOTION FOR
JUDGMENT ON THE PLEADINGS**

---

LaFollette Godfrey & Kahn            Blackwell Sanders Peper Martin LLP
One East Main Street, Suite 500      720 Olive Street, Suite 2400
Madison, WI 53701                    St. Louis, MO 63101
Tel: (608) 257-3911                  Tel: (314) 345-6000
Fax: (608) 257-0609                  Fax: (314) 345-6060

*LaFollette Godfrey & Kahn is the
Madison office of Godfrey & Kahn, S.C.*

## Table of Contents

PROCEDURAL HISTORY AND UNDISPUTED FACTS ........................................................... 2

STANDARDS FOR RESOLVING MOTIONS FOR JUDGMENT ON THE PLEADINGS ....... 4

ARGUMENT ...................................................................................................................... 5

I.      THE UNDISPUTED FACTS CONTAINED IN THE PLEADINGS ESTABLISH
        THAT MR. GAIMAN'S COPYRIGHT OWNERSHIP CLAIMS ARE TIME-
        BARRED. ................................................................................................................6

        A.      The Plaintiffs' Ownership Claims Relating To *Spawn* Issue 9 Accrued No
                Later Than 1993, And Are Therefore Time-Barred................................8

        B.      The Plaintiffs' Ownership Claims Relating To *Spawn* Issue 26 Accrued No
                Later Than 1998, And Are Therefore Time-Barred................................9

        C.      The Plaintiffs' Ownership Claims Relating To The *Angela* Series Accrued No
                Later Than 1995, And Are Therefore Time-Barred...............................10

        D.      The Plaintiffs' Mention Of The Collective Works *Pathway To Judgement* And
                *Angela's Hunt* Fails To Resurrect Their Time-Barred Ownership Claims To
                The Underlying Works. ......................................................................11

II.     THE PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS FAIL BECAUSE
        MR. GAIMAN IS TIME-BARRED FROM ASSERTING COPYRIGHT
        OWNERSHIP—AN ESSENTIAL COMPONENT OF INFRINGEMENT—IN THE
        WORKS AT ISSUE................................................................................................12

III.    THE PLAINTIFFS' CLAIMS BASED ON SECTION 43(a) OF THE LANHAM
        ACT ARE PREEMPTED BY THE COPYRIGHT ACT. ...................................16

        A.      Mr. Gaiman Received The Attribution He Requested..........................16

        B.      Gaiman's Passing Off Claim Under Section 43(a) Of The Lanham Act Is
                Preempted By The Copyright Act.......................................................17

IV.     THE PLAINTIFFS' CLAIM BASED ON SECTION 100.18, WIS. STATS. IS
        PREEMPTED BY THE COPYRIGHT ACT AND, IN ANY EVENT, IS TIME-
        BARRED. ............................................................................................................22

        A.      The Plaintiffs' State Law False Advertising Claim Is Preempted. ........22

        B.      The Plaintiffs' State Law False Advertising Claim Is Time-Barred....................24

V.      THE PLAINTIFFS' STATE LAW CLAIM FOR VIOLATION OF PRIVACY IS
        PREEMPTED BY THE COPYRIGHT ACT. .................................................................26

        A.    The Works In Which The Plaintiffs Claim Privacy/Publicity Rights Are Fixed
              In Tangible Form And Come Within The Subject Matter Of Copyright. .............26

        B.    The Plaintiffs' Claimed Right To Privacy Is "Equivalent" To Rights
              Conferred Under The Copyright Act. ..................................................................27

VI.     THE PLAINTIFFS' FRAUD CLAIM IS PRECLUDED BECAUSE IT ALLEGES
        NOTHING MORE THAN A BREACH OF CONTRACT. ..............................................30

VII.    CONCLUSION. ..........................................................................................................33

Hidden within the elaborate undergrowth of the plaintiffs' Amended Complaint is a simple claim for breach of contract. The other claims—involving the Copyright Act, the Lanham Act, and myriad claims under state law—simply do not belong in this case, and Rule 12(c) provides an appropriate vehicle for weeding them out. This case involves a controversy over the intellectual property in several comic books in the well-known *Spawn* comic book series. Plaintiff Neil Gaiman contends that he has certain limited copyrights in several issues of the series (Issues 9 and 26 in particular) as well as in all three issues of a derivative series entitled *Angela*. Gaiman seeks a declaration of copyright ownership in these works. Gaiman also asserts a claim for copyright infringement and several redundant claims asserting that Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc., and McFarlane Worldwide, Inc. (collectively, "the McFarlane Defendants") failed to properly acknowledge Gaiman's copyright interest and failed to provide attribution for his work, confusing readers as to origin and passing off his work as their own. Contradicting these "passing off" claims, the plaintiffs also assert that Gaiman's right to privacy has been violated by the McFarlane Defendants' use of his name and certain biographical information to give him the attribution he requested.

The parties agree about one thing: As part of an agreement with McFarlane, Gaiman authored stories for several comic books that were eventually published as *Spawn* Issue 9 and the three-issue *Angela* series. However, Gaiman's claims asserting copyright ownership in those works (as well as in *Spawn* Issue 26) are foreclosed by the undisputed – and indisputable – facts revealed in the parties' pleadings. Moreover, because his copyright ownership claim is barred, he is unable to prove the *sine qua non* of copyright infringement – copyright ownership of the works at issue. Finally, the plaintiffs' redundant claims for violations of the Lanham Act,

Wisconsin's false advertising statute and privacy statute are preempted by the Copyright Act when claims for publicity regarding copyrightable works are involved, as is alleged by the plaintiffs' amended pleadings. For these reasons, as well as others set forth in this brief, the court should dismiss at least seven of the plaintiffs' claims on the undisputed facts revealed by the parties' pleadings.

## PROCEDURAL HISTORY AND UNDISPUTED FACTS

The plaintiffs filed the original Complaint in this matter on January 24, 2002. The McFarlane Defendants filed an Answer and Counterclaims on March 4, 2002, including many of the comic books and copyright registrations that form the basis of this dispute in an Appendix. The Court granted the plaintiffs' motion for leave to file an Amended Complaint by Order dated April 17, 2002. On April 29, 2002 the McFarlane Defendants filed their Answer to Amended Complaint and Counterclaims, to which the plaintiffs replied on May 13, 2002.

Included with the McFarlane Defendants' Answer to the Amended Complaint and Counterclaims was an Appendix and Supplement to Appendix to Answer to Amended Complaint and Counterclaims (hereafter "the Combined Appendix"). The Combined Appendix includes the documents relevant to the McFarlane Defendants' instant motion, including copies of the comic books and trade publications at issue (and the copyright notice contained in each) as well as the relevant copyright registrations. Pending the Court's ruling on the McFarlane Defendants' motion for leave to amend, the Combined Appendix may also contain two additional documents, graphic novels to which the parties have referred in the pleadings. The documents contained in the Combined Appendix are part of the pleadings for all purposes, Rule 10(c), Fed. R. Civ. P., and may be considered by the Court in resolving this Rule 12(c) motion for judgment on the pleadings.

2

Taken together, the original complaint, the Amended Complaint, the McFarlane

Defendants' Answer and Counterclaims (including the Combined Appendix), and the plaintiffs'

Reply establish these undisputed facts:

- This lawsuit was filed on January 24, 2002.  *See* (Original) Complaint for Damages, Declaratory Judgment and Injunctive and Ancillary Relief.

- *Spawn* Issue 9 was published in March of 1993, Counterclaim, ¶ 15; Combined Appendix, Exhibit B; Reply, ¶ 15, and contained the following copyright notice: "*Spawn* and its logo are trademark™ and copyright © 1993 Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 19; Combined Appendix, Exhibit B; Reply, ¶ 19.

- *Spawn* Issue 26 was published in December of 1994, Counterclaim, ¶ 33; Combined Appendix, Exhibit E; Reply, ¶ 33.

