UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DOCKET NUMBER 41

U.S. DISTRICT COURT
WEST. DIST. OF WISCONSIN

JUN 1 0 2002

FILED/RECEIVED
JOSEPH W. SKUPNIEWITZ, CLERK
CASE NUMBER

| | |
|---|---|
| NEIL GAIMAN and<br>MARVELS AND MIRACLES, L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD MCFARLANE,<br>TODD MCFARLANE PRODUCTIONS,<br>INC., TMP INTERNATIONAL, INC.,<br>MCFARLANE WORLDWIDE, INC., and<br>IMAGE COMICS, INC.,<br><br>Defendants. | Case No.: 02-C-0048-S |

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

This Court has already rejected a previous effort by defendant Image Comics to dismiss plaintiffs' claims. Now, one month before the deadline for filing summary judgment motions, and with the parties in the midst of discovery, the remaining defendants have filed a motion for judgment on the pleadings. As with the previous motion which the Court denied, fact issues preclude dismissal of plaintiffs' copyright claims at this stage of the proceedings, and defendants' rehashed contention that the Copyright Act preempts other claims is incorrect. Accordingly, defendants' motion should be denied.

## II. ALLEGED FACTS

The relevant facts alleged by plaintiffs, which must be taken as true at this stage of the proceedings, are as follows. Plaintiff Neil Gaiman ("Gaiman") is a critically-acclaimed author of comic books and novels. (April 19, 2002 Amended Complaint ("Am. Compl.") ¶ 29.) Defendants Todd McFarlane ("McFarlane"), Todd McFarlane Productions, Inc., TMP International, Inc., and McFarlane Worldwide are engaged in various comic book related businesses, including publishing of the *Spawn* series of comic books. (Id. ¶¶ 3-9, 12.)

In 1992, McFarlane requested that Gaiman author an issue of the *Spawn* series. (Id. ¶¶ 29-30.) McFarlane and Gaiman reached an oral agreement that, among other things, Gaiman would author issue number nine of *Spawn* (hereafter "*Spawn* 9"), that Gaiman would be recognized as a creator in *Spawn* 9, and that Gaiman would retain an ownership interest in each of his creative works. (Id. ¶ 30.) None of Gaiman's work under this agreement was a "work-for-hire". (Id. ¶ 44.) After entering the agreement, McFarlane and the rest of the defendants used Gaiman's fame as a writer to promote *Spawn* 9. (Id. ¶ 31.)

Gaiman followed through on his end of the agreement and authored *Spawn* 9. (Id. ¶ 31.) In the process of doing so, Gaiman created three new characters for the *Spawn* series: *Angela*, *Cogliostro*, and *Medieval Spawn*. (Id. ¶¶ 32-33.) *Spawn* 9 was released in or around March 1993 and sold more than 1.1 million copies. (Id. ¶ 35.) Consistent with the parties' agreement regarding Gaiman's ownership interest in the contents of his work, *Spawn* 9 does not contain a copyright notice identifying the owners of the copyright specifically in *Spawn* 9 and the characters created in that issue. (Id. ¶ 36.) Instead, the issue contains a general copyright notice stating only that "*Spawn* and its logo are trademark™ and copyright © 1993 Todd McFarlane Productions, Inc." (April 29, 2002 Appendix and Supplement to Appendix ("Defs.' App."), Ex. B at 2.)

2

In 1994, Gaiman authored a portion of the script for another of defendants' comic books, *Spawn* 26. (Am. Compl. ¶ 38.) Gaiman's portion of the script for *Spawn* 26 includes an appearance by the *Angela* character he created. (Id. ¶ 38; Defs.' App., Ex. E at 17.) Consistent with the parties' agreement regarding Gaiman's ownership interest in the characters he created, *Spawn* 26 does not contain any copyright notice at all. (Id. ¶ 39; Answer ¶ 39; Defs.' App., Ex. E at 2.)

