DOCKET
NUMBER

42

U.S. DISTRICT COURT
WEST. DIST. OF WISCONSIN

JUN 2 0 2002

FILED/RECEIVED
JOSEPH W. SKUPNIEWITZ, CLERK

CASE
NUMBER

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NEIL GAIMAN and MARVELS AND           )
MIRACLES, LLC,                        )
                                      )
        Plaintiffs,                   )
                                      )
    v.                                )
                                      )       Case No. 02-C-0048-S
TODD McFARLANE, TODD                  )
McFARLANE PRODUCTIONS, INC.,          )
TMP INTERNATIONAL, INC., and          )
McFARLANE WORLDWIDE, INC.             )
                                      )
        Defendants-Counterclaimants,  )
                                      )
    And                               )
                                      )
IMAGE COMICS, INC.,                   )
                                      )
        Defendant.                    )

---

### REPLY BRIEF OF DEFENDANTS TODD McFARLANE, TODD McFARLANE PRODUCTIONS, INC., TMP INTERNATIONAL, INC. AND McFARLANE WORLDWIDE, INC. IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

---

LaFollette Godfrey & Kahn          Blackwell Sanders Peper Martin LLP
One East Main Street, Suite 500    720 Olive Street, Suite 2400
Madison, WI 53701                  St. Louis, MO 63101
Tel: (608) 257-3911                Tel: (314) 345-6000
Fax: (608) 257-0609                Fax: (314) 345-6060

*LaFollette Godfrey & Kahn is the*
*Madison office of Godfrey & Kahn, S.C.*

# TABLE OF CONTENTS

I.   THE PLEADINGS ALONE DEMONSTRATE THAT THE PLAINTIFFS'
     COPYRIGHT OWNERSHIP AND INFRINGEMENT CLAIMS ARE TIME-BARRED.... 1

     A.   The Pleadings Themselves Demonstrate The Accrual Of The Plaintiffs' Copyright
          Claims More Than Three Years Before They Initiated This Action. ................................. 3

          1.   The registration of each comic book with the U.S. Copyright Office bars the
               plaintiffs' copyright claims. ................................................................................ 3

          2.   The McFarlane Defendants' copyright notices are sufficient......................................... 6

          3.   The plaintiffs had constructive knowledge of the McFarlane Defendants'
               expression of sole copyright ownership. ......................................................... 8

          4.   The pleadings do not allege facts supporting equitable tolling....................................... 9

     B.   The Pleadings Do Not Support A Finding Of Equitable Estoppel. ................................. 10

          1.   The pleadings reveal no facts suggesting that the McFarlane Defendants
               did anything to prevent this suit. .................................................................. 10

          2.   Even if equitable estoppel were alleged, the pleadings establish that the statute of
               limitations would have been tolled for three months at most........................................ 11

II.  THE PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS CANNOT
     ENDURE IN THE ABSENCE OF VALID COPYRIGHT OWNERSHIP CLAIMS.......... 13

III. THE PLAINTIFFS' LANHAM ACT CLAIM FOR "REVERSE PASSING OFF" IS
     PREEMPTED BY THE COPYRIGHT ACT........................................................................ 13

     A.   The Plaintiffs' "Reverse Passing Off" Claim is Preempted Because It Arises From
          Copyrightable Subject Matter. ........................................................................ 14

     B.   The "Reverse Passing Off" Claim, Limited To *Spawn* Issue 26 And *Pathway to
          Judgement*, Is Time-Barred........................................................................... 16

IV.  THE PLAINTIFFS' STATE LAW FALSE ADVERTISING CLAIM IS BOTH
     PREEMPTED BY THE COPYRIGHT ACT AND TIME-BARRED................................. 17

     A.   The Plaintiffs' State Law Claim For False Advertising Is Preempted By The
          Copyright Act.................................................................................................. 17

     B.   The Plaintiffs' State Law Claim For False Advertising Is Barred By The Statute of
          Limitations. .................................................................................................... 18

i

V.   THE PLAINTIFFS' CLAIM FOR VIOLATION OF PRIVACY IS PREEMPTED
     BY THE COPYRIGHT ACT. .............................................................................................. 19

VI.  THE PLAINTIFFS' CLAIM FOR FRAUD FAILS UNDER STATE LAW
     BECAUSE IT IS REDUNDANT IN LIGHT OF THE CONTRACT CLAIMS. ................. 21

CONCLUSION. ............................................................................................................................. 24

Defendants Todd McFarlane, Todd McFarlane Productions, Inc. ("TMP"), TMP International, Inc. ("TMPI") and McFarlane Worldwide, Inc. (collectively, the "McFarlane Defendants"), by their counsel, LaFollette Godfrey & Kahn and Blackwell Sanders Peper Martin LLP, submit this Reply Brief in support of their Motion for Judgment on the Pleadings.

## I.  THE PLEADINGS ALONE DEMONSTRATE THAT THE PLAINTIFFS' COPYRIGHT OWNERSHIP AND INFRINGEMENT CLAIMS ARE TIME-BARRED.

The plaintiffs concede that their copyright ownership claims are subject to the Copyright Act's three-year statute of limitations on civil actions, 17 U.S.C. § 507(b).  Response Brief at 4. They then attempt to save these claims from dismissal through several tactics aimed at avoiding the plain and undisputed facts revealed by the pleadings.  First, they argue that from the pleadings alone the Court cannot determine when these claims accrued (1) because, irrelevantly, they allege that "the [McFarlane Defendants' copyright] notices are far from clear" and are "inconsistent," *id.* at 7; (2) because, allegedly, there is no evidence as to whether the works at issue were in fact published in the year indicated in the copyright notices, *id.* at 8, and (3) because they contend that Gaiman's and McFarlane's communication pertaining to certain alleged "rights" in 1997 somehow tolled the statute of limitations.  *Id.*  Next, the plaintiffs contend that their ownership claims are not time-barred because the doctrine of equitable estoppel precludes the application of the statute of limitations.  These arguments mischaracterize the pleadings and misapply the doctrine of equitable estoppel, and cannot redeem the plaintiffs' time-barred claims.

All the copyright claims in this case may be resolved by examining the copyright registrations and notices in five separate comic books: *Spawn* Issues 9 and 26 and *Angela* Issues 1, 2, and 3 and the three trade paperbacks in which the comic books were reprinted.  The pleadings establish the following undisputed facts regarding those works:

1

- ***Spawn* Issue 9:**[1]

  - McFarlane federally registered copyright in this work, as a work for hire, with the United States Copyright Office on or about April 12, 1996. Combined Appendix, Exhibit C.

