57

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DOCKET NUMBER
U.S. DISTRICT COURT
WEST. DIST. OF WISCONSIN

JUL - 1 2002

FILED/RECEIVED
JOSEPH W. SKUPNIEWITZ, CLERK
CASE NUMBER

| | |
|---|---|
| NEIL GAIMAN and MARVELS AND MIRACLES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TODD McFARLANE, TODD McFARLANE PRODUCTIONS, INC., TMP INTERNATIONAL, INC., and McFARLANE WORLDWIDE, INC. <br><br> Defendants-Counterclaimants, <br><br> And <br><br> IMAGE COMICS, INC., <br><br> Defendant. | Case No. 02-C-0048-S |

---

**DEFENDANTS TODD McFARLANE'S, TODD McFARLANE PRODUCTIONS, INC.'S, TMP INTERNATIONAL, INC.'S AND McFARLANE WORLDWIDE, INC.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

LaFollette Godfrey & Kahn
One East Main Street, Suite 500
Madison, WI 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*LaFollette Godfrey & Kahn is the Madison office of Godfrey & Kahn, S.C.*

Blackwell Sanders Peper Martin, LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel: (314) 345-6000
Fax: (314) 345-6060

Defendants Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc. and McFarlane Worldwide, Inc. (the "McFarlane Defendants"), by their attorneys LaFollette Godfrey & Kahn and Blackwell Sanders Peper Martin, LLP, submit the following Proposed Findings of Fact and Conclusions of Law in support of their Motion for Partial Summary Judgment:

## FINDINGS OF FACT

1. The plaintiffs filed this lawsuit on January 24, 2002. *See* (Original) Complaint for Damages, Declaratory Judgment and Injunctive and Ancillary Relief.

2. Approximately ten years earlier, in 1992, plaintiff Neil Gaiman and defendant Todd McFarlane agreed to collaborate on an issue of the *Spawn* comic book. Amended Complaint, ¶ 29; Answer, ¶ 29.

3. Pursuant to this agreement, Gaiman was to be principally responsible for the script, and McFarlane principally responsible for the artwork, of *Spawn* Issue 9. Amended Complaint, ¶¶ 30, 34; Answer, ¶¶ 30, 34.

4. *Spawn* Issue 9 was published in March of 1993., Counterclaim, ¶ 15; Combined Appendix, Exhibit B; Reply, ¶ 15.

5. *Spawn* Issue 9 contains the following copyright notice: "*Spawn* and its logo are trademark™ and copyright © 1993 Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 19; Combined Appendix, Exhibit B; Reply, ¶ 19.

6. Gaiman received a copy of *Spawn* Issue 9 no later than April, 1993. Transcript of June 24, 2002 Deposition of Neil Gaiman ("Gaiman Dep."), p. 191:13-14.

2

7. *Spawn* Issue 9 was reprinted in the trade paperback *Spawn* Volume 2, which was shipped for publication by Image Comics on June 12, 1996. Affidavit of Lawrence P. Marder, ("Marder Aff."), ¶ 6.

8. *Spawn* Volume 2 contains the following notice: "*Spawn*® it's (sic) logo and it's (sic) symbol are registered trademarks of Todd McFarlane Productions, Inc. All other related characters are trademark™ and Copyright© 1996 Todd McFarlane Productions, Inc. All rights reserved." Combined Appendix, Exhibit D.

9. A copy of the trade paperback *Spawn* Volume 2, which contained *Spawn* Issue 9, was shipped for publication by Image Comics on June 12, 1996. Marder Aff., ¶ 6.

10. Gaiman also contributed "a partial script" that was merged into the main body of text and artwork for another work, *Spawn* Issue 26. Amended Complaint, ¶ 38; Answer, ¶ 38.

11. *Spawn* Issue 26 was published in December of 1994. Counterclaim, ¶ 33; Combined Appendix, Exhibit E; Reply, ¶ 33.

12. *Spawn* Issue 26 was shipped for publication by Image Comics on December 27, 1994. Marder Aff., ¶ 7.

13. *Spawn* Issue 26 also appeared in the trade paperback *Spawn* Volume 6, and *Pathways to Judgement*, both published in May of 1998. Counterclaim, ¶¶ 35, 38; Combined Appendix, Exhibits O, Q; Reply, ¶¶ 35, 38; Marder Aff., ¶ 8.

