UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NEIL GAIMAN and )
MARVELS AND MIRACLES, L.L.C., )
)
Plaintiffs, )
)
v. ) Case No.: 02-C-0048-S
)
TODD MCFARLANE, )
TODD MCFARLANE PRODUCTIONS, )
INC., TMP INTERNATIONAL, INC., )
MCFARLANE WORLDWIDE, INC., and )
IMAGE COMICS, INC., )
)
Defendants. )

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

Plaintiffs Neil Gaiman and Marvels and Miracles, LLC respond to Defendants' Proposed Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

1. The plaintiffs filed this lawsuit on January 24, 2002. *See* (Original) Complaint for Damages, Declaratory Judgment and Injunctive and Ancillary Relief.

   **RESPONSE:** No dispute.

2. Approximately ten years earlier, in 1992, plaintiff Neil Gaiman and defendant Todd McFarlane agreed to collaborate on an issue in the *Spawn* comic book. Amended Complaint, ¶ 29; Answer, ¶ 29.

   **RESPONSE:** No dispute.

3. Pursuant to this agreement, Gaiman was to be principally responsible for the script, and McFarlane principally responsible for the artwork, of *Spawn* Issue 9. Amended Complaint, ¶¶ 30, 34; Answer, ¶¶ 30, 34.

   **RESPONSE:** No dispute.

4. *Spawn* Issue 9 was published in March of 1993. Counterclaim, ¶ 15; Combined Appendix, Exhibit B; Reply, ¶ 15.

   **RESPONSE:** No dispute.

5. *Spawn* Issue 9 contains the following copyright notice: "*Spawn* and its logo are trademark ™ and copyright © 1993 Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 19; Combined Appendix, Exhibit B; Reply, ¶ 19.

   **RESPONSE:** Plaintiffs dispute this proposed finding of fact to the extent it is intended to suggest that the copyright notice contained in *Spawn* Issue 9 claims a copyright in that particular issue. The copyright notice appears to claim an interest in the *Spawn* logo and *Spawn* comic book character, and makes no reference to claiming a specific copyright in the contents of *Spawn* Issue 9. (See Combined Appendix, Ex. R at 2.)

6. Gaiman received a copy of *Spawn* Issue 9 no later than April, 1993. Transcript of June 24, 2002 Deposition of Neil Gaiman ("Gaiman Dep."), p. 191:13-14.

   **RESPONSE:** No dispute.

7. *Spawn* Issue 9 was reprinted in the trade paperback *Spawn* Volume 2, which was shipped for publication by Image Comics on June 12, 1996. Affidavit of Lawrence P. Marder, ("Marder Aff."), ¶ 6.

   **RESPONSE:** No dispute.

8. Spawn Volume 2 contains the following notice: "Spawn® and it's (sic) logo and it's (sic) symbol are registered trademarks of Todd McFarlane Productions, Inc. All other related characters are trademark ™ and Copyright © 1996 Todd McFarlane Productions, Inc. All rights reserved." Combined Appendix, Exhibit D.

   **RESPONSE:** No dispute.

9. A copy of the trade paperback *Spawn* Volume 2, which contained Spawn Issue 9, was shipped for publication by Image Comics on June 12, 1996. Marder Aff., ¶ 6.

   **RESPONSE:** Plaintiffs dispute this proposed finding of fact to the extent it is intended to suggest that Gaiman actually received a copy of *Spawn* Volume 2 or would have had a reason to review the copyright notice it contained had he received it. Defendants have presented no evidence that they shipped a copy of this publication to Gaiman. In addition, by the

003.369771.1

time defendants published *Spawn* Volume 2, Gaiman had already received several copies of the underlying comic books which did not claim a copyright interest in Gaiman's work or the characters he created and, thus, he was unlikely to check to see if defendants' copyright notices had suddenly been altered to assert a claim to Gaiman's work. (See Pl.'s Br. at 12-13.) Finally, Gaiman has more than 200 works in publication, making it extremely difficult, if not infeasible to keep track of every republication of his work unless he has a specific reason to do so. (July 22, 2002 Declaration of Neil Gaiman ¶ 7.)

