IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DOCKET # **86**
U.S. DISTRICT COURT
WEST DIST___ ___ISCONSIN

AUG - 1 ___

FILED
JOSEPH W. SKUPNIEWITZ CLE___
CASE #

| | |
|---|---|
| NEIL GAIMAN and MARVELS AND MIRACLES, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| | ) Case No. 02-C-0048-S |
| TODD McFARLANE, TODD McFARLANE PRODUCTIONS, INC., TMP INTERNATIONAL, INC., and McFARLANE WORLDWIDE, INC. | ) ) ) ) ) |
| Defendants-Counterclaimants, | ) ) |
| And | ) ) |
| IMAGE COMICS, INC., | ) ) |
| Defendant. | ) ) |

---

**McFARLANE DEFENDANTS' STATEMENT IN REBUTTAL TO THE PLAINTIFFS'
RESPONSE TO McFARLANE DEFENDANTS' PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

---

LaFollette Godfrey & Kahn
One East Main Street, Suite 500
Madison, WI 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*LaFollette Godfrey & Kahn is the
Madison office of Godfrey & Kahn, S.C.*

Blackwell Sanders Peper Martin, LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel: (314) 345-6000
Fax: (314) 345-6060

1.      The plaintiffs filed this lawsuit on January 24, 2002.  *See* (Original) Complaint for Damages, Declaratory Judgment and Injunctive and Ancillary Relief.

RESPONSE:  No Dispute.

REBUTTAL:  None.

2.      Approximately ten years earlier, in 1992, plaintiff Neil Gaiman and defendant Todd McFarlane agreed to collaborate on an issue of the *Spawn* comic book.  Amended Complaint, ¶ 29; Answer, ¶ 29.

RESPONSE:  No Dispute.

REBUTTAL:  None.

3.      Pursuant to this agreement, Gaiman was to be principally responsible for the script, and McFarlane principally responsible for the artwork, of *Spawn* Issue 9.  Amended Complaint, ¶¶ 30, 34; Answer, ¶¶ 30, 34.

RESPONSE:  No Dispute.

REBUTTAL:  None.

4.      *Spawn* Issue 9 was published in March of 1993., Counterclaim, ¶ 15; Combined Appendix, Exhibit B; Reply, ¶ 15.

RESPONSE:  No Dispute.

REBUTTAL:  None.

5.      *Spawn* Issue 9 contains the following copyright notice: "*Spawn* and its logo are trademark™ and copyright © 1993 Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 19; Combined Appendix, Exhibit B; Reply, ¶ 19.

RESPONSE:  Plaintiffs dispute this proposed finding of fact to the extent it is intended to suggest that the copyright notice contained in *Spawn* Issue 9 claims a copyright in that particular issue.  The copyright notice appears to claim an interest in the *Spawn* logo and *Spawn* comic book character, and makes no reference to claiming a specific copyright in the contents of *Spawn* Issue 9.  (See Combined Appendix, Ex. R at 2.)

REBUTTAL:  As the quote included in the above proposed finding is a verbatim reproduction of the copyright notice found in Exhibit B in the Combined Appendix, the accuracy of which the plaintiffs have already conceded, *see* Reply to Counterclaims, ¶ 15, the McFarlane

2

Defendants maintain that there is no dispute over the existence and content of this copyright notice. The copyright notice unambiguously claims TMP's copyright ownership in *Spawn* Issue 9. Combined Appendix, Exhibit B; *see* Reply Brief at 4-5.

6.      Gaiman received a copy of *Spawn* Issue 9 no later than April, 1993. Transcript of June 24, 2002 Deposition of Neil Gaiman ("Gaiman Dep."), p. 191:13-14.

      **RESPONSE:** No Dispute.

      **REBUTTAL:** None.

7.      *Spawn* Issue 9 was reprinted in the trade paperback *Spawn* Volume 2, which was shipped for publication by Image Comics on June 12, 1996. Affidavit of Lawrence P. Marder, ("Marder Aff."), ¶ 6.

      **RESPONSE:** No Dispute.

      **REBUTTAL:** None.

8.      *Spawn* Volume 2 contains the following notice: "*Spawn®* it's (sic) logo and it's (sic) symbol are registered trademarks of Todd McFarlane Productions, Inc. All other related characters are trademark™ and Copyright© 1996 Todd McFarlane Productions, Inc. All rights reserved." Combined Appendix, Exhibit D.

      **RESPONSE:** No Dispute.

      **REBUTTAL:** None.

9.      A copy of the trade paperback *Spawn* Volume 2, which contained *Spawn* Issue 9, was shipped for publication by Image Comics on June 12, 1996. Marder Aff., ¶ 6.

