IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NEIL GAIMAN and MARVELS AND )
MIRACLES, LLC, )
 )
    Plaintiffs, )
 )
    v. )
 )    Case No. 02-C-0048-S
TODD McFARLANE, TODD )
McFARLANE PRODUCTIONS, INC., )
TMP INTERNATIONAL, INC., and )
McFARLANE WORLDWIDE, INC. )
 )
    Defendants-Counterclaimants, )
 )
And )
 )
IMAGE COMICS, INC., )
 )
    Defendant. )

---

**REPLY BRIEF OF DEFENDANTS TODD McFARLANE, TODD McFARLANE PRODUCTIONS, INC., TMP INTERNATIONAL, INC. AND McFARLANE WORLDWIDE, INC. IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

LaFollette Godfrey & Kahn
One East Main Street, Suite 500
Madison, WI 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*LaFollette Godfrey & Kahn is the
Madison office of Godfrey & Kahn, S.C.*

Blackwell Sanders Peper Martin, LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel: (314) 345-6000
Fax: (314) 345-6060

## INTRODUCTION

In light of the plaintiffs' recent withdrawal of their two claims for copyright infringement[1] (Counts II and III), there are but two issues to be resolved on the McFarlane Defendants' Motion for Partial Summary Judgment: whether the Court may, as a matter of law, enter judgment on the plaintiffs' copyright ownership claim and on their attribution claims because both are time-barred. The undisputed facts now before the Court shed light on the reasonableness and diligence of the plaintiffs' efforts to discover their claims. The undisputed facts also establish as a matter of law that the respective three-year periods for bringing these claims passed long before this suit was filed and that the Court should therefore enter summary judgment in favor of the defendants on those claims.

In their Response Brief, the plaintiffs lead the Court through nine pages of what they call "material facts," painting an interesting but irrelevant picture of the comic book industry in the early 1990s as a creative sanctuary where authors, artists, and publishers conducted their business under a sacred credo, the "Bill of Rights for Comics Creators." *See* Response Brief at 3. This so-called "Bill of Rights" has no more place in this litigation than the Boy Scouts' Oath or the *Desiderata*, and is plainly irrelevant to whether Gaiman had knowledge of his copyright ownership claims more than three years before initiating this action. Indeed, much of the plaintiffs' brief is clearly aimed at providing public relations material for the comic book industry-related web sites and "chat rooms" that have been monitoring this case.

More importantly for purposes of the issues before the Court, the superfluous "context" provided in the Response Brief does not alter the facts that (1) as Todd McFarlane Productions, Inc. ("TMP") published the comic books at issue in this case, it expressly and repeatedly claimed

---

[1] The McFarlane Defendants intend shortly to submit a proposed judgment that, when approved and signed by the Court, will enter judgment on the copyright infringement claims in favor of the McFarlane Defendants.

2

sole copyright ownership in the works beginning in 1993, and (2) McFarlane paid Gaiman a considerable amount for the work he contributed to certain comic books. *See, respectively,* McFarlane Defendants' Proposed Findings of Fact and Conclusions of Law ("Def. PFOFCOL") at 2, ¶ 5; McFarlane Defendants' Statement of Rebuttal to Plaintiffs' Additional Proposed Findings at 24. Regardless of the plaintiffs' characterization of the artistic climate many years ago, the undisputed facts show that Gaiman long had knowledge of his claim for copyright ownership, and that he knowingly sat on his right to enforce this claim.

As to the plaintiffs' claims for attribution, Wisconsin courts have made clear that the relevant statute of repose, which in this case operates on both the federal and state causes of action, bars any claims based on conduct by a defendant that occurred more than three years before the filing of this suit. Accordingly, because the alleged misattributions first occurred more than three years before the Complaint in this action was filed, the plaintiffs' attribution claims are also time-barred and should be dismissed.

## ARGUMENT

### I. THE PLAINTIFFS' COPYRIGHT OWNERSHIP CLAIMS FIRST ACCRUED NINE YEARS AGO, AND ARE THUS TIME-BARRED UNDER 17 U.S.C. § 507(b).

