UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NEIL GAIMAN and<br>MARVELS AND MIRACLES, L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD MCFARLANE,<br>TODD MCFARLANE PRODUCTIONS,<br>INC., TMP INTERNATIONAL, INC.,<br>MCFARLANE WORLDWIDE, INC., and<br>IMAGE COMICS, INC.,<br><br>Defendants. | Case No.: 02-C-0048-S |

## PLAINTIFFS' RESPONSE TO THE MCFARLANE DEFENDANTS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM

The McFarlane Defendants' most recent proposed amendment to their fraud Counterclaim raises the same allegations contained in their response to plaintiffs' motion for partial summary judgment, which were thoroughly discussed in the briefs filed in connection with that motion. Because those allegations will not enable the McFarlane Defendants to avoid summary judgment, the Motion for Leave to File a Third Amended Counterclaim should be denied as futile. Furthermore, with the final pretrial conference less than a month away, and an August 26 discovery cutoff, it is unfair to allow the McFarlane Defendants to add new claims at this time to divert plaintiffs' efforts to prepare this case for trial.

Although leave to amend is usually freely given, an amendment should not be granted where it would be futile. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227 (1962). "'An amendment is a 'futile gesture' if the amended pleading could not survive a motion for

summary judgment.'" Estate of Porter v. State of Illinois, 36 F.3d 684, 690 (7th Cir. 1994) (quoting Wilson v. American Trans Air, Inc., 874 F.2d 386, 392 (7th Cir. 1989)). The McFarlane Defendants' proposed third amendment to their counterclaims will do nothing to overcome plaintiffs' motion for partial summary judgment that is pending before the Court.

The McFarlane Defendants base their proposed amendment upon their alleged recent discovery of other contracts between plaintiff Neil Gaiman and D.C. Comics. Those contracts were first requested in defendants' May 16 request to produce documents and copies were forwarded to defendants' counsel prior to the June 24 deposition of Neil Gaiman. As discussed in plaintiffs' reply brief in support of their motion for partial summary judgment (Reply Br. (Dkt. 89)), those contracts add nothing to the McFarlane Defendants' counterclaim.

The undisputed facts are that McFarlane discovered Gaiman's alleged "misrepresentations" in August 1997 and chose to go forward with his contract with Gaiman despite them. (See Reply Br. at 5-8.) On the day he paid his first royalty check to Gaiman, McFarlane wrote that he had allegedly discovered that D.C. Comics would not pay royalties for the Medieval Spawn[1] character but, nonetheless, "I am still willing to pay some monies." (Id. at 5-6.) And McFarlane did continue to pay royalties to Gaiman, a second time in August 1997 and again in March 1998. (Id.) Wisconsin law prohibits McFarlane from recovering for "fraud" about which he had prior knowledge. See Foss v. Madison Twentieth Century Theaters, Inc., 203 Wis. 2d 210, 218-19, 551 N.W.2d 862, 866 (Ct. App. 1996) ("The law will not permit a

---

[1] The McFarlane Defendants falsely allege in their counterclaim that McFarlane also learned in August of 1997 that Gaiman "would have had no cognizable rights in the fully-developed Cogliostro character." (Third Amended Counterclaim ¶ 81 (emphasis added).) That allegation has no support in the facts discovered to date. McFarlane specifically testified at his deposition that he could not remember whether his alleged August 1997 phone conversations with D.C. Comics executive Terri Cunningham included a discussion of any specific character such as Cogliostro. (See August 1, 2002 Pls.' Reply Facts (Dkt. 90) ¶ 88.)

2

person to predicate damage upon statements which he does not believe to be true, for if he already knows they are false, it cannot be said that he is deceived by them.")

In addition, Gaiman had twice (in 1996 and 1997) sent copies of D.C. Comics contracts to Larry Marder, the person McFarlane selected to serve as his representative during his negotiations with Gaiman. (See Reply Br. at 9.) One of those contracts contained the very royalty provisions the McFarlane Defendants now claim to have only just discovered in the contracts Gaiman produced in this litigation. Specifically, the D.C. contract sent to Marder contained the provisions regarding "Contingencies Affecting Royalties" and "Spin-Off" elements which defendants now claim would have given D.C. Comics "the unilateral right to reduce the assigned percentage (or even eliminate it) for a variety of reasons." (Third Amended Counterclaim ¶ 82i; Defs.' Resp. Br. (Dkt. 65) at 12; Reply Br. at 9.) Thus, the McFarlane Defendants have no basis for claiming that their "discovery" of Gaiman's other D.C. contracts revealed any new information beyond that which Gaiman had previously disclosed.

The McFarlane Defendants' Third Amended Counterclaim also adds allegations that Gaiman received royalty percentages lower than 15% under some of his other D.C. contracts. Again, that allegation does nothing to defeat summary judgment because the undisputed evidence shows that Gaiman proposed that McFarlane pay a royalty of 7.5% for the Medieval Spawn character about which they now complain. (See Reply Br. at 10-11.) That 7.5% royalty is the <u>lowest</u> royalty contained in the other contracts "discovered" by the McFarlane Defendants. (See id.) As a result, the McFarlane Defendants' fraud counterclaim fails because knowledge of that lower royalty rate would not have made any difference to McFarlane's decision to enter into the agreement. See Radford v. J.J.B. Enterprises, Ltd.,

163 Wis. 2d 534, 472 N.W.2d 790, 794 (Ct. App. 1991) (for purposes of fraud claim, representation is only material if a reasonable person would consider it important).

Finally, the McFarlane Defendants' argument that they should be permitted to amend their counterclaim for at third time because they now "realize" that Gaiman's supposed "fraud" was more extensive than McFarlane knew at the time he chose to go forward with the contract is baseless. Having decided to proceed with the contract despite knowledge of Gaiman's "fraud," Wisconsin law prohibits McFarlane from now seeking to escape the contract by claiming that the extent of the fraud was greater than he knew. See Fullin v. Martin, 34 F. Supp. 2d 726, 738 (E.D. Wis. 1999); see also Reply Br. at 11-12.

In summary, the documents on which the proposed third amendment is based were produced over a month ago and were relied upon by the McFarlane Defendants to oppose plaintiffs' motion for partial summary judgment. It is unfair to allow the McFarlane Defendants to subvert summary judgment by a belated motion to amend. Because the new allegations will not enable the McFarlane Defendants' to overcome plaintiffs' motion for partial summary judgment, the McFarlane Defendants' Motion for Leave to File an Amended Counterclaim should be denied.

Dated this 5 day of August, 2002.

FOLEY & LARDNER

Foley & Lardner
150 East Gilman Street
Madison, WI 53703-2808
Tel: (608) 257-5035
Fax: (608) 258-4258

By: _____
Allen A. Arntsen
Joan L. Eads
Jeffrey A. Simmons'
*Attorneys for Plaintiffs*

4

<table>
<tr><td>

Co-Counsel:
Kenneth F. Levin
20 North Wacker Drive, Suite 2200
Chicago, IL 60606
Tel: (312) 984-6000
Fax: (312) 977-2990

</td><td>

Of Counsel:
Mark Hellmann
Michael Rechtin
Foley & Lardner
1 IBM Plaza
220 N. Wabash Ste. 3300
Chicago, IL 60611
Tel: (312) 755-1900
Fax: (312) 755-1925

</td></tr>
</table>

003.372228.1