**99**

## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NEIL GAIMAN and<br>MARVELS AND MIRACLES, L.L.C., | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| TODD MCFARLANE, | ) |
| TODD MCFARLANE PRODUCTIONS, | ) |
| INC., TMP INTERNATIONAL, INC., | ) |
| MCFARLANE WORLDWIDE, INC., and | ) |
| IMAGE COMICS, INC., | ) |
| | ) |
| Defendants. | ) |

AUG 2 2 2002

FILED
JOSEPH W. SKUPNIEWITZ CLERK
CASE #

Case No.: 02-C-0048-S

---

### PLAINTIFFS' REPLY TO THE THIRD AMENDED COUNTERCLAIMS OF DEFENDANTS TODD MCFARLANE AND TODD MCFARLANE PRODUCTIONS, INC.

---

Plaintiffs Neil Gaiman and Marvels and Miracles, L.L.C., ("Plaintiffs"), by their attorneys, reply to the August 7, 2002 Third Amended Counterclaims of defendants Todd McFarlane and Todd McFarlane Productions, Inc. ("TMP") as follows:

#### Parties and Jurisdiction

1.      Plaintiffs admit the allegations contained in paragraph 1.

2.      Plaintiffs admit that Mr. McFarlane has been an employee of TMP. Plaintiffs do not have sufficient information to form a belief as to the truth of the allegation regarding the period of time of Mr. McFarlane's employment with TMP and, therefore, deny that allegation.  Plaintiffs admit the remaining allegations contained in paragraph 2.

3.      Plaintiffs admit the allegations contained in paragraph 3.

4.      Plaintiffs admit the allegations contained in paragraph 4.

5.    Plaintiffs admit the allegations contained in paragraph 5.

### The Origins of Todd McFarlane's *Spawn*

6.    Plaintiffs admit the allegations contained in paragraph 6.

7.    Plaintiffs admit that Mr. McFarlane launched the *Spawn* comic book series.  Plaintiffs do not have sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 7 and, therefore, deny those allegations.

8.    Plaintiffs do not have sufficient knowledge as to whether the allegations of this paragraph accurately reflect the plot line of the *Spawn* comic book series and, therefore, deny those allegations.

9.    Plaintiffs do not have sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 9 and, therefore, deny those allegations.

10.    Plaintiffs state that paragraph 10 states conclusions of law to which no response is required.  Plaintiffs admit that Mr. McFarlane is identified as the owner of those copyrights, but deny that the identification was the result of a clerical error .  Plaintiffs further state that the contents of Exhibit A speak for themselves and deny the allegations of paragraph 10 to the extent they are inconsistent with the contents of Exhibit A.

11.    Plaintiffs state that paragraph 11 contains conclusions of law to which no response is necessary.  Plaintiffs further state that they do not have sufficient knowledge to form a belief as to the truth of the fact allegations contained in paragraph 11 and, therefore, deny those allegations.

2

**Mr. Gaiman's Involvement in *Spawn* Issue No. 9**

12.      Plaintiffs admit that Mr. McFarlane requested that Mr. Gaiman create a

script with the understanding that Mr. Gaiman would at all times be the creator of the script with

attendant ownership interest, and that Mr. McFarlane would have the right to use the script for

purposes of a *Spawn* comic book.  Plaintiffs further admit that Mr. Gaiman's script was merged

with Mr. McFarlane's artwork to create a single issue of *Spawn*.  Plaintiffs further admit that Mr.

McFarlane promised Mr. Gaiman that Mr. Gaiman would be treated and remain identified as the

author of the script and would have an ongoing economic interest in authorized uses more

favorable than the deal Mr. Gaiman had with DC Comics at the time.  Mr. Gaiman expressly

denies that any of Mr. Gaiman's work was a "work-made-for-hire," expressly denies that he

authorized at the time any use of his script other than for purposes of a comic book, expressly

denies that he authorized at the time any use of the characters he created other than for purposes

of that comic book, and otherwise denies the remaining allegations of paragraph 12.

