UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **NEIL GAIMAN and**<br>**MARVELS AND MIRACLES, L.L.C.,**<br><br>            **Plaintiffs,**<br><br>    v.<br><br>**TODD MCFARLANE,**<br>**TODD MCFARLANE PRODUCTIONS,**<br>**INC., TMP INTERNATIONAL, INC.,**<br>**MCFARLANE WORLDWIDE, INC., and**<br>**IMAGE COMICS, INC.,**<br><br>            **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.: 02-C-0048-S<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFFS' JUSTIFICATION FOR CONTESTED EXHIBITS

Defendants have objected to Plaintiffs' proposed Exhibits 11 and 71 as being irrelevant and "highly prejudicial" pursuant to Fed. R. Evid. 403. None of those objections are warranted.

  1. **Exhibit 11**

As an initial matter, defendants' "irrelevance" objection is inapposite at this time. Under this Court's procedures and pretrial order, relevance is determined at trial. The pretrial procedure governing exhibits is to determine whether there are any objections to admissibility other than relevance.

That being said, and since Defendants have raised the issue, Exhibit 11 is one of the most relevant and probative documents in the case. It is a memo from Defendants' former employee Steven "Beau" Smith to defendant Todd McFarlane confirming that McFarlane entered into, and then breached, an agreement with Neil Gaiman. Plaintiffs contend that Gaiman

and McFarlane entered into an agreement in 1997 that, among other things, gave Gaiman the right to create a "one off" comic book mini-series with other comic book publishers using the *Medieval Spawn* character. (See Amended Compl. [Dkt #28] ¶ 51.) Plaintiffs contend that Defendants breached their agreement by, among other things, interfering with Gaiman's right to create those one-off comic books. (See id. ¶ 77.) In particular, Gaiman will testify that Defendants refused to cooperate with his effort to create a *Medieval Spawn/Batman* comic book in conjunction with D.C. Comics. For their part, Defendants dispute that Gaiman and McFarlane ever reached such an agreement and/or that any agreement is void because McFarlane supposedly discovered misrepresentations by Gaiman "less than a month" after they entered the agreement. (See Third Amended Counterclaim [Dkt. #95] ¶¶ 80-81.)

Exhibit 11 is the only document in this case that speaks directly to all of those issues. In Exhibit 11, Beau Smith writes to McFarlane:

> I need to speak with you about the Neil Gaiman situation. (Medieval Spawn/Batman)
>
> You and I talked a little bit about it a couple of weeks ago. *Since you signed the deal to let him do it*, let's get it over with.

(Emphasis added). The memo confirms that Gaiman was pursuing the *Medieval Spawn/Batman* one-off, that McFarlane knew about the project, and that McFarlane believed he had reached an enforceable "deal" with Gaiman. Moreover, the memo is dated July 6, 1998 – almost a year after the "fraud" that McFarlane claims gave him the right to ignore the agreement.

Smith testified to the authenticity of Exhibit 11 at his deposition, and Defendants do not dispute that the exhibit is authentic and have asserted no objections other than under Rules 401 and 403. Under Fed. R. Evid. 403, evidence may only be excluded "if its probative value is *substantially outweighed* by the danger of unfair prejudice." (Emphasis added). Given the

2

extraordinarily probative nature of this exhibit, Defendants cannot show that its prejudicial effects, if any, are substantial enough to justify its exclusion. See John W. Strong, 1 McCormick on Evidence § 185 at 645 (5th ed. 1999) ("prejudice . . . does not simply mean damage to the opponent's cause").

