PLAINTIFFS' NARRATIVE SUMMARY OF THE AUGUST 22, 2002
DEPOSITION OF ALLAN INGLIS

SEP 13 2002
FILED
JOSEPH W. SKUPNIEWITZ
CASE # 02-C-48-S

I worked for the toy companies controlled by Todd McFarlane, which are TMP International, Inc.; McFarlane Toys-Canada; and McFarlane Worldwide. 10:19-25. I joined TMP International in August 1996 and was the chief financial officer until June 2001. 7:17-19. I had full financial responsibilities for TMP International, Inc., including financial reporting, cash management, credit and other related functions. 8:9-12. I reported to Paul Burke and to Todd McFarlane, who was the CEO and owner of the company during the entire time that I was employed there. 9:12-20. Todd was Paul Burke's superior. 9:25-10:2.

TMP International made toys based on the Spawn comic and products owned by independent licensors. 13:14-21. The licensors were compensated by TMP International with a royalty of from 4-11 percent of the sales of the toy. 14:4-13. Initially, Todd directed that TMP International "not make any royalty payments to Todd or Todd McFarlane Productions." 17:11-15. Since 1994, TMP International has had a very accurate financial record keeping system. 22:12-23:1.

In 1997, Todd asked me to compute a royalty based on a draft agreement between Neil and Todd. 17:16-18:4. I recall reviewing a document that looked like the basis of a formal license agreement between the parties. 18:5-22. I did what I typically did under all of the agreements: calculated royalties based on the terms and conditions of the agreement and came up with what I thought the royalties should be paid to Neil. 19:4-17. In calculating royalties owed Neil, I did not have to use estimates and could pull out specific numbers off of the computer system. 23:2-9.

I made the royalty calculation for Neil on approximately July 28, 1997. 28:16-22. The royalty calculation of $155,531 in Exhibit 58 was my understanding of the royalty that I believed was due Neil under my understanding of the draft agreement that I was given, which is Exhibit 50. 49:6-17; 78:18-21. I also reviewed correspondence between Neil Gaiman and Todd McFarlane dated May 5 and July 15 which set forth certain percentages. 56:11-25. I wrote a memo to Todd stating that my calculation of the royalty paid to Neil, based on "our interpretation of the draft agreement," is $155,531. 49:24-50:9. I gave this to Todd, who asked me to redo the numbers. 19:19-20:25. After receiving this memo, Todd directed that I recalculate the royalty based upon a writer/creator/publisher collaboration. 50:11-51:19. I adjusted the royalty figure to $24,800. 57:4-13. I then had some "what if" discussions with Todd using different royalty figures. 58:20-60:12. Todd would have then said "What if I were to negotiate a different set of parameters. How do the numbers come out?". 68:5-69:1. These discussions would have been based on what Todd had in mind in terms of what he would have called a fair and reasonable royalty. 64:3-5.

My changes to Exhibit 61 were at Todd's suggestion and caused Neil's royalty to be reduced again, from $24,800 to $19,840. 61:5-14. For instance, in Exhibit 63, Todd suggested that I increase the sales allowances from 8 percent to 12 percent, which would reduce the royalty. The publisher's royalty rate went from 8 percent to 5 percent, and the writer/creator royalty rate went to 7.5 and 15 percent. 62:8-11. This resulted in a total royalty of $20,825. 63:16.

In Exhibit 56, I wrote "The other two schedules are calculations to make the bottom line come out. I do not like them." 65:7-66:16. I wrote this because I had made my

2

initial calculations based on the McFarlane/Gaiman handwritten notes. 67:22. Todd was telling me to apply different percentages, and I didn't like that because they don't reflect the discussions that have taken place so far. I didn't like changing the percentages. 69:17-24. I wrote "I do not like them" because they didn't reflect the percentages that Neil and Todd had agreed to. I'm an accountant. I've got a document that says "here's the sharing of royalties, 7.5 percent on one property and 15 percent on the other," and this was agreed upon. I don't like changing these percentages without there being another documents which says "here are the new percentages." 69:2-12.