IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| NEIL GAIMAN and MIRACLES AND MARVELS, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 02-C-0048-S |
| TODD McFARLANE, et al. | ) ) | |
| Defendants-Counterclaimants. | ) | |

---

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE PERTAINING TO UNRELATED THIRD PARTIES'
ROYALTY ARRANGEMENTS WITH DEFENDANTS TODD McFARLANE
PRODUCTIONS, INC. AND/OR TMP INTERNATIONAL, INC.**

---

Plaintiffs have identified as trial exhibits copies of various license agreements and royalty statements between Defendant Todd McFarlane Productions, Inc. ("TMP") and various third parties who are not involved in any aspect of this case. *See* Plaintiffs' Preliminary Trial Exhibit List, Nos. 117-20. In addition, Plaintiffs' expert James P. Caven has relied solely on these third-party license agreements and royalty statements to calculate what he calls the "maximum royalty" due Neil Gaiman from the sale of action figures based on the Angela and Medieval Spawn characters. These unrelated third-party license agreements and royalty statements have no probative value to any issue in this case, yet they present a real danger of unfairly prejudicing the Defendants and confusing the jury. For this reason, they are inadmissible under Rules 402 and 403 of the Federal Rules of Evidence.

In addition to excluding these trial exhibits, the Court should preclude Plaintiffs from mentioning the existence or terms of these and/or any other unrelated third-party agreements or royalty statements. Finally, Plaintiffs' expert Caven should be precluded from offering an opinion as to a "maximum royalty" allegedly due Neil Gaiman from the sale of action figures, as this opinion is based entirely on these inadmissible third-party license agreements and royalty statements. (See Caven Report and Schedules A-1 and A-2 attached thereto.)

It is undisputed that Defendant TMP International, Inc. (alternatively "TMPI" or the "Toy Company") has produced and sold action figures based on various *Spawn* comic book characters pursuant to a license agreement with Defendant TMP. This license agreement governs all *Spawn*-related toys, and predates the 1996-97 discussions between Todd McFarlane and Neil Gaiman that are the subject of Plaintiffs' breach of contract claims. Under this license agreement, in return for granting a license to sell action figures based on *Spawn* comic book characters, TMP receives a royalty equal to 5% of the Toy Company's sales of such action figures.

The jury will not be asked to make findings as to the existence, the validity or the terms of the license agreement between TMP and the Toy Company. Instead, the jury will be asked *only* to determine whether Plaintiff Neil Gaiman entered into an enforceable contract in 1997 with Defendant Todd McFarlane (on behalf of himself or TMP) — and, if it finds a 1997 contract, to determine what the terms of that contract were.

Under that alleged 1997 contract, Plaintiffs claim that Gaiman is entitled to a royalty equal to "*15% of publisher's [TMP's] net receipts*" from licensing the use of the Angela, Cogliostro and Medieval Spawn characters. In this case, that would include revenues received by TMP from the Toy Company on the sale of action figures based on the Angela and Medieval

Spawn characters (there is no Cogliostro action figure). Plaintiffs' expert James Caven has calculated the amount of money he believes is owed to Gaiman under this provision, calling it the "minimum royalty" due for these action figures.

Even though it was based on the very contract terms they alleged in this case, this "minimum royalty" number was apparently too small for Plaintiffs. Caven therefore calculated a so-called "maximum royalty" by changing the definition of "publisher's net receipts" from what it undisputedly is to what Plaintiffs think it ***should have been***. Plaintiffs' motivation for this is clear – since Gaiman's only claim to action figure royalties is as a percentage of the revenues received by TMP, anything that increases TMP's take also increases Gaiman's take.

There is no evidentiary, factual or legal basis for making this change, however. Caven's only rationale for this opinion is the fact that TMP has, in at least two instances, received royalties of 9% and 11% from unrelated third-party licensees (for products unrelated to the toy industry). Caven takes this fact and opines that TMP should have been paid a higher royalty – he thinks 10% sounds appropriate – by the Toy Company because Todd McFarlane controls both companies. In effect, he argues that Mr. McFarlane should have negotiated a better deal on behalf of TMP, his publishing company, at the expense of TMPI, his toy company. It is in support of this highly speculative bit of wishful thinking that Plaintiffs intend to introduce evidence of other agreements that TMP has entered into with unrelated third parties.

