IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NEIL GAIMAN and MARVELS AND MIRACLES, LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>TODD MCFARLANE; TODD MCFARLANE PRODUCTIONS, INC.; TMP INTERNATIONAL, INC.; MCFARLANE WORLDWIDE, INC.; and IMAGE COMICS, INC.,<br><br>*Defendants.* | Case No.   02-C-0048-S<br>(Judge Shabaz)<br><br>**DEFENDANT IMAGE COMICS, INC.'S NOTICE OF INTERVENING CHANGES IN LAW** |

CROWELL & MORING LLP
R. Scott Feldmann
(*pro hac vice*)
Thomas E. Dietrich
(*pro hac vice application to be submitted*)
3 Park Plaza, 20th Floor
Irvine, California 92614-8505
Telephone:   (949) 263-8400
Facsimile:    (949) 263-8414

Attorneys for Defendant
Image Comics, Inc.

## INTRODUCTION

Defendant Image Comics, Inc. ("Image") files this Notice of Intervening Changes in Law ("Notice") to inform the Court that its Second Amended Judgment is contrary to subsequent unanimous Supreme Court authority and several Seventh Circuit holdings. This case has been before the Court for seven years. During that time, several opinions have been handed down by the United States Supreme Court and the Seventh Circuit which substantially modify or clarify the law that was in place when this Court issued its Second Amended Judgment on January 9, 2003. In order to ensure preservation for appeal of the issues raised by these intervening changes and to apprise the Court of recent precedent which substantially affects the Judgment entered in this case, Image files this Notice. This is not a Motion for Judgment as a Matter of Law ("JMOL") or for a renewed JMOL. New persuasive authority holds that a party waives appellate arguments based on changes in relevant case law if the party does not notify the trial court of those changes before entry of final judgment.[1] Public policy is to afford trial courts an opportunity to conform their prior unfinalized judgments with new law in order to minimize needless appeals.

## STATEMENT OF FACTS

Following a jury trial, on January 9, 2003, this Court entered its Second Amended Judgment (Docket No. ("D.N.") 253). The Second Amended Judgment included:

i. A judgment in favor of Plaintiff Neil Gaiman ("Gaiman") and against Image and co-defendants Todd McFarlane and Todd McFarlane Productions, Inc. ("TMP")

---

[1] *See Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1116-17 (Fed. Cir. 2008) (holding that "when there is a relevant change in the law before entry of final judgment, a party generally must notify the district court; if the party fails to do so, it waives arguments on appeal that are based on that change in law"). In *Rentrop*, the Federal Circuit found that a party waived appellate arguments based on a change in law when the party failed to bring to the trial court's attention new precedent that had been issued over four months before entry of final judgment. *Id.*

      (collectively, "Defendants") on the name misappropriation claim in the amount of $45,000 with costs, and attorneys' fees in the amount of $33,639.40;

ii. A judgment in favor of Plaintiffs against Todd McFarlane and TMP ("McFarlane Defendants") for a declaration that Plaintiff Neil Gaiman was joint owner of the copyrights in five comic book publications and in three comic book characters;

iii. An injunction prohibiting Image and co-defendants from publishing or distributing the trade paperback comic book collective work entitled *Angela's Hunt* using the name or biographical information of Plaintiff Neil Gaiman for purposes of trade without his written consent;

iv. A mandatory injunction requiring Image and co-defendants to credit Neil Gaiman as co-author of the comic book *Spawn* Issue 26 (including reprints of same);

v. An order that Todd McFarlane and TMP provide an accounting of profits for the copyrighted comic book characters and comic book publications pursuant to an attached and incorporated stipulation; and

vi. An order denying all motions for attorneys' fees on the copyright claims.

(*Id.*)

Plaintiffs' and McFarlane Defendants' stipulation governing the accounting procedure, incorporated into the Second Amended Judgment, states:

> [T]he parties do not waive any right to appeal rulings by the Court regarding the legal issues relevant to the Accounting. However, the parties waive the right to appeal any accounting decisions, procedures or actions by the Accountant relating to the Accounting, including the amount of the Final Accounting.
>
> Subject to the limitations set forth in the previous paragraph, the parties agree that the Court may enter a final judgment regarding any verdicts, decisions, or orders, including any order ordering an accounting of profits, at any time the Court deems appropriate and that any party may appeal such a final judgment prior to completion of the accounting.