- *Spawn* Issue 26 appeared in the trade paperback series *Spawn* Volume 6, published in the early Spring of 1998.  Counterclaim, ¶ 35; Combined Appendix, Exhibit O; Reply, ¶ 35. *Spawn* Volume 6 contained the following copyright notice: "*Spawn*, its logo and its symbol are registered trademarks 1998 of Todd McFarlane Productions, Inc.  All other related characters are TM and © 1998 Todd McFarlane Productions, Inc.  All rights reserved." Counterclaim, ¶ 36; Combined Appendix, Exhibit O; Reply, ¶ 36.

- *Spawn* Issue 26 was also republished in a graphic novel entitled *Pathway to Judgement*, Amended Complaint, ¶ 38; Answer, ¶ 38, the content of which is identical to the trade paperback at Exhibit O.  Pending the Court's ruling on the motion to amend, *Pathway to Judgement* may be included as Exhibit Q.

- Issues 1, 2, and 3 of the *Angela* series were published in December of 1994, January of 1995, and February of 1995, respectively.  Counterclaim, ¶ 37; Combined Appendix, Exhibits G, H, and I; Reply, ¶ 37.  *Angela* Issue 2 contains the following copyright notice: "*Angela*, its logo and its symbol are registered trademarks™ and copyright © 1995 of Todd McFarlane Productions, Inc.  All rights reserved." Counterclaim, ¶ 40 Combined Appendix, Exhibit H; Reply, ¶ 40.

- Issues 1, 2, and 3 of the *Angela* series were again published in a trade paperback entitled *Angela* in 1995.  Counterclaim, ¶ 43; Combined Appendix, Exhibit P; Reply, ¶ 43.  The inside title page of the *Angela* trade paperback contains the following copyright notice; "*Angela*, its logo and its symbol are (TM) trademarks and (©) copyright 1995, Todd

McFarlane Prods., Inc.  All other characters are (TM) and (©) copyright 1995, Todd McFarlane Prods., Inc. All rights reserved." Counterclaim, ¶ 47; Combined Appendix, Exhibit P; Reply, ¶ 47.

- Issues 1, 2, and 3 of the *Angela* series were again published in a graphic novel entitled *Angela's Hunt*, Amended Complaint, ¶ 42; Answer, ¶ 42, the content of which is identical to the trade paperback at Exhibit P. Pending the Court's ruling on the motion to amend, *Angela's Hunt* may be included as Exhibit R.

With this motion for judgment on the pleadings, the McFarlane Defendants ask the court to dismiss seven claims in this lawsuit which, on these undisputed facts, cannot lawfully proceed.

## STANDARDS FOR RESOLVING MOTIONS FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) permits any party to move for judgment after the parties have filed a complaint and an answer.  While not as commonly used as Rule 12(b), a motion for judgment on the pleadings invites the court to dispose of the case at its threshold "on the basis of [its] underlying substantive merits." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). A Rule 12(c) motion is subject to the same standards as a Rule 12(b)(6) motion to dismiss. *Seibel v. A.O. Smith Corporation*, 1998 U.S. Dist. LEXIS 19903, *4 (W.D. Wis.) (Shabaz, J.) Therefore, to prevail, the moving party must demonstrate that there are no material issues of fact to be resolved and that the facts as revealed by the pleadings would not permit the non-moving party to prevail:

> "We will view the facts in the complaint in the light most favorable to the nonmoving party," *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995); "however, we are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *R.J.R. Serv. Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

*Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

A judgment on the pleadings motion permits the court to consider not only the complaint and the answer but "any written instruments attached as exhibits," and that includes affidavits, letters, and contracts. *Id.*; *accord Roth v. United States*, 1999 U.S. Dist. LEXIS 18109 (W.D. Wis.). Attached exhibits are part of the pleadings for the purpose of a Rule 12(c) motion. *See Warzon v. Drew*, 60 F.3d 1234, 1237 (7th Cir. 1995).

A party may not avoid plain and unambiguous language contained in documents by alleging that they mean something different that what their plain language expresses. Indeed, when reviewing a motion for judgment on the pleadings, "it is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Northern Ind. Gun & Outdoor Shows, Inc.,* 163 F.3d at 454. This rule supports the important judicial policy that, at any stage of litigation, a party ought not be permitted to proceed with a claim that is clearly and unambiguously foreclosed by documents whose language and authenticity is beyond dispute.

## ARGUMENT

The pleadings, including the documents contained in the Combined Appendix, establish that the defendants are entitled to judgment as a matter of law on several of the plaintiffs' claims. On the pleadings, the Court should enter judgment in favor of the defendants on at least seven of the plaintiffs' alleged causes of action. The undisputed facts contained in the pleadings reveal that the defendants are entitled to judgment on the claims for:

1.  copyright ownership, Count I, because these claims are time-barred under the Copyright Act;

2.  copyright infringement, Counts II and III, because the plaintiffs cannot prove ownership, an essential component of copyright infringement;

3.  violation of the Lanham Act, Count VII, because under the circumstances here, this "reverse passing off" claim is preempted by the Copyright Act;

4.      false advertising, Count VIII, because this state law claim is preempted by
        the Copyright Act, and in any event, is time-barred by the relevant statute
        of limitations;

5.      violation of privacy, Count IX, because this state law claim as well is
        preempted by the Copyright Act; and

6.      fraud, Count VI, because this tort claim is precluded by the plaintiffs'
        identical claim for breach of contract.

Accordingly, the Court should enter judgment in the defendants' favor and dismiss each of these

claims for the reasons set forth below.

## I.      THE UNDISPUTED FACTS CONTAINED IN THE PLEADINGS ESTABLISH THAT MR. GAIMAN'S COPYRIGHT OWNERSHIP CLAIMS ARE TIME-BARRED.

The Copyright Act speaks for itself on the dispositive issue before the Court:

> **§ 507  Limitations on actions**
> 
> . . .
> 
> (b) *Civil Actions.*—No civil action shall be maintained under the
> provisions of this title unless it is commenced within three years
> after the claim accrued.

17 U.S.C. § 507(b).  This statute bars the plaintiffs' claims for copyright ownership.  In applying

this time bar, federal courts have consistently held that plaintiffs must bring claims for ownership

within three years of their accrual.  *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230 (9th Cir. 2000)

("A claim of authorship of a joint work must be brought within three years of when it accrues.");

*Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) ("[P]laintiffs claiming to be co-authors are

time-barred three years after accrual of their claim from seeking a declaration of copyright

co-ownership rights and any remedies that would flow from such a declaration.") (citation

omitted).

Because all civil claims arising under the Copyright Act must be brought during this

statutory period, the plaintiffs' copyright ownership claims hinge on whether these claims

accrued within three years of filing this action. On this point as well, federal courts have been clear and consistent: accrual of a copyright claim occurs when a reasonably diligent plaintiff would have reason to know of the injury upon which the claim is premised. *Merchant*, 92 F.3d at 56; *see also Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996) (citing *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). For the purposes of the accrual of an ownership claim, a plaintiff's awareness of another's "plain and express repudiation" of the plaintiff's authorship starts the clock for the three-year limitation period. *Aalmuhammed*, 202 F.3d at 1231 (citing *Zuill*, 80 F.3d at 1371); *see also* 3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* (2002) § 12.05[C] at 12-132.4, n.49. The United States Court of Appeals for the Seventh Circuit has expanded on a plaintiff's duty in this regard. "[T]he plaintiff has a duty of diligence: it is not enough that he did not discover he had a cause of action, if a reasonable man in his shoes would have." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983). Indeed, a "reasonably diligent plaintiff" is put on notice by another's express assertion of sole authorship or ownership. *Zuill*, 80 F.3d at 1370.

The pleadings demonstrate conclusively that the plaintiffs' copyright ownership claims are time-barred because TMP's express assertions of sole ownership occurred far more than three years prior to the initiation of this suit. For each of the works at issue, the plaintiffs' copyright ownership claims are time-barred because in each case, Gaiman knew or with reasonable diligence, should have known, more than three years before this lawsuit, that someone other than himself was claiming sole copyright ownership in the works. This was the case with the publication of *Spawn* Issue 9 in 1993, *Spawn* Issue 26 in 1998, and the *Angela* series in 1995.