As a result of the success of Gaiman's work on *Spawn* 9 and 26, McFarlane requested that Gaiman write a short series of comics featuring Gaiman's *Angela* character. (Am. Compl. ¶ 40.) Gaiman's work on the *Angela* series was to be done under the same terms as the parties' 1992 agreement, which included Gaiman's right to retain an ownership interest in his characters. (Id. ¶¶ 40, 30.) The *Angela* comic book series consisted of three issues. Consistent with the parties' agreement regarding Gaiman's ownership interest in his characters, *Angela* 1 contains only a notice regarding ownership of trademark rights, and does not contain any notice at all regarding ownership of the copyrights in the *Angela* series or character. (Id. ¶ 41; Answer ¶ 41.) *Angela* 2 did contain a copyright notice, but it was ambiguous with regard to whether it claimed ownership in the copyright for the *Angela* character, the *Angela* series as a whole, or both. The notice stated: "*Angela*, its logo and its symbol are registered Trademarks™ and copyright © 1995 Todd McFarlane Productions, Inc." (Defs.' App., Ex. H at 2.) Finally, in *Angela* 3, defendants returned to the same notice they used in *Angela* 1, stating: "Angela®, its logo and its symbol are registered Trademarks™ 1995 of Todd McFarlane Productions, Inc." (Id., Ex. I at 2.) Nowhere in *Angela* 3 is there any notice that any of the defendants were claiming any copyright interest in the *Angela* character or any issue of the series. (See id.)

At some point, defendants reprinted all three issues of the *Angela* series in a trade paperback entitled *Angela*. The *Angela* paperback contains a copyright notice indicating it was copyrighted in 1995, but it has not yet been established whether that was the year it was actually published. (See April 29, 2002 Defendants' Counterclaims ¶ 43; Reply ¶ 43.) Nor is there any allegation in the pleadings regarding when, if ever, Gaiman received a copy of the *Angela* trade paperback.

In 1997, the parties entered into negotiations to restate and memorialize their 1992 oral agreement. (Am. Compl. ¶¶ 48-55.) During a telephone call in 1997, McFarlane acknowledged that Gaiman had an ownership interest in the characters Gaiman created, agreeing to exchange Gaiman's rights to the *Cogliostro* and *Medieval Spawn* characters for McFarlane's rights to an unrelated character named *Miracleman*. (Id. ¶¶ 51, 52.) McFarlane further agreed to make his best efforts to give Gaiman credit as the creator of the *Angela* character in her appearances in other comics and media. (Id.) Gaiman memorialized their conversation in a letter that is restated at Paragraph 51 of the Amended Complaint. McFarlane immediately responded to Gaiman's letter and agreed to the terms it set forth, writing in part: "Having read your rather prompt response to my offer today (re: Angela, Cog[liostro], Medieval Spawn, Miracle Man [sic]) all I can say to the points is <u>BEAUTY!</u>" (Id. ¶ 52.) In August of 1997, McFarlane and the defendants appeared to confirm their agreement by sending Gaiman an accounting and royalty payment, as well as some material related to *Miracleman*. (Id. ¶ 55.)

But McFarlane never intended to abide by the agreement. (Am. Compl. ¶ 56.) Unbeknownst to Gaiman, shortly after they entered into the agreement, the defendants began to file trademark applications for the name "Miracleman," in direct contravention of the parties' agreement that Gaiman would own all rights in that character. (Id.)

Defendants allege that subsequently, in 1998, they began to republish *Spawn* 26, including the portion of that work authored by Gaiman, in a trade paperback entitled *Spawn* Volume 6. (Defs.' Counterclaim ¶ 35.) *Spawn* Volume 6 contains a notice stating: "Spawn, its logo and its symbols are registered trademarks 1998 of Todd McFarlane Productions, Inc. All other related characters are TM and © 1998 Todd McFarlane Productions, Inc." (Defs.' App., Ex. O at 4.) However, Gaiman does not know when *Spawn* Volume 6 was published (compare Counterclaim ¶ 35 and May 13, 2002 Pls.' Reply ¶ 36) and there are no allegations stating when, if ever, Gaiman received a copy of *Spawn* Volume 6. Despite McFarlane's promise to give Gaiman creator credit for *Angela's* appearances in future works, *Spawn* Volume 6 makes no mention of Gaiman's significant contribution to the script of *Spawn* 26. (See Defs.'s App., Ex. O.) *Spawn* Volume 6 gives McFarlane sole credit for writing the stories it contains, stating: "Stories Todd McFarlane." (Id. at 4.)

Finally, defendants are currently republishing the *Angela* series in a trade paperback entitled *Angela's Hunt*. (Am. Compl. ¶ 42.) The back cover and inside back cover of *Angela's Hunt* highlight Gaiman's authorship of the *Angela* series, stating, in part:

> NEIL GAIMAN, best known for his comic book cult classic *Sandman*, wrote this popular mini-series about the warrior angel Angela. Gaiman, who has won several awards for his fantasy fiction books, now writes screen adaptations including the critically acclaimed *Princess Mononoke* animated feature and *Neverwhere*, a six-part series for BBC television.