  - The original *Spawn* Issue 9 contains an express copyright notice identifying Todd McFarlane Productions, Inc. as the sole copyright owner as of 1993. Combined Appendix, Exhibit B; *see also* Counterclaims, ¶ 19; Reply, ¶ 19.

  - *Spawn* Issue 9 was reprinted in the *Spawn* Volume 2 trade paperback, which contains an express copyright notice identifying Todd McFarlane Productions, Inc. as the sole copyright owner of the work and "[a]ll other related characters" as of 1996. Combined Appendix, Exhibit D; *see also* Counterclaims ¶ 24; Reply to Counterclaims, ¶ 24.

- ***Spawn* Issue 26:**

  - McFarlane federally registered copyright in this work, as a work for hire, with the United States Copyright Office on or about January 20, 1995. Combined Appendix, Exhibit F.

  - *Spawn* Issue 26 was reprinted in the *Spawn* Volume 6 and *Pathway to Judgement* trade paperbacks, each of which contains an express copyright notice identifying Todd McFarlane Productions, Inc. as the sole copyright owner of copyright in the characters as of 1998. Combined Appendix, Exhibits O and Q; *see also* Counterclaims, ¶¶ 35, 36; Reply, ¶¶ 35, 36.

- ***Angela* Issue 1:**

  - McFarlane federally registered copyright in this work, as a work for hire, with the United States Copyright Office on or about January 20, 1995. Combined Appendix, Exhibit J.

  - *Angela* Issue 1 was reprinted in the *Angela* trade paperback, which contains an express copyright notice identifying Todd McFarlane Productions, Inc. as the sole copyright owner as of 1995. Combined Appendix, Exhibit P; *see also* Counterclaims, ¶ 47; Reply, ¶ 47.

---

[1] *Spawn* Issue 9 is the seminal issue in which the characters that form the heart of this dispute, "Medieval Spawn," "Cogliostro," and "Angela," first appeared.

2

- ▪ *Angela* **Issue 2:**

  - ▪ McFarlane federally registered copyright in this work, as a work for hire, with the United States Copyright Office on or about January 30, 1995. Combined Appendix, Exhibit K.

  - ▪ The original *Angela* Issue 2 contains an express copyright notice identifying Todd McFarlane Productions, Inc. as the sole copyright owner as of 1995. Combined Appendix, Exhibit H.; *see also* Counterclaims, ¶ 40; Reply, ¶ 40.

  - ▪ *Angela* Issue 2 was reprinted in the *Angela* trade paperback, which contains an express copyright notice identifying Todd McFarlane Productions, Inc. as the sole copyright owner as of 1995. Combined Appendix, Exhibit P; *see also* Counterclaims, ¶ 47; Reply, ¶ 47.

- ▪ *Angela* **Issue 3:**

  - ▪ McFarlane federally registered copyright in this work, as a work for hire, with the United States Copyright Office on or about March 8, 1995. Combined Appendix, Exhibit L.

  - ▪ *Angela* Issue 3 was reprinted in the *Angela* trade paperback, which contains an express copyright notice identifying Todd McFarlane Productions, Inc. as the sole copyright owner as of 1995. Combined Appendix, Exhibit P; *see also* Counterclaims, ¶ 47; Reply, ¶ 47.

With these copyright registrations and notices established as a threshold matter, the statute of limitations' effect on the plaintiffs' claims for copyright ownership becomes clear: those claims are time-barred.

> **A.    The Pleadings Themselves Demonstrate The Accrual Of The Plaintiffs' Copyright Claims More Than Three Years Before They Initiated This Action.**
>
> > **1.    The registration of each comic book with the U.S. Copyright Office bars the plaintiffs' copyright claims.**

The plaintiffs set forth numerous arguments about the statute of limitations, but they cannot evade the simplest reason why their copyright ownership claims are time-barred: Todd McFarlane federally registered each work with the United States Copyright Office more than three years before the plaintiffs began this action. *See* Combined Appendix, Exhibits C, F, J, K,

3

and L, which the plaintiffs admitted speak for themselves in Plaintiffs' Reply to the Second Amended Counterclaims of Defendants Todd McFarlane and Todd McFarlane Productions, Inc. ("Reply"), ¶¶ 23, 34, 42. This is dispositive, because the federal copyright registration of a work puts the public, including all potential co-authors, on notice that someone else is claiming ownership of copyright in that work. Such notice establishes another's assertion of sole ownership, marking the accrual of a plaintiff's claim for copyright ownership. *See Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996); *Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996). There can be no plainer or more express repudiation of the plaintiffs' ownership, joint or otherwise, than McFarlane's publicly recorded federal copyright registrations. *See generally* 3 Melville B. and David Nimmer, *Nimmer on Copyright* (2002) ("*Nimmer*") § 12.05[C].

Indeed, courts examining this issue hold that "once an author registers his copyright, any co-author exercising reasonable diligence should be aware that another person has claimed authorship and thus know of his alleged injury." *Willsea v. Theis*, 1999 U.S. Dist. LEXIS 22471 at *13, 1999 WL 595629 at *5 (S.D.N.Y. Aug. 5, 1999). By virtue of the undisputed copyright registrations, the plaintiffs in the present case had constructive, if not actual, notice of their alleged ownership injury as of the date of those registrations. The pleadings reveal the effective registration dates as follows:

- *Spawn* Issue 9: April 12, 1996;
- *Spawn* Issue 26: January 20, 1995;
- *Angela* Issue 1: January 20, 1995;
- *Angela* Issue 2: January 30, 1995;
- *Angela* Issue 3: March 8, 1995.[2]

---

[2] The effective registration date is generally the date the Copyright Office received the application. 17 U.S.C. § 410(d). Even taking into consideration an additional four to five months for the Copyright Office to process the application and issue a certificate of registration, which is standard, *see* http://www.copyright.gov/faq.html#q7, these registrations still pre-date the filing of this lawsuit by well more than five years.

Accordingly, no later than the date on which the copyright in each work was registered,[3] "plaintiffs ... knew or should have known that they had given up whatever co-authorship rights they may have had" in these comic books or the characters contained therein. *Margo v. Weiss*, 1997 U.S. Dist. LEXIS 20867 at *15, 1998 WL 2558 at *5 (S.D.N.Y. Dec. 31, 1997) (finding a cause of action for copyright ownership accrues when copyright registers), *aff'd*, 213 F.3d 55 (2d Cir. 2000). The present action was not filed until January 24, 2002, more than five years after the plaintiffs' claim for copyright ownership in the last-registered work accrued. All of the plaintiffs' copyright ownership claims are thus time-barred by the three-year statute of limitations of the Copyright Act.