14. *Spawn* Volume 6 and *Pathway to Judgement* (containing *Spawn* Issue 26), were shipped for publication by Image Comics on May 29, 1998. Marder Aff., ¶ 8.

15. *Spawn* Volume 6 contains the following copyright notice: "*Spawn*, its logo and its symbol are registered trademarks 1998 of Todd McFarlane Productions, Inc. All other related

3

characters are TM and © 1998 Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 36; Combined Appendix, Exhibit O; Reply, ¶ 36.

16. Gaiman also prepared scripts for another comic book, *Angela* Issues 1, 2, and 3. Amended Complaint, ¶ 40; Answer, ¶ 40.

17. Issues 1, 2, and 3 of the *Angela* series were published in December of 1994, January of 1995, and February of 1995, respectively. Counterclaim, ¶ 37; Combined Appendix, Exhibits G, H, and I; Reply, ¶ 37.

18. *Angela* Issue 2 contains the following copyright notice: "*Angela*, its logo and its symbol are registered trademarks™ and copyright © 1995 of Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 40; Combined Appendix, Exhibit H; Reply, ¶ 40.

19. Issues 1, 2, and 3 of the *Angela* series were again published in a trade paperback entitled *Angela* in November of 1995. Counterclaim, ¶ 43; Combined Appendix, Exhibit P; Reply, ¶ 43.

20. The *Angela* trade paperback (containing *Angela* Issues 1-3) was shipped for publication by Image Comics on November 7, 1995. Marder Aff., ¶ 9.

21. A copy of the *Angela* trade paperback, which contained Issues 1-3 of the *Angela* series, was shipped by Image Comics directly to Gaiman on November 7, 1995. *Id.*, ¶ 9.

22. The inside title page of the *Angela* trade paperback contains the following copyright notice; "Angela, its logo and its symbol are (TM) trademarks and (©) copyright 1995, Todd McFarlane Prods., Inc. All other characters are (TM) and (©) copyright 1995, Todd McFarlane Prods., Inc. All rights reserved." Counterclaim, ¶ 47; Combined Appendix, Exhibit P; Reply, ¶ 47.

4

23. Issues 1, 2, and 3 of the *Angela* series were again published in another trade paperback entitled *Angela's Hunt*, in August of 1998. Amended Complaint, ¶ 42; Answer, ¶ 42; Combined Appendix, Exhibit R.

24. The *Angela's Hunt* trade paperback (containing *Angela* Issues 1-3) was shipped for publication by Image Comics on August 21, 1998. Marder Aff., ¶ 10.

25. Gaiman received "author copies" of the *Angela* miniseries around the time of its publication. Gaiman Dep., p. 191:20-22.

26. McFarlane federally registered copyright in *Spawn* Issue 9, as a work for hire, with the United States Copyright Office on or about April 12, 1996. Combined Appendix, Exhibit C.

27. McFarlane federally registered copyright in *Spawn* Issue 26, as a work for hire, with the United States Copyright Office on or about January 20, 1995. Combined Appendix, Exhibit F.

28. McFarlane federally registered copyright in *Angela* Issue 1, as a work for hire, with the United States Copyright Office on or about January 20, 1995. Combined Appendix, Exhibit J.

29. McFarlane federally registered copyright in *Angela* Issue 2, as a work for hire, with the United States Copyright Office on or about January 30, 1995. Combined Appendix, Exhibit K.

30. McFarlane federally registered copyright in *Angela* Issue 3, as a work for hire, with the United States Copyright Office on or about March 8, 1995. Combined Appendix, Exhibit L.

31. In each of the copyright registrations identified in paragraphs 26 through 30 above, McFarlane was erroneously listed as the copyright owner as the result of a clerical error. McFarlane Affidavit ("McFarlane Aff."), ¶ 2.

32. The actual owner of the registered copyrights identified in paragraphs 26 through 30 above is Todd McFarlane Productions, Inc., McFarlane's employer. McFarlane Aff., ¶ 2.