10. Gaiman also contributed "a partial script" that was merged into the main body of text and artwork for another work, *Spawn* Issue 26. Amended Complaint, ¶ 38; Answer, ¶ 38.

   **RESPONSE:** No dispute.

11. *Spawn* Issue 26 was published in December of 1994. Counterclaim, ¶ 33; Combined Appendix, Exhibit E; Reply, ¶ 33.

   **RESPONSE:** No dispute.

12. *Spawn* Issue 26 was shipped for publication by Image Comics on December 27, 1994. Marder Aff., ¶ 7.

   **RESPONSE:** No dispute.

13. *Spawn* Issue 26 also appeared in the trade paperback *Spawn* Volume 6, and *Pathways to Judgement*, both published in May of 1998. Counterclaim, ¶¶ 35, 38; Combined Appendix, Exhibits O, Q; Reply, ¶¶ 35, 38; Marder Aff., ¶8.

   **RESPONSE:** No dispute.

14. *Spawn* Volume 6 and *Pathway to Judgement* (containing *Spawn* Issue 26), were shipped for publication by Image Comics on Many 29, 1998. Marder Aff., ¶8.

   **RESPONSE:** Plaintiffs dispute this finding of fact to the extent it is intended to suggest that defendants shipped a copy of *Spawn* Volume 6 or *Pathway to Judgement* to Gaiman. Defendants have presented no evidence to that effect and Gaiman does not recall ever receiving a copy of those publications prior to this litigation. (Gaiman Decl. ¶ 6.)

003.369771.1

15. *Spawn* Volume 6 contains the following copyright notice: "*Spawn*, its logo and its symbol are registered trademarks 1998 of Todd McFarlane Productions, Inc. All other related characters are TM and © 1998 Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 36; Combined Appendix, Exhibit O; Reply, ¶ 36.

    **RESPONSE:** No dispute.

16. Gaiman also prepared scripts for another comic book, *Angela* Issues 1, 2, and 3. Amended Complaint, ¶ 40; Answer, ¶ 40.

    **RESPONSE:** No dispute.

17. Issues 1, 2, and 3 of the *Angela* series were published in December of 1994, January of 1995, and February of 1995, respectively. Counterclaim, ¶ 37; Combined Appendix, Exhibits G, H, and I; Reply, ¶ 37.

    **RESPONSE:** No dispute.

18. *Angela* Issue 2 contains the following copyright notice: "*Angela*, its logo and its symbol are registered trademarks ™ and copyright © 1995 of Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 40; Combined Appendix, Exhibit H; Reply, ¶ 40.

    **RESPONSE:** No dispute. Plaintiffs note that *Angela* Issues 1 and 3 contained no copyright notices at all. (See Defendants' Combined Appendix, Exs. G at 2 and I at 2.)

19. Issues 1, 2, and 3 of the *Angela* series were again published in a trade paperback entitled *Angela* in November of 1995. Counterclaim, ¶ 43; Combined Appendix, Exhibit P; Reply, ¶ 43.

    **RESPONSE:** No dispute.

20. The *Angela* trade paperback (containing *Angela* Issues 1-3) was shipped for publication by Image Comics on November 7, 1995. Marder Aff., ¶ 9.

    **RESPONSE:** No dispute.

21. A copy of the *Angela* trade paperback, which contained Issues 1-3 of the *Angela* series, was shipped by Image Comics directly to Gaiman on November 7, 1995. *Id.*, ¶ 9.

    **RESPONSE:** Plaintiffs dispute this proposed finding of fact to the extent it is intended to suggest that Gaiman actually received a copy of the *Angela* trade paperback and, if so, had a reason to review the copyright notice it contained. Defendants mailed the copies of *Angela* to Gaiman's Minnesota address during a time when Gaiman was working in Great

4

Britain. (See Plaintiff's Proposed Additional Facts ¶ 53.) In addition, by the time defendants shipped the *Angela* trade paperback, Gaiman had already received several copies of defendants' underlying comic books which did not claim a copyright interest in Gaiman's work or the characters he created and, thus, Gaiman was unlikely to check to see if defendants' copyright notices had suddenly been altered to assert a claim to Gaiman's work. (See Pl.'s Br. at 12.) Finally, Gaiman has more than 200 works in publication and finds it infeasible to keep track of every republication of his work unless he has a specific reason to do so. (July 22, 2002 Declaration of Neil Gaiman.)