      **RESPONSE:** Plaintiffs dispute this proposed finding of fact to the extent it is intended to suggest that Gaiman actually received a copy of *Spawn* Volume 2 or would have had a reason to review the copyright notice it contained had he received it. Defendants have presented no evidence that they shipped a copy of this publication to Gaiman. In addition, by the time defendants published *Spawn* Volume 2, Gaiman had already received several copies of the underlying comic books which did not claim a copyright interest in Gaiman's work or the characters he created and, thus, he was unlikely to check to see if defendants' copyright notices had suddenly been altered to assert a claim to Gaiman's work. (See Pl.'s Br. at 12-13.) Finally, Gaiman has more than 200 works in publication, making it extremely difficult, if not infeasible to keep track of every republication of his work unless he has a specific reason to do so. (July 22, 2002 Declaration of Neil Gaiman ¶ 7.)

**REBUTTAL:** The McFarlane Defendants dispute the plaintiffs' suggestions that the large number of works Gaiman has published somehow reduces his ability to be aware of his copyrights. Further, the publication of *Spawn* Volume 2 made its copyright notice widely available to the general public, regardless of Gaiman's recollection as to receiving this work. Combined Appendix, Exhibit D.

10.     Gaiman also contributed "a partial script" that was merged into the main body of text and artwork for another work, *Spawn* Issue 26. Amended Complaint, ¶ 38; Answer, ¶ 38.

      **RESPONSE:** No Dispute.

      **REBUTTAL:** None.

11.     *Spawn* Issue 26 was published in December of 1994. Counterclaim, ¶ 33; Combined Appendix, Exhibit E; Reply, ¶ 33.

      **RESPONSE:** No Dispute.

      **REBUTTAL:** None.

12.     *Spawn* Issue 26 was shipped for publication by Image Comics on December 27, 1994. Marder Aff., ¶ 7.

      **RESPONSE:** No Dispute.

      **REBUTTAL:** None.

13.     *Spawn* Issue 26 also appeared in the trade paperback *Spawn* Volume 6, and *Pathways to Judgement*, both published in May of 1998. Counterclaim, ¶¶ 35, 38; Combined Appendix, Exhibits O, Q; Reply, ¶¶ 35, 38; Marder Aff., ¶ 8.

      **RESPONSE:** No Dispute.

      **REBUTTAL:** None.

14.     *Spawn* Volume 6 and *Pathway to Judgement* (containing *Spawn* Issue 26), were shipped for publication by Image Comics on May 29, 1998. Marder Aff., ¶ 8.

      **RESPONSE:** Plaintiffs dispute this finding of fact to the extent it is intended to suggest that defendants shipped a copy of *Spawn* Volume 6 or *Pathway to Judgement* to Gaiman.

Defendants have presented no evidence to that effect and Gaiman does not recall ever receiving a copy of those publications prior to this litigation. (Gaiman Decl. ¶ 6.)

> **REBUTTAL:** The publication of *Spawn* Volume 6 and *Pathway to Judgement* made them widely available to the public, regardless of Gaiman's recollection of receiving them. Combined Appendix, Exhibits O and Q.

15.    *Spawn* Volume 6 contains the following copyright notice: "*Spawn*, its logo and its symbol are registered trademarks 1998 of Todd McFarlane Productions, Inc. All other related characters are TM and © 1998 Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 36; Combined Appendix, Exhibit O; Reply, ¶ 36.

> **RESPONSE:** No Dispute.

> **REBUTTAL:** None.

16.    Gaiman also prepared scripts for another comic book, *Angela* Issues 1, 2, and 3. Amended Complaint, ¶ 40; Answer, ¶ 40.

> **RESPONSE:** No Dispute.

> **REBUTTAL:** None.

17.    Issues 1, 2, and 3 of the *Angela* series were published in December of 1994, January of 1995, and February of 1995, respectively. Counterclaim, ¶ 37; Combined Appendix, Exhibits G, H, and I; Reply, ¶ 37.

> **RESPONSE:** No Dispute.

> **REBUTTAL:** None.

18.    *Angela* Issue 2 contains the following copyright notice: "*Angela*, its logo and its symbol are registered trademarks™ and copyright © 1995 of Todd McFarlane Productions, Inc. All rights reserved." Counterclaim, ¶ 40; Combined Appendix, Exhibit H; Reply, ¶ 40.

> **RESPONSE:** No Dispute. Plaintiffs note that *Angela* Issues 1 and 3 contained no copyright notices at all. (See Defendants' Combined Appendix, Exs. G at 2 and I at 2.)

> **REBUTTAL:** None.

19.    Issues 1, 2, and 3 of the *Angela* series were again published in a trade paperback entitled *Angela* in November of 1995. Counterclaim, ¶ 43; Combined Appendix, Exhibit P; Reply, ¶ 43.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

20.    The *Angela* trade paperback (containing *Angela* Issues 1-3) was shipped for publication by Image Comics on November 7, 1995. Marder Aff., ¶ 9.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

21.    A copy of the *Angela* trade paperback, which contained Issues 1-3 of the *Angela* series, was shipped by Image Comics directly to Gaiman on November 7, 1995. *Id.*, ¶ 9.