The plaintiffs attack the form of the defendants' copyright notices, attempt to obscure the import of those notices, and ignore the undisputed facts that speak to Gaiman's lack of diligence in discovering his cause of action. The undisputed facts before the Court, however, make clear that the plaintiffs' remaining copyright claims are time-barred.

### A. The Copyright Notice on *Spawn* Issue 9, The Work That Gave Rise to All of the Disputed Intellectual Property in this Case, Put the Plaintiffs on Notice of their Copyright Ownership Claim in 1993.

On the issue of whether their copyright ownership claim is time-barred, the plaintiffs attempt to create a disputed factual issue where none exists. Specifically, they try to call into

question the copyright notice included in the 1993 work *Spawn* Issue 9, which is the first comic book on which Neil Gaiman and Todd McFarlane collaborated, and the seminal work in which all of the disputed characters made their debuts. The plaintiffs' motivation is clear, though their argument defies the facts. If the plaintiffs could establish a genuine issue of fact about the copyright notice affixed to this particular comic book, their copyright ownership claims might survive summary judgment on the issue of whether they are time-barred. But the existence and language of the copyright notice in *Spawn* Issue 9 is an *undisputed fact* that the plaintiffs have already conceded. *See* Counterclaims, ¶ 15 (attaching *Spawn* Issue 9 as Exhibit B); Reply to Counterclaims, ¶ 15 (admitting the truth and accuracy of Exhibit B). This notice expressly identifies Todd McFarlane Productions, Inc. ("TMP") as the sole copyright owner of the comic book and as the trademark owner of the logo. Combined Appendix, Exhibit B. The notice reads, "*Spawn* and its logo are trademark™ and copyright © 1993 Todd McFarlane Productions, Inc." *Id.* In their opposition to summary judgment, however, the plaintiffs mischaracterize this hard fact.

Incredulously, the plaintiffs dispute the "suggest[ion] that the copyright notice contained in *Spawn* Issue 9 claims a copyright in that particular issue." *Id.*; *see also* Plaintiffs' Response to Defendants' Proposed Findings of Fact and Conclusions of Law ("Response PFOFCOL") at 2, ¶ 5. The plaintiffs' brief wrongly states that "*Spawn* 9 does not contain a copyright notice asserting ownership in that particular issue, but only in the *Spawn* character." Response Brief at 10. The plain language of the copyright notice, quoted above, reveals otherwise. Indeed, as that language shows, the word "Spawn" is italicized, making clear that the notice claims ownership in the comic book by that title, not in the character of the same name. Furthermore, the sentence containing the notice refers to "*Spawn* and <u>its</u> logo," not "<u>his</u> logo" nor "the <u>character's</u> logo." As *Spawn* the comic book is a thing, whereas Spawn the character is a persona, the possessive

4

pronoun "its" refers undoubtedly to the comic book.  Thus, as used in the copyright notice, the word "Spawn" plainly refers to the comic book.  In what other work could a notice affixed to *Spawn* Issue 9 possibly claim copyright?

To the plaintiffs, in spite of its placement on the first page of the comic book, TMP's copyright notice only "appears to claim an interest in the *Spawn* logo and *Spawn* character ...."  Response PFOFCOL at 2, ¶ 5.  This argument is disingenuous and defies logic.  Under the plaintiffs' reasoning, would a copyright notice affixed to a "James Bond" novel apply only to the *character* of a British secret service agent and not to the content of the book?  Would a copyright notice affixed to the movie "Rocky" be limited only to the archetype of an Italian-American boxer and not apply to the substance of the motion picture?  The answer, of course, is no.  Under the plaintiffs' theory that copyright notices must identify the work in which the notice applies, the notices themselves would become complex works of authorship, describing the metes and bounds of the intellectual property to which they do and do not apply.  Section 401(b) of the Copyright Act describes the requirements for a valid copyright notice, and contains no such requirement.  17 U.S.C. § 401(b).