13.      Plaintiffs admit that Mr. Gaiman wrote the script and drew thumbnail

sketches for *Spawn* Issue 9.  Because no "offer" was made as alleged in the Counterclaim, the

plaintiffs deny the remaining allegations of paragraph 13.

14.      Mr. Gaiman admits that he advised Mr. McFarlane of what Mr. Gaiman

intended to do in his script.  Mr. Gaiman admits that he specifically advised Mr. McFarlane of

Mr. Gaiman's creation of the concept of an army of warrior angels who would oppose the army

of hell, of Mr. Gaiman's creation of a female warrior angel named *Angela*, her design and

characteristics and the actions *Angela* would be taking in the plot of Mr. Gaiman's script, admits

that he specifically advised Mr. McFarlane of Mr. Gaiman's creation of the *Cagliostro* character,

*Cagliostro*'s design and characteristics and the actions *Cagliostro* was taking in the plot of

3

Mr. Gaiman's script, admits he specifically advised Mr. McFarlane of Mr. Gaiman's creation of

the concept that there had been a predecessor Hellspawn-type character from the medieval period

who became known as *Medieval Spawn*, and that Mr. Gaiman provided Mr. McFarlane with

*Medieval Spawn*'s designs and characteristics and with the actions *Medieval Spawn* would be

taking in the plot of his script, and that Mr. Gaiman advised Mr. McFarlane of the manner in

which he was incorporating each of those characters in his script. Plaintiffs otherwise deny the

allegations of paragraph 14.

15.   Plaintiffs admit that Mr. Gaiman wrote the script and drew thumbnail

sketches for *Spawn* Issue 9 and that Mr. McFarlane or others provided artwork utilized in *Spawn*

Issue 9, resulting in a work of joint authorship. Plaintiffs admit that *Spawn* Issue 9 was

published in March of 1993. Plaintiffs admit that Exhibit B appears to be a true and correct

black and white photocopy of *Spawn* Issue 9. Plaintiffs deny the remaining allegations contained

in paragraph 15.

16.   Plaintiffs state that, to the extent Mr. Gaiman made any written statements

to Mr. McFarlane, such statements in full context speak for themselves and plaintiffs deny the

allegations contained in paragraph 16 to the extent they are inconsistent with those written

statements and deny the remaining allegations in paragraph 16.

17.   Plaintiffs admit that the cover of *Spawn* Issue 9 is a full-page depiction of

the *Angela* character which Mr. Gaiman created. Plaintiffs further state that they are without

information sufficient to form a belief as to the role Mr. McFarlane played in the creation of that

piece of artwork and, therefore, deny the remaining allegations in paragraph 17.

18.   Plaintiffs admit that the *Angela* character, the *Medieval Spawn* character

and the *Cagliostro* character (later appearing as *Cogliostro*) were all conceived and created by

4

Mr. Gaiman and all first appeared in comic book form in *Spawn* Issue 9. Plaintiffs further state that *Spawn* Issue 9 is a written document that speaks for itself and deny the allegations in paragraph 18 to the extent they are inconsistent with the contents of that document.

19.    Plaintiffs state that *Spawn* Issue 9 is a written document that speaks for itself and deny the allegations in paragraph 19 to the extent they are inconsistent with the contents of that document.

20.    Plaintiffs do not have sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 20 and, therefore, deny those allegations. Plaintiffs further state that any issues of The Comic Buyers Guide are written documents that speak for themselves and deny the allegations in paragraph 20 to the extent they are inconsistent with the contents of those documents.

21.    Mr. Gaiman has no memory of having seen a copy of that advertisement at the time of its publication and plaintiffs, therefore, deny the allegations contained in paragraph 21.

22.    Plaintiffs deny the allegations contained in paragraph 22.

23.    Plaintiffs admit that on April 12, 1996, Mr. McFarlane obtained a copyright registration for *Spawn* Issue 9. Plaintiffs affirmatively allege that the copyright registration falsely identifies Mr. McFarlane as the owner of the copyright and falsely states that Mr. McFarlane was the author of the text for *Spawn* Issue 9. Plaintiffs further state that Exhibit C is a written document that speaks for itself and deny the allegations contained in paragraph 23 to the extent they are inconsistent with the contents of that document.