2. **Exhibit 71**

Exhibit 71 is a written agreement between Gaiman's co-author on the *Miracleman* comic book series, Mark Buckingham, and the publisher of that series, Eclipse Comics. Again, defendants do not challenge the authenticity and substantive admissibility of the exhibit, but assert that it is "irrelevant and highly prejudicial" under Rule 403. Again, relevance is an issue for trial and will be established at this time. Plaintiffs are unable to detect any unfairly prejudicial aspect of this document at all. The document simply establishes some of the ownership rights that Gaiman and Buckingham had in the *Miracleman* series prior to Todd McFarlane's purchase of Eclipse Comics' assets in a bankruptcy sale. In fact, Exhibit 71 is nearly identical to Plaintiffs' Exhibit 70, which is Gaiman's own contract with Eclipse Comics, which Defendants have not objected to Exhibit 70. Plaintiffs are at a loss to understand how Exhibit 71 can be "highly prejudicial" as claimed by Defendants.

## Conclusion

For all of the above reasons, Plaintiffs respectfully request that Exhibits 11 and 71 be admitted into evidence.

Dated this 13th day of September, 2002.

                                              FOLEY & LARDNER

                                        By: _____

Foley & Lardner                                   Allen A. Arntsen
150 East Gilman Street                        Joan L. Eads
Madison, WI 53703-2808                   Jeffrey A. Simmons'
Tel: (608) 257-5035                            *Attorneys for Plaintiffs*
Fax: (608) 258-4258

<u>Co-Counsel:</u>                                        <u>Of Counsel:</u>
Kenneth F. Levin                                Mark Hellmann
20 North Wacker Drive, Suite 2200       Michael Rechtin
Chicago, IL 60606                             Foley & Lardner
Tel: (312) 984-6000                           1 IBM Plaza
Fax: (312) 977-2990                         220 N. Wabash Ste. 3300
                                                  Chicago, IL 60611
                                                  Tel: (312) 755-1900
                                                  Fax: (312) 755-1925

003.379369.1

# MEMO

To: Todd McFarlane/Sheila Egger

From: Beau Smith

Re: Your Best friend Neil Gaiman

7/6/98

**Todd,**

I need to speak to you about the Neil Gaiman situation. (Medieval Spawn/Batman)

You and talked a little bit about it a couple of weeks ago. Since you signed the deal to let him do it, let's get it over with. Are we getting anything from or out of ol' Neil?

I'd like to see us finish him off and cut the fishing line. This is kinda' like havin' an ex wife that is a pain and we seem to be prolonging the process. Let's do what we gotta do get this one off our back.

Call me and let me know what you want to do.

Your loyal slave till you fuck me over,

Beau



TM 01661

This Agreement (the "Agreement") is entered into on this 1st day of November, 1988 by and between Eclipse Enterprises, Inc. (hereinafter called "Eclipse"), and Mark Buckingham (hereinafter called "Artist"), and is made with respect to the following facts:

A. Eclipse is in the business of publishing comic books and desires to hire Artist to produce pencilled and inked artwork for issues 17 - 34 of a color comic book entitled <u>Miracleman</u> including as a feature in each of the issues 26 pages to be illustrated by Artist from a script provided by Eclipse and a writer (hereinafter "Writer"). Whenever the term "Series" is used herein, it is limited and refers to the aforementioned 18 issues above;

B. Whenever the term "Artwork" is used herein, it is limited and refers to the pencilled and inked artwork drawn by Artist.

C. Eclipse and Artist believe it is in their mutual interest to enter into this Agreement providing for the Series.

NOW, THEREFORE, the parties hereto agree as follows:

1. THE SERIES - ARTIST'S OBLIGATIONS.

Artist agrees to supply finished pencilled and inked artwork produced by him for a feature of 26 pages in color comic book form for each of the 18 issues of the Series. Attached hereto as Exhibit A is the schedule detailing the dates on which Artist must submit the finished artwork for each story in the Series. It is anticipated by the parties hereto that the issues will be published over the next two years. Artwork will be considered acceptable to Eclipse unless Eclipse notifies Artist within ten (10) days after receipt of the Artwork by Eclipse.

2. ARTIST'S COMPENSATION.

In return for his services hereunder, Eclipse shall pay to Artist the following sums:

(a) ADVANCE. For each issue of the Series, Eclipse shall pay to Artist the sum of $175.00 per comics page as an advance against royalties as described in Paragraph 2(b) below.