This "evidence" must be excluded under Rule 402 because it is irrelevant and immaterial — it will not help to prove a single contested factual issue in this case. These third-party agreements have no association with the relationship between Gaiman and any of the defendants, nor were these contracts expressly or implicitly involved in the litigants' May and July 1997 communications with one another. "If the evidence is offered to help prove a proposition that is

3

not a matter in issue, the evidence is immaterial." 1 John W. Strong et al., *McCormick on Evidence* § 185, at 635 (5th ed. 1999). Such is the case here, where the third-party contracts, at best, serve only to prove a matter not at issue, namely the terms of the McFarlane Defendants' arrangements with unrelated non-parties, terms that were bargained for in contexts far removed from the parties' alleged relationship in this case.

The relevant questions that *are* before the jury in this case, as phrased in the parties' Joint Pre-Trial Conference Report, are:

> Beginning in 1992, did Todd McFarlane (on behalf of himself or Todd McFarlane Productions) and Neil Gaiman enter into an enforceable agreement that Neil Gaiman would be compensated for his work in conjunction with Spawn-related comics as well or better than Neil Gaiman's compensation under his contracts with D.C. Comics?
>
> …
>
> In 1997, did Todd McFarlane (on behalf of himself or Todd McFarlane Productions) and Neil enter into an enforceable agreement regarding, among other things, royalties and rights to various comic book characters? If so, what were the terms of that agreement?

If any third-party contracts are relevant to these issues, they consist of, exclusively, Gaiman's pre-1997 contracts with DC Comics. Conspicuously absent from the parties' agreed-upon statements of facts and contested factual issues is any suggestion that the alleged contract between Gaiman and McFarlane had a connection to the irrelevant third-party contracts Plaintiffs now seek to introduce. Also conspicuously absent from the parties' agreed-upon statements of facts and contested factual issues is any suggestion that the license agreement between TMP and the Toy Company was improper in any way, yet this is the clear implication of Caven's testimony.

4

Not only are the third-party contracts propounded by Plaintiffs immaterial to this case, they also have no probative value. The Federal Rules of Evidence are clear: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is ***of consequence to the determination of the action*** more probable or less probable than it would be without the evidence." Fed R. Evid. 401 (emphasis added). The McFarlane Defendants' agreements with unrelated third parties do not tend to support or disprove any factual element about an alleged agreement between Gaiman and McFarlane. This evidence is thus not probative of any issue in the instant litigation.

While relevant evidence need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, "it must in some degree advance the inquiry." *EEOC v. Ind. Bell Tel. Co.*, 256 F.3d 516, 533 (7th Cir. 2001) (quoting 1 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 401.04[2][b]); *see also Davis v. Lane*, 814 F.2d 397, 399 (7th Cir. 1987). Caven's "maximum royalty" opinion and the unrelated third-party contracts upon which that opinion is based do not advance any inquiry in the case because this "evidence" does not illuminate any facts about the alleged contract between Gaiman and McFarlane. It is true that courts exclude evidence based on relevance grounds sparingly, recognizing that "[e]vidence is relevant if its exclusion would leave a chronological and conceptual void in the story." *EEOC*, 256 F.3d at 533 (citing *Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994)). In this case, however, leaving a "conceptual void" is not a concern. Excluding the third-party contracts and Caven's "maximum royalty" opinion will leave no gaping holes in the "story" about Gaiman's and McFarlane's alleged contract. In fact, excluding this extraneous evidence will focus the jury's attention where it belongs—on the actual communication between the parties in *this* case, and whether it was sufficient to form an enforceable contract.