(*Id.*)

No final judgment has been entered. Before the McFarlane Defendants finished an accounting of profits, TMP filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Arizona. (TMP's Notice of Filing Bankruptcy in Case 2:04-bk-21755-CGC) (Ex. 1) Pursuant to 11 U.S.C. § 362(a), an automatic stay was placed upon litigation

proceedings related to the TMP bankruptcy, including the accounting of Gaiman's profits in the Western District of Wisconsin. (*Id.*) On November 15, 2005, the Arizona court granted relief from the automatic stay for the accounting to proceed. (Nov. 15, 2005 Order) (Ex. 2) Gaiman and TMP stipulated that the accounting will be complete when the accountant delivers a Final Accounting, or the parties deliver a settlement agreement regarding the accounting, to this Court. (Id. at 6.) That has not yet occurred.

## NOTICE OF INTERVENING CHANGES IN LAW

On the Seventh Cause of Action for alleged "reverse passing off" under the Lanham Act, the jury found that Image's failure to credit Gaiman as a co-author of *Spawn* Issue 26 and subsequent reprints constituted a false designation of the origin of the work. Based on the jury verdict, this Court granted Plaintiffs a permanent injunction against Defendants prohibiting them from selling copies of *Spawn* Issue 26 and reprints without crediting Gaiman as a co-author. New precedent handed down by the United States Supreme Court following entry of the Second Amended Judgment provides that a publisher is not liable under the Lanham Act for failure to attribute an intangible work to a content-creator like Gaiman. The Supreme Court's rationale was that the Lanham Act liability theory is inconsistent with copyright moral rights – an argument advanced by Image but rejected by this Court.

This Court also denied Image an award of its attorneys' fees as the prevailing party on the three Copyright Act claims Plaintiffs asserted against Image. Several recent Seventh Circuit cases strongly support Image's position that it was entitled to fees.

Lastly, the jury found for Plaintiffs on counts for statutory and common law right of publicity violations, determining that Image violated Gaiman's right of publicity by giving him an author's credit and including his biographical information on the compilation of comics titled *Angela's Hunt*. The Court upheld the jury verdicts following Defendants' motion for directed

verdict. While not binding, a new appellate decision – the first ever to grapple with the issue of balancing publicity rights against First Amendment rights – holds that use of publicly available facts and biographical information about a public figure is protected under the First Amendment and cannot constitute a right of publicity violation. Again, this Court previously rejected this same First Amendment argument raised by Image seven years ago.

In order to apprise the Court of these changes in law and preserve all arguments for appeal, Image brings the following cases to the Court's attention.

I. **The Issuance of a Mandatory Injunction Based Upon Alleged "Reverse Passing Off" of *Spawn* Issue 26 is Directly Contrary to the Supreme Court's *Dastar* Opinion.**

A United States Supreme Court opinion rendered on June 2, 2003, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), modified the law with regard to reverse passing-off under Section 43(a) of the Lanham Act and contradicts this Court's Second Amended Judgment. As part of the Second Amended Judgment, this Court enjoined Image from selling copies of *Spawn* Issue 26 that did not bear an author's credit to Gaiman. Gaiman wrote a three-page "bridge" script that was included in that comic. In issuing this injunction, the Court held that Image's sale of Issue 26 without crediting Gaiman as a co-author constitutes "reverse passing-off" under the Lanham Act. The Court's Second Amended Judgment therefore is at odds with copyright law.

    A. ***Dastar* Holds That Section 43(a) of the Lanham Act Does Not Provide a Cause of Action for Failure to Attribute a Communicative Work to Its Author.**

The finding of reverse passing-off was based on the conclusion that Image falsely described or represented the origin of *Spawn* Issue 26 by selling that issue and trade paperback reprints containing that issue (*Spawn* Volume Six and *Pathway to Judgment*) without acknowledging Gaiman as a co-author. The *Dastar* opinion explains that a content-creator does

not have a viable Section 43(a) claim against a publisher for that publisher's failure to attribute a communicative work to the content-creator.