### A.    The Plaintiffs' Ownership Claims Relating To *Spawn* Issue 9 Accrued No Later Than 1993, And Are Therefore Time-Barred.

The parties acknowledge in the pleadings that Angela, and the characters later known as Cogliostro and Medieval Spawn, were created for, and first appeared in, *Spawn* Issue 9. Amended Complaint, ¶¶ 20, 35; Answer, ¶¶ 20, 35.  The plaintiffs' copyright claims center around the intellectual property related to these three characters.  The controlling accrual question, therefore, is straightforward: on what date did someone other than Mr. Gaiman expressly claim exclusive ownership of the intellectual property contained in *Spawn* Issue 9?  The Court need look no further than the pleadings to resolve this issue.  According to the pleadings, that critical event occurred, at the very latest, in March of 1993.  Paragraph 19 of the McFarlane Defendants' Counterclaims[1] alleges:

> 19.    The inside cover page of *Spawn* Issue 9 identifies Mr. Gaiman as the writer of the story and identifies Mr. McFarlane as the creator of the artwork.  At the bottom of that page is the following notice of copyright ownership:  "*Spawn* and its logo are trademark ™ and copyright © 1993 Todd McFarlane Productions, Inc.  All rights reserved." (Exhibit B).

The plaintiffs responded as follows:

> 19.    Plaintiffs state that *Spawn* Issue 9 is a written document that speaks for itself and deny the allegations in paragraph 19 to the extent they are inconsistent with the contents of that document.

Plaintiffs' Reply to the Second Amended Counterclaims of Defendants Todd McFarlane and Todd McFarlane Productions, Inc. ("Reply"), ¶ 19.  Thus, the plaintiffs do not deny that the inside cover page of *Spawn* Issue 9 contains the quoted copyright notice.  That notice complies with Section 401(c) of the Copyright Act, which specifies the form of notice of copyright

---

[1]    All reference herein to the Counterclaims refer to the document filed with the Court on April 29, 2002.

ownership as consisting of three elements: the symbol © or the word "copyright"; the year of first publication; and "the name of the owner of the copyright in the work." 17 U.S.C. § 401(c). The plaintiffs also admit that Exhibit B to the Counterclaim is a "true and correct black and white photocopy of *Spawn* Issue 9." Reply, ¶ 15. The Court's review of Exhibit B—which is, by virtue of the plaintiffs' admission of its authenticity, part of the pleadings—will demonstrate that TMP asserted sole copyright ownership in *Spawn* Issue 9 and its contents in March 1993. Mr. Gaiman's copyright ownership claim thus accrued at that time, commencing the statutory three-year period for bringing a claim alleging ownership. Yet Mr. Gaiman brought no such claims until this suit was filed on January 24, 2002. The plaintiffs' copyright ownership claims regarding the characters and content of *Spawn* Issue 9, in light of section 507(b) of the Copyright Act, are time-barred.

> **B.      The Plaintiffs' Ownership Claims Relating To *Spawn* Issue 26 Accrued No Later Than 1998, And Are Therefore Time-Barred.**

Mr. Gaiman also asserts ownership rights to the copyright in *Spawn* Issue 26, Amended Complaint, ¶¶ 65-66, but these claims are also time-barred, having accrued more than three years prior to this lawsuit. As the Counterclaims and exhibits make clear, *Spawn* Issue 26 was published in December of 1994. Counterclaims, ¶ 33; Combined Appendix, Exhibit E. In their reply, the plaintiffs admit to the authenticity of Exhibit E, which indicates the December 1994 publication date. Reply, ¶ 33. Issue 26 was again published in the collective works *Spawn* Volume 6 and *Pathway to Judgement* (both also containing Issues 27-30) in 1998. Counterclaims, ¶¶ 35, 38; Combined Appendix, Exhibit O (and, pending the Court's ruling on the motion to amend, Exhibit Q); Reply, ¶¶ 35, 38. *Spawn* Volume 6 contains the following notice of ownership: "*Spawn*, its logo and it symbol are registered trademarks 1998 of Todd

9

McFarlane Productions, Inc. All other related characters are TM and © 1998 Todd McFarlane Production, Inc. All rights reserved." Counterclaims, ¶ 36; Combined Appendix, Exhibit O; Reply, ¶ 36. These undisputed materials establish that TMP's express assertion of sole ownership of *Spawn* Issue 26 occurred in 1998, more than three years prior to the initiation of this suit in 2002. The plaintiffs' ownership claims to *Spawn* Issue 26 are thus time-barred.

### C.    The Plaintiffs' Ownership Claims Relating To The *Angela* Series Accrued No Later Than 1995, And Are Therefore Time-Barred.

The plaintiffs' claims of copyright ownership to the *Angela* series and character must also fail. As the Counterclaim demonstrates, Issues 1 through 3 of the derivative comic book series *Angela* were published in December 1994, January 1995, and February 1995, respectively. Counterclaim, ¶ 37, Exhibits G, H, and I. The plaintiffs' admission of the authenticity of Exhibits G, H, and I, Reply, ¶ 37, corroborates these publication dates. *Angela* Issue 2 contains an express assertion of TMP's sole copyright ownership, Counterclaim, ¶ 40; Combined Appendix, Exhibit H, and any claim for copyright ownership in this issue is thus time-barred. Moreover, TMP's expression of sole ownership was repeated in 1995 with the publication of the *Angela* trade paperback, which simply compiles Issues 1 through 3 of the *Angela* comic. Counterclaim, ¶ 47; Combined Appendix, Exhibit P; Reply, ¶ 47. The notice reads, "Angela, its logo and its symbol are (TM) trademarks and (©) copyright 1995, Todd McFarlane Prods., Inc. All other characters are (TM) trademarks and (©) copyright 1995, Todd McFarlane Prods., Inc. All rights reserved." *Id.* TMP's express assertion of sole ownership of the *Angela* series and characters occurred in 1995, far more than three years before the filing of this suit in 2002. The plaintiffs' ownership claims to the *Angela* series and character are thus time-barred.

10

**D. The Plaintiffs' Mention Of The Collective Works**
   ***Pathway To Judgement* And *Angela's Hunt* Fails To**
   **Resurrect Their Time-Barred Ownership Claims To**
   **The Underlying Works.**

The plaintiffs assert, "Defendants are *currently* republishing Spawn® 26 in a graphic

novel format entitled *Pathways* (sic) *to Judgement*," and "Defendants are *currently* republishing

the Angela™ series in a graphic novel book format entitled *Angela's Hunt*." Amended

Complaint, ¶¶ 38, 42 (emphasis added). The McFarlane Defendants admit publishing *Pathway*

*to Judgement* in the early Spring of 1998 and *Angela's Hunt* in 2000. Answer, ¶¶ 38, 42. Even

with these admissions, however, the plaintiffs cannot resurrect their time-barred ownership

claims by associating them with these more recent publications, for at least two reasons. First,

the plaintiffs cannot assert an ownership interest in these compilations because, although they

may have had an interest in their preexisting component works, they had no involvement in the

creation of the collective works, nor have they alleged any. Second, even if the plaintiffs had a

legitimate interest in the underlying works, any claims for ownership in these preexisting

components are time-barred.

   As the pleadings and submitted materials discussed above make clear, the plaintiffs are

limited by law to asserting ownership claims that accrued within three years of the initiation of

this suit. None of the copyright ownership claims meets this requirement. In a 1997 case

strikingly similar in its facts to this one, a federal court in New York addressed time-barred

ownership claims. In *Netzer v. Continuity Graphic Assocs., Inc.*, a comic book artist, Netzer,

brought an ownership action[2] against a comic book script writer, Adams, concerning a fictional

character named "Ms. Mystic." 963 F. Supp. 1308, 1315-16 (S.D.N.Y. 1997). The court held

---

[2]     Actually, the plaintiff in *Netzer* mistakenly brought his copyright claim as an infringement action, which he
later conceded was a claim for co-ownership. 963 F. Supp. at 1315. The court treated it as an ownership claim. *Id.*

that the plaintiff's claim was time-barred under section 507(b), because it was brought more than

three years after the defendant's assertion of sole authorship. *Id.*

> Based on the uncontested facts, Netzer's co-authorship claim
> accrued no later than the summer of 1984 when Netzer received a
> copy of *Ms. Mystic* No. 1, which bore a copyright notice reading
> "MS. MYSTIC (including all prominent characters featured in this
> magazine and the distinctive likenesses thereof) is copyrighted
> 1982 by Neal Adams."
>
> Thus, the statute of limitations for the claim expired in the summer
> of 1987. [As the case was not brought until 1993,] Netzer's
> copyright claim is time barred.