(Id.) Defendants never obtained Gaiman's consent to use his name and biographical information to promote *Angela's Hunt*. (Am. Compl. ¶ 43.) Nor have defendants ever paid Gaiman for the use of his name and biographical information to promote that work. (Id.)

003.361371.2                                    5

## III. ARGUMENT

### A.   Dismissal Is Inappropriate At This Stage Of The Proceedings.

Motions for judgment on the pleadings are viewed under the same standard applied to motions to dismiss. "Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. . . . Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998) (internal citations and quotation marks omitted). The court must view the facts as alleged in the pleadings in the light most favorable to the nonmoving party. Id. "Plaintiffs need not demonstrate their entitlement to a favorable judgment, only that they have a cognizable claim." (Shabaz, J., May 3, 2002 Memorandum and Order at 5 (citing Trevino v. Union Pacific R. Co., 916 F.2d 1230, 1234 (7th Cir. 1990).) In this case, issues of fact revealed by the pleadings preclude dismissal of plaintiffs' copyright claims.

### B.   The Pleadings Do Not Establish That Gaiman's Copyright Claims Are Time-Barred.

#### 1.   The Date Gaiman's Claim Accrued Cannot Be Determined.

Under the Copyright Act, claims for copyright ownership must be brought within three years of the date they accrue. 17 U.S.C. § 507(b). In the Seventh Circuit, claims under the Copyright Act do not accrue "until the plaintiff learned or by reasonable diligence could have learned that he had a cause of action." Taylor v. Meirick, 712 F.2d 1112, 1117 (7th Cir. 1983).[1]

---

[1] Although the court in Taylor was addressing a claim of copyright infringement, defendants appear to agree that its holding applies to copyright ownership claims as well. (See Defs.' Br. at 7.) Nevertheless, defendants also cite to the standard for accrual set forth by the Ninth Circuit in Zuill v. Shanahan, 80 F.3d 1366, 1369 (9th Cir. 1996). The Zuill court held that copyright co-ownership claims accrue only when "plain and express repudiation of co-ownership is communicated to the claimant." Id. Gaiman's copyright ownership claims also meet that standard. As discussed infra, the ambiguous and conflicting copyright notices contained in defendants' publications were far from "plain and unambiguous," McFarlane's 1997 misrepresentations regarding Gaiman's ownership rights negated any statements

Whether a party's claim has accrued is judged by the "reasonable person" standard. See id. at 1118. The statute is tolled if a reasonable person would not have discovered that his rights under the Copyright Act were being violated. Id. Whether a party's actions were "reasonable" is a question of fact. See Sellars v. Perry, 80 F.3d 243, 245 (7th Cir. 1996). Tolling may occur where the opposing party gave the claimant false assurances relating to the existence of a claim. See Taylor, 712 F.2d at 1119.

Looking only at the pleadings in this case, it is not possible to establish when Gaiman reasonably should have discovered that McFarlane was usurping his copyright interests in the issues of *Spawn* and *Angela* that Gaiman authored and the characters that Gaiman created. Defendants contend that their copyright notices alone should have alerted Gaiman to defendants' acts. But the notices are far from clear, especially when read in the context of McFarlane's agreement that Gaiman would retain an ownership interest in the works he created. The copyright notice in *Spawn* 9 does not state that it is claiming a copyright in that particular issue or the characters contained within it. (Am. Comp. ¶ 36.) *Spawn 26* does not contain any copyright notice at all. (Am. Compl. ¶ 39.) The notices in the *Angela* series are inconsistent. *Angela* 1 contains no copyright notice. (Id. ¶ 41.) While *Angela* 2 does include a notice, the very next issue of *Angela* returned to the practice of not including any copyright notice at all. (Id.) Defendants assert that they published the *Angela* trade paperback containing a full copyright notice in 1995, but there is no evidence regarding when that issue was published and whether Gaiman ever received a copy of it. Regardless, after the publication of the *Angela* series, during their contract negotiations in 1997, McFarlane expressly reaffirmed Gaiman's ownership interest in the *Angela*, *Cogliostro*, and *Medieval Spawn* characters Gaiman had

---

contained in copyright notices prior to that date, and the pleadings do not establish that the notice in *Spawn* Volume 6 was published in 1998 or that Gaiman ever received a copy of that issue.

created. (See Am. Compl. ¶¶ 51-52.) In fact, Gaiman's willingness to trade his ownership interests in *Cogliostro* and *Medieval Spawn* was fundamental to the parties' deal. (Id.)