Although the copyright registrations provide all the evidence necessary to demonstrate that the plaintiffs' ownership claims are time-barred, further evidence in the pleadings reveals that the McFarlane Defendants put the public, including the plaintiffs, on notice of their express assertions of sole copyright ownership more than three years before this suit began. The pleadings contain the McFarlane Defendants' copyright notices which, though no longer a legal requirement for copyright protection, are entitled to significant evidentiary weight. In infringement situations, for example, if an infringed work bears a proper copyright notice, and the infringing defendant had access to that work, the defendant cannot assert a defense of "innocent" infringement. Courts presume the defendant was on notice of another's ownership of copyright in that work. 17 U.S.C. § 401(d). Analogously, where, as here, a plaintiff asserts copyright ownership in a work that bears another author's proper notice of sole copyright

---

[3]        The plaintiffs likely knew of their claims even earlier than 1996, because "[a] co-author knows that he or she jointly created a work from the moment of its creation." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996). *Spawn* Issue 9 was first published in 1993. *Supra* at 2; Combined Appendix, Exhibit B.

ownership, courts should be suspect of any contention that a "reasonable" plaintiff may have been unaware of that copyright notice.

### 2. The McFarlane Defendants' copyright notices are sufficient.

Instead of addressing the import of these public records, the plaintiffs attack the form of the McFarlane Defendants' copyright notices. As to the propriety of the copyright notices, the plaintiffs complain that the McFarlane Defendants' notices "are far from clear" and that the notice in *Spawn* Issue 9 "does not state that it is claiming a copyright in that particular issue or the characters[4] contained within it." Response Brief at 7. Although the plaintiffs would prefer otherwise, the Copyright Act does not require copyright notices to identify with particularity each element of a copyrightable work, nor does it require an author's notices to be uniform and consistent for every work he creates. To the contrary, Section 401(c) of the Act requires but three elements for a proper copyright notice: the "©" symbol, the year of publication, and the name of the owner of copyright in the work. 17 U.S.C. § 401(c); *see also* Brief of Defendants Todd McFarlane [et al.] in Support of Their Motion for Judgment on the Pleadings ("McFarlane 12(c) Brief") at 8-9. All three elements exist in the copyright notices affixed to the works at issue: *Spawn* Issue 9, *Spawn* Issue 26 (as incorporated in *Spawn* Volume 6 and *Pathway to Judgement*), and *Angela* Issues 1 through 3 (as compiled in the *Angela* trade paperback). *See supra* at 2-3; *see* Combined Appendix Exhibits B, Q, and P; *see also* McFarlane 12(c) Brief at 8-10. The plaintiffs cannot contend otherwise.

---

[4]    Whether the plaintiffs can even claim copyright protection in the characters is questionable. Although characters may be entitled to some copyright protection, *see, e.g., Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F. 2d 607 (7th Cir. 1982), such protection is generally a function of visual or graphic representations of the characters rather than plain literary "word portraits." 1 *Nimmer* § 2.12 at 2-175. As a "celebrated guest writer for Spawn®," Amended Complaint, ¶ 31, it is far from clear whether Gaiman contributed anything significant other than "word portraits."

The plaintiffs chastise the McFarlane Defendants for inconsistencies in the copyright notices affixed to the issues in the *Angela* series, but this argument too misses the mark. It is undisputed that Todd McFarlane Productions, Inc. claimed copyright in each work—if not in the original *Angela* comic books themselves, then in the subsequently published *Angela* trade paperback. The law is clear that the McFarlane Defendants' affixation of copyright notices on collective works, for example, is sufficient under the Copyright Act to invoke protection over the component issues, including *Angela* Issues 1 through 3. 17 U.S.C. § 404(a); *see also New York Times Co., Inc. v. Tasini*, 533 U.S. 483, 496 (2001); *E. Am. Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 416-17 (S.D.N.Y. 2000) (noting the "substantial body of case law holding that a proprietor of a composite work is entitled to the rights he or she would have if each part were copyrighted individually," and "that separate contributions to a collective work may be protected by a single notice applicable to the collective work as a whole."). The plaintiffs, therefore, cannot complain about the lack of copyright notices in *Angela* Issues 1 and 3.

The compilation of *Angela* Issues 1 through 3 in the *Angela* trade paperback contains a copyright notice dated 1995. Combined Appendix, Exhibit P; *see also* Counterclaims, ¶ 47; Reply, ¶ 47. *Spawn* Volume 2, a compilation including *Spawn* Issue 9, contains a copyright notice dated 1996. Combined Appendix, Exhibit D; *see also* Counterclaims ¶ 24; Reply, ¶ 24. Finally, the compilations *Spawn* Volume 6 and *Pathway to Judgement*, both of which incorporate *Spawn* Issue 26, bear copyright notices dated 1998. Combined Appendix, Exhibits O and Q; *see also* Counterclaims, ¶¶ 35, 36; Reply, ¶¶ 35, 36. These numerous copyright notices (as well as the federal registrations), put the public and the plaintiffs on notice of the McFarlane Defendants' assertions of sole copyright ownership no later than 1998.

7

3.      **The plaintiffs had constructive knowledge of the
        McFarlane Defendants' expression of sole
        copyright ownership.**

Besides defying common sense, the plaintiffs' suggestion that Gaiman may have been

unaware of the McFarlane Defendants' repeated and express assertions of sole copyright

ownership, *see* Response Brief at 8-9, ignores not only these copyright notices but also the

constructive notice they received upon McFarlane's registrations of the works.  As to the *Angela*

trade paperback, the plaintiffs say, "there is no evidence regarding when that issue was published

and whether Gaiman ever received a copy of it."  Response Brief at 7.  But the plaintiffs have

already admitted that this trade paperback, which includes a copyright notice bearing 1995 as its

date of publication, speaks for itself, *see* Reply, ¶ 47; Combined Appendix, Exhibit P, and they

cannot deny the publicly available copyright registrations.  As to *Spawn* Volume 6, the trade

paperback that contains *Spawn* Issue 9, the plaintiffs contend that "despite the 1998 date

contained in that [work's copyright] notice, there is no evidence that is the year in which it was

actually published."  Response Brief at 8.  No evidence is necessary beyond that work's express

copyright notice and the plaintiffs' admission that Exhibit O (Volume 6) speaks for itself.  *See*

Reply, ¶ 35; Combined Appendix, Exhibit O.  After all, 17 U.S.C. § 401(c) *requires* the

copyright notice to state the "year of publication."