33. McFarlane consented to the licensing activities of Todd McFarlane Productions, Inc., namely:

   A. TMP's grant of a license to Malibu Comics to publish the original issue 9 of *Spawn*, *id.*, ¶ 4;

   B. TMP's grant of a license to Image Comics, Inc. to publish issue 26 of *Spawn*, *id.*;

   C. TMP's grant of a license to Image Comics, Inc. to publish issues 1 through 3 of *Angela*, *id.*;

   D. TMP's grant of a license to Image Comics, Inc. to publish the trade paperback reprints of issue 9 of *Spawn* and issues 1 through 3 of *Angela*, *id.*;

   E. TMP's grant of a license to TMP International, Inc. to create toy action figures based on various characters in the *Spawn* comic books, *id.*, ¶ 5;

   F. TMP's grant of a license to various third parties to create other derivative works based on various characters in the *Spawn* comic books, *id.*, ¶ 6.

34. During his career as an author, Gaiman has specifically requested that publishers include the "standard copyright notice" on his published works. Gaiman Dep., p. 207:16-17.

35. All of Gaiman's published works contain "standard wording" in the form of a copyright notice. *Id.*, p. 208:6-11.

36. Gaiman has been publishing books in the United States since 1988. *Id.*, p. 211:1-18.

37. Gaiman is aware that in both the United Kingdom and the United States, authors commonly place copyright notices on their works, although the language used in the two countries may differ. *Id.*, p. 209:2-14.

6

38. Gaiman is familiar with both the concept and usage of copyright notice, and as an author, understands its importance. *Id.*, p. 207:16-210:11.

39. As an author of comic books, Gaiman routinely attended trade shows and conventions. *See, e.g., id.*, pp. 211:7-10, 212:8-214:7.

40. At such events, Gaiman would autograph for fans copies of works he authored. *See, e.g., id.*, pp. 211:7-10, 212:8-214:7.

41. Among the works Gaiman autographed were copies of *Spawn* Issue 9 and the trade paperbacks that contained *Spawn* Issue 9. *Id.*, pp. 211:1-10, 213:22-214:8.

42. Also among the works Gaiman autographed were copies of issues from the *Angela* series, and copies of the *Angela* trade paperbacks. *Id.*, pp. 213:5-13.

43. Often, during these signings, Gaiman would identify a fan's copy as a publication from which Gaiman believed he was not receiving royalties, and refuse to sign it. *Id.*, p. 213:11-21.

44. In this lawsuit, the plaintiffs have asserted claims for, *inter alia*, copyright ownership, copyright infringement, and violations of the federal Lanham Act and Wisconsin's false advertising statute. Amended Complaint, ¶¶ 64-74, 88-98.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this dispute. 28 U.S.C. § 1338(a) and (b); 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

2. Venue is proper in this judicial district. 28 U.S.C. § 1391 (b)(1) and (c).

3. Where the record indicates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law, the court may grant summary judgment. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999).

4. A copyright claim accrues when a reasonably diligent person would have learned of his cause of action. *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983); *Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996).

5. Accrual of a copyright ownership claim is marked by someone else's express assertion of sole copyright ownership of the work at issue. *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000); *Zuill*, 80 F.3d at 1371; 3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* (2002) ("*Nimmer*") § 12.05[C] at 12-132.3, n.49.

6. Such accrual may occur by the placement of copyright notice on the work, *Zuill*, 80 F.3d at 1368, or by federally registering copyright in the work. *Willsea v. Theis*, 1999 U.S. Dist. LEXIS 22471 at *13-*14 (S.D.N.Y. 1999); *Margo v. Weiss*, 1997 U.S. Dist. LEXIS 20867 at *14-*15 (S.D.N.Y. 1998).

7. Once an author registers his copyright, a diligent co-author should be cognizant of his alleged injury stemming from another's assertion of ownership. *Willsea*, 1999 U.S. Dist. LEXIS 22471 at *13; *Margo*, 1997 U.S. Dist. LEXIS 20867 at *15.

8. Even serious mistakes on the registration certificate, such as an erroneous statement as to identity of the author, or of the copyright claimant, or where the copyright is claimed in the name of the partnership rather than in the name of the individual partners, do not affect the validity of a copyright registration. 2 *Nimmer*, § 7.20[B] (compiling cases)

9. Misstatements on a copyright registration application due to "clerical error," have virtually no impact on the validity of the registration. 2 *Nimmer*, § 7.20 at 7-208, n.19 (citing *Baldwin Cooke Co. v. Keith Clark, Inc.*, 505 F.2d 1250 (7th Cir. 1947).

10. A valid copyright notice consists of three elements: the symbol © or the word "copyright"; the year of first publication; and "the name of the owner of the copyright in the work." 17 U.S.C. § 401(c).