22. The inside title page of the *Angela* trade paperback contains the following copyright notice: "Angela, its logo and its symbol are (TM) trademarks and (©) copyright 1995, Todd McFarlane Prods., Inc. All other characters are (TM) and (©) copyright 1995, Todd McFarlane Prods., Inc. All rights reserved." Counterclaim, ¶ 47; Combined Appendix, Exhibit P; Reply, ¶ 47.

    **RESPONSE:** No dispute.

23. Issues 1, 2, and 3 of the *Angela* series were again published in another trade paperback entitled *Angela's Hunt*, in August of 1998. Amended Complaint, ¶ 42; Answer, ¶ 42; Combined Appendix, Exhibit R.

    **RESPONSE:** No dispute.

24. The *Angela's Hunt* trade paperback (containing *Angela* Issues 1-3) was shipped for publication by Image Comics on August 21, 1998. Marder Aff., ¶ 10.

    **RESPONSE:** No dispute. Plaintiffs note that defendants have not produced a copy of the 1998 version of *Angela's Hunt*. The version contained in their Combined Appendix was published in 2000. Combined Appendix, Ex. R, second to last page). Therefore, it is impossible to determine what, if any, copyright notice may have been contained in that issue.

003.369771.1

25. Gaiman received "author copies" of the *Angela* miniseries around the time of its publication. Gaiman Dep., p. 191:20-22.

   **RESPONSE:** Disputed in part. Plaintiffs dispute this finding of fact to the extent it is intended to suggest that Gaiman received a copy of the 1998 version of *Angela's Hunt*. As noted in Response to Proposed Finding No. 24, defendants have not produced a copy of that publication.

26. McFarlane federally registered copyright in *Spawn* Issue 9, as a work for hire, with the United States Copyright Office on or about April 12, 1996. Combined Appendix, Exhibit C.

   **RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Spawn* Issue 9. However, that registration falsely identifies McFarlane as the author of the text of that issue when, in fact, Gaiman authored the text. (See Combined Appendix, Ex. C, McFarlane Dep. at 147-48.) Plaintiffs also note that McFarlane registered this work more than three years after its initial publication. (Id.) McFarlane did not inform Gaiman that he was filing this application for registration. (Gaiman Decl. ¶ 6.)

27. McFarlane federally registered copyright in *Spawn* Issue 26, as a work for hire, with the United States Copyright Office on or about January 20, 1995. Combined Appendix, Exhibit F.

   **RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Spawn* Issue 26. However, that registration falsely identifies McFarlane as the sole author of the text of that issue when, in fact, Gaiman authored a portion of the text. (See Combined Appendix, Ex. F.) McFarlane did not inform Gaiman that he was filing this application for registration. (Gaiman Decl. ¶ 6.)

28. McFarlane federally registered copyright in *Angela* Issue 1, as a work for hire, with the United States Copyright Office on or about January 20, 1995. Combined Appendix, Exhibit J.

   **RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Angela* Issue 1. However, that registration falsely identifies McFarlane as the author of both

6

the text and artwork for that issue when, in fact, he authored neither. (See Combined Appendix, Ex. J, McFarlane Dep. at 147-48.) McFarlane did not inform Gaiman that he was filing this application for registration. (Gaiman Decl. ¶ 6.)

29. McFarlane federally registered copyright in *Angela* Issue 2, as a work for hire, with the United States Copyright Office on or about January 30, 1995. Combined Appendix, Exhibit K.

   **RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Angela* Issue 2. However, that registration falsely identifies McFarlane as the author of both the text and artwork for that issue when, in fact, he authored neither. (See Combined Appendix, Ex. K, McFarlane Dep. at 91-92, 157.) McFarlane did not inform Gaiman that he was filing this application for registration. (Gaiman Decl. ¶ 6.)