**RESPONSE:** Plaintiffs dispute this proposed finding of fact to the extent it is intended to suggest that Gaiman actually received a copy of the *Angela* trade paperback and, if so, had a reason to review the copyright notice it contained. Defendants mailed the copies of *Angela* to Gaiman's Minnesota address during a time when Gaiman was working in Great Britain. (See Plaintiff's Proposed Additional Facts ¶ 53.) In addition, by the time defendants shipped the *Angela* trade paperback, Gaiman had already received several copies of defendants' underlying comic books which did not claim a copyright interest in Gaiman's work or the characters he created and, thus, Gaiman was unlikely to check to see if defendants' copyright notices had suddenly been altered to assert a claim to Gaiman's work. (See Pl.'s Br. at 12.) Finally, Gaiman has more than 200 works in publication and finds it infeasible to keep track of every republication of his work unless he has a specific reason to do so. (July 22, 2002 Declaration of Neil Gaiman.)

**REBUTTAL:** The plaintiffs have offered no evidence to dispute the fact that the *Angela* trade paperback was shipped directly to Gaiman, nor have they provided evidence that Image Comics could have or should have known the timing of Gaiman's alleged stay in Great Britain. The McFarlane Defendants dispute the plaintiffs' suggestions that the large number of works Gaiman has published somehow reduces his ability to be aware of his copyrights.

22.    The inside title page of the *Angela* trade paperback contains the following copyright notice; "*Angela*, its logo and its symbol are (TM) trademarks and (©) copyright 1995, Todd McFarlane Prods., Inc. All other characters are (TM) and (©) copyright 1995, Todd McFarlane Prods., Inc. All rights reserved." Counterclaim, ¶ 47; Combined Appendix, Exhibit P; Reply, ¶ 47.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

23.    Issues 1, 2, and 3 of the *Angela* series were again published in another trade paperback entitled *Angela's Hunt*, in August of 1998.  Amended Complaint, ¶ 42; Answer, ¶ 42; Combined Appendix, Exhibit R.

      **RESPONSE:** No Dispute.

      **REBUTTAL:** None.


24.    The *Angela's Hunt* trade paperback (containing *Angela* Issues 1-3) was shipped for publication by Image Comics on August 21, 1998.  Marder Aff., ¶ 10.

      **RESPONSE:** No Dispute.  Plaintiffs note that defendants have not produced a copy of the 1998 version of *Angela's Hunt*.  The version contained in their Combined Appendix was published in 2000.  (Combined Appendix, Ex. R, second to last page.)  Therefore, it is impossible to determine what, if any, copyright notice may have been contained in that issue.

      **REBUTTAL:** None.


25.    Gaiman received "author copies" of the *Angela* miniseries around the time of its publication.  Gaiman Dep., p. 191:20-22.

      **RESPONSE:** Disputed in part.  Plaintiffs dispute this finding of fact to the extent it is intended to suggest that Gaiman received a copy of the 1998 version of *Angela's Hunt*.  Asw (sic) noted in Response to Proposed Finding No. 24, defendants have not produced a copy of that publication.

      **REBUTTAL:** In spite of their dispute with this finding of fact, the plaintiffs have provided no evidence to suggest that Gaiman did not receive "author copies" of the *Angela* miniseries, as Gaiman admitted in his deposition cited above.


26.    McFarlane federally registered copyright in *Spawn* Issue 9, as a work for hire, with the United States Copyright Office on or about April 12, 1996. Combined Appendix, Exhibit C.

      **RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Spawn* Issue 9.  However, that registration falsely identifies McFarlane as the author of the text of that issue when, in fact, Gaiman authored the text.  (See Combined Appendix, Ex. C, McFarlane Dep. at 147-48.)  Plaintiffs also note that McFarlane registered this work more than three years after its initial publication.  (Id.)  McFarlane did not inform Gaiman that he was filing this application for registration.

**REBUTTAL:** The plaintiffs have provided no proof to suggest that this

registration was "false" in any way, in light of McFarlane's admission as to a clerical error on the

application. McFarlane Affidavit, ¶ 2.

27.     McFarlane federally registered copyright in *Spawn* Issue 26, as a work for hire, with the United States Copyright Office on or about January 20, 1995. Combined Appendix, Exhibit F.

**RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Spawn* Issue 26. However, that registration falsely identifies McFarlane as the sole author of the text of that issue when, in fact, Gaiman authored a portion of the text. (See Combined Appendix, Ex. F.) McFarlane did not inform Gaiman that he was filing this application for registration. (Gaiman Decl. ¶ 6.)