To create a valid notice, the Copyright Act simply requires (1) the symbol "©" or the word "Copyright," (2) the year of the work's first publication, and (3) the name of the owner of copyright in the work.  *Id.*  In placing its notice on *Spawn* Issue 9, TMP complied with the Copyright Act, (1) placing on that comic book the word "copyright" and the symbol "©", (2) identifying 1993 as the year in which the work was first published, and (3) stating the name of the copyright owner, Todd McFarlane Productions, Inc.  No more is required for proper copyright notice.  The inconsistency of the plaintiffs' argument is revealed when they admit that these three elements comprise proper copyright notice, but in the same breath they claim that the McFarlane Defendants' notices "do not accurately identify 'the work' to which they applied."

5

Response PFOFCOL at 12, ¶ 10. The Copyright Act does not require a notice to identify the work on which it operates—indeed, it is implicit and obvious in § 401(b) of the Act that *a copyright notice applies to the work on which it appears.* Thus, the 1993 notice on *Spawn* Issue 9 applies to the entire comic book and its contents.[2]

The plaintiffs' denials of undisputed facts and well-established conclusions of law is designed to hide two unavoidable, dispositive facts. First, the work in which the disputed characters first appeared contains a copyright notice indicating ownership by TMP in 1993. The plaintiffs attack this notice, of course, because it marks the accrual of their copyright ownership claim—to that issue and all the characters within—far more than three years ago, time-barring it under 17 U.S.C. § 507(b). Second, Gaiman himself testified that he received *Spawn* Issue 9 on the day of its publication in 1993. *See* Memorandum of Law of Defendants Todd McFarlane Productions, Inc. [et al.] in Support of Their Motion for Partial Summary Judgment ("McFarlane Brief") at 6-7 (quoting Gaiman Dep., p. 191). Having possessed *Spawn* Issue 9—and the copyright notice contained therein—for the past nine years, it would have behooved Gaiman to examine its copyright notice, as due diligence is required of a plaintiff asserting a claim under the Copyright Act.[3] *See Taylor v. Meirick,* 712 F.2d 112, 1118 (7th Cir. 1983).

---

[2] The plaintiffs similarly attack the copyright notices affixed to *Angela* Issue 2 and *Spawn* Volume 2 which, in all relevant respects, are identical to the notice in *Spawn* Issue 9. *See* Plaintiffs' Additional PFOF at ¶ 41, 57. These notices too are not limited in scope to the characters, as they applies to the contents of the works on which they are affixed for all of the reasons discussed above.

[3] The plaintiffs present their delay in filing suit as reasonable, claiming that "both the Second and the Ninth Circuits require some form of actual notice alerting the party to the cause of action," and they quote *Zuill v. Shanahan,* 80 F.3d 1366, 1369 (9th Cir. 1996) for the proposition that such notice must be "*communicated to the claimant.*" Response Brief at 15. This is precisely the reason that the plaintiffs' ownership claims must fail—the McFarlane Defendants copyright notices were, repeatedly, communicated to the plaintiffs. Gaiman himself was given hard copies of *Spawn* Issue 9, with its copyright notice, on the day it was published. Twenty copies of the *Angela* trade paperback, bearing the defendants' copyright notice, were even mailed to Gaiman directly. What other "communication" of the defendants' express assertions of copyright ownership could be necessary? TMP announced its sole copyright ownership on thousands of published copies of the comic books at issue, sold them to the public at large, and even provided many to Gaiman directly.