24.    Plaintiffs deny that Image Comics was a licensee of TMP and Mr. McFarlane. Plaintiffs admit the remaining allegations contained in paragraph 24.

003.374141.1

25.     Plaintiffs state that the credits page of *Spawn* Volume 2 is a written document that speaks for itself and deny the allegations contained in paragraph 25 to the extent they are inconsistent with the contents of that document.

26.     Plaintiffs admit that the attribution given to Mr. Gaiman on the credits page of *Spawn* Volume 2 was consistent with the terms of Mr. Gaiman's agreement with the defendants. Plaintiffs deny the allegations contained in paragraph 26 to the extent that "the agreement" identified in that paragraph is anything other than one of the agreements identified in paragraphs 29, 30 and 48 through 55 of plaintiffs' Amended Complaint. Plaintiffs deny the remaining allegations contained in paragraph 26.

27.     Plaintiffs admit the allegations contained in Paragraph 27.

28.     Plaintiffs state that the title page of *Spawn* Volume 2 is a written document that speaks for itself and deny the allegations contained in paragraph 28 to the extent they are inconsistent with the contents of that document.

29.     Plaintiffs deny the allegations contained in paragraph 29.

30.     Plaintiffs admit that Mr. McFarlane coined the name Medieval Spawn for the unnamed character Mr. Gaiman created for *Spawn* Issue 9.

31.     Plaintiffs admit that Mr. McFarlane misspelled the Cagliostro character's name in a subsequent appearance and thereafter continued in the misspelling. Since Mr. McFarlane never "originally described" any of this character's traits to Mr. Gaiman before the character was created by Mr. Gaiman, plaintiffs expressly deny that allegation, and otherwise deny the allegations of paragraph 31.

003.374141.1

## Mr. Gaiman's Involvement In Four Other *Spawn* Publications

32.    Plaintiffs admit that as the creator of the characters *Angela*, *Cagliostro* and *Medieval Spawn*, Mr. Gaiman proposed on an unsolicited basis a subsequent plot line intended as a bridge to a new *Angela* story line which Mr. Gaiman was creating and which defendants did use to bridge to the subsequent *Angela* comic books utilizing scripts Mr. Gaiman created. Plaintiffs state that Exhibit N is a written document that speaks for itself and deny the allegations of paragraph 32 to the extent they are inconsistent with the contents of that document.  Plaintiffs deny the remaining allegations of paragraph 32.

33.    Plaintiffs admit that Exhibit E appears to be a true and correct black and white photocopy of *Spawn* Issue 26, which utilizes the scene Mr. Gaiman created, admit that Mr. McFarlane made a payment to Mr. Gaiman for the original use of that scene, and otherwise deny the allegations of paragraph 33.

34.    Plaintiffs admit that on January 20, 1995, Mr. McFarlane obtained a copyright registration for *Spawn* Issue 26.  Plaintiffs affirmatively allege that the copyright registration falsely identifies Mr. McFarlane as the owner of the copyright and fails to identify Mr. Gaiman as the author of a portion of the text for *Spawn* Issue 26.  Plaintiffs further state that Exhibit F is a written document that speaks for itself and deny the allegations in paragraph 34 to the extent they are inconsistent with the content of that document.

35.    Plaintiffs admit that *Spawn* Issue 26 was reprinted in *Spawn* Volume 6 and admit that Exhibit O appears to be a true and correct copy of pages from *Spawn* Volume 6. Plaintiffs deny that Image Comics reprinted that issue as a licensee of TMP and Mr. McFarlane. Plaintiffs state that Exhibit O is a written document that speaks for itself and deny the allegations contained in paragraph 35 to the extent they are inconsistent with the contents of Exhibit O.

7

Plaintiffs do not have sufficient information to form a belief as to the truth of the remaining allegations in paragraph 35 and, therefore, deny those allegations.