Payment shall be made for each issue within 30 days of receipt of the completed Artwork by Eclipse.

(b) ROYALTIES. Eclipse shall pay to Artist a royalty payment of three percent of the cover price on each and every copy of all color comic books of each issue of the Series sold until and including 50,000 copies, and four percent of the cover price on copies sold in excess of 50,000 copies. If royalties are due, Eclipse shall make statements to and will pay to Artist any and all royalties owing to him on a semi-annual basis, in the months of January and July. Artist shall have the right, upon reasonable notice during normal business hours at Eclipse's main office, to examine or have an authorized representative examine the books and records of Eclipse that relate directly to the Series. Such examination shall be at the cost of the Artist, unless errors totalling more than 10% of the amount paid are made, in which case Eclipse shall bear such cost.

(c) ADDITIONAL PRINTINGS. For any additional printings of the Artwork in English, by Eclipse, Eclipse agrees to pay Artist a royalty of four (4%) percent of the retail price of such subsequent printing or collection. Payment shall be made within 60 days after publication of such additional printing.

EXHIBIT 71

G01029

3. OWNERSHIP OF TRADEMARKS AND COPYRIGHTS

(a) Artist and Eclipse acknowledge that Artist retains and is the equal and exclusive owners of all copyrights in and to the Artwork. Eclipse also agrees that a notice of copyright for the Artwork in the name of Artist shall appear in each and every issue of the Series.

(b) Artist acknowledges and agrees that Eclipse is the sole and exclusive owner of all characters in the Artwork and that Eclipse is the sole and exclusive owner of all trademarks in and to the title <u>Miracleman</u> (and all characters featured in the Series), including but not limited to:

(1) The exclusive right to secure trademarks in the Series and all characters in the United States, Canada and throughout the world;

(2) All allied, ancillary and subsidiary rights;

(3) All film, television, video tape and dramatic rights of any kind in the Series;

(4) Anthology and promotion rights therein;

(5) The likeness of all characters and other elements of the Series; and

(6) Reprint rights.

4. OWNERSHIP OF ORIGINAL PHYSICAL ARTWORK

Eclipse and Artist agree that all original physical artwork done by Artist for Series shall be returned to Artist after printing of each issue. Artist retains and is the sole and exclusive ownership of all such physical artwork.

In the event any original physical artwork is lost while in the responsibility of Eclipse, then Eclipse shall promptly reimburse Artist at the rate of $50.00 for each such page lost.

5. DELIVERY OF ORIGINAL PHYSICAL ARTWORK

Eclipse agrees to pay for delivery of the original physical artwork for publication, and shall notify Artist of its desired means of delivery.

6. COPYRIGHT INFRINGEMENT

(a) If the copyright or trademark in the Series or any issue in the Series is infringed by a third party, Eclipse shall be responsible totally for all costs, legal and other, of suing the infringer, and shall receive all of the recovery totally.

(b) If either the Artist or Eclipse learns of any infringement on the copyright in the Series, it will notify the other in writing within thirty (30) days. Each will supply the other with legal documents and court transcriptions relating to any legal action taken against such an infringer, though the other must request them in writing and pay any costs in obtaining them.

7. ENGLISH LANGUAGE PUBLICATION RIGHTS

(a) Artist agrees that Eclipse shall have the sole and exclusive right to publish and republish the Artwork in magazine and book form in English, including a collection of two or more issues of the Series in magazine or book editions, for the term of the copyright.

(b) Eclipse also agrees that Artist shall have the first option to draw subsequent stories or issues based on the Series or characters or elements therein. Terms and payment for such subsequent stories or issues, if any, shall be negotiated in good

faith. If no agreement is reached within thirty (30) days after Eclipse notifies Artist of its desire to hire Artist to draw the subsequent stories or issues, then Eclipse shall have the right to hire another Artist to draw the subsequent stories or issues.