Finally, even if the Court deems the third-party contracts relevant, they must be excluded under Rule 403 because their admission would be unduly prejudicial and confusing to the jury. The same is true of Caven's "maximum royalty" opinion. Allowing the jury to consider royalty rates under which TMP received revenue from unrelated third parties would mislead the jury about the terms of the alleged agreement between the *actual* parties to the case, will confuse the issues about which, if any, contracts were to serve as a model for the parties (the DC Comics contracts are the only others that may be relevant), and would delay the resolution of this case. In addition, allowing the jury to consider the propriety of the negotiated royalty rate in the underlying license agreement between TMP and the Toy Company — an agreement that governs all *Spawn* action figures and predates any discussions of this type of royalty with Gaiman — would similarly confuse and mislead the jury and delay the resolution of this case.

Moreover, Caven's "maximum royalty" opinion is particularly insidious because it improperly suggests to the jury that TMP and TMPI are not separate, legitimate corporate entities — something that has never been an issue in this case — but instead are merely different pockets in the same suit enabling Todd McFarlane to hide money from Neil Gaiman. This thinly veiled attempt to pierce the corporate veil cannot be countenanced, especially coming as it does out the mouth of an "expert." Finally, Caven's suggestion that Todd McFarlane's ability to control the negotiations between TMP and the Toy Company somehow permits him to control the revenues paid to creators such as Neil Gaiman is highly inflammatory because it suggests — wrongly — that Todd McFarlane manipulated this royalty rate *for the purpose of* minimizing the ultimate royalties payable to Gaiman. This flatly ignores the undisputed fact that the underlying license agreement was negotiated well before Gaiman ever communicated to McFarlane that he

would have any claim to action figure royalties, let alone a claim specifically calculated on a percentage of the royalties TMP received from the Toy Company.

For the foregoing reasons, Defendants respectfully request that the Court enter an order *in limine* excluding from evidence and prohibiting any witness or counsel from mentioning, referring to, or suggesting in the presence of the jury any evidence and/or testimony pertaining to Defendants' contractual relationships with third parties that are not parties to this case, including but not limited to Plaintiffs' Exhibits 117-22. In addition, Defendants respectfully request that the Court exclude that portion of Plaintiffs' expert James Caven's opinion referring to a "maximum royalty" calculated as if TMP had received a 10% royalty from the Toy Company rather than the 5% royalty it actually received.

Dated: September 13, 2002         LaFOLLETTE GODFREY & KAHN

By _____
Eugenia G. Carter
Todd G. Smith
Gabriel S. Gross
LaFollette Godfrey & Kahn
One East Main Street, Suite 500
Madison, WI 53701
Tel: (608) 257-3911
Fax: (608) 257-0609
*LaFollette Godfrey & Kahn is the Madison office of Godfrey & Kahn, S.C.*

—and—

Michael A. Kahn
Peter W. Salsich, III
Blackwell Sanders Peper Martin
720 Olive Street, Suite 2400
St. Louis, MO 63101
Tel: (314) 345-6000
Fax: (314) 345-6060

Attorneys for Todd McFarlane, Todd McFarlane Productions, Inc., TMP International, Inc. and McFarlane Worldwide, Inc.

—and—

R. Scott Feldmann
Brobeck, Phleger & Harrison LLP
38 Technology Drive
Irvine, CA 92618-5312
Tel: (949) 790-6300
Fax: (949) 790-6301

Attorneys for Defendant Image Comics, Inc.

MN155969_1.DOC

**CERTIFICATE OF SERVICE**

      The undersigned certifies that a true and correct copy of the foregoing was served on all counsel of record via facsimile transmission and regular mail this _____ day of September, 2002, addressed to the following:

      Allen A. Arntsen
      Jeffrey A. Simmons
      Foley & Lardner
      150 East Gilman Street
      Madison, WI 53703-2808
      Fax: 608-258-4258

      Kenneth F. Levin
      Kenneth F. Levin & Associates
      20 North Wacker Drive, Suite 2200
      Chicago, IL 60606
      Fax: 312-977-2990

_____