A claim of reverse passing-off occurs when a producer of *tangible* goods misrepresents someone else's goods as his own. *Dastar*, 539 U.S. at 28 n.1. This claim is rooted in section 43(a) of the Lanham Act, which provides in relevant part:

> (1)   Any person who, on or in connection with any goods . . . uses in commerce . . . any false designation of origin . . . which –
>
> > (A)   is likely to cause confusion, or to cause mistake or to deceive . . . as to the origin . . . of his or her goods . . . shall be liable in a civil action by any such person who believes that he or she is likely to be damaged by such an act.

15 U.S.C. § 1125(a) (2006). Prior to the *Dastar* decision, the Seventh Circuit read this passage as allowing an author to file a Lanham Act claim to ensure that his name be associated with a work when the work is used. *See Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 696 (7th Cir. 1999). The reasoning was that a publisher's failure to correctly attribute a "communicative work"[2] was likely to confuse or deceive consumers about the work's "origin," a term which had been understood to include the author. The Supreme Court found this interpretation to be erroneous in *Dastar*.

*Dastar* involved a defendant of the same name who published a video series on World War II battles. 539 U.S. at 27. Dastar's videos contained a substantial amount of material copied from a television series created by Twentieth Century Fox ("Fox"). *Id.* at 25-26. Fox complained that Dastar was falsely representing the origin of the video series by selling it without attribution to Fox as creator of the copied material. *Id.* at 27. Fox lost.

---

[2] A "communicative work" is "one that is valued not primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys, such as a book or . . . a video." *Dastar*, 539 U.S. at 32.

The Supreme Court analyzed the Lanham Act, specifically whether Dastar's failure to credit Fox was likely to deceive consumers as to the "origin of goods" under section 43(a)(1)(A). The Court concluded:

> [R]eading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods.

*Id.* at 37. The term "origin of goods" is "incapable of connoting the person or entity that originated the ideas or communications the 'goods' embody or contain." *Id.* at 24. A reverse passing-off claim therefore can succeed only if the seller misrepresents that he physically *produced* the tangible goods he is selling when they were in fact manufactured by someone else. *Dastar*, 539 U.S. at 37-38. Allowing a content-creator to bring a claim under Section 43(a) of the Lanham Act for failure to attribute the work to him "would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Dastar*, 539 U.S. at 37. Even what the Seventh Circuit has previously termed "communicative works" are not accorded any special treatment. *Id.* at 33 (stating that "[t]he problem with . . . according special treatment to communicative products is that it causes the Lanham Act to conflict with the law of copyright which addresses the subject specifically").

If the author of ideas or concepts embodied in a work believes that he did not receive correct attribution, the Supreme Court found that his claim lies in copyright law, not the Lanham Act. *See id.* at 37-38. Section 43(a) does not contain a cause of action for plagiarism. *See id.* at 34; *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1116 (W.D. Wash. 2007). If a publisher failed to attribute a publication to the author and represented that it conceived the "creative work" it produced, the author would not have a valid 43(a) claim. Permitting such a

cause of action "would create a species of mutant copyright law . . . ." *Dastar*, 539 U.S. at 34. Under the new *Dastar* precedent, a publisher's representation that it originated the creative work conveyed by goods it produces does not subject the publisher to Lanham Act liability.

> B. **Under Dastar, Image is the "Origin" of Spawn Issue 26, Spawn Volume 6, and Pathway to Judgment.**

In *Dastar*, the "origin" of the video series at issue was the producer of the physical cassettes, Dastar. *Id.* at 38. Dastar was not liable for misrepresenting the "origin" of the videotapes because it had not sold them under the label of another producer. *Id.* at 31, 38. Like Dastar, Image is the "origin" of the products it produces – the *Spawn* comic books and trade paperbacks.