*Id.* (parentheses in original). As to the ownership claims, the *Netzer* case is on all fours with this

one. The pleadings establish TMP's express assertions of sole copyright ownership, in the form

of copyright notices appearing in individual issues and collective works of the *Spawn* and *Angela*

series, in 1993, 1995, and 1998. *See supra*, at 8-11. Because the plaintiffs' ownership claims

were not brought within three years of TMP's express and repeated assertions of sole copyright

ownership, these claims are now time-barred.

## II.   THE PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS FAIL BECAUSE MR. GAIMAN IS TIME-BARRED FROM ASSERTING COPYRIGHT OWNERSHIP—AN ESSENTIAL COMPONENT OF INFRINGEMENT—IN THE WORKS AT ISSUE.

It is settled law that copyright ownership is an essential component of a claim for

copyright infringement. "To establish infringement, two elements must be proven:

(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S 340, 361, 111 S. Ct.

1282, 1296 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539,

548 (1985)). The plaintiffs allege copyright infringement in "works related to" the characters

Angela, Cogliostro, and Medieval Spawn. Amended Complaint, ¶¶ 69-74. To prevail on such

claims, the plaintiffs must prove their "ownership of a valid copyright" in these works or

characters. *Feist*, 499 U.S. at 361. Having sat on their right to assert their claims for ownership

since the characters' introduction, *see supra* at 8-11, the plaintiffs are now time-barred from

asserting this critical component of their claims for infringement. Barred by law from

establishing this essential element of infringement, the plaintiffs' infringement claims must also

fail.[3]

The Seventh Circuit expressly recognizes copyright ownership as an indispensable

element of infringement. *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441,

450 (7th Cir. 2001) (citing *Feist*, 499 U.S. at 361); *see also Harbor Motor Co., Inc. v. Arnell*

*Chevrolet-Geo, Inc.*, 265 F.3d 638, 644 (7th Cir. 2001) (citations omitted). Following suit,

federal courts in Wisconsin properly reject infringement claims where the plaintiff fails to satisfy

its requirement of proving ownership. *See, e.g., Foamation, Inc. v. Wedeward Enters.*, 970 F.

Supp. 676, 683 (E.D. Wis. 1997) ("[W]ithout proving ownership of a valid copyright, [one]

cannot sue for infringement of that copyright."); *Budget Cinema v. Watertower Assocs.*, 81 F.3d

729, 731 (7th Cir. 1996) (describing the Wisconsin district court's dismissal of the plaintiff's

---

[3] In applying the Copyright Act's statute of limitations, some federal courts have distinguished between a plaintiff's ownership and infringement claims. A district court in New York, for example, has entertained copyright infringement claims even after barring claims for co-ownership, based on the unconventional notion that the former can exist independently of the latter. *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 254 (S.D.N.Y. 2000). The New York court reached this conclusion in spite of the precedent in *Merchant v. Levy*, 92 F.3d at 56 (barring ownership claims three years after a defendant's express repudiation of a plaintiff's ownership); *see supra* at 6-7.

 The idea that infringement claims endure independently of copyright ownership need not be accepted by this Court. In fact, this notion has been soundly criticized by the leading copyright authority. Professor Nimmer notes, a "plaintiff's infringement claim [is] emphatically dependent upon [its] claim of ownership; absent such proof, one of the two elements of the *prima facie* case [for infringement] would evaporate and plaintiff would lack standing." *Nimmer*, § 12.05[C] at 12-132.8 (citations omitted). The necessity of ownership to a plaintiff's infringement claim is entrenched in Supreme Court precedent, *Feist*, 499 U.S. at 361, and the language of the Copyright Act itself. The text provides, "Anyone who violates any of the exclusive rights *of the copyright owner* ... is an infringer ..." and only "[t]he legal or beneficial *owner* of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed *while he or she is the owner* of it." 17 U.S.C. § 501(a)-(b) (emphasis added).

infringement action for lack of an ownership claim). Because ownership is a *sine qua non* of copyright infringement, when ownership claims fail, for whatever reason, infringement claims cannot stand. This Court, recognizing that the ownership claims cannot withstand application of the statute of limitations, should also dismiss the plaintiffs' infringement claims.

Moreover, the Court should not be persuaded that the plaintiffs' infringement claims may proceed because of the recent copyright registrations of Mr. Gaiman's scripts, treatments, and thumbnail sketches. These registrations fail to establish ownership, independently or as an essential element of infringement. Copyright registration is indeed a prerequisite to standing in an infringement claim, 17 U.S.C. § 411, but registration alone does not establish legitimate copyright ownership—particularly where the ownership claims are already time-barred.

> [O]wnership remains a pre-requisite for any infringement suit. Though a certificate [of copyright registration] conveys a *prima facie* presumption of ownership, the presumption is rebuttable. Thus, *it fails to supply the necessary ingredient precisely in those cases ... where ownership is in meaningful dispute.*

*Nimmer*, § 12.05[C] at 12-132.8, n.80 (citations omitted) (emphasis added); *see also Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995). This is especially so here, where Mr. Gaiman registered his alleged copyrights more than five years after the first publications of each of the works at issue. Under Section 410(c) of the Act, the *prima facie* presumption of ownership applies only to those works registered within five years of first publication. 17 U.S.C. § 410(c). Mr. Gaiman's belated registrations fail to supply "the necessary ingredient" in this ownership dispute because they cannot overcome the fact—established by the pleadings—that their copyright ownership claims are time-barred.

Apparently dissatisfied with the substantial payments he has already received for his contributions, *see* Counterclaims, ¶ 69; Reply, ¶ 69, and certainly aware of the commercial

14

success the McFarlane Defendants achieved through skillful management of their intellectual

property, Mr. Gaiman now asserts an ownership interest in those assets and alleges copyright

infringement.  An analogous situation presented itself to the U.S. Court of Appeals for the Ninth

Circuit in the *Zuill* case.  In that case, musicians who contributed to the now famous "Hooked on

Phonics" reading program brought copyright ownership claims against the program's creator,

John Shanahan.  80 F.3d at 1367-68.  Mr. Shanahan had expressly asserted his sole ownership

many years before the musicians filed any copyright claims.  After repeated unsuccessful

attempts to market "Hooked on Phonics," Mr. Shanahan eventually began to make money on the

program.  *Id.* at 1368.  His financial success inspired the musicians to seek a declaratory

judgment of co-ownership and an accounting for their alleged shares of profits.  *Id.*  The trial

court properly dismissed the copyright claims as time-barred.  *Id.*  In affirming, the appeals court

commented:

> It is inequitable to allow the putative co-owner to lie in the weeds
> for years after his claim has been repudiated, while large amounts
> of money are spent developing a market for the copyrighted
> material, and then pounce on the prize after it has been brought in
> by another's effort.  "Delay under such circumstances allows the
> [putative] owner to speculate without risk with the other's money."

*Zuill*, 80 F.3d at 1371 (quoting *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y. 1916)

(L. Hand, J.)).  The *Zuill* facts are analogous to the present case.  Years ago, Mr. Gaiman

contributed work to the defendants' comic books, work for which he was attributed and paid.

Over the last decade the defendants, undertaking a substantial financial risk, invested in the

development of a niche market for *Spawn* comic books and related merchandise.  With this

lawsuit, the plaintiffs belatedly assert an ownership interest in the defendants' work and seek to

extract a share of the defendants' profits.  Additionally, they allege copyright infringement.