The reason Gaiman was not aware of the existence of his copyright ownership claim in 1997 was because of McFarlane's fraudulent representations regarding exchanging McFarlane's rights to the *Miracleman* character for Gaiman's rights in Gaiman's characters. (See id. ¶¶ 51-52, 56, 84-87.) Based upon the facts contained in the pleadings, there is no reason to assume that Gaiman would not have brought this suit in 1997 had McFarlane refused to enter into an agreement regarding their respective rights in the characters.

The best that defendants can do is point to the copyright notice contained in *Spawn* Volume 6, in which they do claim ownership to all *Spawn*-related characters. But despite the 1998 date contained in that notice, there is no evidence that is the year in which it was actually published. Given the inconsistency of defendants' other notices, their accuracy is justifiably suspect and can not, by themselves, form the basis for precluding Gaiman's claims.

Nor is there any evidence regarding when, if ever, Gaiman received a copy of that publication. The Copyright Act does not impose a duty on Gaiman to continuously monitor the defendants' publications to determine whether they are publishing works in violation of his rights. See Taylor, 712 F.2d at 1118 ("We doubt that every time the sales of a publication dip, the publisher must, to preserve his right to sue for copyright infringement, examine all of his competitors' publications to make sure none is infringing any of his copyrights."). The lack of any evidence or allegation regarding when Gaiman actually received a copy of *Spawn* Volume 6 distinguishes this case from Netzer v. Continuity Graphic Assocs., 963 F. Supp. 1308 (S.D.N.Y. 1997), the decision relied on by defendants. In Netzer, which dealt with a motion for summary judgment rather than judgment on the pleadings, the court had uncontested *evidence* that the plaintiff had actually received the publication containing the copyright notice. See 963 F. Supp.

at 1315-16. In this case, defendants have yet to present any evidence regarding when *Spawn* Volume 6 was published and when, if at all, Gaiman received a copy of it. While it is not clear that receipt of a publication in and of itself establishes "notice" for purposes of the statute of limitations, if Gaiman did not receive a copy of *Spawn* Volume 6 until 1999, then his claim may be timely despite any notice contained in that publication.

### 2. Equitable Estoppel Bars Defendants From Asserting A Statute of Limitations Defense.

McFarlane's fraudulent representations to Gaiman about Gaiman's ownership interests in his works and the characters he created equitably estops the defendants from asserting a statute of limitations defense. A motion to dismiss on statute of limitation grounds should not be granted where the plaintiff has alleged facts supporting equitable estoppel. See, e.g., In re Bridgestone/Firestone, Inc., 2002 WL 916984 (S.D. Ind. 2002) (denying motion for judgment on the pleadings where a set of facts might exist supporting equitable estoppel). Equitable estoppel may preclude a statute of limitations defense where a defendant has made misrepresentations and plaintiff's reliance on those representations prevents him from suing on time. Smith v. City of Chicago Heights, 951 F.2d 834, 842 (7th Cir. 1992) (vacating grant of motion to dismiss where "scant record" precluded ruling on equitable estoppel).

Gaiman has pled that McFarlane fraudulently represented that Gaiman continued to have ownership rights in the works Gaiman created for the defendants. In 1992, McFarlane and Gaiman agreed that Gaiman would have such an ownership interest and, in 1997, McFarlane reaffirmed the existence of those rights. (Am. Compl. ¶¶ 30, 51-52.) Indeed, Gaiman's willingness to trade some of those rights to McFarlane was the very consideration for their 1997 agreement. (Id. ¶¶ 51-52.) Yet McFarlane never had any intention of abiding by that agreement and immediately began breaching its terms without Gaiman's knowledge. (Id. ¶¶ 56,

84-87.) Had it not been for McFarlane's fraud, Gaiman would have known in 1997 that his ownership of the copyrights was in dispute. Given McFarlane's conduct as alleged in the pleadings, there is a significant question of fact about whether defendants should be permitted to rely on their statute of limitations defense.

### C. Gaiman's Copyright Infringement Claims Must Not Be Dismissed Because Gaiman Has A Valid Claim For Copyright Ownership.

The conclusion that Gaiman has a valid claim for copyright ownership also disposes of defendants' argument that Gaiman's copyright infringement claims should be dismissed. Defendants argue that if Gaiman's copyright ownership claims are barred, then he lacks the predicate for alleging infringement. However, because Gaiman does have a valid claim for copyright ownership, his copyright infringement claim must be allowed to proceed. Defendants have presented no other basis for dismissing Gaiman's infringement claims.