Similarly, the plaintiffs admit that *Spawn* Issue 9, which contains its own copyright

notice, also speaks for itself.  *See* Reply, ¶ 19; Combined Appendix, Exhibit B.  In allowing

these exhibits to speak for themselves, the plaintiffs have essentially admitted the truth and

accuracy of every publication central to this dispute, and the copyright notices contained therein.

The very purpose of a copyright notice is to inform the public of who is claiming copyright in

any given work.  *Inter-City Press, Inc. v. Siegfried*, 172 F. Supp. 37, 40 (D. Mo. 1958); *Harry*

8

*Alter Co. v. Graves Refrigeration, Inc.*, 101 F. Supp. 703, 705 (D. Ga. 1951).[5]  Each publication

bearing the McFarlane Defendants' copyright notice thus alerted the plaintiffs that the McFarlane

Defendants asserted sole copyright ownership in that intellectual property.

### 4.  The pleadings do not allege facts supporting equitable tolling.

The plaintiffs also assert that the parties' 1997 communications about the intellectual

property at issue should equitably toll the statute of limitations.  Response Brief at 8.  The

plaintiffs have alleged that these communications included fraud on the part of McFarlane,

Amended Complaint, ¶¶ 84-87, but only now, after the pleadings are closed, do they assert that

the alleged fraud was "[t]he reason Gaiman was not aware of the existence of his copyright

ownership claim in 1997 ...."  Response Brief at 8.  Even had they made such a claim in the

pleadings, it would be directly contradicted by the exhibits of record, particularly the copyright

registrations and notices.  No matter how the plaintiffs interpret those copyright registrations and

notices today, their allegations do not, indeed cannot, trump the documentary evidence.  *N. Ind.*

*Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998) (When

considering a Rule 12(c) motion, "[i]t is a well-settled rule that when a written instrument

contradicts allegations in the complaint to which it is attached, the exhibit trumps the

allegations.").  The plaintiffs now contend that the copyright notices may not mean what they say.

Response Brief at 8.  In light of the exhibits, however, the Court need not accept the plaintiffs'

conclusory assertions about alleged misrepresentations equitably tolling the statute of limitations.

After all, these allegations are both contradicted *and pre-dated* by the federal copyright

---

[5]    Although these cases addressed the purpose of copyright notice under the Copyright Act of 1909, rather than the current Act, this distinction only highlights the impact of the McFarlane Defendants' use of copyright notices.  Under the current Act, copyright notice is no longer mandatory to reserve rights in a work—the McFarlane Defendants' affixation of copyright notice to the works at issue thus served only one purpose: to provide the public with clear notice of their rights.

registrations, which are public records that the plaintiffs, through reasonable diligence, knew or should have known about. *See id.*; Combined Appendix, Exhibits C, F, J, K, and L.

More importantly, the Seventh Circuit has held that equitable tolling cannot save a time-barred claim if the plaintiff, in the exercise of due diligence, would have received information relevant to his claim. In *Shropshear v. Corp. Counsel of Chicago*, a plaintiff invoked the doctrine of equitable estoppel, but never showed that he took reasonable steps to learn about his claim against the defendant. 275 F.3d 593, 595 (7th Cir. 2001). In rejecting his equitable tolling defense, the court emphasized, "an essential element [of equitable tolling] is that the plaintiff have exercised due diligence." *Id.* The court further explained that "[e]quitable tolling permits a plaintiff to avoid the bar of the statute of limitations [only] if *despite the exercise of all due diligence* he is unable to obtain vital information bearing on the existence of his claim." *Id.* (emphasis added). In this case, any *diligent* plaintiff in Gaiman's situation would have known about his ownership claim, because of the copyright registrations or because of the copyright notices.

**B.    The Pleadings Do Not Support A Finding Of Equitable Estoppel.**

**1.    The pleadings reveal no facts suggesting that the McFarlane Defendants did anything to prevent this suit.**

The plaintiffs reiterate their tolling argument by characterizing it under the doctrine of equitable estoppel. Response Brief at 9. Invoking this doctrine, the plaintiffs claim that "McFarlane fraudulently represented that Gaiman continued to have ownership rights in the works Gaiman created for the defendants," *id.*, which kept him from "know[ing] in 1997 that his ownership of the copyrights was in dispute." *Id.* at 10. Assuming the plaintiffs' allegations to be true, the pleaded facts do not set forth conduct constituting equitable estoppel. "The doctrine of

equitable estoppel allows the plaintiff to extend the statute of limitations if the defendant has done something that made the plaintiff reasonably believe that he had more time to sue." *Teamsters & Employers Welfare Trust v. Gorman Bros. Ready Mix*, 283 F.3d 877, 881 (7th Cir. 2002); *see also Mitchell v. Donchin*, 286 F.3d 447, 450 (7th Cir. 2002). The plaintiffs have alleged the McFarlane Defendants committed fraud, copyright infringement, and various state law violations—however, in the pleadings, the plaintiffs have not alleged any conduct by the McFarlane Defendants that prevented them from suing in time. Gaiman was on notice, actual or constructive, that someone other than he claimed sole copyright ownership. Had he been concerned about his rights, nothing prevented him from filing suit even if every fact he alleges is true.

As the Court of Appeals for the Seventh Circuit recently explained, "[T]he doctrine of equitable estoppel comes into play if the defendant takes *active steps* to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Shropshear*, 275 F.3d at 595 (emphasis added). The pleadings reveal no active steps by the McFarlane Defendants that prevented the plaintiffs from bringing their action for copyright ownership. None of McFarlane's allegedly "fraudulent representations," Response Brief at 9, would have prevented a diligent plaintiff from discovering the copyright notices or copyright registrations, and filing suit to contest their claims of sole copyright ownership.

## 2.    Even if equitable estoppel were alleged, the pleadings establish that the statute of limitations would have been tolled for three months at most.