11. Each of the plaintiffs' copyright ownership claims accrued more than three years before the present lawsuit was initiated, thus Count I of the plaintiffs' Amended Complaint is time-barred and the McFarlane Defendants are entitled to summary judgment on this count.

12. To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S 340, 361, 111 S. Ct. 1282, 1296 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548 (1985)).

13. To prevail on a copyright infringement claim, a plaintiff must prove his or her "ownership of a valid copyright" in these works or characters. *Feist*, 499 U.S. at 361.

14. Copyright ownership is an indispensable element of infringement. *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001) (citing *Feist*, 499 U.S. at 361); *see also Harbor Motor Co., Inc. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 644 (7th Cir. 2001) (citations omitted).

15. A copyright infringement claim fails where the plaintiff fails to satisfy its requirement of proving ownership. *Foamation, Inc. v. Wedeward Enters.*, 970 F. Supp. 676, 683 (E.D. Wis. 1997); *Budget Cinema v. Watertower Assocs.*, 81 F.3d 729, 731 (7th Cir. 1996).

16. Because the plaintiffs' copyright ownership claims are time-barred, the plaintiffs cannot prove their claims for copyright infringement, of which valid copyright ownership is an indispensable component, thus the McFarlane Defendants are entitled to summary judgment Counts II and III of the plaintiffs' Amended Complaint.

17. "[A] joint author cannot be liable for copyright infringement of another joint author, because he or she cannot infringe his or her own copyright ...." *Beloit Corp. v. C3 Datatec, Inc.*, 1995 U.S. Dist. LEXIS 16685 at *23-*24 (E.D. Wis. 1995) (citing *Weissmann v. Freeman*, 868 F.2d 1313, 1317 (2d Cir. 1989)); *see also Oddo v. Ries*, 743 F.2d 640, 632-33 (9th Cir. 1984); *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984).

18. An authorization to a defendant from one joint owner will be an effective defense to an infringement action brought by another joint owner. 1 *Nimmer*, § 6.10 (citations omitted); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 224 (2d Cir. 1999); *Oddo*, 743 F.2d at 633.

19. The McFarlane Defendants are further entitled to summary judgment on the copyright infringement claims because the plaintiffs, to the extent they are deemed co-owners of copyright in the works at issue, cannot, as a matter of law, sue the McFarlane Defendants, as co-owners or authorized licensees, for copyright infringement.

20. The Lanham Act contains no explicit statute of limitations. *See generally* 15 U.S.C. 1051, *et seq.*; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999).

21. Federal courts refer to the analogous state laws to determine whether a claim brought under the Lanham Act is time-barred. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985).

22. State law consumer protection statutes are often analogous to the federal Lanham Act for these purposes. *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 1075, 1079 (N.D. Ill. 2001).

23. For the purposes of the timeliness of the plaintiffs' "attribution" claims, Counts VII and VIII of the Amended Complaint, their state law false advertising claim is analogous to their federal claim under the Lanham Act.

24. Section 100.18 imposes a three-year time bar: "No action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." Wis. Stat. § 100.18(11)(b)3.

25. No "discovery rule" qualifies this limitations period. *Skrupky v. Elbert*, 189 Wis. 2d 31, 5556, 526 N.W.2d 264, 273-74 (Ct. App. 1994).

26. The statute establishes a single, "definite point of accrual" for such claims which occurs "at the time of the defendant's action." *Kain v. Bluemound E. Indust. Park, Inc.*, 2001 WI App 230, ¶ 14, 248 Wis. 2d 172, 635 N.W.2d 640 (Ct. App. 2001).

27. The plaintiffs' state law false advertising claim accrued more than three years before this lawsuit was initiated, thus it is time-barred, entitling the McFarlane Defendants to summary judgment on Count VIII.

28. Because the state law claim for false advertising is time-barred, so is the plaintiffs' analogous Lanham Act claim, entitling the McFarlane Defendants to summary judgment on Count VII.

Dated: July 1, 2002

LA FOLLETTE GODFREY & KAHN

_____
Eugenia G. Carter
Todd G. Smith
Gabriel S. Gross
One East Main Street, Suite 500
Madison, WI 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

—and—

11

Michael A. Kahn
Peter W. Salsich, III
Blackwell Sanders Peper Martin LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel: (314) 345-6000
Fax: (314) 345-6060

Attorneys for Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc. and McFarlane Worldwide, Inc.

MN151544_1.DOC