30. McFarlane federally registered copyright in *Angela* Issue 3, as a work for hire, with the United States Copyright Office on or about March 8, 1995. Combined Appendix, Exhibit L.

   **RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Angela* Issue 2. However, that registration falsely identifies McFarlane as the author of both the text and artwork for that issue when, in fact, he authored neither. (See Combined Appendix, Ex. K, McFarlane Dep. at 91-91, 157.) McFarlane did not inform Gaiman that he was filing this application for registration. (Gaiman Decl. ¶ 6.)

31. In each of the copyright registrations identified in paragraphs 26 through 30 above, McFarlane was erroneously listed as the copyright owner as the result of a clerical error. McFarlane Affidavit ("McFarlane Aff."), ¶ 2.

   **RESPONSE:** Disputed. Although defendants assert that McFarlane was listed as the copyright owner as the result of a clerical error, whether that is true depends upon an analysis of McFarlane's credibility which is not appropriate on summary judgment.

32. The actual owner of the registered copyrights identified in paragraphs 26 through 30 above is Todd McFarlane Productions, Inc., McFarlane's employer. McFarlane Aff., ¶ 2.

003.369771.1

**RESPONSE:** Disputed. While it may be the defendants' contention that they intended to identify Todd McFarlane Productions, Inc. as the owner on their applications for copyright registration, the issue of who owns these copyrights is precisely one of the issues in dispute in this action.

33. McFarlane consented to the licensing activites of McFarlane Productions, Inc., namely:

>   A.  TMP's grant of a license to Malibu Comics to publish the original issue of *Spawn*, id., ¶ 4;
>
>   B.  TMP's grant of a license to Image Comics, Inc. to publish issue 26 of *Spawn*, *id.*;
>
>   C.  TMP's grant of a license to Image Comics, Inc. to publish issues 1 through 3 of *Angela*, *id.*;
>
>   D.  TMP's grant of a license to Image Comics, Inc. to publish the trade paperback reprints of issue 9 of *Spawn* and issues 1 through 3 of *Angela*, *id.*;
>
>   E.  TMP's grant of a license to TMP International, Inc. to create toy action figures based on various characters in the *Spawn* comic books, *id.*, ¶ 5;
>
>   F.  TMP's grant of a license to various third parties to create other derivative works based on various characters in the *Spawn* comic books, id., ¶ 6.

   **RESPONSE:** No dispute.

34. During his career as an author, Gaiman has specifically requested that publishers include the "standard copyright notice" on his published works. Gaiman Dep., p. 207: 16-17.

   **RESPONSE:** Disputed. Gaiman's testimony related only to the "standard copyright" notice in the United Kingdom. There is no evidence Gaiman is aware of what, if any, "standard wording" is required in the U.S. Moreover, McFarlane's copyright notices in the initial comic publications were not inconsistent with Gaiman's rights. (See Pl,'s Br. at 10-11.)

35. All of Gaiman's published works contain "standard wording" in the form of a copyright notice. *Id.*, p. 208:6-11.

003.369771.1

>> **RESPONSE:** Disputed. Gaiman's testimony refers only to works published in the U.K. and the British-law copyright notices contained therein. See Gaiman Dep. at 208.

36. Gaiman has been publishing books in the United States since 1988. *Id.*, p. 211:1-18.

    **RESPONSE:** No dispute.

37. Gaiman is aware that in both the United Kingdom and the United States, authors commonly place copyright notices on their works, although the language used in the two countries may differ. *Id.*, p. 209:2-14.

    **RESPONSE:** No dispute.

38. Gaiman is familiar with both the concept and the usage of copyright notice, and as an author, understands its importance. *Id.*, p. 207:16-210:11.

    **RESPONSE:** Disputed

39. As an author of comic books, Gaiman routinely attended trade shows and conventions. *See, e.g., id.*, pp. 211:7-10, 212:8-214:7.