**REBUTTAL:** The plaintiffs have provided no proof to suggest that this

registration was "false" in any way, in light of McFarlane's admission as to a clerical error on the

application. McFarlane Affidavit, ¶ 2.

28.     McFarlane federally registered copyright in *Angela* Issue 1, as a work for hire, with the United States Copyright Office on or about January 20, 1995. Combined Appendix, Exhibit J.

**RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Angela* Issue 1. However, that registration falsely identifies McFarlane as the author of both the text and artwork for that issue when, in fact, he authored neither. (See Combined Appendix, Ex. J, McFarlane Dep. at 147-48.) McFarlane did not inform Gaiman that he was filing this application for registration. (Gaiman Decl. ¶ 6.)

**REBUTTAL:** The plaintiffs have provided no proof to suggest that this

registration was "false" in any way, in light of McFarlane's admission as to a clerical error on the

application. McFarlane Affidavit, ¶ 2.

29.     McFarlane federally registered copyright in *Angela* Issue 2, as a work for hire, with the United States Copyright Office on or about January 30, 1995. Combined Appendix, Exhibit K.

**RESPONSE:** Plaintiffs do not dispute that McFarlane registered the copyright for *Angela* Issue 2. However, that registration falsely identifies McFarlane as the author of both the text and artwork for that issue when, in fact, he authored neither. (See Combined Appendix,

Es. K, McFarlane Dep. at 91-92, 157.)  McFarlane did not inform Gaiman that he was filing this application for registration.  (Gaiman Decl. ¶ 6.)

   **REBUTTAL:**  The plaintiffs have provided no proof to suggest that this

registration was "false" in any way, in light of McFarlane's admission as to a clerical error on the

application.  McFarlane Affidavit, ¶ 2.


   30.    McFarlane federally registered copyright in *Angela* Issue 3, as a work for hire, with the United States Copyright Office on or about March 8, 1995.  Combined Appendix, Exhibit L.

   **RESPONSE:**  Plaintiffs do not dispute that McFarlane registered the copyright for *Angela* Issue 2.  However, that registration falsely identifies McFarlane as the author of both the text and artwork for that issue when, in fact, he authored neither.  (See Combined Appendix, Ex. K, McFarlane Dep. at 91-91, 157.)  McFarlane did not inform Gaiman that he was filing this application for registration.  (Gaiman Decl. ¶ 6.)

   **REBUTTAL:**  The plaintiffs have provided no proof to suggest that this

registration was "false" in any way, in light of McFarlane's admission as to a clerical error on the

application.  McFarlane Affidavit, ¶ 2.


   31.    In each of the copyright registrations identified in paragraphs 26 through 30 above, McFarlane was erroneously listed as the copyright owner as the result of a clerical error.  McFarlane Affidavit ("McFarlane Aff."), ¶ 2.

   **RESPONSE:**  Disputed.  Although defendants assert that McFarlane was listed as the copyright owner as the result of a clerical error, whether that is true depends upon an analysis of McFarlane's credibility which is not appropriate on summary judgment.

   **REBUTTAL:**  The plaintiffs have provided no evidence to contradict

McFarlane's affidavit testimony about the clerical error in the applications for copyright

registrations.  McFarlane Affidavit, ¶ 2.


   32.    The actual owner of the registered copyrights identified in paragraphs 26 through 30 above is Todd McFarlane Productions, Inc., McFarlane's employer.  McFarlane Aff., ¶ 2.

   **RESPONSE:**  Disputed.  While it may be the defendants' contention that they intended to identify Todd McFarlane Productions, Inc. as the owner on their applications for copyright registration, the issue of who owns these copyrights is precisely one of the issues in dispute in this action.

**REBUTTAL:** While the plaintiffs correctly identify that "who owns these copyrights is precisely one of the issues in dispute in this action," they have provided no evidence to contradict McFarlane's affidavit testimony that TMP was intended to be listed as the owner on the copyright registrations.

33.    McFarlane consented to the licensing activities of Todd McFarlane Productions, Inc., namely:

A.    TMP's grant of a license to Malibu Comics to publish the original issue 9 of *Spawn, id.,* ¶ 4;

B.    TMP's grant of a license to Image Comics, Inc. to publish issue 26 of *Spawn, id.*;

C.    TMP's grant of a license to Image Comics, Inc. to publish issues 1 through 3 of *Angela, id.*;

D.    TMP's grant of a license to Image Comics, Inc. to publish the trade paperback reprints of issue 9 of *Spawn* and issues 1 through 3 of *Angela, id.*;

E.    TMP's grant of a license to TMP International, Inc. to create toy action figures based on various characters in the *Spawn* comic books, *id.,* ¶ 5;

F.    TMP's grant of a license to various third parties to create other derivative works based on various characters in the Spawn comic books, id., ¶ 6.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

34.    During his career as an author, Gaiman has specifically requested that publishers include the "standard copyright notice" on his published works. Gaiman Dep., p. 207:16-17.