Expressly recognizing the "reasonably diligent person" standard for plaintiffs in copyright actions, other federal courts note that a defendant's "plain and express repudiation" of the plaintiffs' copyright ownership causes a copyright ownership claim to accrue. *Zuill v. Shanahan*, 80 F.3d 1366, 1370-71 (9th Cir. 1996) (citations omitted); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000). The *Zuill* court, in a related comment, elaborated on a feature of copyright ownership claims that has special relevance to this case. "An infringement occurs every time the copyrighted work is published, but creation does not. Creation, rather than infringement, [is] the gravamen of plaintiffs' co-ownership claim, *so the claim [can]not accrue upon subsequent publication.*" *Zuill*, 80 F.3d at 1371 (emphasis added). This attribute of copyright ownership claims—that they accrue upon the first creation of a work, rather than its later publication—highlights the significance of the copyright notice on *Spawn* Issue 9. It was the creation of this complete work in 1993 that triggered the plaintiffs' claims to ownership for that issue, its content, and its characters. The subsequent publications of this work in trade paperbacks that bore the defendants' copyright notices (e.g., *Spawn* Volume 2, see PFOFCOL at 3, ¶¶ 7-8) may have served to provide the plaintiffs with *further* notice of their ownership claims, but they did not change the date these claims accrued, that is, the date the work was created in 1993. Having been in possession of *Spawn* Issue 9 since 1993—not to mention numerous trade paperbacks bearing similar copyright notices, *see* McFarlane Brief at 6-8—Gaiman knew, or certainly should have known, that someone other than he was claiming copyright ownership in the works now in dispute. The undisputed facts establish that had they fulfilled their duty of diligence, the plaintiffs would have been aware of their ownership claim in 1993.

**B.   It Was Neither Reasonable Nor Diligent For the Plaintiffs to Fail to Discover Their Cause of Action in Light of the McFarlane Defendants' Express Copyright Notices on the Other *Spawn*-Related Works and their Copyright Registrations.**

Between 1993 and 1995, the plaintiffs received *Spawn* Issue 9 bearing the McFarlane Defendants' copyright notice, Def. PFOFCOL at 2, ¶ 6, were aware of the publication of several trade paperbacks that incorporate *Spawn* Issues 9 and 26 and bear similar notices, *id.* at 3-5, ¶¶ 8, 15, 18, 22, and could have or with reasonable diligence should have known that the McFarlane Defendants federally registered these works with the U.S. Copyright Office. *Id.* at 5, ¶¶ 26-30; McFarlane Brief at 11-13. In conjunction, these numerous occurrences (each of which individually may have put the plaintiffs on notice of their ownership claims) would indicate to a reasonable, diligent plaintiff that a cause of action for copyright ownership existed. Some courts have held that copyright registrations *alone* put plaintiffs on notice of their ownership claims. *See, e.g., Willsea v. Theis*, 1999 U.S. Dist LEXIS 22471 at *13 (S.D.N.Y. Aug. 5, 1999); *Margo v. Weiss*, 1997 U.S. Dist. LEXIS 20867 at *15 (S.D.N.Y. Dec. 31, 1997). The Court has reminded the parties that "[t]hese cases do not change the due diligence standard applicable in the Seventh Circuit." July 18, 2002 Order at 3. It is precisely because of this diligence standard that the copyright registrations are significance. The Copyright Act elaborates: "Recordation of a document in the Copyright Office *gives all persons constructive notice of the facts stated in the recorded document ....*" 17 U.S.C. § 205(c). Further, if a diligent plaintiff consulted the Copyright Office, such registrations "would be revealed by a reasonable search under the title or registration number of the work." 17 U.S.C. § 205(c)(1). Even if the Court declines to adopt the holdings of the "constructive notice" cases, however, the McFarlane Defendants' copyright registrations are only one of several factors which the plaintiffs, under their duty of diligence, should have recognized as indicative of their cause of action.

8

The plaintiffs reveal their own lack of diligence as they attack the McFarlane Defendants' copyright notices found in the trade paperbacks. For example, Larry Marder, the former executive director of Image Comics, testified that Image shipped twenty copies of the *Angela* trade paperback (which bore TMP's 1995 copyright notice, PFOFCOL at 4, ¶ 22) directly to Gaiman on November 7, 1995, the same day it was published and made available to the general public. *Id.*, ¶¶ 20-21. The plaintiffs merely responded that these issues were sent to Gaiman's Minnesota address, and "Gaiman was working in Great Britain during *much of the fall* of that year and *does not remember* receiving the copy." Response Brief at 12 (emphasis added). Refusing to monitor one's personal mail (and failing to identify the actual dates of being abroad) hardly suggests that the plaintiffs were diligent in failing to discover their cause of action in 1995.