36.    Plaintiffs state that Exhibit O is a written document that speaks for itself and deny the allegations contained in paragraph 36 to the extent they are inconsistent with the contents of Exhibit O.

37.    Plaintiffs admit that, in 1994 and 1995, Mr. Gaiman created scripts and thumbnail sketches centered on the *Angela* character he had created which were utilized in the comic books published by TMP as *Angela* Issue 1, *Angela* Issue 2 and *Angela* Issue 3. Plaintiffs admit that Exhibits G, H, and I appear to be true and correct black and white photocopies from *Angela* Issues 1, 2, and 3. Plaintiffs otherwise deny the allegations of paragraph 37.

38.    Plaintiffs state that Exhibits G, H, and I are written documents that speak for themselves and deny the allegations in paragraph 38 to the extent they are inconsistent with the content of those documents.

39.    Plaintiffs admit that Mr. Gaiman created the scripts and thumbnail sketches used in *Angela* Issues 1, 2, and 3. Plaintiffs deny the remaining allegations contained in paragraph 39.

40.    Plaintiffs state that Exhibit H is a written document that speaks for itself and deny the allegations in paragraph 40 to the extent they are inconsistent with the content of that document.

41.    Plaintiffs deny the allegations contained in paragraph 41.

42.    Plaintiffs admit that Mr. McFarlane obtained copyright registrations for *Angela* Issues 1, 2 and 3. Plaintiffs affirmatively allege that those copyright registrations falsely identify Mr. McFarlane as the owner of the copyrights and falsely state that Mr. McFarlane

003.374141.1

created the text and artwork for those issues. Mr. McFarlane did not create any text or artwork for those issues. Plaintiffs further state that Exhibits J, K, and L are written documents that speak for themselves and deny the allegations in paragraph 42 to the extent they are inconsistent with the content of those documents.

43.    Plaintiffs admit that defendant Image Comics reprinted *Angela* Issues 1, 2, and 3 along with the cover to *Spawn* Issue 9 in a trade paperback entitled *Angela*. Plaintiffs deny that Image Comics reprinted those issues as a licensee of TMP and Mr. McFarlane. Plaintiffs admit that Exhibit P appears to be a true and correct copy of *Angela*. Plaintiffs do not have sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 43 and, therefore, deny those allegations.

44.    Plaintiffs state that Exhibit P is a written document that speaks for itself and deny the allegations contained in paragraph 44 to the extent they are inconsistent with the terms of that document.

45.    Plaintiffs admit that the attribution given to Mr. Gaiman on the credits pages and the introduction by Terry Fitzgerald of the *Angela* trade paperback was consistent with the terms of Mr. Gaiman's agreement with the defendants. Plaintiffs deny the allegations contained in paragraph 45 to the extent that "the agreement" identified in that paragraph is anything other than one of the agreements identified in paragraphs 29, 30 and 48 through 55 of plaintiffs' Amended Complaint. Plaintiffs further deny that defendants have any right to use Mr. Gaiman's name or biographical information in conjunction with any reprint of *Angela* Issues 1, 2 or 3 while defendants are in breach of their agreement with Mr. Gaiman. Plaintiffs deny the remaining allegations contained in paragraph 45.

46.    Plaintiffs admit the allegations contained in paragraph 46.

9

47.    Plaintiffs state that the *Angela* trade paperback is a written document that speaks for itself and deny the allegations contained in paragraph 47 to the extent they are inconsistent with the terms of that document.

48.    Plaintiffs deny the allegations contained in paragraph 48.

### Mr. Gaiman's Copyright Registrations

49.    Plaintiffs admit the allegations contained in paragraph 49.

50.    Plaintiffs admit that Exhibit M contains true and correct copies of copyright registrations obtained by Mr. Gaiman.  Plaintiffs state that those registrations are written documents that speak for themselves and deny the allegations contained in paragraph 50 to the extent they are inconsistent with the content of those documents.