(c) If Eclipse licenses the English language publication rights to another publisher, Artist shall receive 25% of Eclipse's net receipts from such license.

8. NON-ENGLISH LANGUAGE PUBLICATION RIGHTS

Artist agrees that Eclipse shall have the sole and exclusive right for the term of the copyright to resell the Artwork in comic book, magazine or book forms, including a collection of two or more issues in the Series in comic book, magazine or book forms, in a language other than English or in a country other than the United State of America, Great Britain and Canada. In the event any of the Artwork in the Series is (are) published in a language other than English or in a country other than the United States of America, Great Britain and Canada, Artist shall receive twenty-five (25%) percent of the net licensing fees and royalties paid to Eclipse for such other language or other country publication. Payment shall be made to Artist by Eclipse within 30 days of receipt by Eclipse of the licensing fees.

The percentage participations set forth herein shall not apply to the cost of duplicate negatives or shipment of same to such licensee. Eclipse shall notify Artist of such other language or other country publication.

9. OUTSIDE EXPLOITATION

(a) Artist and Eclipse agree that Eclipse shall have the sole and exclusive right to negotiate any and all sales or other exploitation of the Series and Artwork other than in comic book, magazine or book format, including exploitation of any and all characters, stories, plots or elements contained in the Series and Artwork in any media, manner, method or way whatsoever, including the right to manufacture and sell articles of merchandise utilizing the names of, and bearing the depictions of, the characters of the Series and Artwork (herein, "Outside Exploitation"). Eclipse shall notify Artist of any such Outside Exploitation.

(b) <u>Artist's Participation</u>

For so long as Artist continues as the current artist of <u>Miracleman</u>, Artist shall receive ten (10%) percent of the net income derived by Eclipse for the benefit thereof from any such assignment or license. Artist shall be paid separate, if any, additional fees for producing original work related to the granting of such a license.

If Artist is not the current artist of <u>Miracleman</u> at the time of such Outside Exploitation, but the Outside Exploitation is based on the stories of which Artist illustrated, Artist shall receive ten (10%) percent of the net income derived by Eclipse for the benefit thereof.

(c) In Subparagraph 9(b) above, Eclipse shall pay Artist his Outside Exploitation income, if any, within 30 days of receipt by Eclipse of such income.

10. ORIGINALITY OF WORK

Artist represents that his contribution to the Series submitted to Eclipse will be original (except for Eclipse material on which it is based) and not heretofore published, and

that it will not infringe upon any statutory copyright, common law copyright or any other proprietary right. Artist agrees to hold Eclipse free and harmless from any claims attributed to his contribution to the Series which are deemed to constitute an actual infringement of statutory copyright, common law copyright or any other proprietary right and for which a judgment is rendered (other than by stipulation) for damages, declaratory or injunctive relief, or any other relief including attorneys' fees and costs.

Eclipse agrees to hold Artist free and harmless from any claims arising from any advertising or other material inserted by Eclipse.

11. INDEPENDENT CONTRACTOR
The parties acknowledge and agree that Artist is an independent contractor and not a regular employee of Eclipse and that payments of all applicable taxes and charges are the responsibility of Artist.

12. CREDITS
Artist's credit for the Artwork shall appear in every issue of the Series and on any advertising and promotional material where applicable.

13. FREE COPIES
Eclipse shall deliver a total of 10 copies of each issue of the Series to the Artist, free of charge. Artist may purchase additional copies of each issue of the Series for personal use or single-copy sale at Eclipse's standard discount of forty (40%) percent of the cover price. No royalties are due for such complimentary or purchased copies.