Gaiman alleged that he created the three-page bridge script in *Spawn* Issue 26 and the trade paperbacks *Spawn* Volume 6 and *Pathway to Judgment* in which Issue 26 was reprinted, but he did not receive a co-author's credit for doing so. This Court, to determine whether the jury believed this constituted reverse passing-off, asked them if "defendants' failure to identify plaintiff Gaiman as a co-author of *Spawn* issue 26, *Spawn* volume 6 or *Pathway to Judgment* [was] a false description or representation of the origin of the work?" (Trial Transcript ("Tr.") III at 214.) The jury answered "yes." (Tr. IV at 5.) But that question is now flawed.

Under *Dastar*, the source of origin of a book is the publisher, not the author. 539 U.S. at 37. Like Dastar, Image cannot be liable under the Lanham Act for reverse passing-off of *Spawn* Issue 26 and the trade paperbacks, because Image was the source of origin of those physical goods. Image published those comic books and clearly labeled every one as a product of Image Comics. Even if Image's failure to attribute the comics to Gaiman constituted a representation that Image conceived the creative material conveyed by those works, Gaiman has no valid 43(a)

claim. *See id.* at 34. Thus, there could not have been reverse passing-off under intervening Supreme Court precedent.

II. **Recent Seventh Circuit Cases Provide Defendants Should Be Awarded Attorney Fees for Prevailing Against Plaintiffs' Copyright Claims.**

As demonstrated by recent Seventh Circuit precedent, attorneys' fees should have been awarded to Image as a "prevailing party" on Gaiman's claims brought under the Copyright Act. 17 U.S.C. § 505 (2006). Under Section 505, "the prevailing party in copyright litigation is presumptively entitled to reimbursement of its attorneys' fees." *Riviera Distrib., Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008). In the case of prevailing defendants, this presumption is "very strong." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008). In deciding to award fees, the "frivolousness" of claims is a factor for the trial court to consider. *Eagle Serv. Corp. v. H2O Indus. Serv., Inc.*, 532 F.3d 620, 624-25 (7th Cir. 2008) (finding frivolity of copyright claims supported awarding fees to prevailing defendant).

Plaintiffs brought several groundless copyright claims against Image. Count I of Plaintiffs' Complaint was for foreign and U.S. "Moral Rights." But comic books are literary works and not among the enumerated works eligible for "moral rights" protection under the Visual Artists Right Act of 1990; moreover, the "foreign law" asserted is not applicable in the United States. *See* 17 U.S.C. §§ 101, 106A (2006). Count II was for copyright infringement, yet as a licensee of the copyright co-owner, TMP (McFarlane's assignee) (Tr. II at 260:5-9), Image could not have been liable for infringement to the other co-owner, Gaiman. *See Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266 (2d Cir. 1944).

This Court dismissed these copyright claims and that dismissal constitutes a "favorable judgment" for Image, making Image the "prevailing party" within 17 U.S.C. § 505. *See Mostly Memories*, 526 F.3d at 1099; *Riviera*, 517 F.3d at 928 (holding that plaintiff's voluntary

dismissal of copyright claims constituted a "favorable judgment" for the defendant, thus entitling defendant to attorneys' fees). Under this new precedent, Image is entitled to an award of reasonable attorneys' fees.

### III. A New Eighth Circuit Case Demonstrates That Use of Publicly-Available Facts and Biographical Information About a Celebrity Does Not Violate Right of Publicity.

The first appellate court to apply Supreme Court precedent from *Lear, Inc. v. Adkins*, 395 U.S. 653, 675 (1969), and balance the First Amendment against right of publicity rights, has held that use of a person's name and biographical information are protected by the First Amendment. This Court determined that Image's inclusion of Gaiman's name and biographical facts about the author on the back cover of the comic book, *Angela's Hunt*, violated Gaiman's right of publicity. Gaiman wrote the script for *Angela's Hunt* and co-created the book's main character, Angela. It was undisputed that the information Image used was in the public domain at the time – it was freely available on neilgaiman.com. (Tr. IV at 43-44.) A new and highly persuasive opinion from the Eighth Circuit explains that use of a celebrity's name and biographical information that is readily available in the public domain is protected by the First Amendment and not violative of publicity rights. *See C.B.C. Distrib. and Market., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 823-24 (8th Cir. 2007), *cert. denied*, --- U.S. ---, 2008 WL 512723 (June 2, 2008) (finding that plaintiff's use of professional athletes' names and biographical data was protected First Amendment speech trumping athletes' rights of publicity).