15

Under the statute of limitations, however, the plaintiffs' efforts to "pounce on the prize"—

through ownership and infringement claims—simply come too late.

### III.   THE PLAINTIFFS' CLAIMS BASED ON SECTION 43(a) OF THE LANHAM ACT ARE PREEMPTED BY THE COPYRIGHT ACT.

The plaintiffs have brought a claim based on Section 43(a) of the Lanham Act, alleging

that the defendants have engaged in "reverse passing off." Amended Complaint, ¶ 88. However,

as a preliminary factual matter, Mr. Gaiman received the attribution he requested. More

significantly, the plaintiffs' claim for a lack of attribution is entirely based on the same alleged

conduct as their copyright claims. In light of these copyright claims, any remedy under the

Lanham Act's unfair competition provision would be redundant and unnecessary. In fact, the

plaintiffs' Lanham Act claim is merely a copyright claim in disguise, and is thus preempted by

the Copyright Act and should be dismissed.

### A.   Mr. Gaiman Received The Attribution He Requested.

The facts pled in this case are clear. Mr. Gaiman contributed a story for *Spawn* Issue 9,

and the inside cover acknowledged that he was the author of the story. Combined Appendix,

Exhibit B. Similarly, the *Spawn* Trade Paperback Volume 2 credited Gaiman's contribution.

*Id.*, Exhibit D. The *Angela* comic book series also recognized Gaiman as having authored the

stories for those comic books. *Id.*, Exhibits G, H, and I. The plaintiffs do not dispute the

authenticity of these exhibits. Reply, ¶¶ 15, 24, and 33. The facts do not support any cause of

action for a failure to attribute credit or misattribution relating to *Spawn* Issue 9, the "Angela"

series, or *Angela's Hunt*, because credit was properly given. *See*, pending the Court's ruling on

the motion to amend, Combined Appendix, Exhibit R.

16

As to Issue 26 (republished in *Spawn* Volume 6 and *Pathway to Judgement*), the only work the plaintiffs have specifically identified as lacking attribution to Mr. Gaiman, the plaintiffs admit that Mr. Gaiman, on an unsolicited basis, submitted a "plot line" or "partial script" for that issue. Reply, ¶ 32; Amended Complaint, ¶ 36. The defendants have pled that in an unsolicited letter sent by Mr. Gaiman to Mr. McFarlane, a partial scene for an issue of *Spawn* was presented with the direction to "file it away, use it if it works, dump it if it doesn't." Answer, ¶ 32. The plaintiffs in no way dispute Mr. McFarlane's authorship of the remaining portions of the script and artwork in that issue. Amended Complaint, ¶ 36.

### B. Gaiman's Passing Off Claim Under Section 43(a) Of The Lanham Act Is Preempted By The Copyright Act.

The plaintiffs' section 43(a) Lanham Act claim is referred to as "reverse passing off." Reverse passing off occurs when one party sells another's product as its own. Though this type of claim originally arose in the context of the sale of products or services that misidentified the source of the goods or services, it has been used by authors and artists when a third party fails to attribute authorship to the real author of a creative work. *See e.g., Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F. 3d 775 (2d Cir. 1994). However, district courts, including this one, correctly limit this cause of action when it is accompanied by claims for copyright infringement. *See, e.g., Mist-On Systems, Inc. v. Gilley's European Tan Spa*, No. 02-C-0038-C, slip op. at 13-15 (W.D. Wis. May 2, 2002); *Natkin v. Winfrey,* 11 F. Supp. 2d 1003, 1013-14 (N.D. Ill. 2000); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463-65 (S.D.N.Y. 1999).

The reason for barring Lanham Act claims relating to attribution is based on the preemption provisions of the federal Copyright Act. Courts within the Seventh Circuit emphasize the broad scope of the preemption provisions of Section 301 of the Copyright Act. *See, e.g., The Balsamo/Olson Group, Inc. v. Bradley Place Ltd. P'ship*, 950 F. Supp. 896, 898-99

17

(C.D. Ill. 1997) (finding preemption of state law unfair competition claims based on failure to attribute source and authorship of copyrighted architectural and technical drawings); *see also Baltimore Orioles v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). Indeed, the federal Copyright Act exclusively governs "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103...." 17 U.S.C. § 301(a). In light of the preemption provisions of the Copyright Act, courts have barred plaintiffs' Lanham Act claims for reverse passing off when copyrighted subject matter is involved. *See, e.g, Shaw v. Lindheim*, 919 F. 2d 1353 (9th Cir. 1990); *Tensor Group, Inc. v. Global Web Systems, Inc.*, 1999 U.S. Dist. LEXIS 12721 (N.D. Ill. 1999).

For example, the decision by the U.S. District Court for the Northern District of Illinois in *LaCour v. Time Warner,* 2000 U.S. Dist. Lexis 7286 (N.D. Ill. 2000) is especially instructive on how courts should analyze attribution claims under the Lanham Act. In that case, LaCour, a songwriter, alleged that he was the sole and original author of a copyrighted musical composition entitled "I Believe I Can Fly," a song popularized in Space Jam, the 1996 movie that brought Michael Jordan and Bugs Bunny together. Nearly three years after the song was recorded by one of the defendants, R. Kelly, and released by several of the other defendants, LaCour sued for copyright infringement and violation of the Lanham Act and Illinois unfair competition law because credit for the composition had been attributed solely to Kelly. *Id.* at *3-*4.

The court held that the Copyright Act prevented the reverse passing off claim under the Lanham Act. Relying on case law from a number of other federal courts, the court held that "infringement of a copyrighted work necessarily means that ownership of that work is

misrepresented and that consumers of copyrighted work are confused as to its origin ... a remedy under the Lanham Act's unfair competition provision is redundant and unnecessary." *Id.* at *13-*14.

The court also agreed with a number of other district courts in the Seventh Circuit that a cause of action for reverse passing off is "no different in requisite elements than a state cause of action for unfair competition" under state statutes. *Id* at *19, *21-*27. In *LaCour*, the court noted that the issue under the Lanham Act is the protection of consumers from deception and confusion, which is identical to the goals of unfair competition statutes such as the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDPA"), 815 ILL. COMP. STAT., 505/2 and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), ILL. COMP. STAT., 510/25 and 12. *Id.* at *19-*20. The plaintiff in *LaCour* included state law claims under these statutes in his complaint. The court determined that if state unfair competition statutes were preempted by the Copyright Act then the Lanham Act claim would also be barred. The court then employed the Seventh Circuit's test from the *Baltimore Orioles* case to determine whether the Copyright Act preempts state law statutory unfair competition claims. That two-pronged test requires a finding that:

> (1)    the work in which the right is asserted must be fixed in a tangible form and come within the subject matter of copyright as specified in Sections 102 and 103 of the Copyright Act, and
>
> (2)    the right asserted must be equivalent to any of the rights specified in Section 106.

*Baltimore Orioles*, 805 F.2d at 674; *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996).

19

Using this test, the *LaCour* court found that the work, the song "I Can Fly," was fixed in a tangible medium and came within the subject matter of copyright covered by federal law. *LaCour*, 2000 U.S. Dist. LEXIS 7286 at *23-*24 (citations omitted). The court found that the allegations of misrepresentation based on the defendants' act of selling or promoting the work as their own creation without attribution to the plaintiff did not alter the nature of the infringing "action enough to remove the state claim from the preemptive reach of § 301(a)." *Id.* Therefore, the Lanham Act claim was also not actionable.[4]

The case before this Court is no different than the facts of *LaCour* and the cases *LaCour* relies upon, *e.g. Tensor Group*, 1999 U.S. Dist. LEXIS 12721 at 7-9; *Goes Lithography*, 950 F. Supp. 2d at 1047. In this case, Gaiman alleges that McFarlane created and sold products, *Spawn* Issue 26 and unidentified "derivatives," that did not credit him with contributing to their creation. In *LaCour*, the plaintiff alleged that the defendants were selling a song representing that it was created by R. Kelly without crediting LaCour with authorship. The court in *LaCour* correctly saw the Lanham Act and state unfair competition claims based on attribution for what they really were—claims that assert "a violation of the reproduction and derivative rights protected by the copyright law." *LaCour*, 2000 U.S. Dist. LEXIS at *26; *see also Nimmer* § 1.01[B][1][e] at 1-28.1 ("[A] claim that the ... activity is actionable because B's product replicates A's ... is in fact a disguised copyright infringement claim, and hence preempted.").