### D. Gaiman's Lanham Act § 43(a) Claim Is Not Preempted.

Gaiman has alleged a claim for "reverse passing off"[2] under Section 43(a) of the Lanham Act, based upon defendants' failure to provide him with any attribution for the portion of the script defendants admit he wrote for *Spawn 26* and *Pathway to Judgement*. (Am. Compl. ¶ 38, 88-93; Ans. ¶ 38, 88-93.) According to defendants, the Copyright Act preempts all such claims under the Lanham Act. But the scope of preemption is not as broad as defendants suggest.

In <u>Kennedy v. Nat'l Juvenile Detention Ass'n</u>, 187 F.3d 690 (7th Cir. 1999), the Seventh Circuit acknowledged that copyright claims and Lanham Act claims can coexist where an author seeks to enforce his right to attribution. The plaintiff in <u>Kennedy</u> had alleged claims for both copyright infringement and reverse passing off. <u>Id.</u> Although the <u>Kennedy</u> court did not

---

[2] Also known as "reverse palming off."

expressly address the preemption issue, it noted that Lanham Act § 43(a) claims protect rights that are distinct from those protected by the Copyright Act, stating: "One situation in which an author could file a Lanham Act claim, as opposed to a copyright infringement claim, would be to ensure that his name is associated with a work when the work is used; this is known as a 'reverse passing off' claim." Id. at 696. See also Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, (2nd Cir. 1994) ("[T]he Copyright Act and the Lanham Act address different harms. Through a copyright infringement action, a copyright owner may control who publishes, sells or otherwise uses a work. Through a Lanham Act action, an author may ensure that his or her name is associated with a work when the work is used.").

Analysis of the preemption issue under the standard established by the Seventh Circuit in Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 674 (7th Cir. 1986), confirms that the Copyright Act does not preempt all claims brought pursuant to Lanham Act § 43(a).³ The Court in Baltimore Orioles stated that preemption occurs if two conditions are satisfied: "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in [17 U.S.C.] § 102. Second, *the right must be equivalent to any of the rights specified in [17 U.S.C.] § 106.*" Id. (emphasis added). In this case, the second prong is not satisfied because the right Gaiman is seeking to protect under the Lanham Act – the right to attribution – is not the equivalent of any right protected by the Copyright Act.

As this Court noted in its previous decision denying Image Comics' motion to dismiss, the Copyright Act does not grant the author of a written work the right to receive attribution for his creation. See May 3, 2002 Memorandum and Order at 9-10. See also 17

U.S.C. § 106. Although the Copyright Act does provide a limited right of attribution for authors of "works of visual art," see 17 U.S.C. § 106A, books and periodicals such as the comics and graphic novels at issue here are expressly excluded from the Act's definition of "work of visual art." See 17 U.S.C. § 101. The Copyright Act's preemption provision makes clear that this limited right of attribution only preempts other laws to the extent they relate to "works of visual art" covered by the Act. Specifically, the Act provides: "all legal or equitable rights that are equivalent to the rights conferred by section 106A with respect to works of visual art *to which the rights conferred by section 106A apply* are governed exclusively by section 106A." 17 U.S.C. § 301(f)(1)(emphasis added). The legislative history for § 106A confirms this conclusion, stating that "'the new Federal law will not preempt State causes of action relating to works that are *not covered by the law*.'" H.R. Rep. No. 101-514, 101st Cong., 2d Sess. 21, 8 U.S.C.C.A.N. at 6931 (1990) (emphasis added).

The only federal courts of appeals that have directly addressed the Lanham Act § 43(a) preemption issue, the Second and Ninth Circuits, have not adopted the sweeping approach suggested by defendants. The Second Circuit has merely stated that "a false copyright notice *alone*" cannot form the basis for a § 43(a) claim. Lipton v. The Nature Co., 71 F.3d 464, 473 (2nd Cir. 1995) (emphasis added). The Ninth Circuit has held that reverse passing off claims are *not* preempted by the Copyright Act where the defendant has engaged in "bodily appropriation" of the author's work. Shaw v. Lindheim, 919 F.2d 1353, 1364 (9th Cir. 1990).