In any event, the plaintiffs allege that the "1997 Agreement" between Gaiman and McFarlane lulled them into a false sense of security that kept them from realizing the existence copyright ownership claims. But the plaintiffs also allege that McFarlane broke that agreement

11

later that year, at which point they were aware of the ownership dispute. According to the plaintiffs, McFarlane "never intended to adhere to the terms of the 1997 Agreement," as evidenced "on October 27, 1997, … [when] McFarlane and TMP filed trademark applications in the United States Patent and Trademark Office for the name "Miracleman™…". Amended Complaint, ¶ 56. Thus, even if the parties' "1997 Agreement" did constitute active steps by McFarlane to prevent the plaintiffs from knowing about their copyright ownership claims, that agreement was allegedly breached three months later, at which point the plaintiffs knew or indeed should have known that the "ownership of the copyrights was in dispute." Response Brief at 10. Even viewed in the light most favorable to the plaintiffs, the pleadings show that the statute of limitations would have been tolled, at most, for three months. Yet the plaintiffs waited another four years to file this suit.

A final thought on equitable estoppel: the parties' communications in 1997 (on which the Plaintiffs base their equitable estoppel defense) are wholly unrelated to the dispute over copyright ownership. As set forth in the Amended Complaint, the parties exchanged thoughts on the monetary figures they would use in what appears to be some sort of royalty agreement. Amended Complaint, ¶¶ 51-53. Gaiman also mentioned vague "rights" to certain characters, a "$5,000 'bonus'" of sorts, and "the rights to do a one-off" project, whatever that means. *Id.,* ¶ 51. Nowhere in these communications do the parties discuss "copyright," "copyright ownership," or even "ownership." More importantly, never during these communications did McFarlane actively prevent the plaintiffs from obtaining information relevant to their copyright ownership claim. The pleadings simply do not contain facts that support the plaintiffs' reliance on equitable estoppel. Thus, the plaintiffs' equitable estoppel theory fails to preclude the impact of the statute of limitations on their copyright ownership claims.

## II.  THE PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS CANNOT ENDURE IN THE ABSENCE OF VALID COPYRIGHT OWNERSHIP CLAIMS.

Copyright ownership is an essential and indispensable element of a claim for copyright infringement—without the former, the latter must fail. *See generally* McFarlane 12(c) Brief at 12-14. Put simply, copyright ownership is a requisite component of copyright infringement. *See, e.g., Feist Publications v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001). The plaintiffs' ownership claims, (a *sine qua non* of their copyright infringement claims), are time-barred, as discussed *supra* at 3-10. Without valid ownership claims, the plaintiffs cannot sue for copyright infringement. *Foamation, Inc. v. Wedeward Enters.*, 970 F. Supp. 676, 683 (E.D. Wis. 1997); *Budget Cinema v. Watertower Assocs.*, 81 F.3d 729, 731 (7th Cir. 1996). In their Response Brief, the plaintiffs cite no legal authority to the contrary, and rest instead on the erroneous conclusion that their copyright ownership claims will survive the statute of limitations, breathing life into their claims for infringement. Response Brief at 10. Lacking both legal support and legitimate copyright ownership claims, the plaintiffs' copyright infringement claims fail.

## III.  THE PLAINTIFFS' LANHAM ACT CLAIM FOR "REVERSE PASSING OFF" IS PREEMPTED BY THE COPYRIGHT ACT.

In defense of their "reverse passing off" claim, the plaintiffs try to narrow the scope of preemption by the Copyright Act. But the Copyright Act's preemption provisions are indeed in effect here, and the plaintiffs' Lanham Act claim, which they concede is limited to just two publications, is also time-barred.

13

A.    **The Plaintiffs' "Reverse Passing Off" Claim is**
**Preempted Because It Arises From Copyrightable**
**Subject Matter.**

Citing *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690 (7th Cir. 1999), the

plaintiffs broadly pronounce that "copyright claims and Lanham Act claims can coexist where an

author seeks to enforce his right to attribution." Response Brief at 10.  In the plaintiffs' view,

under Section 43(a) of the Lanham Act, authors of copyrightable works are entitled to a right of

attribution, a right which the Copyright Act itself does not grant.  This simply is not the case.

The plaintiffs selectively quote *Kennedy*, omitting the following language:

> [R]everse passing off occurs when the defendant removes the
> name or trademark from another person's product and sells it with
> a different name, thus confusing the public.  *However, it is*
> *generally accepted that an author who sells or licenses his work,*
> *absent an express provision in a contract, does not have an*
> *inherent right to be credited as the author of the work.*"

*Id.* at 696 (citing *Nimmer*, § 8D.03[A][1]).  The plaintiffs have offered no reason why Gaiman

should be considered an exception to the rule that authors do not enjoy a right to attribution.

The thrust of the plaintiffs' argument in defense of their "reverse passing off" claim is

that "the second prong [of the preemption test] is not satisfied because the right Gaiman is

seeking to protect under the Lanham Act – the right to attribution – is not the equivalent of any

right protected by the Copyright Act." Response Brief at 11.  Although the plaintiffs disguise

their "reverse passing off" claim as something distinct from their copyright infringement claim,

both claims arise from the same, *equivalent* conduct—the McFarlane Defendants' allegedly

unauthorized copying of Gaiman's copyrightable work.  The plaintiffs' Lanham Act claim is, in

fact, equivalent to their copyright claim because it is asserted in copyrightable subject matter,

Gaiman's "partial script" for *Spawn* Issue 26.  *See* Amended Complaint, ¶ 38; *Baltimore Orioles*

*v. Major League Baseball Players Ass'n*, 805 F. 28 663, 674 (7th Cir. 1986).  Their own words

14

are telling: "[The] defendants admit that they 'merged [Gaiman's text] into the main body of text' for *Spawn* 26. Defendants have made no effort to show that their 'merge' was *anything other than wholesale copying of Gaiman's work*." Response Brief at 13 (emphasis added) (citations omitted) (brackets in original). Assuming the plaintiffs' version of the facts to be true, their "reverse passing off" claim is based on nothing more than "wholesale copying" of a literary work. Claims related to copying a literary work, of course, are remedied under Copyright law. 17 U.S.C. §§ 102(a)(1), 501.

The Court should not be swayed by the plaintiffs' suggestions that a finding of preemption in this case will require a holding that all "reverse passing off claims" are preempted by the Copyright Act. *See, e.g.,* Response Brief at 10, 13.[6] This Court and other District Courts within the Seventh Circuit have made such preemption findings without sweepingly dismissing all Lanham Act claims. These federal courts recognize that claims for copyright infringement necessarily mean that ownership of a copyrightable work is misrepresented and may confuse the consuming public. *Lacour v. Time Warner*, 2000 U.S. Dist. LEXIS 7286 (N.D. Ill. May 22, 2000). Therefore, "a remedy under the Lanham Act's unfair competition provision is redundant and unnecessary." *Id.* at *14. As Judge Crabb recently stated, when a plaintiff's Lanham Act claim rests on the same facts as its copyright claim (such as the "wholesale copying" alleged by the plaintiffs, Response Brief at 13), "it is a copyright infringement claim in disguise, and hence preempted." *Mist-On Systems, Inc. v. Gilley's European Tan Spa*, No. 02-C-0038-C, slip op. at 13-15 (W.D. Wis., May 2, 2002).