    **RESPONSE:** No dispute.

40. At such events, Gaiman would autograph for fans copies of works he authored. *See, e.g., id.*, pp. 211:7-10, 212:8-214:7.

    **RESPONSE:** No dispute.

41. Among the works Gaiman autographed were copies of *Spawn* Issue 9 and the trade paperbacks that contained *Spawn* Issue 9. Id., pp. 211:1-10, 213:22-214:8.

    **RESPONSE:** No dispute.

42. Also among the works Gaiman autographed were copies of issues form the Angela series, and copies of the Angela trade paperbacks. *Id.*, pp. 213:5-13.

    **RESPONSE:** Disputed. Gaiman testified that it was "possible" he signed such copies. Gaiman Dep. at 213:11. Further, plaintiffs dispute this finding of fact to the extent it is intended to suggest that Gaiman actually has the time to inspect the copyright notices on such

003.369771.1

works at book signings. The hectic environment of a book signing, with hundreds of people lining up for signatures, does not allow time for such inspections. Gaiman Decl. ¶ 7.)

43. Often, during these signings, Gaiman would identify a fan's copy as a publication from which Gaiman believed he was not receiving royalties, and refuse to sign it. *Id.*, p. 213:11-21.

   **RESPONSE:** Disputed in part. Plaintiffs dispute this proposed finding to the extent it is intended to suggest that Gaiman identified such publications and refused to sign them prior to February 1999. In fact, Gaiman did not begin identifying such publications and refusing to sign them until after he received McFarlane's rescission letter in Febuary 1999. (Gaiman Decl. ¶ 7.)

44. In this lawsuit, the plaintiffs have asserted claims for, *inter alia*, copyright ownership, copyright infringement, and violations of the federal Lanham Act and Wisconsin's false advertising statute. Amended Complaint, ¶¶ 64-74, 88-98.

   **RESPONSE:** No dispute.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this dispute. 28 U.S.C. § 1338(a) and (b); 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

   **RESPONSE:** No dispute.

2. Venue is proper in this judicial district. 28 U.S.C. § 1391 (b)(1) and (c).

   **RESPONSE:** No dispute.

3. Where the record indications that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law, the court may grant summary judgment. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999).

   **RESPONSE:** No dispute.

003.369771.1

4. A copyright claim accrues when a reasonably diligent person would have learned of his cause of action. *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983); *Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996).

   **RESPONSE:** No dispute.

5. Accrual of a copyright ownership claim is marked by someone else's express assertion of sole copyright ownership of the work at issue. *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000); *Zuill*, 80 F.3d at 1371; 3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* (2002) ("*Nimmer*") § 12.05[C] at 12-132.3, n.49.

   **RESPONSE:** Disputed. The rule for accrual is properly stated in Proposed Conclusion No. 4. See also July 19, 2002 Memorandum and Order ("Order") at 3.

6. Such accrual may occur by the placement of copyright notice on the work, *Zuill*, 80 F.3d at 1368, or by federally registering copyright in the work. *Willsea v. Theis*, 1999 U.S. Dist. LEXIS 22471 at *13-*14 (S.D.N.Y. 1999); *Margo v. Weiss*, 1997 U.S. Dist. LEXIS 20867 at *14-*15 (S.D.N.Y. 1998).

   **RESPONSE:** Disputed. See Order at 3.

7. Once an author registers his copyright, a diligent co-author should be cognizant of his alleged injury stemming from another's assertion of ownership. *Willsea*, 1999 U.S. Dist. LEXIS 22471 at *13; *Margo*, 1997 U.S. Dist. LEXIS 20868 at *15.