**RESPONSE:** Disputed. Gaiman's testimony related only to the "standard copyright" notice in the United Kingdom. There is no evidence Gaiman is aware of what, if any, "standard wording" is required in the U.S. Moreover, McFarlane's copyright notices in the initial comic publications were not inconsistent with Gaiman's rights. (See Pl.'s Br. at 10-11.)

**REBUTTAL:** "McFarlane's copyright notices," in which TMP claimed sole copyright ownership, are inconsistent with anyone else's claim of sole copyright ownership in these works. Combined Appendix, Exhibits B, D, E, G, H, I, O, P and Q.

10

35.    All of Gaiman's published works contain "standard wording" in the form of a copyright notice. *Id.*, p. 208:6-11.

RESPONSE: Disputed. Gaiman's testimony refers only to works published in the U.K. and the British-law copyright notices contained therein. See Gaiman Dep. at 208.

REBUTTAL: None.

36.    Gaiman has been publishing books in the United States since 1988. *Id.*, p. 211:1-18.

RESPONSE: No Dispute.

REBUTTAL: None.

37.    Gaiman is aware that in both the United Kingdom and the United States, authors commonly place copyright notices on their works, although the language used in the two countries may differ. *Id.*, p. 209:2-14.

RESPONSE: No Dispute.

REBUTTAL: None.

38.    Gaiman is familiar with both the concept and usage of copyright notice, and as an author, understands its importance. *Id.*, p. 207:16-210:11.

RESPONSE: Disputed.

REBUTTAL: The plaintiffs have provided no evidence to contradict Gaiman's familiarity with the concept, usage, and importance of copyright notice. In fact, in their Response Brief, the plaintiffs describe Gaiman as familiar with the so-called "creators rights" movement of the early 1990s, which purported to protect comic book creators' trademarks and copyright. Response Brief at 2-3. Given Gaiman's deposition testimony cited above and his concern for creators' rights, his familiarity with the concept, usage, and importance of copyright notice is not in dispute.

39.    As an author of comic books, Gaiman routinely attended trade shows and conventions. *See, e.g., id.*, pp. 211:7-10, 212:8-214:7.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

40.    At such events, Gaiman would autograph for fans copies of works he authored. *See, e.g., id.*, pp. 211:7-10, 212:8-214:7.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

41.    Among the works Gaiman autographed were copies of *Spawn* Issue 9 and the trade paperbacks that contained *Spawn* Issue 9. *Id.*, pp. 211:1-10, 213:22-214:8.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

42.    Also among the works Gaiman autographed were copies of issues from the *Angela* series, and copies of the *Angela* trade paperbacks. *Id.*, pp. 213:5-13.

**RESPONSE:** Disputed. Gaiman testified that it was "possible" he signed such copies. Gaiman Dep. at 213:11. Further, plaintiffs dispute this finding of fact to the extent it is intended to suggest that Gaiman actually has the time to inspect the copyright notices on such works at book signings. The hectic environment of a book signing, with hundreds of people lining up for signatures, does not allow time for such inspections. (Gaiman Decl. ¶ 7.)

**REBUTTAL:** This finding of fact does not imply that Gaiman was obliged "to inspect the copyright notices on such works at book signings." Rather, Gaiman admittedly became aware of various comic books and trade paperbacks at these book signings, and thus knew of their publication and circulation. *Id.*, pp. 213:5-13.

43.    Often, during these signings, Gaiman would identify a fan's copy as a publication from which Gaiman believed he was not receiving royalties, and refuse to sign it. *Id.*, p. 213:11-21.

**RESPONSE:** Disputed in part. Plaintiffs dispute this proposed finding to the extend it is intended to suggest that Gaiman identified such publications and refused to sign them prior to February 1999. In fact, Gaiman did not begin identifying such publications and refusing to sign them until after he received McFarlane's rescission letter in February 1999. (Gaiman Decl. ¶ 7.)

**REBUTTAL:** None.

44.    In this lawsuit, the plaintiffs have asserted claims for, *inter alia*, copyright ownership, copyright infringement, and violations of the federal Lanham Act and Wisconsin's false advertising statute. Amended Complaint, ¶¶ 64-74, 88-98.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

## CONCLUSIONS OF LAW

1.    This court has jurisdiction over this dispute. 28 U.S.C. § 1338(a) and (b); 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

2.    Venue is proper in this judicial district. 28 U.S.C. § 1391 (b)(1) and (c).

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

3.    Where the record indicates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law, the court may grant summary judgment. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999).