In a similar fashion, the plaintiffs justify their delay in filing suit as reasonable, complaining that "Gaiman has in excess of 200 works in publication and could not reasonably be expected to monitor the copyright notices on every publication ...." *Id.* at 13. Under this reasoning, the more works Gaiman authors and publishes, and the more copyright experience he acquires, the *less* diligent he should be in discovering his causes of action. This runs contrary to the Seventh Circuit's requirement of due diligence for copyright plaintiffs. *Taylor*, 712 F.2d at 1118. Ever since the 1993 publication of *Spawn* Issue 9, and as related works were successively published through 1995, the plaintiffs had numerous occasions and various reasons to learn of their copyright ownership claims—if they had exercised their duty of diligence. *Id.* at 1118.

All of the other comic books at issue besides *Spawn* Issue 9 were published bearing TMP's copyright notice more than three years before the plaintiffs initiated this lawsuit. *Spawn* Issue 26, for example, appeared in two trade paperbacks published in 1998, both of which contained TMP's valid copyright notices. Def. PFOFCOL at 3, ¶¶ 13-15. All three of the

*Angela* comics too were published in a trade paperback in 1995 that contained TMP's valid copyright notice. *Id.* at 4, ¶ 22. The plaintiffs cite *Sellars v. Perry*, 80 F.3d 243, 246 (7th Cir. 1996) for the proposition that the McFarlane Defendants must show Gaiman's actual *receipt* of these trade paperbacks to trigger the statute of limitations, but they misapply the reasoning of this case. In *Sellars*, the plaintiff brought a section 1983 civil rights action against his employer, which was dismissed as time-barred by the trial court. *Id.* at 244. On appeal, the critical question of when the plaintiff's claim accrued hinged on when the plaintiff "knew or should have known that his employment ... was terminated ...." *Id.* at 245. Reading the discovery rule into the statute of limitations in that case, the court held that the plaintiff could only have known about his termination as early as the date he received a specific letter from his employer advising him of his termination. *Id.* at 246. Under those facts, the *Sellars* court required that the plaintiff have received an actual letter providing notice of his claim to mark his claim's accrual. Gaiman's copyright ownership claims present an entirely different situation. Notice of Gaiman's claims, in the form of copyright notices, was provided directly to him by mail on some occasions, *see* Def. PFOFCOL at 2-4, ¶¶ 6, 21, and was published in thousands of publicly available comic books on many other occasions. *Id.* at ¶¶ 7, 14, 18, 20. To suggest that the McFarlane Defendants must prove that Gaiman "actually received letters providing notice of [his] claim," Response Brief at 12, disregards the critical fact that such notice was virtually broadcast, repeatedly, in numerous *Spawn* publications throughout the 1990s. *See supra* at 6, n.2.

The plaintiffs make much ado about Gaiman's interest in the "creator rights" movement, and how in the spirit of this creative trend, he agreed to write the script for *Spawn* Issue 9. Response Brief at 2-4. Gaiman's heightened sensitivity to the rights (particularly the copyrights) of authors and artists in the comic book industry only underscores his lack of diligence in

ignoring his own claims for copyright ownership. One would reasonably suspect that as a proponent of the "creator rights" movement, Gaiman would have had a sharpened interest in his own copyrights—rather than turning a blind eye to the unambiguous copyright notices others were affixing to works he helped create.

Relying heavily on Gaiman's recollection of McFarlane's statements about the "creator rights" movement and about "not signing anything away,"[4] the plaintiffs assert that no reasonable person, "when they looked at the defendants' initial copyright notices," would recognize their cause of action for copyright ownership. Response Brief at 10-11. This argument should not persuade the Court—is it truly "reasonable" for a joint author, who professes a dedication to creators' rights, and who knows that a work to which he contributed bears *someone else's* copyright notice, to wait nine years before initiating an action for copyright ownership? The case law suggests that the answer is no. For example, as the plaintiffs pointed out in supporting their motion for partial summary judgment, in federal and state fraud cases in Wisconsin, plaintiffs are not justified in relying on a defendant's verbal statements when they are confronted with unambiguous evidence that contradicts those earlier statements. *See Fullin v. Martin*, 34 F. Supp. 2d 726, 737-38 (E.D. Wis. 1999); *Foss v. Madison Twentieth Century Theaters, Inc.*, 203 Wis. 2d 210, 218-19, 551 N.W.2d 862, 865-66 (Ct. App. 1996). Analogously, the plaintiffs in this case were neither diligent nor reasonable in relying on Gaiman's recollection of conversations he had with McFarlane in 1992, about "not signing anything away," when they were (or should have been) fully aware of numerous express copyright notices through which TMP had claimed sole copyright ownership. Gaiman should not be heard to claim his reliance on McFarlane's alleged oral statements was reasonable when