51.    Plaintiffs admit that Mr. Gaiman filed the applications more than seven years after the first original publication of *Spawn* Issue 9 and more than five years after the first original publication of *Angela* Issues 1 through 3.  Plaintiffs do not have sufficient information to form a belief as to the date of publication of *Spawn* Volume 6 and the *Angela* trade paperback and, therefore, deny the allegations contained in paragraph 51 as they relate to those publications.  Plaintiffs deny the remaining allegations contained in paragraph 51.

52.    Plaintiffs state that Mr. Gaiman's copyright registrations are written documents that speak for themselves and deny the allegations contained in paragraph 52 to the extent they are inconsistent with the contents of those documents and otherwise deny the remaining allegations contained in paragraph 52.

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment—Copyright Ownership—Spawn and Angela)

53.    Plaintiffs incorporate by reference their previous responses to paragraphs 1 through 52 as if fully restated here.

003.374141.1

54.     Plaintiffs admit that there is now an actual and justiciable controversy before the Court and deny the remaining allegations contained in paragraph 54.

55.     Plaintiffs admit the allegations contained in paragraph 55.

56.     Plaintiffs deny the allegations contained in paragraph 56.

57.     Plaintiffs state that paragraph 57 contains legal conclusions to which no response is required.  Plaintiffs deny that TMP registered copyrights in the entire contents of all five issues of the comic books.  Plaintiffs admit that Mr. McFarlane obtained copyright registrations for those works, but state that those registrations misrepresent Mr. McFarlane's contributions to those works.  Plaintiffs deny the remaining allegations of paragraph 57.

58.     Plaintiffs deny the allegations contained in paragraph 58.

59.     Plaintiffs deny the allegations contained in paragraph 59.

60.     Plaintiffs deny the allegations contained in paragraph 60.

61.     Plaintiffs admit that Mr. McFarlane and TMP purport to seek the declaration of rights alleged and plaintiffs affirmatively deny that Mr. McFarlane and TMP are entitled to the declaration requested or to any relief at all.

## SECOND CLAIM FOR RELIEF
### (Fraud By Mr. Gaiman)

62.     Plaintiffs incorporate by reference their responses to paragraphs 1 through 61 as if fully restated here.

63.     Plaintiffs deny that Mr. Gaiman requested that Mr. McFarlane compensate Mr. Gaiman in "the same way" he would have been compensated for such work by D.C. Comics. Plaintiffs affirmatively allege that Mr. McFarlane agreed to provide Mr. Gaiman with compensation more favorable than the compensation Mr. Gaiman received under his then-existing contract with D.C. Comics.  Plaintiffs admit that Mr. McFarlane and Mr. Gaiman did not

11

discuss individual contract terms. Plaintiffs admit that, at that time, Mr. Gaiman did not provide

Mr. McFarlane with the specific terms of Mr. Gaiman's D.C. Comics contract because Mr.

McFarlane did not ask Mr. Gaiman to provide him with a copy of that contract. Plaintiffs deny

the remaining allegations contained in paragraph 63.

64.     Plaintiffs deny that Mr. Gaiman requested that Mr. McFarlane compensate

Mr. Gaiman for the *Angela* mini-series in "the same way" he would have been compensated for

such work by D.C. Comics. Plaintiffs affirmatively allege that Mr. McFarlane agreed to provide

Mr. Gaiman with compensation more favorable than the compensation Mr. Gaiman received

under his then-existing contract with D.C. Comics. Plaintiffs admit that, at that time, Mr.

Gaiman did not provide Mr. McFarlane with the specific terms of his D.C. Comics contract

because Mr. McFarlane did not ask Mr. Gaiman to provide him with a copy of that contract.

Plaintiffs deny the remaining allegations contained in paragraph 64.

65.     Plaintiffs admit the allegations contained in paragraph 65.

66.     Plaintiffs admit the allegations contained in paragraph 66.

67.     Plaintiffs admit that TMP paid Mr. Gaiman more than $60,000 for the

services Mr. Gaiman provided in writing the scripts for the *Angela* mini-series and for writing a

portion of the script for *Spawn* Issue 26.