14. ASSIGNMENTS
Eclipse may, at its option, assign any or all parts of this Agreement.

15. FAILURE TO DELIVER
In the event that Artist fails to supply the finished Artwork for the story in any issue on the date specified in Exhibit A, Eclipse may, at its option, and without prejudice to its other rights and remedies, do one or more of the following:
(a) If Artist delivers the Artwork within ten (10) days of that issue's deadline for submission by Artist of the Artwork, then the amount payable to Artist by reason of the artwork in that issue and pursuant to Paragraph 2 hereinabove shall, at the discretion of Eclipse, be reduced by ten (10%) percent.
(b) If, for a second time, Artist fails to deliver the Artwork within ten (10) days of that issue's deadline for submission by Artist of the Artwork, then Eclipse may terminate this Agreement by giving written notice to Artist.

16. ACCEPTABILITY
If Eclipse does not find Artist's Artwork for any of the issues acceptable, Eclipse must notify Artist within ten days of receipt by Eclipse of the Artwork.
(a) If so notified, Artist agrees to work with Eclipse to make any such revisions as may be requested by Eclipse within seven (7) days.
(b) If Artist fails to make such revisions to Eclipse's

satisfaction, Eclipse may not hire another artist to alter Artist's artwork, but may hire another artist to complete the remaining pages in the story, in which event Eclipse may publish the Artwork, giving proper credit to Artist, pay Artist the full amount for the Artwork, and terminate this Agreement by giving written notice to Artist.

## 17. INTERPRETATION

This Agreement shall be construed as a whole and in accordance with its fair meaning. No amendments, modifications or supplements to this Agreement shall be binding unless they are in writing and duly executed by the parties hereto. Captions are for convenience only and shall not be used in construing meaning. Should a court of competent jurisdiction find one or more of the provisions of this Agreement void and/or unenforceable, then the remaining provisions of this Agreement shall still remain in force. This Agreement and all the schedules and exhibits incorporated herein by reference shall be interpreted in accordance with the laws of the State of New York.

## 18. ATTORNEY'S FEES

In the event that any of the parties must resort to legal action to enforce the provisions of this Agreement or to defend against such legal actions, the prevailing party shall be entitled to receive reimbursement from the non-prevailing party of all attorneys' fees and court costs incurred therein.

## 19. NOTICE

Except as otherwise specifically provided, any notices to be given hereunder shall be deemed given upon personal delivery or upon mailing thereof, if mailed to the following addresses (or to other such address or addresses as shall be specified in any notice given):

To Eclipse:        Eclipse Comics
                   6632 Covey Road
                   P. O. Box 1099
                   Forestville, California 95436

To Artist:         Mark Buckingham


IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

ECLIPSE ENTERPRISES, INC.

By: _____

_____
ARTIST

G01033

EXHIBIT "A"

Following are the dates on which the Artwork for the Series is due at Eclipse's offices:

| Issue | Script to Artist | Pencils |
|---|---|---|
| 17 | December 20, 1988 | January 31, 1989 |
| 18 | January 20, 1989 | February 28, 1989 |
| 19 | February 20, 1989 | March 31, 1989 |
| 20 | March 20, 1989 | April 30, 1989 |
| 21 | April 20, 1989 | May 31, 1989 |
| 22 | May 20, 1989 | June 30, 1989 |
| 23 | July 20, 1989 | August 31, 1989 |
| 24 | August 20, 1989 | September 30, 1989 |
| 25 | October 30, 1989 | November 30, 1989 |
| 26 | December 20, 1989 | January 31, 1990 |
| 27 | January 20, 1989 | February 28, 1990 |
| 28 | February 20, 1990 | March 31, 1990 |
| 29 | March 20, 1990 | April 30, 1990 |
| 30 | April 20, 1990 | May 31, 1990 |
| 31 | May 20, 1990 | June 30, 1990 |
| 32 | July 20, 1990 | August 31, 1990 |
| 33 | August 20, 1990 | September 30, 1990 |
| 34 | October 20, 1990 | November 30, 1990 |

Being an agreement made this 7 Mon '91 between Alan Moore, owner of 1/3 of the trademark to the Miracleman comics character and all other Miracleman-related characters and events, and Neil Gaiman and Mark Buckingham.