This Court held that Gaiman co-created the Angela character and wrote all of the material in *Angela's Hunt*. In doing so, Gaiman inextricably linked himself with that material, and under *C.B.C. Distrib.*, Image can freely describe the factual background of its publication using that public domain information. Image's First Amendment rights would therefore trump Gaiman's

right of publicity. It "would be strange law that [a defendant] would not have a first amendment right to use this information that is available to everyone." *C.B.C. Distrib.*, 505 F.3d at 823.

## CONCLUSION

The mandatory injunction under the Lanham Act entered by the District Court is directly contrary to the Supreme Court's *Dastar* holding. An author's reverse passing-off claim for failure to receive attribution is inconsistent with copyright law and thus impermissible.

Furthermore, under intervening Seventh Circuit law, Image should recover fees as a "prevailing party" against Plaintiffs' dismissed Copyright Act claims.

On the right of publicity claim, recent persuasive authority provides that Image has a First Amendment right to use Gaiman's publicly-available biographical information which trumps Gaiman's right of publicity.

Respectfully submitted,

CROWELL & MORING LLP


/s/ R. Scott Feldmann
R. Scott Feldmann
Attorneys for Defendant
Image Comics, Inc.

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 3 Park Plaza, 20th Floor, Irvine, California 92614-8505. On **March 20, 2009**, I served a copy of the following document(s) described as:

## DEFENDANT IMAGE COMICS, INC.'S
## NOTICE OF INTERVENING CHANGES IN LAW

on the parties or attorneys for parties in this action who are identified on the attached service list, using the following means of service. (If more than one means of service is checked, the means of service used for each party is indicated on the attached service list.)

☒ **BY MAIL**: I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Crowell & Moring LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ **FEDERAL**: I am employed in the office of a member of the Bar of this Court at whose direction above-described service was made.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on **March 20, 2009**, at Irvine, California.

_____
Patricia Rizer

## SERVICE LIST AS PROVIDED IN DOCKET:

| | |
|---|---|
| Jeffrey A. Simmons, Esq.<br>Foley & Lardner LLP<br>150 East Gilman Street<br>Madison, WI 53701<br><br>Telephone: (608) 258-4267 | *Counsel for*<br>*Neil Gaiman*<br>*Marvels and Miracles, LLC* |
| Kenneth F. Levin, Esq.<br>Kenneth F. Levin and Associates<br>20 N. Wacker Drive<br>Suite 2200<br>Chicago, IL 60606<br><br>Telephone: (312) 984-6000 | *Counsel for*<br>*Neil Gaiman*<br>*Marvels and Miracles, LLC* |
| Michael A. Kahn, Esq.<br>Blackwell Sanders Peper Martin, LLP<br>Olive Street<br>Suite 2400<br>St. Louis, MO 63101<br><br>Telephone (314) 345-6000 | *Counsel for*<br>*Todd Mcfarlane*<br>*Todd Mcfarlane Productions, Inc.*<br>*TMP International, Inc.*<br>*Mcfarlane Worldwide, Inc.* |
| Todd Smith, Esq.<br>Godfrey & Kahn S.C.<br>One East Main Street<br>Suite 5000<br>Madison, WI 53701<br><br>Telephone: (608) 257-3911 Ext. 2653 | *Counsel for*<br>*Todd Mcfarlane*<br>*Todd Mcfarlane Productions, Inc.*<br>*TMP International, Inc.*<br>*Mcfarlane Worldwide, Inc.* |

## COURTESY COPY PROVIDED TO:

| | |
|---|---|
| Michael Kahn, Esq.<br>Bryan Cave LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102-2750<br><br>Telephone: (314) 259-2251 | |

Cam No. 100381.001
IR4182745.1