It should be noted that other federal circuits have adopted other approaches to limit the applicability of the Lanham Act to attribution cases. The Ninth Circuit has required "bodily

---

[4] The unfair competition claim in this case is based on § 100.18, Wis. Stats. Amended Complaint, ¶¶ 94-98. Gaiman argues that his works contained in *Spawn* Issues 9 and 26 and in the "Angela" series are improperly attributed and that this conduct is "deceptive and misleading." *Id.*, ¶ 81. This is equivalent to the conduct regulated by Illinois's CFDBPA. *See infra* at Part IV for a discussion of section 100.18.

20

appropriation" of a plaintiff's work before reverse passing off under the Lanham Act will even be considered. In the Ninth Circuit, "bodily appropriation" has been interpreted as verbatim copying. *Shaw v. Lindheim*, 919 F.2d 1353, 1364-65 (9th Cir. 1990) (refusing to extend scope of Lanham Act "to cover cases in which the Federal Copyright Act provides an adequate remedy."). *Spawn* Issue 26, the only work specifically identified by plaintiffs where Gaiman is not credited, would clearly not meet the bodily appropriation test adopted by the Ninth Circuit. Mr. Gaiman contributed, in Defendants' words, a "plot line," Reply, ¶ 32, or "partial script." Amended Complaint, ¶ 36. The Second Circuit has also limited the reach of the Lanham Act in cases involving attribution issues, by holding that "as a matter of law, a false copyright notice alone cannot constitute a false designation of origin with the meaning of § 43(a) of the Lanham Act." *Lipton v. The Nature Company*, 71 F.3d 464, 473 (2d Cir. 1995).

In *Mist-On Systems*, this Court joined a growing number of other courts in rejecting Lanham Act section 43(c) claims when equivalent copyright claims have been raised. *Mist-On Systems*, slip op. at 14; *see also Shaw,* 919 F.2d at 1364-65; *Natkin v. Winfrey*, 111 F. Supp. at 1013-14; *LaCour*, 2000 U.S. Dist LEXIS at *10-*20; *Marobie-FL, Inc. v. National Ass'n. of Fire Equipment Distributors and Northwest Nexus, Inc.*, 983 F. Supp 1167 (C.D. Ill. 1997). The defendants urge the Court to reiterate that policy in this case and reject the plaintiffs' Lanham Act claims. The "false designation of origin" Lanham Act claims represent nothing more than the inherent misrepresentation that accompanies allegedly unauthorized copying and reproduction of another's copyrighted work. This is an area where only the Copyright Act provides the remedy, if one is available. The plaintiffs' Lanham Act claim based on false designation of origin and failure to attribute credit are preempted and should be dismissed.

21

The Court should also note that there is no dispute that Gaiman provided McFarlane on an "unsolicited basis" a "plot line" for an Issue of Spawn. Reply, ¶ 32. Gaiman effectively gave McFarlane permission to use the plot line and admits he was compensated for the use of the scene. Reply, ¶ 33. Mr. Gaiman has not alleged that a condition of the agreement for use of the "plot line" was attribution. The Seventh Circuit considered a similar issue in *Kennedy v. National Juvenile Justice Ass'n*, 187 F. 3d 690, 695-96 (7th Cir. 1999). In *Kennedy*, the plaintiff argued that the defendants' failure to provide authorship attribution violated section 43(a) of the Lanham Act. The court held that the plaintiff has licensed his work to the defendants and that having failed to require attribution in the contract he did not have a cause of action under the Lanham Act. The court noted that the plaintiff's "appropriate remedy would stand within the copyright laws." *Id.* at 696. Mr. Gaiman knowingly permitted use of the plot line as admitted in the Amended Complaint and Reply. He has not pled that he contracted for attribution for *Spawn* Issue 26 because he in fact made no such demand. Answer, ¶¶ 30-31. Under Seventh Circuit law, there is no Lanham Act remedy under these circumstances.

## IV.  THE PLAINTIFFS' CLAIM BASED ON SECTION 100.18, WIS. STATS. IS PREEMPTED BY THE COPYRIGHT ACT AND, IN ANY EVENT, IS TIME-BARRED.

The plaintiffs have invoked Wisconsin's law on false advertising, asserting a claim against the defendants under section 100.18, Stats. Amended Complaint, ¶¶ 94-98. The pleadings reveal, however, that this claim is both preempted by their copyright claims and time-barred by the statute of limitations.

### A.  The Plaintiffs' State Law False Advertising Claim Is Preempted.

The plaintiffs' claim based on section 100.18(1), Stats., Wisconsin's false advertising statute, should be dismissed under the same preemption analysis discussed in Section III above.

Indeed, many courts have held that claims under state unfair and deceptive advertising statutes

are preempted when used to attack alleged confusion as to source or authorship.  These cases

hold that such claims are preempted because they are in "essence equivalent to a claim of

copyright infringement." *The Balsamo/Olson Group*, 950 F. Supp. at 898.  As this Court has

held, where a plaintiff's state law claim "arises from the same conduct as its copyright claim[,]

… it is a copyright infringement claim in disguise, and hence preempted." *Mist-On Systems*, slip

op. at 14.

Wisconsin courts have not had occasion to review whether section 100.18(1) permits an

author of a copyrightable work to recover for a failure to attribute authorship, or whether,

conversely, such a claim would be preempted by the Copyright Act.  However, this issue and the

preemption concerns it raises are no different from the concerns cited by other district courts in

the Seventh Circuit that have considered similar claims under equivalent statutes.  Without

exception, courts examining other states' false advertising statutes have held that those statutes

are preempted in the context of a claim for attribution of a copyrightable work.  This Court

should follow those courts and dismiss the plaintiffs' state law false advertising claim as

preempted by the Copyright Act.

For example, in *Goes Lithography*, an Illinois district court held state law claims for

unfair competition preempted by the Copyright Act. 26 F. Supp. 2d at 1047.  Again, in *Tensor

Group, Inc. v. Global Web Systems, Inc.*, the same district court held that the plaintiff's claim for

"deceptive trade practices" under state law merely restated its copyright infringement claim, and

was thus preempted. 1999 U.S. Dist. LEXIS at *7.  A similar situation arose in *Weber v. Geffen

Records, Inc.*, where a district court held that state law claims for accounting, unfair competition,

and unjust enrichment were all preempted by the Copyright Act. 63 F. Supp. 2d at 463.  In

23

*Weber*, the court recognized—as should this Court—that "[r]egardless of the title of each cause of action, plaintiff's basic claim is that because he is a co-author ... defendants' copyrights should not entitle them to the full bundle of privileges that attach to copyright." *Id.* In the case before the Court, the plaintiffs' section 100.18(1) claim is no different than those brought by the plaintiffs in the cases cited above—the plaintiffs' claim arises under the Wisconsin chapter governing trade practices, and simply repeats their claims for copyright ownership and infringement.

More recently, in *Natkin v. Winfrey*, another Illinois district court held that plaintiffs' state law consumer protection claims, which alleged no new facts beyond those incorporated in their copyright claims, were preempted by the Copyright Act. 111 F. Supp. 2d at 1013-14. In the present case, the facts alleged by the plaintiffs in their false advertising claim, concerning Mr. Gaiman's attribution as an author, are the same as those set forth under the plaintiffs' copyright claims pertaining to authorship, ownership, and infringement, and are therefore preempted. The case law is clear: the preemption provision of the Copyright Act, section 301, operates to prohibit state law claims based on the same allegations as a plaintiff's copyright claims. In applying that provision to the facts of this case, the Court should dismiss the plaintiffs' state law claim under section 100.18(1), Stats., as redundant and preempted by the Copyright Act.