Gaiman's Lanham Act claim survives under both the Second and Ninth Circuit's standards. Gaiman's claim is not based solely upon defendants' erroneous copyright notice; it is based upon defendants' failure to adhere to their contractual agreement to provide Gaiman with

---

[3] Although the court in Baltimore Orioles was addressing the Copyright Act's preemption of state laws, defendants cite to the decision in their brief and, thus, appear to agree that the court's analysis applies by

credit for *Angela*'s appearance in the works and upon defendants' affirmative representations – separate from any statements made in their copyright notices – that McFarlane is the sole author of *Spawn* 26 and *Pathway to Judgement*, by stating "Story Todd McFarlane" and "Stories Todd McFarlane" in their credit pages. (See Defs.' App., Exs. E at 2 and Q at G1006.) See also Montgomery v. Noga, 168 F.3d 1282, 1298 (11th Cir. 1999) (finding § 43(a) claim appropriate where, in addition to false copyright notice, defendants stated they "owned" the product). As for "bodily appropriation," defendants admit that they "merged [Gaiman's text] into the main body of text" for *Spawn* 26. (Ans. ¶ 38.) Defendants have made no effort to show that their "merge" was anything other than wholesale copying of Gaiman's work.

For the same reasons, Gaiman's Lanham Act claim also survives under Judge Crabb's decision in Mist-On Systems, Inc. v. Gilley's European Tan Spa, Slip-Op, Case No. 02-C-0038-C (W.D. Wis. May 2, 2002). Judge Crabb did not conclude that the Copyright Act preempts Lanham Act § 43(a) claims in all instances. Instead, she held that "plaintiff cannot recover under the Lanham Act for the same alleged conduct upon which it bases its copyright claim." Id. at 15. As discussed, Gaiman's reverse passing off claim arises from conduct distinct from that which gives rise to his copyright claims. The facts that defendants improperly gave McFarlane separate credit as sole author of *Spawn* 26 and *Pathway to Judgement*, and that McFarlane agreed to give Gaiman creator credit in all of *Angela*'s future appearances, are irrelevant to Gaiman's copyright claims, but form independent bases for his claim for attribution.

Defendants also cite a variety of district court decisions in support of their position. To the extent those decisions suggest that the Copyright Act preempts *all* Lanham Act claims dealing with copyrightable material, those decisions are inconsistent with the Seventh Circuit's decisions in Kennedy and Baltimore Orioles, and the Copyright Act itself. None of the

---

analogy to the preemption of federal law claims. See Defs.' Br. at 18.

decisions relied upon by the defendants even cite to Kennedy or address the fact that the Copyright Act expressly limits its scope of preemption when dealing with rights to attribution. See, e.g., LaCour v. Time Warner, Inc., 2000 WL 688946 (N.D. Ill. 2000). As discussed above, a full consideration of Seventh Circuit case law and the Copyright Act's provisions shows that Gaiman's claim under Lanham Act § 43(a) must not be dismissed.

Finally, defendants suggest that they were not required to provide Gaiman with attribution for his contribution to *Spawn* 26 and *Pathway to Judgement* because Gaiman supposedly licensed them to use his work without attribution. The pleadings state otherwise. Plaintiffs have alleged that McFarlane agreed that Gaiman would be recognized as a creator of any works derived from *Spawn* 9. (Am. Compl. ¶ 30.) *Spawn* 26, with its story relating to *Angela*, is such a derivative work. See 17 U.S.C. § 101 ("A 'derivative work' is a work based on one or more preexisting works. . ."). Moreover, in 1997 McFarlane specifically agreed that Gaiman would receive credit as a creator of *Angela* in all of her future appearance. (Am. Compl. ¶¶ 51-52.) At this stage of the proceedings, there is no basis for concluding that providing Gaiman with attribution for his work on *Spawn* 26 was not a condition of his agreement with McFarlane.

### E.     Plaintiffs' State Law False Advertising Claim Is Not Preempted.

Defendants renew the argument made in Image Comics' previous motion to dismiss that the Copyright Act also preempts Gaiman's false advertising claim under Wisconsin Statute § 100.18(1). The Court rejected that argument before and nothing in defendants' current brief should change the Court's analysis.

Again, under the standard set forth in Baltimore Orioles, the Copyright Act only preempts state laws to the extent they protect rights equivalent to those granted by the Copyright Act. See 805 F.2d at 674. Defendants rely on the same district court decisions to support their

argument for preemption of Gaiman's state law claim as they do for their Lanham Act argument. And again, those decisions repeat the same flawed analysis, failing to consider that the Copyright Act does not protect the right to attribution. See, e.g., Tensor Group, Inc. v. Global Web Systems, Inc., 1999 WL 617818 (N.D. Ill. 1999).[4] As this Court noted in its previous decision, "preemption of any rights of attribution by the Copyright Act is limited solely to works of visual art. Any potential state law right similar to attribution for works other than visual is not preempted." May 3, 2002 Memorandum and Order at 10.