---

[6]     The plaintiffs assert that "[a]ccording to defendants, the Copyright Act preempts all such [reverse passing off] claims under the Lanham Act." Response Brief at 10. The McFarlane Defendants have made no such argument. Moreover, to distract the Court from case law cited by the defendants, McFarlane 12(c) Brief at 17-18, 20-21, the plaintiffs mischaracterize the cited cases as "suggest[ing] that the Copyright Act preempts *all* Lanham Act claims dealing with copyrightable material ...." *Id.* at 13. None of the district court opinions the McFarlane Defendants cite stands for such a proposition, and the Court need not adopt such a sweeping stance to find the single Lanham Act claim in this case preempted.

**B.    The "Reverse Passing Off" Claim, Limited To *Spawn*
Issue 26 And *Pathway to Judgement*, Is Time-Barred.**

Not only is the plaintiffs' "reverse passing off" claim preempted, but because it is limited

to works published no later than 1998,[7] it is also time-barred by the appropriate three-year statute

of limitations.  Generally, because the Lanham Act contains no explicit statute of limitations,

courts "borrow" the limitations period from the most closely analogous cause of action under

state law.  *See Zenith Elecs. Corp. v. ExZec, Inc.*, 1997 U.S. Dist. LEXIS 20762, at *23-*24

(N.D. Ill. Dec. 22, 1997) (applying the state fraud and business practices act's limitations

period); *Calzaturificio Rangoni S.p.A. v. United States Shoe Corp.*, 868 F. Supp. 1414, 1420

(S.D.N.Y. 1994) (applying the state law limitations period for fraud); *Kason Indus. v.

Component Hardware Group*, 120 F.3d 1199, 1203-04 (11th Cir. 1997) (applying state law trade

practices statute's limitations period).

In this case, the plaintiffs have asserted their claims for attribution under both the

Lanham Act and under Wisconsin's false advertising statute.  Amended Complaint, ¶¶ 88-98.

This simplifies the question of which state law's statute of limitations to "borrow" for application

to the Lanham Act claim, as the plaintiffs essentially concede that this state law cause of action

covers the same alleged conduct as their Lanham Act claim.  Because the plaintiffs' state law

false advertising claim is time-barred by the three-year statute of limitations in section 100.18,

Wis. Stats, *see infra* at 18-19, their "reverse passing-off" claim also fails to comply with the

statute of limitations.

---

[7]       The plaintiffs acknowledge their Lanham Act claim speaks only to *Spawn* Issue 26 and *Pathway to
Judgement*.  Response Brief at 10, 15.  As the pleadings reveal, these works were published no later than 1998.  See
Combined Appendix, Exhibits F (1996) and Q (1998).

**IV. THE PLAINTIFFS' STATE LAW FALSE ADVERTISING CLAIM IS BOTH PREEMPTED BY THE COPYRIGHT ACT AND TIME-BARRED.**

The plaintiffs reassert their claim for attribution under the state law of false advertising, invoking Section 100.18(1), Wis. Stats. Like their Lanham Act claim, this claim too is limited to only *Spawn* Issue 26 and *Pathway to Judgement*. Response Brief at 10, 15. Nonetheless, this reiteration of the attribution claim under state law fails under the copyright preemption analysis, and, moreover, under the state law statute of limitations.

**A. The Plaintiffs' State Law Claim For False Advertising Is Preempted By The Copyright Act.**

The Court addressed the plaintiffs' state law false advertising claim in its May 3, 2002 Memorandum and Order ("Order"). The Court also discussed copyright preemption in the context of the attribution right afforded only to visual artists under Section 106A of the Copyright Act. Order at 9; 17 U.S.C. § 106A. Ruling on the motion before it, the Court noted that "[a]ny potential state law right similar to attribution for works other than visual is not preempted," and in the briefing, "Defendant [Image Comics, Inc.] has presented no applicable case law suggesting otherwise." Order at 10.

At this stage in the proceedings, however, the McFarlane Defendants have indeed presented applicable case law explaining that the Copyright Act addresses the same consumer protection interests served by both the Lanham Act and Section 100.18. *See supra* at 14-15, 17-18; *see also* McFarlane 12(c) Brief at 22-24. Under this preemption analysis, because the Copyright Act safeguards rights equivalent to those protected by the state law of false advertising, the plaintiffs' state law false advertising claim is preempted.

17

**B.    The Plaintiffs' State Law Claim For False Advertising
Is Barred By The Statute of Limitations.**

The plaintiffs concede that their so-called "false advertising" claim is governed by

section 100.18(11)(b)3, Wis. Stats., which states that "[n]o action may be commenced under this

section more than 3 years after the occurrence of the unlawful act or practice which is the subject

of the action." Response Brief at 15. The undisputed facts revealed by the pleadings establish

that this claim, which the plaintiffs concede is limited to the alleged failure to attribute Gaiman's

contribution to *Spawn* Issue 26 and *Pathway to Judgement*, *id.*, at 10, 15, accrued more than

three years prior to the filing of this suit.

The Wisconsin Court of Appeals in *Skrupky v. Elbert*, 189 Wis. 2d 31, 55, 526 N.W.2d

264, 273 (Ct. App. 1994) held that section 100.18(11)(b)3 established a "definite point of

accrual" for claims brought pursuant to section 100.18(1). *Id.* (citing *Esser Distrib. Co. v. Steidl*,

145 Wis. 2d 160, 426 N.W.2d 62 (Ct. App. 1988)). Such a claim accrues under the statute "after

the occurrence of the unlawful act or practice" which is the subject of the suit. *Id.* The *Skrupky*

court held that the plaintiff could not extend the accrual of her claim by claiming she did not

discover her injuries until later – it was the date of the "occurrence of the unlawful act" that

controlled. *Id.*

The *Skrupky* holding is supported by the Wisconsin Court of Appeals' subsequent

decision in *Kain v. Bluemound E. Indus. Park, Inc.*, 2001 WI App. 230, 248 Wis. 2d 172, 635

N.W.2d 640, which held that section 100.18(11)(b)3 is a statute of repose that bars a claim three

years after the claim accrues. In *Kain*, the court confirmed that "[i]n a statute of repose, the

legislature has already determined when the claim 'accrues' – at the time of the defendant's

action." *Id.* ¶ 14. Importantly, the court noted that "Wisconsin courts have traditionally held that

18

time limitation statutes are policy considerations and have been unwilling to change the legislature's decision on such limitation periods." *Id.* ¶ 18.