   **RESPONSE:** Disputed. See Order at 3.

8. Even serious mistakes on the registration certificate, such as an erroneous statement as to identity of the author, or of the copyright claimant, or where the copyright is claimed in the name of the partnership rather than in the name of the individual partners, do not affect the validity of a copyright registration. 2 *Nimmer*, § 7.20[B] (compiling cases)

   **RESPONSE:** Disputed. A party who deliberately misrepresents its authorship to the Copyright Office loses the presumption of validity normally accorded to a copyright registration. Zitz v. Pereira, 119 F. Supp. 2d 133, 144-45 (E.D.N.Y. 1999). See also Budget Cinema, Inc. v. Watertower Assocs., 81 F.3d 729, 733 (7th Cir. 1996) ("significant questions

003.369771.1

existed regarding the validity of [plaintiff's] copyright" where, among other things, plaintiff falsely stated authorship in copyright registration); <u>Gillespie v. Miles</u>, 2001 U.S. Dist. LEXIS 1997, *24 (S.D.N.Y. 2001) (validity of plaintiff's copyright registrations turned on resolution of joint authorship claim). If a party's registration is invalid, they may not sue for copyright infringement. <u>See</u> <u>Foamation, Inc. v. Wedeward Enterp., Inc.</u>, 947 F. Supp. 1287, 1296 (E.D. Wis. 1996). <u>See</u> <u>also</u> 17 U.S.C. § 411.

9. Misstatements on a copyright registration application due to "clerical error," have virtually no impact on the validity of the registration. 2 *Nimmer*, § 7.20 at 7-208, n. 19 (citing *Baldwin Cooke Co. v. Keith Clark, Inc.* 505 F.2d 1250 (7th Cir. 1947)).

    **RESPONSE:** No dispute. In this case, however, whether McFarlane's false registrations were the result of a "clerical error" is a question of fact turning on McFarlane's credibility as a witness.

10. A valid copyright notice consists of three elements: the symbol © or the word "copyright"; the year of the first publication; and "the name of the owner in the work." 17 U.S.C. § 401(c).

    **RESPONSE:** Disputed in part. Plaintiffs do not dispute that defendants have properly cited to 17 U.S.C. § 401 (c). In this case, however, defendants' notices, where they existed, did not accurately identify "the work" to which they applied. (<u>See</u> Pl.'s Brief at 10-11.)

11. Each of the plaintiffs' copyright ownership claims accrued more than three years before the present lawsuit was initiated, thus Count I of the plaintiffs' Amended Complaint is time-barred and the McFarlane Defendants are entitled to summary judgment on this count.

    **RESPONSE:** Disputed. <u>See</u> Plaintiffs' Response Brief.

12

12. To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 548 (1985)).

   **RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement

and, therefore, do not address this proposed finding.

13. To prevail on a copyright infringement claim, a plaintiff must prove his or her "ownership of a valid copyright" in these works or characters. *Feist,* 499 U.S. at 361.

   **RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement

and, therefore, do not address this proposed finding.

14. Copyright ownership is an indispensable element of infringement. *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries,* 272 F.3d 441, 450 (7th Cir. 2001) (citing *Feist,* 499 U.S. at 361); *see also Harbor Motor Co, Inc. v. Arnell Chevrolet-Geo, Inc.,* 265 F.3d 638, 644 (7th Cir. 2001) (citations omitted).

   **RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement

and, therefore, do not address this proposed finding.

15. A copyright infringement claim fails where the plaintiff fails to satisfy its requirement of proving ownership. *Foamation, Inc. v. Wedeward Enters.,* 970 F. Supp. 676, 683 (E.D. Wis. 1997); *Budget Cinema v. Watertower Assocs.,* 81 F.3d 729, 731 (7th Cir. 1996).

   **RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement

and, therefore, do not address this proposed finding.

16. Because their plaintiffs' copyright ownership claims are time-barred, the plaintiffs cannot prove their claims for copyright infringement, of which valid copyright ownership is an indispensable component, thus the McFarlane Defendants are entitled to summary judgment Counts II and II of the plaintiffs' Amended Complaint.

003.369771.1

   **RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

17. "[A] joint author cannot be liable for copyright infringement of another joint author, because he or she cannot infringe his or her own copyright...." *Beloit Corp. v. C3 Datatec, Inc.,* 1995 U.S. Dist. LEXIS 16685 at *23-*24 (E.D. Wis. 1995) (citing *Weissmann v. Freeman,* 868 F.2d 1313, 1317 (2d Cir. 1989)); *see also Oddo v. Ries,* 743 F.2d 640, 632-33 (9th Cir. 1984); *Cortner v. Israel,* 732 F.2d 267, 271 (2d Cir. 1984).