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

4.    A copyright claim accrues when a reasonably diligent person would have learned of his cause of action. *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983); *Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996).

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

5.    Accrual of a copyright ownership claim is marked by someone else's express assertion of sole copyright ownership of the work at issue. *Aalmuhammed v. Lee*, 202 F.3d

1227, 1231 (9th Cir. 2000); *Zuill*, 80 F.3d at 1371; 3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* (2002) ("*Nimmer*") § 12.05[C] at 12-132.3, n.49.

              **RESPONSE:** Disputed.  The rule for accrual is properly stated in Proposed Conclusion No. 4.  See also July 19, 2002 Memorandum and Order ("Order") at 3.

              **REBUTTAL:**  Indeed, the Court's Order properly recites the Seventh Circuit's requirement of a plaintiff's diligence as stated in *Taylor*, and the holdings of *Zuill* and *Aalmuhammed* are fully consistent with this standard.  Expressly recognizing the "reasonably diligent person" standard for plaintiffs in copyright actions, these cases note that a defendant's "plain and express repudiation" of the plaintiffs' copyright ownership causes a copyright ownership claim to accrue.  *Zuill v. Shanahan*, 80 F.3d 1366, 1370-71 (9th Cir. 1996) (citations omitted); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000).  A reasonably diligent plaintiff should thus be aware of another's express repudiation of copyright ownership.

       6.      Such accrual may occur by the placement of copyright notice on the work, *Zuill*, 80 F.3d at 1368, or by federally registering copyright in the work.  *Willsea v. Theis*, 1999 U.S. Dist. LEXIS 22471 at *13-*14 (S.D.N.Y. 1999); *Margo v. Weiss*, 1997 U.S. Dist. LEXIS 20867 at *14-*15 (S.D.N.Y. 1998).

              **RESPONSE:** Disputed.  See Order at 3.

              **REBUTTAL:**  Registrations filed with the Copyright Office put all people on constructive notice of the facts they contain.  17 U.S.C. § 205 (c).  Copyright registrations should alert a reasonably diligent plaintiff to his cause of action for copyright ownership. *Willsea v. Theis*, 1999 U.S. Dist. LEXIS 22471 at *13-*14 (S.D.N.Y. 1999); *Margo v. Weiss*, 1997 U.S. Dist. LEXIS 20867 at *14-*15 (S.D.N.Y. 1998).

       7.      Once an author registers his copyright, a diligent co-author should be cognizant of his alleged injury stemming from another's assertion of ownership.  *Willsea*, 1999 U.S. Dist. LEXIS 22471 at *13; *Margo*, 1997 U.S. Dist. LEXIS 20867 at *15.

              **RESPONSE:** Disputed.  See Order at 3.

**REBUTTAL:** Registrations filed with the Copyright Office put all people on constructive notice of the facts they contain. 17 U.S.C. § 205 (c). Copyright registrations should alert a reasonably diligent plaintiff to his cause of action for copyright ownership. *Willsea v. Theis*, 1999 U.S. Dist. LEXIS 22471 at *13-*14 (S.D.N.Y. 1999); *Margo v. Weiss*, 1997 U.S. Dist. LEXIS 20867 at *14-*15 (S.D.N.Y. 1998).

8.    Even serious mistakes on the registration certificate, such as an erroneous statement as to identity of the author, or of the copyright claimant, or where the copyright is claimed in the name of the partnership rather than in the name of the individual partners, do not affect the validity of a copyright registration. 2 *Nimmer*, § 7.20[B] (compiling cases)

**RESPONSE:** Disputed. A party who deliberately misrepresents its authorship to the Copyright Office loses the presumption of validity normally accorded to a copyright registration. Zitz v. Pereira, 119 F. Supp. 2d 133, 144-45 (E.D.N.Y. 1999). See also Budget Cinema, Inc. v. Watertower Assocs., 81 F.3d 729, 733 (7th Cir. 1996.) ("significant questions existed regarding the validity of the [plaintiff's] copyright" where, among other things, plaintiff falsely stated authorship in copyright registration); Gillespie v. Miles, 2001 U.S. Dist. LEXIS 1997, *24 (S.D.N.Y. 2001) (validity of plaintiff's copyright registrations turned on resolution of joint authorship claim). If a party's registration is invalid, they may not sue for copyright infringement. See Fomation, Inc v. Wedeward Enterp., Inc., 947 F. Supp. 1287, 1296 (E.D. Wis. 1996). See also 17 U.S.C. § 411.

**REBUTTAL:** The plaintiffs' comments about "deliberately misrepresent[ing] authorship to the Copyright Office" are irrelevant, as they have come forth with no evidence to suggest that any such deliberate misrepresentation was made.