---

[4] Not surprisingly, McFarlane's recollection of these events is significantly different from Gaiman's. This conflict is immaterial, however, as the undisputed facts (particularly the copyright notices) provide evidence of the accrual of the copyright ownership claims.

11

Gaiman possessed written proof that TMP, and TMP alone, was claiming sole copyright ownership.

With the instant summary judgment motion, the McFarlane Defendants have placed the issue of Gaiman's diligence in discovering his copyright ownership claims squarely before the Court. As the Court reminded the parties in its July 18, 2002 Order, "The query, then, is whether plaintiffs exercised due diligence in their discovery of the defendants' actions and *whether a reasonable person would have been alerted to a potential cause of action within the three-year limitation period.*" (emphasis added) Accordingly, the plaintiffs must come forth with evidence why Gaiman's *inaction* was reasonable—they cannot simply rest on the denials contained in the pleadings. *See* Plaintiffs' Reply to the Second Amended Counterclaims, ¶¶ 22, 29, 41, 48. The plaintiffs have failed to produce evidence that Gaiman's alleged ignorance of his copyright ownership claim was reasonable, given the undisputed facts that:

- *Spawn* Issue 9 contained a valid copyright notice identifying TMP as the copyright owner;
- Gaiman had, by his own admission, a heightened awareness of copyright issues by virtue of his concerns about "creator rights";
- Gaiman received many of the *Spawn*-related works to which he contributed concurrent with their publications; and
- Gaiman knew that other *Spawn*-related works to which he contributed—including the trade paperback reprints—were in circulation.

Given these facts, the Court may, and should, conclude as a matter of law that Gaiman was not reasonably diligent in discovering his claims for copyright ownership, and should hold that those claims are time-barred.

II.  THE PLAINTIFFS' CLAIMS FOR ATTRIBUTION ARE TIME-BARRED.

The plaintiffs' claims for attribution arise under the federal Lanham Act and a Wisconsin statute governing false advertising. The Court has noted that for the plaintiffs' state law false advertising claim "to survive the three-year period 'plaintiffs must show that defendants engaged in a continuing course of misconduct and that one of their acts fell inside the three year[]' period." July 18, 2002 Order at 7 (quoting *Werner v. Pittway Corp.*, 90 F. Supp. 2d 1018, 1033 (W.D. Wis. 2000) (Crabb, J.)). The same showing must be made with respect to the federal cause of action for attribution. The federal Lanham Act contains no statute of limitations, but the parties agree that the time bar in section 100.18(11)(b)3 of the Wisconsin Statutes applies to the plaintiffs' federal claims as well. Def. PFOFCOL at 10-11, ¶¶ 20-24; Response PFOFCOL at 14-15, ¶¶ 20-24.

*Spawn* Issue 26 and the trade paperback *Pathway to Judgement*—the only two works from which the plaintiffs' attribution claims arise, *see* Plaintiffs' Response to McFarlane Defendants' Brief in Support of 12(c) Motion at 10, 15—were published in 1994 and 1998, respectively. These dates are undisputed, Def. PFOFCOL at 3, ¶¶ 11, 14; Response PFOFCOL at 3, ¶¶ 11, 14, and each occurred well more than three years before the plaintiffs filed this suit on January 24, 2002. As isolated actions by the defendants, these initial publications cannot now be challenged as "misattributions" because they occurred well before the three-year period proscribed by section 100.18(11)(b)3.