68.     Plaintiffs admit the allegations contained in paragraph 68.

69.     Plaintiffs admit that Mr. Gaiman called Mr. McFarlane asking about

royalty payments for items such as action figures based upon the characters Mr. Gaiman created

– items for which Mr. Gaiman would have received royalties under his D.C. Comics contracts,

but for which the McFarlane Defendants had failed to pay any royalties. Plaintiffs deny the

remaining allegations contained in paragraph 69.

12

70.    Plaintiffs admit that, in 1996, Mr. Gaiman and Mr. McFarlane entered into discussions to memorialize the terms of their earlier agreement that Mr. McFarlane would compensate Mr. Gaiman more favorably than Mr. Gaiman had been treated under the terms of his contracts with D.C. Comics, including compensation for the McFarlane Defendants' use of the characters Gaiman created in toys and other products. Plaintiffs deny the remaining allegations contained in paragraph 70.

71.    Plaintiffs admit that Mr. Gaiman and Mr. McFarlane met in Oakland, California in late April or early May of 1997 and that during that meeting Mr. McFarlane again agreed to provide Mr. Gaiman with compensation more favorable than what Mr. Gaiman received under his contracts with D.C. Comics. Plaintiffs deny that Mr. Gaiman represented at that meeting that there was any "basic D.C. deal" that should serve as the basis for his compensation. Plaintiffs deny the remaining allegations contained in paragraph 71.

72.    Plaintiffs deny that Mr. McFarlane asked Mr. Gaiman to send him a copy of any of Mr. Gaiman's D.C. Comics contracts during their meeting in Oakland and deny the remaining allegation in paragraph 72. Moreover, plaintiffs affirmatively allege that, prior to their Oakland meeting, Mr. Gaiman had already provided copies of his D.C. Comics' contracts to Mr. McFarlane on two prior occasions.

73.    Plaintiffs admit that, on or about May 5, 1997, Mr. Gaiman sent Mr. McFarlane a letter setting forth various proposed royalty terms. The contents of that letter speak for themselves and plaintiffs deny the allegations contained in paragraph 73 to the extent they are inconsistent with those contents.

74.    Plaintiffs deny the allegations contained in paragraph 74.

75.    Plaintiffs deny the allegations contained in paragraph 75.

003.374141.1

76.    Plaintiffs deny the allegations contained in paragraph 76.

77.    Plaintiffs state that Mr. Gaiman's July 15, 1997 letter to Mr. McFarlane is a written document, the contents of which speak for themselves and plaintiffs deny the allegations contained in paragraph 77 to the extent they are inconsistent with those contents. Plaintiffs further deny that the July 15, 1997 letter contains any reference to "the standard DC deal".

78.    Plaintiffs admit that Mr. McFarlane wrote back to Mr. Gaiman on July 15, 1997. That letter is a written document, the contents of which speak for themselves. Plaintiffs deny the allegations contained in paragraph 78 to the extent they are inconsistent with the contents of that letter and deny the remaining allegations contained in paragraph 78.

79.    Plaintiffs state that the contents of Mr. Gaiman's letter speak for themselves and deny the allegations contained in paragraph 79 to the extent they are inconsistent with those contents.

80.    Plaintiffs admit that Mr. McFarlane and TMP paid royalties to Mr. Gaiman and sent Mr. Gaiman various materials relating to the *Miracleman* comic book. Plaintiffs admit that Mr. McFarlane and TMP acquired those *Miracleman* materials through the bankruptcy sale of Eclipse Comics, Inc.   Plaintiffs deny that Mr. Gaiman and Mr. McFarlane never finalized their discussions into a binding contract and deny the remaining allegations contained in paragraph 80.

81.    Plaintiffs deny the allegations contained in paragraph 81.

82.    Plaintiffs deny that the McFarlane Defendants have discovered any "fraud" by Mr. Gaiman and deny that Mr. Gaiman misrepresented any of the terms of his contracts with D.C. Comics.  Plaintiffs state that Mr. Gaiman's contracts are written documents

14

that speak for themselves and plaintiffs deny the allegations contained in paragraph 82 to the extent they are inconsistent with the contents of those contracts.