This is to formally agree the following: that Alan Moore has given his portion of the Miracleman Trademark to Neil Gaiman and Mark Buckingham, as a trust, for the duration of their work on the Miracleman comic book, currently being published by Eclipse.

That Mark Buckingham and Neil Gaiman will, in their turn, pass on their part of the trademark to their successors on the strip, or failing that, return the trademark to Alan Moore to keep or pass on as he sees fit.

Neil Gaiman and Mark Buckingham will share the 1/3rd percentage of the trademark equally.

[This agreement specifically excludes the characters created by Alan Moore and Garry Leach in Warrior comics' Warpsmith strip: trademark to the Warpsmiths, the Quys, and related characters are still held by ALan Moore and Garry Leach, although the right to use these characters in the Miracleman comic has been granted to Neil Gaiman and Mark Buckingham by Alan Moore.]

Should commercial use of the Alan Moore material, comprising the first three books of Miracleman, be made, (ie: film, television or similar) then Alan Moore will receive a financial share of this as if he were still owner of his percentage of the trademark.

In any other commercial use or rights granted to Miracleman or any of the Miracleman characters or scenarios, Neil Gaiman or Mark Buckingham will be deemed by Eclipse comics or any other interested parties to be sole owners of their part of the Miracleman trademark.

Signed:

*[signature: Alan Moore]*

*[signature: Neil Gaiman]*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**NEIL GAIMAN, and**
**MARVELS AND MIRACLES, LLC,**

        Plaintiffs,

Case No.: 02-C-0048-S

v.

**TODD MCFARLANE,**
**TODD MCFARLANE PRODUCTIONS, INC.,**
**TMP INTERNATIONAL, INC.,**
**MCFARLANE WORLDWIDE, INC., and**
**IMAGE COMICS, INC.,**

        Defendants.

---

### CERTIFICATE OF SERVICE

I, Brenda Allen-Johnson, hereby certify that I am an employee of Foley & Lardner and that on the 13th day of September, 2002, I caused true and correct copies of the following:

1. Plaintiffs' Motion in Limine #1 to Exclude Exhibits and Testimony Regarding Plaintiffs' Business Dealings with Marvel Comics **[Filed Under Seal]**;

2. Plaintiffs' Motion in Limine #2 to Preclude Defendants from Asserting that Gaiman Transferred his Copyright Interests Prior to 1997 or that Gaiman's Contributions were "Work Made for Hire";

3. Plaintiffs' Motion in Limine #3 to Exclude Greg Capullo as a Witness;

4. Plaintiffs' Justification for Contested Exhibits; and

5. Plaintiffs' Proposed Narrative Deposition Summaries:

    a. Terri Cunningham (Confidential – Attorneys Eyes Only) **[Filed Under Seal]**
    b. Sheila Egger
    c. Terence D. Fitzgerald
    d. Allan Inglis
    e. Paul Levitz (Confidential – Attorneys Eyes Only) **[Filed Under Seal]**

to be served on counsel for defendants as shown below:

| **Via Hand Delivery** | **Via Facsimile and U.S. Mail** <br> Facsimile No. (314) 345-6060 | **Via Facsimile and U.S. Mail** <br> Facsimile No.: (949) 790-6301 |
|---|---|---|
| Todd G. Smith, Esq. <br> LaFollette, Godfrey & Kahn <br> One East Main Street, Suite 500 <br> Madison, WI 53703 | Michael A. Kahn, Esq. <br> Blackwell Sanders, LLP <br> 720 Olive Street, Suite 2400 <br> St. Louis, MO 63101 | R. Scott Feldmann, Esq. <br> Brobeck, Phleger & Harrison, LLP <br> 38 Technology Drive <br> Irvine, CA 92618-5312 |

*/s/ Brenda Allen-Johnson*
Brenda Allen-Johnson

2

003.345959.9