### B.  The Plaintiffs' State Law False Advertising Claim Is Time-Barred.

The plaintiffs claim that the McFarlane Defendants violated section 100.18(1) by failing "to properly attribute Gaiman's authorship for, *inter alia*, Spawn® 26, *Pathway to Judgement*, and the Angela™, Cogliostro™, and Medieval Spawn™ characters...." Amended Complaint,

24

¶ 94. The plaintiffs claim that this alleged failure is "deceptive and misleading" as to the origins of those works and that "consumers have been confused." *Id.*, ¶ 95.

The plaintiffs' false advertising claim is not just preempted, it is also barred under the statute of limitations found in section 100.18(11)(b)3, Stats. That section states that "[n]o action may be commended under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." In this case, the allegedly unlawful act that is the subject of the 100.18(1) claim is the failure to properly attribute Gaiman's authorship in the works and characters identified in the claim. But the facts as revealed by the pleadings establish beyond dispute that the alleged failure of attribution occurred more than three years before this suit was filed:

- The Amended Complaint itself alleges that *Spawn* Issue 26 was published "on or about December 1994." Amended Complaint, ¶ 38.

- In addition, the undisputed facts revealed by the pleadings establish that Issue 26 was republished in *Spawn* Volume 6 and *Pathway to Judgement* in 1998. Combined Appendix, Exhibit O (and, pending the Court's ruling on the motion to amend, Exhibit Q).

- Finally, any claim for failure of attribution regarding the characters of Angela, Cogliostro and Medieval Spawn arose no later than the dates the comic books containing those characters were published. Each and every one of those books was first published more than three years ago: *Spawn* Issue 9 in March of 1993 (Amended Complaint, ¶ 35), *Spawn* Issue 26 in December 1994 (*Id.*, ¶ 38), *Spawn* Volume 6 and *Pathway to Judgement* in 1998 (Combined Appendix, Exhibit O and, pending the Court's ruling on the motion to amend, Exhibit Q), *Angela* trade paperback in 1995 (*Id.*, Exhibit P).

In each case, any claim for false advertising based on an alleged failure of attribution accrued more than three years ago. There is no "discovery rule" applicable to section 100.18(11)(b)3. *Skrupky v. Elbert*, 189 Wis. 2d 31, 55-56, 526 N.W.2d 264, 273-74 (Ct. App. 1994). Instead, the Wisconsin Legislature has statutorily determined that a claim under section

100.18(1) accrues upon "the occurrence of the unlawful act or practice which is the subject of the action." *Id.* Because the alleged failure of attribution that forms the basis of the plaintiffs' 100.18(1) claim occurred more than three years ago, that claim is time-barred and must be dismissed.

## V.    THE PLAINTIFFS' STATE LAW CLAIM FOR VIOLATION OF PRIVACY IS PREEMPTED BY THE COPYRIGHT ACT.

In conjunction with their copyright claims, the plaintiffs have alleged that Mr. Gaiman's name and biographical information have publicity value and that under state law, they have been damaged by the defendants' unauthorized use of that information in the publication *Angela's Hunt.* Amended Complaint, ¶¶ 99-102. Because the pleadings show that both conditions for preemption of this state law claim are satisfied—i.e., subject matter and equivalency, *see supra* at 19—the privacy/publicity claim must fail. Indeed, the Court of Appeals for the Seventh Circuit, in the *Baltimore Orioles* case expressly held that the Copyright Act preempts claims based on the right of publicity. This Court should follow *Baltimore Orioles* and dismiss this claim.[5]

### A.    The Works In Which The Plaintiffs Claim Privacy/Publicity Rights Are Fixed In Tangible Form And Come Within The Subject Matter Of Copyright.

The first condition for preemption of state law claims by the Copyright Act is that "the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102." *Baltimore Orioles*, 905 F.2d at 674; *supra* at 19. This requirement is met because the plaintiffs claim publicity rights to

---

[5]    This Court has recognized that the *Baltimore Orioles* case "is still good case law in this circuit and [this district court is] bound to apply it." *ProCD, Inc. v. Zeidenberg*, 908 F. Supp. 640, 657 (W.D. Wis. 1996), *rev'd on other grounds*, 86 F.3d 1447 (7th Cir. 1996).

information contained "on the covers of the graphic novel entitled *Angela's Hunt*."

Amended Complaint, ¶ 99. These rights are "fixed" in the work *Angela's Hunt*, a

compilation of preexisting comic books, a collective work that is a "derivative work" as

defined by sections 101 and 103 of the Act. The underlying and derivative works

combine pictorial and literary work, and fall squarely within the subject matter of

copyright under section 102 of the Copyright Act. Specifically, this provision identifies

"literary works" and "pictorial, graphic and sculptural works" as tangible media of

expression that warrant copyright protection. 17 U.S.C. § 102(a)(1), (5). Because the

plaintiff's alleged publicity right is asserted in this "fixed" work, the first part of the

preemption test is satisfied.

**B.     The Plaintiffs' Claimed Right To Privacy Is
"Equivalent" To Rights Conferred Under The Copyright
Act.**

The second condition of the preemption analysis requires state law rights to be

"equivalent" to rights conferred under the Copyright Act. *Supra* at 19. The Seventh Circuit has

clarified the test for equivalency in the preemption analysis by focusing on conduct that violates

both the state law and copyright.

> A right under state law is "equivalent" to one of the rights within
> the general scope of copyright if it is violated by the exercise of
> any of the rights set forth in § 106 [of the Copyright Act]. That
> section grants the owner of a copyright the exclusive rights to
> reproduce (whether in original or derivative form), distribute,
> perform, and display the copyrighted work. Thus, a right is
> equivalent to one of the rights comprised by a copyright if it is
> "infringed by the mere act of reproduction, performance,
> distribution or display."

*Baltimore Orioles*, 805 F.2d at 676-77 (citations omitted). Under this standard, if the same conduct that the plaintiffs allege violated their copyright is also allegedly violates their right to privacy, the privacy claim is preempted by the Copyright Act.

The plaintiffs allege that the defendants' production of *Angela's Hunt* violates their statutory right to privacy under section 895.50, Stats. Amended Complaint, ¶ 99 (and relevant heading). Specifically, the plaintiffs claim the defendants have violated those rights "by including that information on the covers of the graphic novel entitled *Angela's Hunt*." *Id.* The defendants' creation of this graphic novel is an exercise (or, as the plaintiffs allege, an infringement) of the exclusive, statutory right "to prepare derivative works based upon the copyrighted work." 15 U.S.C. § 106(2). As such, the plaintiffs' claims for copyright infringement are based on the same alleged conduct that premises their state law right to "privacy": preparing a derivative work. The defendants' preparation of a derivative work is statutorily defined as a right conferred by the Copyright Act, so the privacy/publicity claim is preempted and should be dismissed.

The plaintiffs may seize upon the distinction between privacy and publicity rights, in an effort to sway the Court that their "privacy" claim is not preempted because rights to privacy are not equivalent to any right under the copyright law. Indeed, the *Baltimore Orioles* case distinguishes privacy and publicity rights, noting that rights of privacy are *not* preempted. 805 F.2d at 678, n.26. While the plaintiffs' claim arises under a statute entitled "Right of Privacy," the plaintiffs' allegations make clear that their claim is for an alleged violation of the right of publicity. Indeed, the plaintiffs seek the right to "protect[] against the unauthorized exploitation of names [and] likenesses." *Baltimore Orioles*, 805 F.2d at 678, n.26. The plaintiffs state they were damaged by the defendants' allegedly unauthorized use of Mr. Gaiman's name and

28

biographical information. Amended Complaint, ¶¶ 102. The plaintiffs claim that Mr. Gaiman

has earned "fame as an author," that "his name and biographical information have value," and

that he has been repeatedly compensated for "personal appearances at *public* events." *Id.*, ¶ 101

(emphasis added). These allegations hardly speak to matters of privacy, rather, they directly

involve Mr. Gaiman's alleged fame and publicity.