The conduct shown by the pleadings, that defendants have misrepresented the authorship of *Spawn* 26 and *Pathway to Judgement* by stating "Story Todd McFarlane" and "Stories Todd McFarlane," is not something Gaiman can remedy via the Copyright Act. While Gaiman has a right under the Copyright Act to sue for defendants' use of an incorrect copyright notice, he has no right under the Act to seek proper attribution. Accordingly, his state law claim for false advertising must not be dismissed.

F.  **Plaintiffs' State Law False Advertising Claims Are Not Time-Barred.**

Claims under Wis. Stat. § 100.18(1) accrue at the time of the "occurrence of the unlawful act." Wis. Stat. § 100.18(11)(b)(3). Where a defendant engages in a ongoing course of misconduct, a plaintiff's claim is timely if a portion of the misconduct occurred within three years of the date of filing. See Werner v. Pittway Corp., 90 F. Supp. 2d 1018, 1033 (W.D. Wis 2000). In this case, plaintiffs have alleged that defendants' acts of misrepresenting the authorship of *Spawn* 26 and *Pathway to Judgment* is ongoing. (See Am. Compl. ¶ 38

---

[4] Defendants incorrectly assert that "[w]ithout exception, courts examining other states' false advertising statutes have held that those statutes are preempted in the context of a claim for attribution of a copyrightable work." (Defs.' Br. at 23.) In fact, federal courts in Illinois have concluded that the Copyright Act does not preempt claims under that state's false advertising statute. See, e.g., Gannett Satellite Information Network, Inc. v. Rock Valley Community Press, Inc., 1994 WL 606171, *6 (N.D. Ill. 1994); Stillman v. Leo Burnett Co., Inc., 720 F. Supp. 1353, 1362 (N.D. Ill. 1989).

("Defendants are <u>currently</u> republishing Spawn® 26 in a graphic novel format entitled *Pathway to Judgement*.").) Thus, defendants' unlawful acts are continuing to occur and plaintiffs' state law false advertising claim is not barred by the three-year statute of limitation.

### G.  Gaiman's Right To Privacy Claims Are Not Preempted.

Defendants also renew the argument previously made by Image Comics that Gaiman's claims for statutory right of privacy and common law misappropriation of name and identity are preempted by the Copyright Act. Again, the defendants have not presented a reason to reverse the Court's previous decision.

The Seventh Circuit in <u>Baltimore Orioles</u> held that claims based on the right to publicity *may* be preempted by the Copyright Act. However, the court further held that preemption only occurs in instances where the author <u>consented</u> to use of the material being publicized. 805 F.2d at 676 nn.22 & 24 ("Because [the party] did not consent to the telecast . . . his right of publicity would not be subject to preemption"; "[a] player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product"). The Fifth Circuit has confirmed this reading of <u>Baltimore Orioles</u> and, in a case closely analogous to the one at hand, held that the Copyright Act did not preempt recording artists' common law right to prevent the unauthorized use of their names and likeness to promote CDs, tapes, and music catalogues. See <u>Brown v. Ames</u>, 201 F.3d 654, 659 & n.3 (5th Cir. 2000).

Because Gaiman never consented to Image's use of his name or biographical material to promote *Angela's Hunt*, his privacy and misappropriation claims are not preempted. Defendants seem to suggest that the fact that *Angela's Hunt* is a derivative work of Gaiman's previous material somehow leads to preemption. But the fact that the Copyright Act may permit defendants to create derivative works is irrelevant to whether or not Gaiman consented to their

using his name and biographical information <u>to promote</u> that work.  Gaiman's biographical information was not even included in the original *Angela* publications.  Indeed, adoption of defendants' analysis would lead to absurd results, permitting defendants unfettered use of Gaiman's name and biographical information to promote any work remotely derivative of his original *Angela* creations, such as movies or toys that incorporate some small piece of Gaiman's contribution, without having to pay Gaiman a cent for that use.  It is precisely that type of abuse Gaiman is seeking to remedy here.