The plaintiffs seek to avoid dismissal of their claim by alleging that the false advertising "is ongoing," citing the court's dicta in *Werner v. Pittway Corp.*, 90 F. Supp. 2d 1018 (W.D. Wis. 2000). Yet, the *Werner* case is easily distinguishable from the instant case. In *Werner*, the court recognized the well-established principle that a plaintiff pursuing a claim under section 100.18(1), Wis. Stats. must establish a causal link between the alleged false advertising and his or her pecuniary harm. The *Werner* court stated that under the facts present in that case, the plaintiffs could not establish this causal nexus. In this case, there is no dispute that the plaintiffs have properly alleged a causal nexus between their alleged injuries and the publication of *Pathway to Judgement*, which occurred in 1998.[8] Here, the plaintiffs' claims fail for a different reason – because they waited well after three years to file suit to recover for their alleged injuries, in violation of section 100.18(11)(b)3. Furthermore, as discussed *supra* at 16, the effect of this state law statute of limitations also invalidates the plaintiffs' Lanham Act claim.

## V.    THE PLAINTIFFS' CLAIM FOR VIOLATION OF PRIVACY IS PREEMPTED BY THE COPYRIGHT ACT.

The U.S. Court of Appeals for the Seventh Circuit's decision in *Baltimore Orioles v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986), governs this case. That court recognized that one's persona, when it "has been reduced to tangible form is [copyrightable and thus] subject to preemption." *Id.* at 678, n.26. This binding authority makes clear that the right of publicity "is equivalent to a copyright and is preempted to the extent that it is claimed in

---

[8]    Even if the plaintiffs were correct that paragraph 38 of the Amended Complaint states a claim for violation of 100.18(1) under a "continuing" tort theory, that claim would be limited to pecuniary damages they can prove related to the publication of *Pathway to Judgement*. That is the only work that they allege the McFarlane Defendants are "currently" publishing.

a tangible work within the subject matter of copyright." *Id.  Baltimore Orioles* "is still good case law ... and [district courts within the Seventh Circuit are] bound to apply it." *ProCD, Inc. v. Zeidenberg*, 908 F. Supp. 640, 657 (W.D. Wis. 1996), *rev'd on other grounds*, 86 F.3d 1447 (7th Cir. 1996).

Adherence to this Seventh Circuit precedent calls for a finding of preemption of the plaintiffs' publicity claim in the present case.  The *Baltimore Orioles* court used a two-step process to find the baseball players' publicity rights preempted by the Copyright Act.  First, the court identified the type of work in which the players earned publicity.  *Id.*  In that case, it was playing baseball—the work consisted of actual live performances.  Second, the court analyzed whether the plaintiffs' works, their performances, were copyrightable.  Because the performances were fixed in tangible form as telecasts, the court held they were indeed copyrightable.  *Id.*  Thus, the court concluded that the players' rights of publicity, which were asserted in copyrightable works, were preemtped.  *Id.*

Applying the same analysis to the plaintiffs' publicity claim in the present case is less complicated.  First, the type of work in which the plaintiffs claim their publicity right is Gaiman's literary work.  Further, Gaiman's alleged fame stems from his persona as a "celebrated guest-writer of Spawn®" and "as one of the world's most foremost comic book authors." Amended Complaint, ¶¶ 29, 31.  This simplifies the analysis because, unlike the baseball players' performances in *Baltimore Orioles*, Gaiman's work need not be "reduced to tangible form"—his scripts already exist as tangible literary works, which are copyrightable subject matter.  17 U.S.C. § 102(a)(1).  This fact obviates the need for the second step of the *Baltimore Orioles* analysis, in which a court would analyze whether the work was copyrightable.  Under this analysis, and "[s]ince the works in which [the plaintiffs] claim rights are fixed in tangible

20

form and come within the subject matter," the Court should find that the plaintiffs' rights of publicity are preempted. *Baltimore Orioles*, 805 F.2d at 677.

The plaintiffs claim that "Gaiman never consented to [the] use of his name or biographical information," Response Brief at 16, which they contend saves their publicity claim from preemption. However, the plaintiffs' argument about consent only further reveals that their publicity claim is not supported by the pleadings. The plaintiffs have alleged that Gaiman *expected* to be "recognized as a creator in Spawn® 9 and any works derived from Spawn® 9." Amended Complaint, ¶¶ 30, 32. But when the defendants prepared a derivative work that indeed gave Gaiman the "recognition" he demanded, the plaintiffs sued for an alleged violation of Gaiman's publicity rights. The issue of consent speaks to the parties' expectations when they originally collaborated to create the works at issue, and is more appropriately addressed on the merits of the plaintiffs' contract claims. Nonetheless, under the *Baltimore Orioles* precedent, the Court should find the plaintiffs' publicity claim preempted by the Copyright Act.

## VI.    THE PLAINTIFFS' CLAIM FOR FRAUD FAILS UNDER STATE LAW BECAUSE IT IS REDUNDANT IN LIGHT OF THE CONTRACT CLAIMS.

Count VI of the Amended Complaint purports to be a claim for "common law fraud." Amended Complaint, ¶ 84. That claim, however, seeks to enforce the terms of an alleged contract that the plaintiffs call "the 1997 Agreement." The Amended Complaint alleges that the parties' statements and correspondence formed a contract and that Gaiman "abided by the terms of the 1997 Agreement," but that the McFarlane Defendants did not. *Id.*, ¶ 87. As part of their prayer for relief, the plaintiffs seek "an order directing Defendants ... to conform to the terms of the 1997 Agreement." *Id.*, p. 26.