   **RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

18. An authorization to a defendant from one joint owner will be an effective defense to an infringement action brought by another joint owner. 1 *Nimmer,* § 6.10 (citations omitted); *Batiste v. Island Records, Inc.,* 179 F.3d 217, 224 (2d Cir. 1999); *Oddo,* 743 F.2d at 633.

   **RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

19. The McFarlane Defendants are further entitled to summary judgment on the copyright infringement claims because the plaintiffs, to the extent they are deemed co-owners of copyright in the works at issue, cannot, as a matter of law, sue the McFarlane Defendants, as co-owners or authorized licensees, for copyright infringement.

   **RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

20. The Lanham Act contains no explicit statute of limitations. *See* generally 15 U.S.C. 1051, et seq.; *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 821 (7th Cir. 1999).

   **RESPONSE:** No dispute.

003.369771.1

21. Federal courts refer to the analogous state laws to determine whether a claim brought under the Lanham Act is time-barred. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985).

    **RESPONSE:** No dispute.

22. State law consumer protection statutes are often analogous to the federal Lanham Act for these purposes. *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 1075, 1079 (N.D. Ill. 2001).

    **RESPONSE:** No dispute.

23. For the purposes of the timeliness of the plaintiffs' "attribution" claims, Counts VII and VIII of the Amended Complaint, their state law false advertising claim is analogous to their federal claim under the Lanham Act.

    **RESPONSE:** No dispute.

24. Section 100.18 imposes a three-year time bar: "No action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." Wis. Stat. § 100.18(11)(b)3.

    **RESPONSE:** No dispute.

25. No "discovery rule" qualifies this limitations period. *Skrupky v. Elbert*, 189 Wis. 2d 31, 5556, 526 N.W.2d 264, 273-74 (Ct. App. 1994).

    **RESPONSE:** No dispute.

26. The statute establishes a single, "definite point of accrual" for such claims which occurs "at the time of the defendant's action." *Kain v. Bluemound E. Indust. Park, Inc.*, 2001 WI App. 230, 14, 248 Wis. 2d 172, 635 N.W. 2d 640 (Ct. App. 2001).

    **RESPONSE:** Disputed. A cause of action for a continuing harm does accrue until the harm is complete. See Order at 7. Thus, Gaiman's cause of action is not time-barred if one of defendant's acts occurred within the 3-year limitation period.

15

003.369771.1

27. The plaintiffs' state law false advertising claim accrued more than three years before this lawsuit was initiated, thus it is time-barred, entitling the McFarlane Defendants to summary judgment on Count VIII.

    **RESPONSE:** Disputed. Defendants' harmful acts – the selling of *Pathway to Judgement* without attribution – are ongoing and therefore not barred by the statute of limitations. (See July 22, 2002 Simmons Affidavit ¶ 7.)

28. Because the state law claim for false advertising is time-barred, so is the plaintiffs' analogous Lanham Act claim, entitling the McFarlane Defendants to summary judgment on Count VII.

    **RESPONSE:** Disputed. See Response to Proposed Conclusion No. 27.

Dated this 22nd day of July, 2002.

    FOLEY & LARDNER

    By: _____
    Allen A. Arntsen
    Joan L. Eads
    Jeffrey A. Simmons
    *Attorneys for Plaintiffs*

Foley & Lardner
150 East Gilman Street
Madison, WI 53703-2808
Tel: (608) 257-5035
Fax: (608) 258-4258

Of Counsel:
Mark Hellmann
Michael Rechtin
Foley & Lardner
1 IBM Plaza
220 N. Wabash Ste. 3300
Chicago, IL 60611
Tel: (312) 755-1900
Fax: (312) 755-1925

Co-Counsel:
Kenneth F. Levin

003.369771.1

20 North Wacker Drive, Suite 2200
Chicago, IL 60606
Tel: (312) 984-6000
Fax: (312) 977-2990

17