9.    Misstatements on a copyright registration application due to "clerical error," have virtually no impact on the validity of the registration. 2 *Nimmer*, § 7.20 at 7-208, n.19 (citing *Baldwin Cooke Co. v. Keith Clark, Inc.*, 505 F.2d 1250 (7th Cir. 1947).

**RESPONSE:** No dispute. In this case, however, whether McFarlane's false registrations were the result of a "clerical error" is a question of fact turning on McFarlane's credibility as a witness.

**REBUTTAL:** The plaintiffs have come forth with no evidence to dispute McFarlane's affidavit testimony about the occurrence of the clerical error.

15

10.    A valid copyright notice consists of three elements: the symbol © or the word "copyright"; the year of first publication; and "the name of the owner of the copyright in the work." 17 U.S.C. § 401(c).

**RESPONSE:**  Disputed in part.  Plaintiffs do not dispute that defendants have properly cited to 17 U.S.C. § 401 (c).  In this case, however, defendants' notices, where they existed, did not accurately identify "the work" to which they applied.  (See Pl.'s Brief at 10-11.)

**REBUTTAL:**  The plaintiffs' dispute with this "properly cited" conclusion of law has no basis in law or fact.  The Copyright Act simply does not require a copyright notice to identify the work to which the notices apply.  17 U.S.C. § 401(c).

11.    Each of the plaintiffs' copyright ownership claims accrued more than three years before the present lawsuit was initiated, thus Count I of the plaintiffs' Amended Complaint is time-barred and the McFarlane Defendants are entitled to summary judgment on this count.

**RESPONSE:**  Disputed.  See Plaintiffs' Response Brief.

**REBUTTAL:**  None.  *See* the McFarlane Defendants' Reply Brief.

12.    To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S 340, 361, 111 S. Ct. 1282, 1296 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548 (1985)).

**RESPONSE:**  Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

**REBUTTAL:**  As the plaintiffs dispute none of the conclusions of law pertaining to copyright infringement, and have withdrawn these claims, the entry of judgment in favor of the McFarlane Defendants on the infringement claims is appropriate.

13.    To prevail on a copyright infringement claim, a plaintiff must prove his or her "ownership of a valid copyright" in these works or characters.  *Feist*, 499 U.S. at 361.

**RESPONSE:**  Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

**REBUTTAL:** As the plaintiffs dispute none of the conclusions of law pertaining to copyright infringement, and have withdrawn these claims, the entry of judgment in favor of the McFarlane Defendants on the infringement claims is appropriate.

14.     Copyright ownership is an indispensable element of infringement. *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001) (citing *Feist*, 499 U.S. at 361); *see also Harbor Motor Co., Inc. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 644 (7th Cir. 2001) (citations omitted).

**RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

**REBUTTAL:** As the plaintiffs dispute none of the conclusions of law pertaining to copyright infringement, and have withdrawn these claims, the entry of judgment in favor of the McFarlane Defendants on the infringement claims is appropriate.

15.     A copyright infringement claim fails where the plaintiff fails to satisfy its requirement of proving ownership. *Foamation, Inc. v. Wedeward Enters.*, 970 F. Supp. 676, 683 (E.D. Wis. 1997); *Budget Cinema v. Watertower Assocs.*, 81 F.3d 729, 731 (7th Cir. 1996).

**RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

**REBUTTAL:** As the plaintiffs dispute none of the conclusions of law pertaining to copyright infringement, and have withdrawn these claims, the entry of judgment in favor of the McFarlane Defendants on the infringement claims is appropriate.

16.     Because the plaintiffs' copyright ownership claims are time-barred, the plaintiffs cannot prove their claims for copyright infringement, of which valid copyright ownership is an indispensable component, thus the McFarlane Defendants are entitled to summary judgment Counts II and III of the plaintiffs' Amended Complaint.

**RESPONSE:** Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

**REBUTTAL:** As the plaintiffs dispute none of the conclusions of law pertaining to copyright infringement, and have withdrawn these claims, the entry of judgment in favor of the McFarlane Defendants on the infringement claims is appropriate.

17.    "[A] joint author cannot be liable for copyright infringement of another joint author, because he or she cannot infringe his or her own copyright ...." *Beloit Corp. v. C3 Datatec, Inc.*, 1995 U.S. Dist. LEXIS 16685 at *23-*24 (E.D. Wis. 1995) (citing *Weissmann v. Freeman*, 868 F.2d 1313, 1317 (2d Cir. 1989)); *see also Oddo v. Ries*, 743 F.2d 640, 632-33 (9th Cir. 1984); *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984).

> **RESPONSE:**  Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

> **REBUTTAL:**  As the plaintiffs dispute none of the conclusions of law pertaining to copyright infringement, and have withdrawn these claims, the entry of judgment in favor of the McFarlane Defendants on the infringement claims is appropriate.