However, the plaintiffs have claimed that the McFarlane Defendants' wrongful acts are "ongoing" because the allegedly misattributed works continue to be sold today, and for this reason their claims are not time-barred.[5] Response Brief at 16; Response PFOF at 96. While the

---

[5] To support their theory that "continuing wrongs" somehow avoid the force of the statute of repose in section 100.18(11)(b)3, the plaintiffs cite *Anderson v. Village of Little Chute*, 201 Wis. 2d 467, 487 (Ct. App. 1996). The *Anderson* case did *not* involve section 100.18, however, or even a similar statute of repose. Rather, *Anderson* involved nuisances and injury to property, traditional torts with conventional statutes of limitation. As to these types

13

alleged "current" sales of *Pathway to Judgement* may fall within a three-year period preceding the filing date of this lawsuit, the alleged "misattributions" occurred concurrent with the publications of those works, making a claim for misattribution untimely. Selling a work containing an alleged misattribution is not the same as incorrectly attributing the work itself. Because the McFarlane Defendants' alleged wrongful conduct occurred upon the publication of the works, not their subsequent sale, the plaintiffs' misattribution claims are time barred.

Last fall, the Wisconsin Court of Appeals clarified that section 100.18(11)(b)3, Stats., is a statute of repose under which "a cause of action must be commenced within a specified amount of time *after the defendant's action* which allegedly led to injury," notwithstanding the timing of the plaintiffs' discovery of his alleged injury. *Kain v. Bluemound East Indus. Park, Inc.*, 2001 WI App 230, ¶ 14, 635 N.W.2d 640, 645. 248 Wis. 2d 172, 182 (emphasis added). The court continued to explain that unlike a statute of limitations, section 100.18(11)(b)3 does not operate based on when a claim accrues, but *instead depends on the timing of a defendant's conduct. Id.* This appeals court's comments are consistent with the conventional definition of a statute of repose, which "is distinguishable from [a] statute of limitations, in that [a] statute of repose cuts off [one's] right of action after [a] specified time ... regardless of time of accrual of [the] cause of action or notice of invasion of legal rights." Black's Law Dictionary 1411 (6th ed. 1990). The McFarlane Defendants' conduct that caused the alleged misattribution is not the sale of the works, but their publication. Thus, any of the McFarlane Defendants' "action[s] which allegedly led to [the] injury" of misattribution occurred in 1994 and 1998, and both the federal and state

---

of claims, the court cited a 19th Century case for the proposition that "every continuance of a nuisance is, in law, a new nuisance, ... [and thus] it is evident that the statute of limitations [was] not available to the defendants." *Id.* (citing *Ramsdale v. Foote*, 55 Wis. 557, 562, 13 N.W. 557, 562 (1882)). Unlike traditional torts, false advertising under section 100.18 is governed by a statute of repose, which allows a claim to lie only within a proscribed time period regardless of "accrual," and thus requires a different analysis of the time-bar, as discussed above. Thus, *Anderson* is wholly inapplicable, and its holding does not imply that any "continuing injury" will evade statutory time bars.

14

claims are now time-barred by the statute of repose. *Kain*, 2001 WI App 230, ¶ 14. Even if the plaintiffs' claims for attribution were subject a statute of limitations, rather than one of repose, any such claims that arose from the McFarlane Defendants' alleged conduct before January 24, 1999, three years before this suit was filed, would also be time-barred.

## CONCLUSION

For all of the reasons stated above, and in light of the undisputed facts, the McFarlane Defendants respectfully request that the Court enter summary judgment in their favor on the plaintiffs' copyright ownership claim, Count I, and their federal and state claims for attribution, Counts VII and VIII.

Dated: August 1, 2002

LA FOLLETTE GODFREY & KAHN

_____
Eugenia G. Carter
Todd G. Smith
Gabriel S. Gross
One East Main Street, Suite 500
Madison, WI 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

—and—

Michael A. Kahn
Peter W. Salsich, III
Blackwell Sanders Peper Martin LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel: (314) 345-6000
Fax: (314) 345-6060

Attorneys for Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc. and McFarlane Worldwide, Inc.

MN153356_1.DOC