83.    Plaintiffs deny the allegations contained in paragraph 83.

84.    Plaintiffs deny the allegations contained in paragraph 84.

85.    Plaintiffs deny the allegations contained in paragraph 85.

**THIRD CLAIM FOR RELIEF**
**(Unjust Enrichment)**

86.    Plaintiffs incorporate by reference their responses to paragraphs 1 through 86 as if fully restated here.

87.    Plaintiffs state that no benefit was conferred upon Mr. Gaiman except as purported consideration for benefits Mr. Gaiman conferred upon defendants and, as so qualified, admit the allegations contained in paragraph 87.

88.    Plaintiffs deny having profited from the benefit and, therefore, deny the allegations contained in paragraph 88.

89.    Plaintiffs state that paragraph 89 states legal conclusions to which no response is required.

90.    Plaintiffs deny the allegations contained in paragraph 90.

**<u>AFFIRMATIVE DEFENSES</u>**

1.    Defendants' equitable Counterclaims are barred by the doctrine of unclean hands.

2.    Defendants' Counterclaims are barred by laches.

3.    Defendants' Counterclaims are barred by waiver.

4.    Defendants' Counterclaims are barred by estoppel.

15

003.374141.1

      **WHEREFORE,** Plaintiffs Neil Gaiman and Marvels and Miracles L.L.C. request

that the Court enter judgment in their favor and against defendants Todd McFarlane and Todd

McFarlane Productions, Inc. on the Counterclaims, and that Plaintiffs be awarded their costs and

such other relief as may be appropriate.

Dated this 21st day of August, 2002.

                    FOLEY & LARDNER

                    By: _____

                        Allen A. Arntsen
                        Jeffrey A. Simmons
                        *Attorneys for Plaintiffs*

Foley & Lardner
150 East Gilman Street
Madison, WI 53703-2808
Tel: (608) 257-5035
Fax: (608) 258-4258

Of Counsel:
Mark Hellmann
Michael Rechtin
Foley & Lardner
1 IBM Plaza
220 N. Wabash Ste. 3300
Chicago, IL 60611
Tel: (312) 755-1900
Fax: (312) 755-1925

Co-Counsel:
Kenneth F. Levin
Kenneth F. Levin and Associates
20 North Wacker Drive, Suite 2200
Chicago, IL 60606
Tel: (312) 984-6000
Fax: (312) 977-2990

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NEIL GAIMAN, and
MARVELS AND MIRACLES, LLC,

                                                Case No.: 02-C-0048-S

              Plaintiffs,

       v.

TODD MCFARLANE,
TODD MCFARLANE PRODUCTIONS, INC.,
TMP INTERNATIONAL, INC.,
MCFARLANE WORLDWIDE, INC., and
IMAGE COMICS, INC.,

              Defendants.

---

## CERTIFICATE OF SERVICE

---

         I, Brenda Allen-Johnson, hereby certify that I am an employee of Foley &

Lardner and that on the 21st day of August, 2002, I caused a true and correct copy of **Plaintiffs'**

**Reply to the Third Amended Counterclaims of Defendants Todd McFarlane and Todd**

**McFarlane Productions, Inc.** to be served on counsel for defendants via facsimile and U.S.

Mail as shown below:

| Facsimile No. (608) 257-0609 | Facsimile No. (314) 345-6060 | Facsimile No.: (949) 790-6301 |
|---|---|---|
| Todd G. Smith, Esq. | Michael A. Kahn, Esq. | R. Scott Feldmann, Esq. |
| LaFollette, Godfrey & Kahn | Blackwell Sanders, LLP | Brobeck, Phleger & Harrison, LLP |
| One East Main Street, Suite 500 | 720 Olive Street, Suite 2400 | 38 Technology Drive |
| Madison, WI 53703 | St. Louis, MO 63101 | Irvine, CA 92618-5312 |

Brenda Allen-Johnson