Courts interpreting *Baltimore Orioles* have stated, "we should compare the goal of the

state law [not merely its statutory title] with the purpose of the Copyright Act." *Nash v. CBS,

Inc.*, 704 F. Supp. 823, 833 (N.D. Ill. 1989). The goal of the provision invoked by the plaintiffs,

section 895.50(2)(b), Wis. Stats., is *not* to protect privacy or to "protect[] against intrusions on

seclusion, public disclosure of private facts, and casting an individual in a false light in the public

eye...." *Baltimore Orioles*, 805 F.2d at 678, n.26. Instead, the provision of state law invoked by

the plaintiffs involves the preemptible right to use a person's publicity "for advertising purposes

or for purposes of trade." § 895.50(2)(b), Stats.

The distinction between privacy and publicity is important. The Seventh Circuit appeals

court stated in *Baltimore Orioles* that "the right of publicity ... is equivalent to a copyright and is

preempted to the extent that it is claimed in a tangible work within the subject matter of

copyright." *Id.*[6] The plaintiffs' right to publicity (mistakenly described by the state legislature

and thus the plaintiffs as a right to "privacy") is equivalent to a copyright in this case, that is, the

right to prepare a derivative work. 17 U.S.C. § 106(2). The derivative work *Angela's Hunt*

---

[6]     The *Baltimore Orioles* court noted that the publicity right is preempted by an exercise of copyright.
Nonetheless, "[a] player's right of publicity in his name or likeness would not be preempted if a company, without
the consent of the player, used the player's name to advertise its product." 805 F.2d at 676, n.24. The plaintiffs in
this case allege the former type of conduct, not the latter. They allege that the defendants have violated publicity
rights "by including that [name and biographical information] on the covers of the graphic novel entitled *Angela's
Hunt*." Amended Complaint, ¶ 99. The preparation of the derivative work *Angela's Hunt* is undoubtedly an
exercise of copyright. 17 U.S.C. § 106(2).

compiles original works in which Mr. Gaiman asserts his publicity, tangible comic books and scripts which fall squarely within the subject matter of copyright. 17 U.S.C. § 102(a); *see supra* at 27. Because the original works are fixed in copyrightable subject matter, and because the plaintiffs' publicity claim is equivalent to an exercise of copyright, this claim is preempted by the Copyright Act and should be dismissed.

### VI.    THE PLAINTIFFS' FRAUD CLAIM IS PRECLUDED BECAUSE IT ALLEGES NOTHING MORE THAN A BREACH OF CONTRACT.

Count IV of the Amended Complaint seeks damages for breach of what the plaintiffs call "the 1997 Agreement." In particular, the plaintiffs allege that various statements and correspondence exchanged in 1997 "form a written agreement between Gaiman and McFarlane and the McFarlane Corporate Defendants...." Amended Complaint, ¶ 54. The terms of this alleged contract included the transfer of various materials related to Miracleman to Gaiman and an agreement regarding royalty rates for Angela, Cogliostro and Medieval Spawn. *Id.*, ¶¶ 51-53. In Count IV, the plaintiffs allege that the McFarlane Defendants breached the 1997 Agreement by "interfering with the Plaintiffs' use of the Miracleman intellectual property" and by failing to pay Gaiman "the agreed upon royalties." *Id.*, ¶¶ 75-77.

However, these same factual allegations form the basis of Count VI of the Amended Complaint, which purports to be a tort claim for "fraud." That claim alleges that the McFarlane Defendants committed "common law fraud by entering into the 1997 agreement with no intent to abide by its terms." Amended Complaint, ¶ 84. The Amended Complaint goes on to say that the McFarlane Defendants "made representations to Gaiman during the negotiation of the 1997 Agreement, such as Gaiman would be transferred the Defendants' full rights and claims to the Miracleman character, and that Gaiman would be paid royalties and be given proper attribution

for Defendants' exploitations of Gaiman's works." *Id.*, ¶ 85. The Amended Complaint then alleges that these statements were "false" and that Gaiman relied upon them to his detriment. *Id.*, ¶¶ 86-87.

Under clearly established Wisconsin law, the plaintiffs cannot – without more – allege both a contract claim and a tort claim based upon the same conduct. Wisconsin law makes a clear distinction between contract law and the law of tort. In *Atkinson v. Everbrite, Inc.*, 224 Wis. 2d 724, 592 N.W.2d 299 (Ct. App. 1999), a widow sued her husband's employer asserting that its failure to provide her husband with beneficiary forms prior to his death resulted in her loss of death benefits. The parties agreed that the employer was contractually obligated to provide the forms, but that a breach of contract claim was time-barred by Wisconsin's six year statute of limitations on contract claims. The widow sought to avoid this result by alleging a tort claim against the employer for negligence, thereby availing herself of the "discovery rule" which would have made her claim timely.

The Wisconsin Court of Appeals noted that Wisconsin law honors a firm distinction between tort and contract law:

> The distinction between an action in tort and one in contract depends on the source of the duty or obligation to be enforced. Contract obligations are based on the manifest intent of the parties to be bound by their promise to do, or refrain from doing something. In contrast, tort obligations are in general obligations imposed by law – apart from and independent of promises made and therefore apart from the manifested intention of the parties – to avoid injury to others.

*Atkinson*, 224 Wis. 2d at 728-29, 592 N.W.2d at 301-02 (internal quotations omitted). The court went on to state that the relationship between the plaintiff's husband and his employer "was

31

essentially contractual." *Id.*, 224 Wis. 2d at 729, 592 N.W.2d at 302. The court rejected the widow's tort claim:

> A party's deficient performance of a contract does not give rise to a tort claim. The negligent performance of a duty created by contract ... cannot, without more, create a separate cause of action in tort. There must be a duty existing independently of the performance of the contract for a cause of action in tort to exist.

*Id.* (internal citations and quotations omitted). Only if the plaintiff can identify some legal duty beyond those imposed by the contract will a separate claim lie in tort. *Id.*

The plaintiffs cannot identify any such additional duty under the facts they have alleged in the Amended Complaint. The plain language of the fraud claim makes clear that the source of the duty that the McFarlane Defendants allegedly breached stems from the alleged 1997 Agreement:

- "McFarlane and the McFarlane Corporate Defendants committed common law fraud *by entering into the 1997 agreement*...."

- "McFarlane, on behalf of himself and the McFarlane Corporate Defendants, made representations to Gaiman *during the negotiation of the 1997 Agreement*.... McFarlane made these statements and others with full knowledge that they were false...."

- Gaiman justifiably relied on McFarlane's intentional misstatements in that, *inter alia, he abided by the terms of the 1997 Agreement*...."

Amended Complaint, ¶¶ 84-85, 87.

These statements allege nothing more than a breach of the 1997 Agreement – a claim for breach of contract. The duties that the McFarlane Defendants are alleged to have breached relate to the obligations they allegedly undertook pursuant to a contract. In such a situation, Wisconsin law is clear that a tort claim will not lie. Instead, the plaintiffs cannot have it both ways and are required to pursue their remedies in one or the other. The Amended Complaint expressly and

32

conspicuously alleges that a contract was formed in 1997. Amended Complaint, ¶ 54. For this reason, Count VI of the Amended Complaint, purporting to allege a tort claim for fraud on the same facts, should be dismissed.

## VII.    CONCLUSION.

For the foregoing reasons, the McFarlane Defendants are entitled to judgment on the pleadings on Counts I, II, III, VI, VII, VIII, and IX of the Amended Complaint.

Dated:  May 21, 2002

LA FOLLETTE GODFREY & KAHN

Eugenia G. Carter
Todd G. Smith
Gabriel S. Gross
One East Main Street, Suite 500
Madison, WI  53701
Tel:  (608) 257-3911
Fax:  (608) 257-0609

—and—

Michael A. Kahn
Peter W. Salsich, III
Blackwell Sanders Peper Martin LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel:  (314) 345-6000
Fax:  (314) 345-6060

Attorneys for Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc. and McFarlane Worldwide, Inc.

MN147921_1

33