       **H.**    **Gaiman's Intentional Misrepresentation Claim Is Permitted Under Wisconsin Law.**

Finally, defendants are incorrect in their assertion that Gaiman's claim for intentional misrepresentation[5] is not permitted under Wisconsin law.  The case defendants rely on, <u>Atkinson v. Everbrite, Inc.</u>, 224 Wis. 2d 724, 592 N.W.2d 299 (Ct. App. 1999), dealt only with claims for strict responsibility misrepresentation and negligent misrepresentation.  <u>See id.</u> at 727, 592 N.W.2d at 301.  The <u>Atkinson</u> court did not address whether claims for intentional misrepresentation are precluded.  <u>See id.</u>  In fact, the Wisconsin Court of Appeals has expressly held that claims for intentional misrepresentation are permissible where the misrepresentation induces the party to enter the contract.  See <u>Douglas-Hanson Co., Inc. v. B.F. Goodrich Co.</u>, 229 Wis. 2d 132, 143-44, 598 N.W.2d 262, 268 (Ct. App. 1999), *aff'd without opinion*, 233 Wis. 2d 276, 607 N.W.2d 621 (2000).[6]  In addition, tort claims are permitted where the contract at issue relates to the provision of services, such as the writing and creative services at issue here.  <u>See</u>

---

[5] Gaiman's claim carries the general label "Fraud," but his factual allegations clearly plead intentional misrepresentation.  (<u>See, e.g.</u>, Am. Compl. ¶ 87 ("McFarlane's intentional misstatements")).

[6] Although the Seventh Circuit in <u>Home-Valu, Inc. v. Pep Boys</u>, 213 F.3d 960, 965 (7th Cir. 2000), took the approach that intentional misrepresentation claims are barred under Wisconsin law, the Wisconsin Court of Appeals subsequently reaffirmed the contrary holding of <u>Douglas-Hanson</u>.  See <u>Kailin v. Armstrong</u>, 2002 WL 307665 *8-9 (Wis. Ct. App. 2002).  Moreover, the <u>Home-Valu</u> court did not address whether contracts for services are subject to its holding.

Hap's Aerial Enter., Inc. v. General Aviation Corp., 173 Wis. 2d 459, 496 N.W.2d 680 (Ct. App. 1992). See also Daanen & Janssen, Inc. v. Cedarapids, Inc., 216 Wis. 2d 395, 417, 573 N.W.2d 842, 851-52 (1998) (declining to address whether misrepresentation claims are precluded in context of contract for services). Accordingly, the Court should deny defendants' motion to dismiss Gaiman's claim for intentional misrepresentation.

## IV. CONCLUSION

For all of the reasons stated above, defendants' motion for judgment on the pleadings must be denied.

Dated this 10th day of June, 2002.

FOLEY & LARDNER

By: _____
Allen A. Arntsen
Joan L. Eads
Jeffrey A. Simmons
*Attorneys for Plaintiffs*

Foley & Lardner
150 East Gilman Street
Madison, WI 53703-2808
Tel: (608) 257-5035
Fax: (608) 258-4258

Of Counsel:
Mark Hellmann
Michael Rechtin
Joseph Talarico
Foley & Lardner
1 IBM Plaza
220 N. Wabash Ste. 3300
Chicago, IL 60611
Tel: (312) 755-1900
Fax: (312) 755-1925

Co-Counsel:
Kenneth F. Levin
Kenneth F. Levin and Associates
20 North Wacker Drive, Suite 2200
Chicago, IL 60606
Tel: (312) 984-6000
Fax: (312) 977-2990

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NEIL GAIMAN, and
MARVELS AND MIRACLES, LLC,

        Plaintiffs,

Case No.: 02-C-0048-S

v.

TODD MCFARLANE,
TODD MCFARLANE PRODUCTIONS, INC.,
TMP INTERNATIONAL, INC.,
MCFARLANE WORLDWIDE, INC., and
IMAGE COMICS, INC.,

        Defendants.

## CERTIFICATE OF SERVICE

I, Brenda Allen-Johnson, hereby certify that I am an employee of Foley & Lardner, that on the 10th day of June, 2002, I caused a true and correct copy of **Plaintiffs' Brief in Response to Defendants' Motion for Judgment on the Pleadings** to be served on counsel for defendants as shown below:

| **Via Facsimile and U.S. Mail:** <br> Facsimile No.: (949) 790-6301 | **Via Hand Delivery:** | **Via Facsimile and U.S. Mail:** <br> Facsimile No. (314) 345-6060 |
|---|---|---|
| R. Scott Feldmann, Esq. <br> Brobeck, Phleger & Harrison, LLP <br> 38 Technology Drive <br> Irvine, CA 92618-5312 | Eugenia G. Carter, Esq. <br> LaFollette, Godfrey & Kahn <br> One East Main Street, Suite 500 <br> Madison, WI 53703 | Michael A. Kahn, Esq. <br> Blackwell Sanders, LLP <br> 720 Olive Street, Suite 2400 <br> St. Louis, MO 63101 |

Brenda Allen-Johnson

003.345959.4