Wisconsin law makes a clear distinction between tort and contract law. A claim alleging that a party failed to live up to the bargain they struck sounds in contract. *Atkinson v. Everbrite,*

21

*Inc.*, 224 Wis. 2d 724, 728, 592 N.W.2d 299, 301 (Ct. App. 1999). In contrast, "tort obligations are in general obligations imposed by law – apart from and independent of promises made [when negotiating a contract] – to avoid injury to others." *Id.* at 728-29, 592 N.W.2d at 301-02. In other words, when the duty allegedly breached is imposed by contract, the injured parties' redress rests solely in contract law. *Id.* When the alleged duty breached is imposed by something other than a contract, a tort claim may lie. *Id.*

The plaintiffs ask this court to ignore *Atkinson* because it "did not address" claims alleging intentional misrepresentation. Response Brief at 17. Instead, the plaintiffs ask this court to review how cases considering an entirely different doctrine – the economic loss doctrine – might apply to this case. But the economic loss doctrine, which is a judicially-created doctrine that limits the type of *remedies* a plaintiff may pursue under certain circumstances, is plainly irrelevant to this case and the court need not linger long over these arguments.

The plain language of the purported "Fraud" claim alleges that the McFarlane Defendants did not live up to the terms of the alleged 1997 Agreement. As the obligations that the McFarlane Defendants allegedly breached spring from that alleged contract, the plaintiffs are limited to pursuing the McFarlane Defendants under a contract law theory. This, of course, they have done, in Count IV of the Amended Complaint. Count VI, alleging a claim for fraud based on the same conduct, is superfluous, improper and should be dismissed.

Regardless, even if cases discussing the economic loss doctrine *were* relevant, the U.S. Court of Appeals for the Seventh Circuit has held that that doctrine prohibits a plaintiff from pursuing a fraudulent inducement claim alleging intentional misrepresentation when he or she has a breach of contract remedy. In *HomeValu, Inc. v. Pep Boys*, 213 F.3d 960 (7th Cir. 2000), the court examined Wisconsin law and found a "compelling reason to refrain from following the

22

Wisconsin Court of Appeals' decision in *Douglas-Hanson*," the precedent upon which the plaintiffs would have this court rely. *Home-Valu*, 213 F.3d at 964. Instead, the Seventh Circuit expressly held that the Wisconsin Supreme Court would hold that the economic loss doctrine bars tort claims for fraudulent inducement involving intentional misrepresentation. *Id.* at 965. The law in *this court*, therefore, as determined by the Seventh Circuit, is that a party may not allege both a contract claim as well as a tort claim based upon the same conduct, regardless of whether the plaintiff asserts negligent, strict liability or intentional misrepresentation.

Indeed, in *Weather Shield Mfg., Inc. v. PPG Indus., Inc.*, 1998 U.S. Dist. LEXIS 22489 (W.D. Wis. June 10, 1998), this court noted that "[t]he Wisconsin Supreme Court has not squarely addressed whether a misrepresentation claim based on a fraudulently induced purchase is subject to the economic loss doctrine." The court therefore looked to Seventh Circuit precedent on this issue and held that the doctrine *did* bar the plaintiff's intentional misrepresentation claim. *Id.* (citing *Cooper Power Sys., Inc. v. Union Carbide Chemicals & Plastics Co., Inc.*, 123 F.3d 675 (7th Cir. 1997)). The Court should decline the plaintiffs' invitation to ignore binding Seventh Circuit precedent.

Finally, the plaintiffs assert that the economic loss doctrine does not bar their tort claim because the contract at issue "relates to the provision of services." Response Brief at 17. This argument presents the reddest of herrings for the court. Despite the plaintiffs' claims to the contrary, no Wisconsin court has held that the economic loss doctrine bars tort claims when the contract involves the purchase of services, rather than goods. Indeed, this court in *Weather Shield* stated that "the Wisconsin Supreme Court has not squarely addressed" that issue. *Id.* at *10. Moreover, in *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 417, 573, N.W.2d 842, 851-52 (1998) the Wisconsin Supreme Court expressly stated that "we have not

23

addressed nor do we address here whether the doctrine applies ... to damages resulting from the provision of services." The court *expressly stated* that *Hap's Aerial Enters. v. Gen. Aviation Corp.*, 173 Wis. 2d 459, 496 N.W.2d 680 (Ct. App. 1992), cited by the plaintiffs, did not address this issue. *Id.* Indeed, the *Daanen & Janssen* court *expressly overruled Hap's Aerial* to whatever extent it could be read to state as much. *Id.* There is therefore no authority whatsoever for the plaintiff's claim that the economic loss doctrine does not apply, even if the contract at issue related to the provision of services.

## CONCLUSION

For the foregoing reasons, the McFarlane Defendants are entitled to judgment on the pleadings on Counts I, II, III, VI, VII, VIII, and IX of the Amended Complaint.

Dated:  June 20, 2002

LA FOLLETTE GODFREY & KAHN

Eugenia G. Carter
Eugenia G. Carter
Todd G. Smith
Gabriel S. Gross
One East Main Street, Suite 500
Madison, WI  53701
Tel:  (608) 257-3911
Fax:  (608) 257-0609

—and—

Michael A. Kahn
Peter W. Salsich, III
Blackwell Sanders Peper Martin LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel:  (314) 345-6000
Fax:  (314) 345-6060

Attorneys for Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc.  and McFarlane Worldwide, Inc.

MN150339_1.DOC

24

DOCKET
NUMBER

U.S. DISTRICT COURT
WEST. DIST. OF WISCONSIN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

JUL 2 1 2002

FILED/RECEIVED
JOSEPH W. SKUPNIEWITZ, CLERK

| | | |
|---|---|---|
| NEIL GAIMAN and | ) | |
| MARVELS AND MIRACLES, LLC, | ) | CASE NUMBER |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  02 C 0048 S |
| | ) | |
| TODD MCFARLANE, | ) | |
| TODD MCFARLANE PRODUCTIONS, INC., | ) | |
| TMP INTERNATIONAL, INC., MCFARLANE | ) | |
| WORLDWIDE, INC., and | ) | |
| IMAGE COMICS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

Gabriel S. Gross certifies that on Thursday, June 20, 2002, true and correct copies of the Reply Brief of Defendants Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc. and McFarlane Worldwide, Inc. in Support of Their Motion for Judgment on the Pleadings were hand-delivered and mailed, first class, postage prepaid to the following:

*Hand-Delivered:*      Jeffrey A. Simmons
                       Foley & Lardner
                       150 East Gilman Street
                       Madison, WI  53703

*First Class Mail:*    Kenneth F. Levin
                       Kenneth F. Levin and Associates
                       20 North Wacker Drive, Suite 2200
                       Chicago, Illinois  60606

*First Class Mail:*    R. Scott Feldmann
                       Brobeck, Phleger & Harrison, LLP
                       38 Technology Drive
                       Irvine, CA  92618

Dated:  June 20, 2002.

                                          Gabriel S. Gross

MN146974_1.DOC