18.    An authorization to a defendant from one joint owner will be an effective defense to an infringement action brought by another joint owner.  1 *Nimmer*, § 6.10 (citations omitted); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 224 (2d Cir. 1999); *Oddo*, 743 F.2d at 633.

> **RESPONSE:**  Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

> **REBUTTAL:**  As the plaintiffs dispute none of the conclusions of law pertaining to copyright infringement, and have withdrawn these claims, the entry of judgment in favor of the McFarlane Defendants on the infringement claims is appropriate.

19.    The McFarlane Defendants are further entitled to summary judgment on the copyright infringement claims because the plaintiffs, to the extent they are deemed co-owners of copyright in the works at issue, cannot, as a matter of law, sue the McFarlane Defendants, as co-owners or authorized licensees, for copyright infringement.

> **RESPONSE:**  Plaintiffs have withdrawn their claim for copyright infringement and, therefore, do not address this proposed finding.

> **REBUTTAL:**  As the plaintiffs dispute none of the conclusions of law pertaining to copyright infringement, and have withdrawn these claims, the entry of judgment in favor of the McFarlane Defendants on the infringement claims is appropriate.

20.    The Lanham Act contains no explicit statute of limitations. *See generally* 15 U.S.C. 1051, *et seq.*; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999).

> **RESPONSE:**  No Dispute.

**REBUTTAL:** None.

21.    Federal courts refer to the analogous state laws to determine whether a claim brought under the Lanham Act is time-barred. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985).

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

22.    State law consumer protection statutes are often analogous to the federal Lanham Act for these purposes. *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 1075, 1079 (N.D. Ill. 2001).

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

23.    For the purposes of the timeliness of the plaintiffs' "attribution" claims, Counts VII and VIII of the Amended Complaint, their state law false advertising claim is analogous to their federal claim under the Lanham Act.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

24.    Section 100.18 imposes a three-year time bar: "No action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." Wis. Stat. § 100.18(11)(b)3.

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

25.    No "discovery rule" qualifies this limitations period. *Skrupky v. Elbert*, 189 Wis. 2d 31, 5556, 526 N.W.2d 264, 273-74 (Ct. App. 1994).

**RESPONSE:** No Dispute.

**REBUTTAL:** None.

26.    The statute establishes a single, "definite point of accrual" for such claims which occurs "at the time of the defendant's action." *Kain v. Bluemound E. Indust. Park, Inc.*, 2001 WI App 230, ¶ 14, 248 Wis. 2d 172, 635 N.W.2d 640 (Ct. App. 2001).

**RESPONSE:** Disputed. A cause of action for a continuing harm does accrue until the harm is complete. See Order at 7. Thus, Gaiman's cause of action is not time-barred if one of defendant's acts occurred within the 3-year limitation period.

**REBUTTAL:** The plaintiffs incorrectly describe a "3-year *limitation* period," for a continuing harm. Section 100.18 is qualified by a statute of *repose* that cuts off a plaintiff's right to bring an action "within a specified amount of time *after the defendant's action* which allegedly led to injury," regardless of the claim's accrual. *Kain*, 2001 WI App 230, ¶ 14; *see also* Reply Brief at 13-14.

27.    The plaintiffs' state law false advertising claim accrued more than three years before this lawsuit was initiated, thus it is time-barred, entitling the McFarlane Defendants to summary judgment on Count VIII.

**RESPONSE:** Disputed. Defendants' harmful acts – the selling of *Pathway to Judgement* without attribution – are ongoing and therefore not barred by the statute of limitations. (See July 22, 2002 Simmons Affidavit ¶ 7.)

**REBUTTAL:** The plaintiffs have asserted claims for "attribution" under section 100.18, and the alleged "misattribution" occurred when the works were first published, not as they were, or are, sold.

28.    Because the state law claim for false advertising is time-barred, so is the plaintiffs' analogous Lanham Act claim, entitling the McFarlane Defendants to summary judgment on Count VII.

**RESPONSE:** Disputed. See Response to Proposed Conclusion No. 27.

**REBUTTAL:** As the plaintiffs have admitted the analogy between the Lanham Act claim and their state law false advertising claim for the purpose of applying the time-bar, *see supra* at 19, ¶ 23, if the state law claim fails, so must the federal claim.

Dated:  August 1, 2002

LA FOLLETTE GODFREY & KAHN

_Eugenia G. Carter_

Eugenia G. Carter
Todd G. Smith
Gabriel S. Gross
One East Main Street, Suite 500
Madison, WI 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

—and—

Michael A. Kahn
Peter W. Salsich, III
Blackwell Sanders Peper Martin LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel: (314) 345-6000
Fax: (314) 345-6060

Attorneys for Todd McFarlane, Todd McFarlane
Productions, Inc., TMP International, Inc. and
McFarlane Worldwide, Inc.

MN153343_1.DOC