# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NEIL GAIMAN and MARVELS AND MIRACLES, LLC, | Case No.    02-C-0048-S <br> (Judge Shabaz) |
| *Plaintiffs,* | **DEFENDANT IMAGE COMICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES PURSUANT TO RULE 54(b) OR, IN THE ALTERNATIVE, RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |
| v. | |
| TODD MCFARLANE; TODD MCFARLANE PRODUCTIONS, INC.; TMP INTERNATIONAL, INC.; MCFARLANE WORLDWIDE, INC.; and IMAGE COMICS, INC., | |
| *Defendants.* | |

CROWELL & MORING LLP
R. Scott Feldmann
(*pro hac vice*)
Thomas E. Dietrich
(*pro hac vice* application pending*)
3 Park Plaza, 20th Floor
Irvine, California  92614-8505
Telephone:   (949) 263-8400
Facsimile:   (949) 263-8414

Attorneys for Defendant
Image Comics, Inc.

Case No.  02-C-0048-S

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

I.      TMP's Bankruptcy Discharge was Granted, Automatic Stay is Lifted..............................8

II.     No Final Judgment Has Yet Been Entered, Allowing This Court to Modify the
        Second Amended Judgment Under Rule 54(b) ...........................................................9

        A.      The Second Amended Judgment Does Not Adjudicate All Rights and
                Liabilities of All Parties ................................................................................9

                1.      Second Amended Judgment is a Conditional Judgment............................10

                2.      Plaintiffs Agree That Final Judgment Has Not Yet Been Entered ...........11

        B.      The Fees Order is Not an Appealable Final Judgment .........................................11

        C.      The Court Has Plenary Power Under Rule 54(b) to Modify the Second
                Amended Judgment and Fees Order and Should Do So When There Has
                Been an Intervening Change in Law.................................................................11

        D.      Image Has a Duty to Bring New Case Law to the Court's Attention to
                Conform Its Rulings to Intervening Law and Obviate Needless Appeals .............12

III.    Issuing a Mandatory Injunction Based Upon Alleged "Reverse Passing Off" of
        *Spawn* Issue 26 Contradicts the Supreme Court's *Dastar* Opinion.................................13

        A.      *Dastar* Holds That Section 43(a) of the Lanham Act Does Not Provide a
                Cause of Action for Failure to Attribute a Communicative Work to Its
                Author. .........................................................................................................13

        B.      Image is the "Origin" of *Spawn* Issue 26, *Spawn volume 6*, and *Pathway to
                Judgment*. ......................................................................................................16

IV.     Image is Entitled to an Award of Attorneys' Fees Under Current Seventh Circuit
        Precedent for Prevailing Against Plaintiffs' Copyright Claims........................................17

        A.      The Court Failed to Apply the Requisite "Very Strong Presumption" That
                Image was Entitled to Attorneys' Fees .............................................................18

        B.      Image is Entitled to an Award of Attorneys' Fees...............................................19

V.      Image's Use of Public Biographical Information About Gaiman is Protected By
        The First Amendment, As Explained in New Eighth Circuit Opinion ..............................20

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

# TABLE OF CONTENTS
## (continued)

**Page**

A.    *C.B.C. Distribution* Illuminates Image's First Amendment Right to Use Facts That Were in the Public Domain to Describe *Angela's Hunt* ....................21

B.    Under *C.B.C. Distribution* Image's First Amendment Right to Use Gaiman's Biographical Information Trumps His Right of Publicity Claim..........22

    1.    Like the Baseball Players in *C.B.C. Distribution*, Gaiman's Economic Interest and Incentive to Be Productive Do Not Stem From Publicity Rights ................................................................................23

    2.    Plaintiffs' Arguments as to Endorsement are Far Too Vague to Allow Gaiman's Right of Publicity to Supplant Image's First Amendment Rights ............................................................................24

C.    Failing to Amend Second Amended Judgment to Enforce Image's First Amendment Rights Would Cause Illogical and Harmful Consequences ..............26

VI.    If the Court Determines the Second Amended Judgment Does Constitute a Final Judgment, It Should Provide Requested Relief as Permitted Under Rule 60(b) ..............27

A.    Applying the Injunction Barring Image From Distributing *Spawn* Issue 26 and Reprints is No Longer Equitable in the Face of *Dastar* .................................28

B.    Exceptional Circumstances and Changed Law Justify Awarding Image Attorneys' Fees Under Rule 60(b)(6) ........................................................29

C.    Right of Publicity Injunction is Inequitable in Light of Changing First Amendment Law...........................................................................30

    1.    Right of Publicity Injunction and Ruling are Inequitable and Contrary to *C.B.C. Distribution* Allowing Amendment Under Rule 60(b)(5) .................................................................................31

    2.    The Court's Right of Publicity Ruling and Injunction Severely Impinge on Free Speech Providing "Exceptional Circumstances" for Reversing Both Under Rule 60(b)(6) ..................................................32

CONCLUSION....................................................................................................33

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

# TABLE OF AUTHORITIES

**Page**

## CASES

*44 Liquormart, Inc. v. R.I.*,
    517 U.S. 484 (1996)............................................................................................ 22

*Agostini v. Felton*,
    521 U.S. 203 (1997)............................................................................................ 28

*Artis v. United States Indus.*,
    805 F. Supp. 609 (N.D. Ill. 1992) ................................................................... 29

*Asher v. Ruppa*,
    173 F.2d 10 (7th Cir. 1949) ......................................................................... 9, 11

*Assessment Tech. of Wi., LLC v. Wiredata, Inc.*,
    361 F.3d 434 (7th Cir. 2004) ..................................................................... 17, 18

*Auto Serv. Co., Inc. v. KPMG, LLP*,
    537 F.3d 853 (8th Cir. 2008) ............................................................................ 9

*Bach v. Forever Living Prods. U.S., Inc.*,
    473 F. Supp. 2d 1110 (W.D. Wash. 2007)..................................................... 16

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
    906 F.2d 1185 (7th Cir. 1990) ................................................................... 12, 21

*Bose Corp. v. Consumers Union of the United States*,
    466 U.S. 485 (1984)........................................................................................... 21

*C.B.C. Distrib. & Market., Inc. v. Major League Baseball Advanced Media, L.P.*,
    505 F.3d 818 (8th Cir. 2007) ................................................................... passim

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
    95 F.3d 959 (10th Cir. 1996) ........................................................................... 22

*Civil Aeronautics Bd. v. Tour Travel Enters.*,
    605 F.2d 998 (7th Cir. 1979) ........................................................................... 10

*Cooper v. Eagle River Mem'l Hosp.*,
    270 F.3d 456 (7th Cir. 2001) ........................................................................... 22

*Eagle Serv. Corp. v. H2O Indus. Serv., Inc.*,
    532 F.3d 620 (7th Cir. 2008) ..................................................................... 17, 18

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*,
    140 F.2d 266 (2d Cir. 1944)............................................................................. 19

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Fogarty v. Fantasy, Inc.,*
    510 U.S. 517 (1994) ............................................................................. 18

*In re Roney,*
    139 F.2d 175 (7th Cir. 1944) .......................................................... 10, 11

*Kennedy v. Nat'l Juvenile Det. Ass'n,*
    187 F.3d 690 (7th Cir. 1999) ............................................................... 14

*Mostly Memories, Inc. v. For Your Ease Only, Inc.,*
    526 F.3d 1093 (7th Cir. 2008) ................................................. 17, 18, 19

*Partmar Corp. v. Paramount Pictures Theatres Corp.,*
    347 U.S. 89 (1954) ................................................................................. 9

*Polites v. United States,*
    364 U.S. 426 (1960) ............................................................................. 30

*Rentrop v. Spectranetics Corp.,*
    550 F.3d 1112 (Fed. Cir. 2008) ................................................. 2, 12, 30

*Riviera Distrib., Inc. v. Jones,*
    517 F.3d 926 (7th Cir. 2008) ................................................... 17, 18, 19

*Seale v. Gramercy Pictures,*
    949 F. Supp. 331 (E.D. Pa. 1996) ....................................................... 22

*Thorpe v. Housing Authority,*
    393 U.S. 268 (1961) ............................................................................. 30

*United States v. Donnelley's Estate,*
    397 U.S. 286 (1970) ............................................................................. 13

*United States v. Schooner Peggy,*
    5 U.S. 103 (1801) ................................................................................. 30

*Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,*
    956 F.2d 1245 (2d Cir. 1992) .............................................................. 12

*Western Union Tel. Co. v. Int'l Broth. of Elec. Workers, Local Union No. 134,*
    133 F.2d 955 (7th Cir. 1943) ............................................................... 28

**FEDERAL STATUTES**

11 U.S.C. § 1141(d)(1)(A) ........................................................................... 9

11 U.S.C. § 362(a) ...................................................................................... 6

11 U.S.C. § 362(c)(2)(C) ............................................................................. 8

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

## TABLE OF AUTHORITIES
### (continued)

**Page**

15 U.S.C. § 1125(a) ........................................................................................ passim

17 U.S.C. § 505 .................................................................................................. 17

17 U.S.C. §§ 101, 106A ...................................................................................... 19

28 U.S.C. § 1292(b) ......................................................................................... 9, 10

539 U.S. at 27 .................................................................................................... 14

## FEDERAL RULES

Fed. R. Civ. P. 54(a) ............................................................................................ 9

Fed. R. Civ. P. 54(b) ..................................................................................... 2, 7, 9

Fed. R. Civ. P. 60 ............................................................................................... 33

Fed. R. Civ. P. 60(b) ................................................................................. 2, 27, 30, 33

Fed. R. Civ. P. 60(b)(5) ........................................................................ 28, 30, 31, 32

Fed. R. Civ. P. 60(b)(6) ................................................................................ passim

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

## <u>INTRODUCTION</u>

In the seven years this case has awaited issuance of final judgment, applicable law has changed substantially.  The Court's unfinalized Second Amended Judgment and preceding Order denying Defendants' Motion for Attorneys' Fees and Costs ("Fees Order") are now contrary to: (1) ***unanimous*** Supreme Court precedent on reverse passing-off, (2) ***four*** Seventh Circuit decisions supporting a defendant's right to attorneys' fees, and (3) a persuasive Eighth Circuit opinion protecting the all-important right to free speech over celebrities' right to payment for use of publicly available information.

The injunction requiring Defendant Image Comics, Inc. ("Image") to credit Plaintiff Neil Gaiman ("Gaiman") as an author of *Spawn* Issue 26 (and reprints of the same) is directly contrary to the Supreme Court's unanimous *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) decision, which prohibits a Lanham Act "reverse passing-off" claim for attribution against a publisher.  Any such claims clash with copyright law, which does not permit wrongful attribution claims for "communicative works" such as comic books.  Gaiman's Lanham Act claim is therefore preempted.

Image prevailed on all three copyright claims wrongfully pressed upon Image even after dismissal.  The Seventh Circuit's repeated rulings establish that the Court failed to apply the requisite "very strong" presumption in favor of Image when determining whether Image should be awarded attorneys' fees incurred combating Plaintiffs' subsequently dismissed copyright claims.

Finally, applying persuasive First Amendment authority from the Eighth Circuit reveals that Image's use of Gaiman's publicly available biographical facts and information to describe the *Angela's Hunt* trade paperback Gaiman wrote is protected First Amendment speech that trumps Gaiman's right of publicity.  The Seventh Circuit has not yet spoken on this point of law;

the Eighth Circuit is the first appellate court to consider the issue.  The Court's award of damages, attorneys' fees, and an injunction barring Image from publishing or distributing *Angela's Hunt* (and reprints of the same) threatens the First Amendment and would create dangerous precedent if not reversed.

Image unsuccessfully argued for all of these points of law before and at trial.  Due to the prolonged pendency of this case, this Court can now see how several heretofore undetermined points of law were decided by the higher courts.  These changes have benefited Image.  Because a final judgment has not yet been entered and the time for appeal has not yet come, this Court should use the powers provided to it by Rule 54(b) of the Federal Rules of Civil Procedure ("Federal Rules") to amend the Second Amended Judgment and Fees Order to conform with today's precedent.  Doing so may avoid an unnecessary appeal, where reversal of substantial portions of the Second Amended Judgment and Fees Order is nearly certain, and will further judicial economy.  With this motion, Image affords the trial court an opportunity to cure error and safeguards Image's ability to pursue an appeal on these points.  *See Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1117 (Fed. Cir. 2008).

Even if the Court determines that it has issued a final judgment on any of the above issues, in light of the intervening changes in law, extenuating circumstances, and the importance of preventing impingement on First Amendment rights, the Second Amended Judgment and Fees Order should still be amended pursuant to Rule 60(b) of the Federal Rules.

## **STATEMENT OF FACTS**

Following a jury trial, on January 9, 2003, this Court entered its Second Amended Judgment.  (Docket No. ("D.N.") 253.)  The Second Amended Judgment included:

i.      A judgment in favor of Plaintiff Neil Gaiman and against Image and co-defendants Todd McFarlane and Todd McFarlane Productions, Inc. ("TMP")

(collectively, "Defendants") on the name misappropriation claim in the amount of $45,000 with costs, and attorneys' fees in the amount of $33,639.40;

ii.    A judgment in favor of Plaintiffs Neil Gaiman and Marvels and Miracles, LLC (collectively, "Plaintiffs") against Todd McFarlane and TMP (collectively, "McFarlane Defendants") for a declaration that Plaintiff Neil Gaiman was joint owner of the copyrights in five comic book publications and in three comic book characters;

iii.    An injunction prohibiting Image and co-defendants from publishing or distributing the trade paperback comic book collective work entitled *Angela's Hunt* using the name or biographical information of Plaintiff Neil Gaiman for purposes of trade without his written consent;

iv.    A mandatory injunction requiring Image and co-defendants to credit Neil Gaiman as co-author of the comic book *Spawn* Issue 26 (including reprints of same); and

v.    An order that Todd McFarlane and TMP provide an accounting of profits for the copyrighted comic book characters and comic book publications pursuant to an attached and incorporated stipulation.

The Court issued its Memorandum and Order denying Defendants' Motion for Attorney Fees and Costs ("Fees Order") on the same day.  (D.N. 252.)

### *The Reverse Passing-Off Injunction (*Spawn *Issue 26)*

The injunction requiring Image to provide Mr. Gaiman with an author's credit on *Spawn* Issue 26 and subsequent reprints (and impliedly prohibiting Image from selling pre-printed versions of these comics) was based on the jury's finding that Image had engaged in reverse passing-off in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (D.N. 28; Trial Transcript ("Tr.") III at 214.)  The basis for Plaintiffs' reverse passing-off claim was that Gaiman had written three pages of script which McFarlane used in *Spawn* Issue 26, having written the comic's other 21 pages himself.  (Tr. II at 132-33, 273).  Image published this issue without providing an author's credit to Gaiman for the script portion he had written.  (*Id*. at 222).  Subsequently, Image republished *Spawn* Issue 26 in trade paperbacks entitled *Spawn* Volume 6 and *Pathway to Judgment*.  (Tr. II at 19-20.)

On the verdict form, the jury answered "Yes" to the question: "Was defendants' failure to identify plaintiff Gaiman as a co-author of *Spawn* issue 26, *Spawn volume 6*, or *Pathway to Judgment* a false description or representation of the origin of the work?" (D.N. 196 at 5.) The Court therefore enjoined Image and its co-defendants, requiring them to credit Gaiman as a co-author of the issues in question. (D.N. 253 at 2.) As a result, Image is currently in possession of 2,020 trade paperback issues lacking such an author's credit that it is prohibited from selling without violating the injunction. *See* Declaration of Eric Stephenson ("Stephenson Decl.") filed concurrently herewith, at ¶ 2. These withheld issues are valued at approximately $20,099.00. *Id.*

### *The Right of Publicity Injunction (*Angela's Hunt*)*

In contrast to Plaintiffs' reverse passing-off claim seeking attribution, their right of publicity claim was based on the fact that Image *did* include Gaiman's name and biographical information on the trade paperback, *Angela's Hunt*, allegedly without his consent. (Tr. III at 214.) The 2000 edition of *Angela's Hunt* was a compilation of three *Angela* comics written by Gaiman. *See* Declaration of Thomas E. Dietrich ("Dietrich Decl.") filed concurrently herewith, Exhibit ("Ex.") A (*Angela's Hunt*, 2000 ed. select pages). The back inside cover of this book included a half-page biography of Todd McFarlane, a two paragraph biography of visual artist Greg Capullo, and one paragraph biographies of Gaiman and artist Mark Pennington. *Id.* The back outside cover contained three paragraphs – the first a shortened version of Gaiman's biography and the second and third describing the *Angela* storyline. *Id.* All of the biographical information about Neil Gaiman used by Image on *Angela's Hunt* was publicly available at the time on Gaiman's website, www.neilgaiman.com. (Tr. IV at 43-44.)

Plaintiffs alleged Image's use of this descriptive, public information on *Angela's Hunt* violated Gaiman's right of publicity. (Tr. III at 214.) The jury agreed with Plaintiffs that this use was without Gaiman's written consent, answering "No" to the question: "Did plaintiff

Gaiman consent in writing to the use of his name and biographical information on *Angela's Hunt*?" (D.N. 196 at 5.) Based on this response, the Court found for Plaintiffs and rendered a judgment against Defendants on the right of publicity claim, awarding $45,000 in damages and $33,639.40 in attorneys' fees and enjoining any Defendant from publishing or distributing *Angela's Hunt* without Gaiman's written consent. (D.N. 253 at 2.)

As a result of this injunction, Image is currently in possession of 3,764 copies of *Angela's Hunt* valued at $29,923.80, which it is prohibited from distributing. *See* Stephenson Decl. at ¶ 3.

### Denial of Image's Motion for Attorneys' Fees

In addition to enjoining Image, the Court denied Defendants' Motion for Attorney Fees and Costs (D.N. 107), which Image joined. (D.N. 252 at 12-14.) The basis for Image joining this motion was Plaintiffs' litigation of unfounded copyright claims against Image. (D.N. 240.) Count I of Plaintiffs' original Complaint was for foreign and U.S. "Moral Rights." (D.N. 2.) Counts II and III alleged that Image had infringed copyrights held by Gaiman and co-owned by McFarlane's assignee, TMP. (*Id.*) TMP had licensed its rights to Image. (D.N. 240 at 4.)

Plaintiffs withdrew Count I in response to Image's Motion to Dismiss. (D.N. 28.) But Plaintiffs pressed Counts II and III until two months before trial despite being informed repeatedly that Image was a copyright licensee of co-owner TMP and thus could not be liable to Gaiman for infringing copyrights which Image had a license from TMP to use. (D.N. 15 at 4.) On August 22, 2002, the Court granted summary judgment for Image on that issue and dismissed Counts II and III. (D.N. 100.) Even after the grant of summary judgment, Plaintiffs attempted to force an accounting on Image for copyright infringement. (D.N. 221.) The Court properly rejected this misguided effort. (D.N. 252 at 15.)

### *No Entry of Final Judgment*

The Second Amended Judgment did not resolve all claims, rights, and liabilities of all parties.  Rather, it required Plaintiffs and the McFarlane Defendants to cooperate in providing an accounting of profits from the McFarlane Defendants' use of Plaintiffs' copyrighted comic book characters and publications.  (D.N. 253.)  The amount of profit would determine liability for copyright infringement.  Expressly incorporated into the Second Amended Judgment was a stipulation governing the accounting procedure which states:

> [T]he parties do not waive any right to appeal rulings by the Court regarding the legal issues relevant to the Accounting.  However, the parties waive the right to appeal any accounting decisions, procedures or actions by the Accountant relating to the Accounting, including the amount of the Final Accounting.
>
> Subject to the limitations set forth in the previous paragraph, the parties agree that the Court *may enter a final judgment* regarding any verdicts, decisions, or orders, including any order ordering an accounting of profits, at any time the Court deems appropriate and that any party may appeal such a final judgment prior to completion of the accounting.

(*Id*.) (emphasis added).  The Court did not enter any final judgment, and the accounting of profits remains before the Court to this day.

Prior to the McFarlane Defendants' completion of the accounting, Defendant TMP filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Arizona.  *See* Dietrich Decl. Ex. B (TMP's Notice of Filing Bankruptcy in Case No. 2:04-bk-21755-CGC).  Pursuant to 11 U.S.C. § 362(a), an automatic stay was placed upon litigation proceedings related to the TMP bankruptcy, including the accounting in the Western District of Wisconsin.  *Id*.  On November 15, 2005, the Arizona court granted relief from the automatic stay for the accounting to proceed.  *See* Dietrich Decl. Ex. C (Nov. 15, 2005 Order).  Gaiman and TMP stipulated that the accounting will be complete when the accountant delivers a Final Accounting, or the parties

deliver a settlement agreement regarding the accounting, to this Court. *Id*. at 6. That has not yet occurred.

### TMP's Bankruptcy Reorganization Plan Confirmed

On June 23, 2008, the District of Arizona Bankruptcy Court issued an order confirming TMP's Third Amended Plan of Reorganization (the "Plan"). *See* Dietrich Decl. Ex. D (Notice of Effective Date of Third Amended Plan of Reorganization in Case No. 2:04-bk-21755-CGC, July 7, 2009). The effective date of the Plan was July 7, 2008. *Id*.

### The Litigation Remains Unfinished

Finality to this litigation has remained in limbo for over six years. The Court has not entered any final judgment adjudicating the rights and liabilities of all parties; indeed the McFarlane Defendants' copyright infringement damages remain unknown. Nor has the Court expressly entered any final interlocutory judgment under Rule 54(b).

## ARGUMENT

Because no final judgment has issued, the Court has plenary power to modify and amend its Second Amended Judgment and Fees Order. This case presents the perfect situation where this discretionary power should be exercised – intervening changes of law issued by a *unanimous* Supreme Court on the reverse passing-off issue and by multiple Seventh Circuit opinions on the attorneys' fees issue. Furthermore, while not binding, recent advancements in a proper understanding of First Amendment law strongly support Image's right to use the publicly available Gaiman information on *Angela's Hunt* in contradiction to this Court's prior order. Such an advancement is consistent with the common-sense proposition that an author should not be able to inhibit dissemination of public facts about the author.

With regard to reverse passing-off, the jury found that Image's failure to credit Gaiman as a co-author of *Spawn* Issue 26 and subsequent reprints constituted a false designation of the

origin of the work.  But new controlling precedent in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) provides that a publisher *cannot* be liable under the Lanham Act for failure to provide attribution to the creator of a publication's content.  Under *Dastar*, Image is the "origin" of the physical *Spawn* Issue 26 comic books and, having clearly marked them as Image products, Image bears no liability to Gaiman for allegedly misrepresenting the origin of those goods.

Image also prevailed over Plaintiffs' copyright claims, which were brought against all Defendants irrespective of individual merits and prosecuted until two months before trial. According to the Seventh Circuit in at least ***four*** recently issued opinions, as the prevailing party, Image carries a "very strong" presumption that it is entitled to reimbursement of its attorneys' fees.  The Court failed to apply this strong presumption when denying Image's motion for fees and thus should reverse that portion of the Fees Order.

Lastly, the jury found that Image violated Gaiman's right of publicity by using publicly available information about Gaiman on *Angela's Hunt* to describe the contents and context of that book.  However, as explained in a 2007 Eighth Circuit opinion for which the Supreme Court denied certiorari, the use of publicly available facts and biographical information about a public figure is protected under the First Amendment and trumps any right of publicity claim.  The Court should follow this persuasive reasoning and reverse its decision that allows celebrities to remove facts from the public domain on a whim, deny damages and attorneys' fees to Gaiman, and lift the injunction prohibiting Image from distributing *Angela's Hunt*.

I.    **TMP's Bankruptcy Discharge was Granted, Automatic Stay is Lifted**

As a preliminary matter, the automatic stay put in place by TMP's bankruptcy filing has been lifted.  A Chapter 11 bankruptcy stay exists until the time a discharge is granted.  *See* 11 U.S.C. § 362(c)(2)(C).  An order confirming a Chapter 11 reorganization plan operates as a

discharge. *See* 11 U.S.C. § 1141(d)(1)(A). The bankruptcy court confirmed TMP's Chapter 11 reorganization plan on June 23, 2008, effective July 7, 2008. Therefore, the automatic stay was lifted on that date and does not impede Image's motion.

## II.  **No Final Judgment Has Yet Been Entered, Allowing This Court to Modify the Second Amended Judgment Under Rule 54(b)**

Neither the Second Amended Judgment nor any other order issued in this case constitutes a final judgment under the Federal Rules. A judgment includes a decree or order from which an appeal lies. Fed. R. Civ. P. 54(a). "A judgment is final for the purpose of appeal when it terminates the litigation on the merits and leaves nothing to be done but to enforce by execution what has been determined." *Asher v. Ruppa*, 173 F.2d 10, 11 (7th Cir. 1949); *see also* Fed. R. Civ. P. 54(b) (explaining that a final judgment is one that adjudicates all of the claims *and* all of the rights and liabilities of all parties). If a judgment does not adjudicate all claims, rights, and liabilities of all parties, it is not appealable unless the district court either: (1) expressly determines there is no just reason for delay and enters final judgment on fewer than all claims or parties under Rule 54(b), or (2) expressly indicates that the order is an immediately appealable interlocutory decision under 28 U.S.C. § 1292(b). *See Auto Serv. Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008). Otherwise, the Court may revise such an order "at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 100 (1954) (explaining that "[t]he power remained in the trial court until the entry of his final judgment to set aside, for appropriate reasons, the former [non-final] order").

### A.  **The Second Amended Judgment Does Not Adjudicate All Rights and Liabilities of All Parties**

The Second Amended Judgment did not adjudicate the rights and liabilities of all parties and, by its terms, it left more to be done than merely to enforce its execution. Until the

accounting of McFarlane Defendants' profits from copyrighted characters and publications is complete, infringement damages are unknown. While the Stipulation incorporated into the Second Amended Judgment allowed the Court to "enter a final judgment regarding any verdicts, decisions, or orders, including any order ordering an accounting of profits, at any time the Court deems appropriate" (D.N. 253), the Court has not done so.

In a similar case, *Civil Aeronautics Bd. v. Tour Travel Enters.*, 605 F.2d 998, 1003 (7th Cir. 1979), the Seventh Circuit considered whether or not a district court's order directing distribution of a pool of defendant's funds was a final judgment under Rule 54(b). The court found that the order did "not direct the immediate distribution of the fund; it looks forward to a determination of which claimants are able to trace and which are not. It also leaves undetermined the amount of each traceable claim." *Id*. Thus, because the forward-looking order required additional steps to be taken before it could be enforced, it was not "of such a character as to be considered 'final' under Rule 54(b)." *Id*.

This is also the case here; by the terms of the Second Amended Judgment, additional steps must be taken to finalize the judgment. Like *Civil Aeronautics*, the Court's order was forward-looking and the events required for finalization have not yet occurred (and unlike that case, the Court here has not certified the judgment for interlocutory appeal under 28 U.S.C. § 1292(b)).

### 1.    Second Amended Judgment is a Conditional Judgment

A proper characterization of the Second Amended Judgment is that it is a conditional judgment. This is a judgment "which will not become effective unless certain conditions are complied with, or which may be defeated or amended by performance of a condition subsequent . . . ." *In re Roney*, 139 F.2d 175, 177 (7th Cir. 1944). In *Roney*, the district court issued a judgment setting the value of real estate and allowing defendant-debtor the

option to redeem that property by paying its appraised value within 90 days. *Id*. at 176. The Seventh Circuit determined this to be a conditional order that became final once the redemption period passed, as only at that point had all rights been adjudged and nothing was left to be done. *Id*. at 177. Likewise, it is only once the accounting is complete that infringement damages can be ascertained with certainty and the Court can enter a final judgment on all parties' claims, rights, and liabilities.

### 2.    Plaintiffs Agree That Final Judgment Has Not Yet Been Entered

Plaintiffs agree that no final judgment has been entered. In the March 26, 2009 response by Plaintiffs' counsel to Image's Notice of Intervening Changes in Law, Mr. Simmons reserved Plaintiffs' right to respond to Image's Notice until the time when "the bankruptcy stay is lifted and this Court reopens proceedings prior to entry of final judgment." (D.N. 269.) Plaintiffs specifically requested that the Court's text-only order be amended to clarify this reservation of rights until the time the case is reopened "for proceedings relating to entry of final judgment." (*Id*.) It is therefore clearly the understanding of Image and Plaintiffs that the Second Amended Judgment did not constitute a final judgment under the Federal Rules.

### B.    The Fees Order is Not an Appealable Final Judgment

The Fees Order was also not an appealable final judgment, as it left open additional issues in the litigation. *See Asher*, 173 F.2d at 11; Fed. R. Civ. P. 54(b). Some of these issues were addressed by the Second Amended Judgment filed later the same day.

### C.    The Court Has Plenary Power Under Rule 54(b) to Modify the Second Amended Judgment and Fees Order and Should Do So When There Has Been an Intervening Change in Law

Because the Second Amended Judgment and Fees Order are not final, this Court has plenary power to modify them before entering a final judgment. *See* Fed. R. Civ. P. 54(b); *Partmar*, 347 U.S. at 100. One primary ground justifying modification is "a controlling or

significant change in the law or facts since submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (*aff'g* J. Shabaz); *see also Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (listing an "intervening change of controlling law" as one of the primary grounds for reconsideration before final judgment). Relevant case law has shifted considerably in the time this case has been pending, and due to these intervening changes in law, the Court should utilize its power under Rule 54(b) and amend the Second Amended Judgment and Fees Order.

### D. Image Has a Duty to Bring New Case Law to the Court's Attention to Conform Its Rulings to Intervening Law and Obviate Needless Appeals

Image brings these intervening changes in case law to the attention of the Court before entry of final judgment, so as to give the Court a full and fair opportunity to make an informed decision and to avoid unnecessary appeals. *See Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1117 (Fed. Cir. 2008). In *Rentrop*, the Federal Circuit determined that, where a party had failed to bring to the attention of the trial court a new Supreme Court opinion issued after the jury verdict and post-trial motions practice but before the trial court entered final judgment, the party had waived appellate arguments based on the changes of law contained in the new opinion. *Id.* at 1116-17. According to that court, "[w]here possible, every legal argument should be presented first to the trial court . . . the trial court – if it agreed [that the new law applied] – could have taken appropriate action and *possibly obviated the need for this appeal.*" *Id.* at 1117 (emphasis added).

The Federal Circuit is not binding here. But as the appellate court charged with determining patent law issues, it carries additional persuasive weight for patent opinions frequently cite copyright decisions and vice versa since both were created by the Constitution. Image brings the following case law to the Court's attention on that basis and requests all

possible relief available under the Federal Rules of Civil Procedure.  Recent legal changes strongly support amending several aspects of the Second Amended Judgment and Fees Order issued in error.  By correcting its prior orders to conform with current law, the Court will obviate the need for an appeal by Image where it is virtually certain that the Seventh Circuit will reverse those decisions as they stand today.

## III.    Issuing a Mandatory Injunction Based Upon Alleged "Reverse Passing Off" of *Spawn* Issue 26 Contradicts the Supreme Court's *Dastar* Opinion

The Court's ruling against Image on the reverse passing-off claim is contrary to unanimous United States Supreme Court precedent directly on point.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  Under *Dastar*, the "author of any idea, concept, or communication embodied in [physical] goods" does not have a viable Section 43(a) claim against the producer of the physical goods for failure to attribute those goods to the author. *See id*. at 37-38.  *Dastar* was decided June 2, 2003, after this Court issued its Second Amended Judgment but before any final judgment issued.  It is therefore binding precedent.  *See United States v. Donnelley's Estate*, 397 U.S. 286, 294-95 (1970) (stating that a party "is entitled to adhere to what it believes to be the correct interpretation of a statute and to reap the benefits of that adherence if it proves to be correct, except where bound to the contrary by a final judgment in a particular case.").

### A.    *Dastar* Holds That Section 43(a) of the Lanham Act Does Not Provide a Cause of Action for Failure to Attribute a Communicative Work to Its Author

The jury's finding of reverse passing-off was based on the conclusion that Image falsely described or represented the origin of *Spawn* Issue 26 by selling that issue and trade paperback reprints containing that issue (*Spawn* Volume 6 and *Pathway to Judgment*) without acknowledging Gaiman as a co-author.  Gaiman wrote the script for three of the comic's

24 pages.  Because Gaiman created content rather than producing the physical comic books, Plaintiffs' claim is not viable under *Dastar*.

Reverse passing-off occurs when a producer of *tangible* goods misrepresents someone else's goods as his own.  *Dastar*, 539 U.S. at 28 n.1.  For instance, if Ford bought a long-awaited Chevrolet Volt, replaced the name badges, and sold it as a Ford Jolt, Ford would be engaging in reverse passing-off.  This cause of action is rooted in section 43(a) of the Lanham Act, which provides in relevant part:

> (1)    Any person who, on or in connection with any goods . . . uses in commerce . . . any false designation of origin . . . which –
>
> > (A)    is likely to cause confusion, or to cause mistake or to deceive . . . as to the origin . . . of his or her goods . . . shall be liable in a civil action by any such person who believes that he or she is likely to be damaged by such an act.

15 U.S.C. § 1125(a) (2006).  Prior to the *Dastar* decision, the Seventh Circuit (and this Court) read this passage as allowing an author to file a Lanham Act claim to ensure that his name be associated with a work when the work is used.  *See Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 696 (7th Cir. 1999).  The reasoning was that a publisher's failure to correctly attribute a "communicative work"[1] was likely to confuse or deceive consumers about the work's "origin," a term which had been understood to include the author.  The Supreme Court found this interpretation to be erroneous in *Dastar*.

*Dastar* involved a defendant of the same name who published a video series on World War II battles.  539 U.S. at 27.  Dastar's videos contained a substantial amount of material copied from a television series created by Twentieth Century Fox ("Fox").  *Id*. at 25-26.  Fox

---

[1]    A "communicative work" is "one that is valued not primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys, such as a book or . . . a video."  *Dastar*, 539 U.S. at 32.

complained that Dastar was falsely representing the origin of the video series by selling it without attribution to Fox as creator of the copied material. *Id*. at 27. Fox lost.

The Supreme Court analyzed the Lanham Act, specifically whether Dastar's failure to credit Fox was likely to deceive consumers as to the "origin of goods" under section 43(a)(1)(A). The Court concluded:

> [R]eading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods.

*Id*. at 37. The term "origin of goods" is "incapable of connoting the person or entity that originated the ideas or communications the 'goods' embody or contain." *Id*. at 24. A reverse passing-off claim therefore can succeed only if the seller misrepresents that he physically *produced* the tangible goods he is selling when they were in fact manufactured by someone else. *Id*. at 37-38. Allowing an author to bring a claim under Section 43(a) of the Lanham Act for failure to attribute a work to him "would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id*. at 37. Even what the Seventh Circuit has previously termed "communicative works" are not accorded any special treatment. *Id*. at 33 (stating that "[t]he problem with . . . according special treatment to communicative products is that it causes the Lanham Act to conflict with the law of copyright which addresses the subject specifically").

If the author of ideas or concepts embodied in a work believes that he did not receive correct attribution, like Gaiman, the Supreme Court found that his claim lies in copyright law, and not the Lanham Act. *See id*. at 37-38. Section 43(a) does not contain a cause of action for plagiarism. *See id*. at 34; *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1116

(W.D. Wash. 2007).  If a publisher like Image failed to attribute a publication to the author and represented that it conceived the "creative work" it produced, the author still would not have a valid 43(a) claim.  Permitting such a cause of action "would create a species of mutant copyright law . . . ."  *Dastar*, 539 U.S. at 34.  Under the new *Dastar* precedent, a publisher's representation that it originated the creative work conveyed by goods it produces does not subject the publisher to Lanham Act liability.

### B.   Image is the "Origin" of *Spawn* Issue 26, *Spawn volume 6*, and *Pathway to Judgment*

In *Dastar*, the "origin" of the video series at issue was the producer of the physical cassettes, Dastar.  *Id*. at 38.  Dastar was not liable for misrepresenting the "origin" of the videotapes because it had not sold them under the label of another producer.  *Id*. at 31, 38.  Like Dastar, Image is the "origin" of the products it produces – the *Spawn* comic books and trade paperbacks.  (D.N. 28 (Am. Compl.) at 4 ¶ 20 (stating that the *Spawn* series is published as an Image Comics title); (Tr. II at 18-20 (explaining that Image published *Spawn* Issue 26, *Spawn* Volume, and *Pathway to Judgment*).)

Gaiman alleged that he created three pages of script in *Spawn* Issue 26 and the trade paperbacks *Spawn* Volume 6 and *Pathway to Judgment* in which Issue 26 was reprinted, but he did not receive a co-author's credit for doing so.  This Court, to determine whether the jury believed this constituted reverse passing-off, asked them if "defendants' failure to identify plaintiff Gaiman as a co-author of *Spawn* Issue 26, *Spawn volume 6* or *Pathway to Judgment* [was] a false description or representation of the origin of the work?"  (Tr. III at 214.)  The jury answered "yes."  (Tr. IV at 5.)  But that question was flawed.

Under *Dastar*, the source of origin of a book is the publisher, Image, not the author, Gaiman.  539 U.S. at 37.  Like Dastar with its videotapes, Image *cannot* be liable under the

Lanham Act for reverse passing-off of *Spawn* Issue 26 and the trade paperbacks, because Image was the source of origin of those physical goods.  Image published those comic books and clearly labeled every one as a product of Image Comics.  *See* Dietrich Decl. Ex. E (*Spawn* Issue 26 select pages); Ex. F (*Spawn* Volume 6 select pages); Ex. G (*Pathway to Judgment* select pages).  Even if Image's failure to attribute the comics to Gaiman constituted a representation that Image conceived the creative material conveyed by those works, Gaiman has no valid 43(a) claim.  *See Dastar*, 539 U.S. at 34.  Thus, there could not have been reverse passing-off under intervening Supreme Court precedent.

The judgment on reverse passing-off is directly contrary to *Dastar*.  Upon appeal, there is little doubt the Court's ruling would be reversed.  The Court should therefore amend the Second Amended Judgment to lift injunction prohibiting Image's sale of the remaining *Spawn* Issue 26 comic books and trade paperbacks and requiring use of Gaiman's name on future reprints. Doing so will save judicial and party resources otherwise wasted on appellate litigation with a predetermined outcome.

## IV. Image is Entitled to an Award of Attorneys' Fees Under Current Seventh Circuit Precedent for Prevailing Against Plaintiffs' Copyright Claims

No fewer than ***four*** subsequent Seventh Circuit cases demonstrate that this Court should have awarded Image its attorneys' fees as a "prevailing party" on Gaiman's claims brought under the Copyright Act, 17 U.S.C. § 505.  *See Assessment Tech. of Wi., LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008); *Riviera Distrib., Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008); *Eagle Serv. Corp. v. H2O Indus. Serv., Inc.*, 532 F.3d 620, 624-25 (7th Cir. 2008).  Dismissal of copyright claims with prejudice constitutes a "favorable judgment" making the defendant the "prevailing party" within Section 505.  *See Mostly Memories*, 526 F.3d at 1099; *Riviera*, 517

F.3d at 928.  The "prevailing party in copyright litigation is presumptively entitled to reimbursement of its attorneys' fees." *Riviera*, 17 F.3d at 928.  And "[w]here the prevailing party is the defendant, who by definition receives not a small award but no award, *the presumption is favor of awarding fees is very strong*." *Assessment Tech.*, 361 F.3d at 437 (emphasis added); *see also Mostly Memories*, 526 F.3d at 1099 (quoting *Assessment Tech.*).

The Seventh Circuit has interpreted the Supreme Court's decision in *Fogarty v. Fantasy, Inc.*, 510 U.S. 517 (1994) to "treat parties in a copyright case symmetrically.  If the *only* thing disturbing the symmetry is that the defendant prevailed, it is presumptively entitled to an award of reasonable attorney's fees." *Eagle Servs.*, 532 F.3d at 624 (emphasis added).  This is the case even if the defeated copyright claims were not frivolous or legally or factually unreasonable.  *See id.* at 623 (explaining that the district court had no justification to refuse to award fees to a prevailing defendant even if the copyright claims were not frivolous or filed in bad faith); *Assessment Tech.*, 361 F.3d at 437 (awarding fees where plaintiff's suit was "marginal" but not frivolous).

### A.   The Court Failed to Apply the Requisite "Very Strong Presumption" That Image was Entitled to Attorneys' Fees

These Seventh Circuit decisions were not available to assist the Court in interpreting *Fogarty* when it decided Defendants' Motion for Attorney Fees and Costs, which Image joined. (*See* D.N. 107, D.N. 240.)  As a result, the Court did not apply the "very strong presumption" described in *Assessment Technologies* and echoed in *Mostly Memories* that Image, as a prevailing defendant, was entitled to its attorneys' fees.  (*See* D.N. 252 at 12-14 (balancing factors including frivolity of claims and need for deterrence evenly and never applying any presumption favoring Defendants' recovery of fees).)  Because recent Seventh Circuit opinions demonstrate that the Court misapplied *Fogarty* and failed to use the correct standard for judging

Image's motion for fees, the Court must correct its prior unfinalized determination to conform with current precedent as permitted by Rule 54(b).

### B.    Image is Entitled to an Award of Attorneys' Fees

Plaintiffs brought several groundless copyright claims against Image.  Count I of Plaintiffs' Complaint was for foreign and U.S. "Moral Rights."  (D.N. 2 at ¶ 60.)  But comic books are literary works and not among the enumerated works eligible for "moral rights" protection under the Visual Artists Right Act of 1990; moreover, the "foreign law" asserted is not applicable in the United States.  *See* 17 U.S.C. §§ 101, 106A (2006); (D.N. 240 at 3.) Plaintiffs withdrew Count I in response to Image's Motion to Dismiss.  (D.N. 28.)

Counts II and III for copyright infringement were similarly infirm.  As a licensee of the copyright co-owner, TMP (McFarlane's assignee (Tr. II at 260:5-9)), Image could not have been liable for infringement to the other co-owner, Gaiman.  *See Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,* 140 F.2d 266 (2d Cir. 1944).  Image argued this point in its Motion to Dismiss.  (D.N. 15 at 4.)  Plaintiffs opposed Image's motion, arguing incorrectly that if Image were a licensee of TMP then Image would be liable for infringement.  (D.N. 20 at 5 ¶ 2.) Plaintiffs continued to press these groundless claims until two months before trial when the Court granted summary judgment for Image on the issue and dismissed Claims II and III. (D.N. 100.)  Even after dismissal, however, Plaintiffs attempted to force an accounting upon Image for alleged copyright infringement.  (D.N. 221.)

Plaintiffs' voluntary dismissal of Count I and the Court's dismissal of Counts II and III constitute "favorable judgments" for Image, making Image the "prevailing party" on these copyright claims.  *See Mostly Memories*, 526 F.3d at 1099; *Riviera*, 517 F.3d at 928.  Under the multitude of recent Seventh Circuit cases described above, Image is entitled to a "very strong" presumption that it should be awarded reasonable attorneys' fees.  In denying Image's request

for fees, this Court did not apply the proper presumption.  The Court should therefore reverse its prior decision and amend the Fees Order to award Image attorneys' fees and costs in the amount of $38,310.30, as initially sought.  (*See* D.N. 107 Ex. C (Affidavit of R. Scott Feldmann).)

**V.      Image's Use of Public Biographical Information About Gaiman is Protected By The First Amendment, As Explained in New Eighth Circuit Opinion**

This Court found that Image's inclusion of Gaiman's name and biographical facts about the author in the trade paperback, *Angela's Hunt*, violated Gaiman's right of publicity.  It was undisputed that the information Image used was in the public domain at the time – Gaiman admitted it was freely available on www.neilgaiman.com.  (Tr. IV at 43-44.)  A recent highly persuasive opinion from the Eighth Circuit explains that use of a celebrity's name and biographical information that is readily available in the public domain is protected by the First Amendment, which trumps any right of publicity claim.  *See C.B.C. Distrib. & Market., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 823-24 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 2872 (June 2, 2008) (finding that plaintiff's use of professional athletes' names and biographical data was protected First Amendment speech trumping athletes' putative rights of publicity).  The Eighth Circuit is the first appellate court to speak directly on this point of law.

This is purely an issue of law under the First Amendment – namely, whether a public figure may censor publications to remove biographical facts previously in the public domain.  *C.B.C. Distribution* is not binding on this Court.  But as the first federal appellate court to consider this issue, *C.B.C. Distribution* carries weight.  It also represents a significant advancement in First Amendment law as related to publicity rights, and it is factually similar to this case.  Under Seventh Circuit precedent, the Court may amend the Second Amended Judgment for any reason including a "controlling *or* significant change in the law . . . ."  *Bank of*

*Waunakee*, 906 F.2d at 1191 (emphasis added).  This issue is such a "pure issue of law," as it relates to "a forbidden intrusion on the field of free expression."  *See Bose Corp. v. Consumers Union of the United States*, 466 U.S. 485, 499 (1984).  For reasons of judicial economy explained in *Rentrop*, Image therefore requests relief here.

A.    ***C.B.C. Distribution* Illuminates Image's First Amendment Right to Use Facts That Were in the Public Domain to Describe *Angela's Hunt***

*C.B.C. Distribution* strongly favors Image.  According to the Eighth Circuit, "it would be strange law that [a defendant] would not have a First Amendment right to use this information that is available to everyone."  *C.B.C. Distrib.*, 505 F.3d at 823.  There, the court found that the defendant's use of "names, nicknames, likenesses, signatures, pictures, playing records, and/or biographical data of each [Major League Baseball] player" in conjunction with fantasy baseball products was protectable First Amendment expressive speech which superseded the players' rights of publicity.  *Id*. at 823-24.  That the information at issue was readily available in the public domain was a key factor in the court's analysis.  *Id*. at 823.

Likewise, Gaiman admitted that a person could find all of the biographical facts Image included in *Angela's Hunt* and more by clicking on www.neilgaiman.com.  (Tr. IV at 43.)  This Court found that Gaiman co-created Angela, the main character in the comics compiled in *Angela's Hunt*, and wrote each script for the *Angela* series as well.  Every comic in Image's printing of *Angela's Hunt* at issue was written and co-created by Gaiman.  Thus, like *C.B.C. Distribution* where the defendant used biographical information about baseball players to describe fantasy baseball products, Image used publicly-available facts about Gaiman to describe a product to which Gaiman inextricably tied – *Angela's Hunt*.  Image's expressive speech[2]

---

[2]    Image's use of the Gaiman information was not pure commercial speech, which receives less First Amendment protection.  Commercial speech is "best understood as speech that merely advertises a product or services for business purposes."  *Cardtoons, L.C. v. Major League*

describing the factual background of its publication by using publicly available information is protected by the First Amendment.

**B.     Under _C.B.C. Distribution_ Image's First Amendment Right to Use Gaiman's Biographical Information Trumps His Right of Publicity Claim**

Image denies that Gaiman's right of publicity was violated and plans to raise on appeal, if necessary, other arguments regarding Gaiman's consent to use of his name, factual contradictions in the jury verdict, and the estoppel effect of Plaintiffs' inconsistent motion arguments.[3]  But even if Gaiman _did_ raise a valid claim, _C.B.C. Distribution_ demonstrates that Image's First Amendment rights trump Gaiman's right of publicity.  In that case, the Eighth Circuit found that it was "clear that CBC uses baseball players' identities in its fantasy baseball products for purposes of profit, we believe that their identities are being used for commercial advantage and that the players therefore offered sufficient evidence to make out a cause of action

_Baseball Players Ass'n_, 95 F.3d 959, 970 (10th Cir. 1996) (citing _44 Liquormart, Inc. v. R.I._, 517 U.S. 484 (1996)).  In right of publicity terms, speech is generally unprotected commercial speech if "the name or likeness [associated with the speech] is used solely to attract attention to a work that is _not related to the identified person_ . . . ."  _Seale v. Gramercy Pictures_, 949 F. Supp. 331, 337 (E.D. Pa. 1996) (citing Restatement (Third) of Torts § 47 cmt. c) (emphasis added); _see also Cardtoons_, 95 F.3d at 970 (stating that trading cards parodying baseball players were "not commercial speech [because] they do not merely advertise another unrelated product.").  _Angela's Hunt_ is unquestionably related to Gaiman – he wrote the comics and co-created the characters.  Image's use of Gaiman facts on that trade paperback therefore cannot be viewed as purely commercial speech but rather as fully protected expression.

[3]     Gaiman defeated Defendants' motion in limine (D.N. 141) to exclude testimony on the right of publicity claim (which required that Gaiman have not consented to use of his name) because this claim could not coexist with Gaiman's breach of contract claim (which alleged the existence of a contract in which Gaiman _did_ consent to use of his name).  He did so by assuring the District Court that he would not present any testimony as to damages on the right of publicity claim if the jury found for him on the contract issues.  (R. 173.)  Despite the jury making such a finding, Gaiman forgot his promise to the Court and continued to press his right of publicity claim.  This is the sort of "playing fast and loose with the judicial system by maintaining inconsistent positions during the course of litigation" that is prohibited by the doctrine of judicial estoppel.  _See Cooper v. Eagle River Mem'l Hosp._, 270 F.3d 456, 462 (7th Cir. 2001) (_aff'g_ J. Crabb).  Because the Court has plenary power to modify the Second Amended Judgment, it may also modify the Second Amended Judgment on the grounds that Plaintiffs should have been judicially estopped from pursuing the right of publicity claim.

Case No.  02-C-0048-S

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

for violation of their rights of publicity . . . ." *C.B.C. Distrib.*, 505 F.3d at 822-23. Nonetheless, "CBC's first amendment rights in offering its fantasy baseball products supersed[d] the players' rights of publicity." *Id*. at 824. Image's descriptive use of publicly-available biographical facts is also protected First Amendment speech and trumps Gaiman's right of publicity for the same reason.

The *C.B.C. Distribution* court, when weighing First Amendment rights against the right of publicity, determined that the facts of that case "barely, if at all, implicate the interests that states typically intend to vindicate by providing rights of publicity to individuals." *Id*. at 824. The baseball players were economically rewarded not primarily for their publicity rights but for playing the game of baseball. *Id*. And C.B.C.'s use created little danger consumers would think the baseball players were endorsing its products. *Id*. While the court leaves unclear exactly how much weight to give these factors or whether this analysis is even necessary to determine First Amendment trumping, the situation here is quite similar.

      **1.**      **Like the Baseball Players in *C.B.C. Distribution*, Gaiman's Economic Interest and Incentive to Be Productive Do Not Stem From Publicity Rights**

Gaiman's primary avenue for economic reward comes from payment for his written work, whether it be a book, a movie, or a comic book script. TMP paid Gaiman a $10,000 advance for each *Angela* comic and made additional royalty payments after publication. (Tr. II at 86-87.) This is Gaiman's baseball game – like the players in *C.B.C. Distribution*, he is "rewarded, and handsomely, too" for his writing. 505 F.3d at 824. Not rewarding Gaiman for Image's use of public biographical facts to describe a publication he wrote would in no way dampen his incentive to create nor would it hamper his ability to earn a living. *See id*. The *C.B.C. Distribution* court determined that such facts supported a finding that the First Amendment has primacy over a state right of publicity claim.

Case No. 02-C-0048-S

2.    **Plaintiffs' Arguments as to Endorsement are Far Too Vague to Allow Gaiman's Right of Publicity to Supplant Image's First Amendment Rights**

Plaintiffs, in attempting to distinguish *C.B.C. Distribution*, may latch onto the court's finding that there was no danger that consumers would be misled into believing baseball players were endorsing CBC's products.  *Id.*  But Plaintiffs' fuzzy exhortations that Image used Gaiman's name on *Angela's Hunt* for "marketing and promotional purposes" (D.N. 244) are entirely insufficient to allow Plaintiffs to trample on Image's First Amendment rights.

First, while *C.B.C. Distribution* mentions that CBC's use of speech does not create a false impression of endorsement, it gives no specifics as to how much weight this carries or even whether it makes any difference at all.  505 F.3d at 824.  Image's expressive use of biographical facts publicly available on Gaiman's website to describe the contents and context of a trade paperback compiling comics Gaiman wrote is unmistakably protected by the First Amendment. Stifling this plainly-protected speech to improperly enlarge Gaiman's right of publicity is unconstitutional.  Gaiman's economic interests do not depend on that right, and his claim impinges upon core First Amendment concerns.

Second, Gaiman was utterly unable to define what constitutes an allegedly prohibited "marketing" or "promotional" use.  He testified that "[c]redit is proper attribution.  Credit is useful for bibliographers, the biographers, for academics, for people like that.  And it's nice to know it's there."  (Tr. II at 118.)  This answer begs the question – what is "proper attribution"? Gaiman did not object to Image placing his name in large font and all capital letters on the back cover of the previously published *Angela* trade paperback.  *See* Dietrich Decl. Ex. H at 3 (*Angela* back cover).  He also took no issue with a letter from Terry Fitzgerald, President and CEO of Todd McFarlane Entertainment, that appeared in the *Angela* trade paperback and the first printing of *Angela's Hunt*.  The letter described Gaiman as the "award winning writer of

*Sandman*" and detailed his work on the *Angela* miniseries.  *See* Dietrich Decl. Ex. H at 2 (Fitzgerald letter from *Angela* trade paperback); Ex. I at 2 (Fitzgerald letter from *Angela's Hunt* 1998 ed.).  Plaintiffs implicitly alleged that some invisible and indistinguishable line must have been crossed when Image published the second printing of *Angela's Hunt* in 2000.  But what that line was Plaintiffs did not and obviously cannot define, because there is no limitation.  The right to use facts already in the public domain is unlimited, no matter whether an author subjectively views their use as a "promotion."

Instead, Plaintiffs repetitively intone that Image's use of Gaiman's information was for "promotional" and/or "marketing" purposes without providing additional description or explanation.  (*See, e.g.*, D.N. 244 at 3 ¶ 3, 4 ¶¶ 2, 3.)  Nowhere do they describe *how* this is so. At trial, Gaiman vaguely characterized "promotional" or "marketing" use as "using your biography and giving the appearance you're endorsing something.  At that point, you're into marketing."  (Tr. II at 118.)  But Image did not use Gaiman's biographical information in this manner, it used those publicly-available facts to describe the book that Gaiman had written. Merriam-Webster Dictionary defines "endorse" as "to approve openly; especially to express support or approval of publicly and definitely; [or] to recommend (as a product or service) usually for financial compensation."  Merriam-Webster Online Dictionary, 2010, http://www.merriam-webster.com/dictionary/endorse (7 Jan. 2010).  Nowhere on *Angela's Hunt* does the text say Gaiman recommends the comic books or even whether he supports their sale; all it says is that he wrote them, like it or not.  This is not an endorsement or a promotion – it is a fact entirely devoid of manipulative underpinnings.

Plaintiffs did not craft a clear definition of the "promotional" or "marketing" speech they seek to suppress.  They have not even clearly argued which use by Image was allegedly

improper.  In Gaiman's world, free speech is not free.  If a newspaper planned a front page story

on one of his new books and included background on Gaiman, such as other works he wrote and

awards he won, the newspaper first would need to get Gaiman's permission.  Certainly, if there

was any evidence the story might help sell the newspaper, Gaiman would require compensation.

In light of *C.B.C. Distribution*'s unambiguous holding that a use of publicly-available speech for

descriptive purposes is protected by the First Amendment and trumps any right of publicity

claim, this Court should not permit Plaintiffs to suppress such speech with vague arguments

about "marketing or promotional purposes."  Gaiman's attempt to chill the First Amendment

fails.

### C.     Failing to Amend Second Amended Judgment to Enforce Image's First Amendment Rights Would Cause Illogical and Harmful Consequences

Ignoring *C.B.C. Distribution* and ruling for Plaintiffs on their "I know it when I see it"

approach to right of publicity claims would generate a host of troubles for publishers and allow

any celebrity free rein to remove enormous amounts of information from the public domain.

Every publisher would face the problem of how to grant "proper attribution" to an author.

Guesses would have to be made over issues like whether to place the author's name on the spine

of the book, on the back cover, front cover, or only on the inside cover or second page.  To avoid

the necessity of returning to the author before printing to determine whether the font type, size,

and color are to the author's tastes, publishers would have to include all of this information in the

initial contract.  Otherwise, if the font were too small, the author could claim he received no

attribution at all.  Too large and the publisher risks being hit with a lawsuit for unconsented use

of the author's name for "promotional" or "marketing" purposes.  Including too much

description of the author, even using facts that are in the public domain, would transform the use

from a "proper credit" to use for "marketing" or "promotional" purposes.  Before a work is even

26                              Case No.  02-C-0048-S

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

created, each contract with a writer or artist would have to include a sample type-set for all of the pages bearing the author's name.

Plaintiffs have so far succeeded in removing a substantial amount of information from the public domain. Gaiman admitted a person previously could find all of the facts Image included on *Angela's Hunt* and more on www.neilgaiman.com. (Tr. IV at 43.) Gaiman was not under the impression that any of the information Image used was misleading in any way. (*Id.*) Yet Plaintiffs have suppressed Image's use of these public biographical details. Permitting a lawsuit to stifle this readily available speech would give any celebrity the special power to erase from the public domain any information he or she chose, no matter how honest or reliable it might be.

Image maintains that Gaiman consented to use of his name, so there was no right of publicity violation at all. But even if Image acted without consent, Image has a First Amendment right to use the publicly available information about Gaiman to describe a trade paperback containing comics that he wrote and co-created. As explained in *C.B.C. Distribution*, Image's right trumps Gaiman's publicity rights. The Court should therefore consider the persuasive authority provided by the Eighth Circuit and amend the Second Amended Judgment to: (1) reverse the ruling and grant of damages and fees for Gaiman on the right of publicity count, and (2) lift the injunction prohibiting distribution of *Angela's Hunt*. Failure to do so creates precedent giving celebrities like Gaiman a nearly unlimited power to censor (or demand payment for) expressive speech.

## VI.   If the Court Determines the Second Amended Judgment Does Constitute a Final Judgment, It Should Provide Requested Relief as Permitted Under Rule 60(b)

While Image and Plaintiffs have construed the Second Amended Judgment *not* to be a final judgment for purposes of the Federal Rules, if this Court finds otherwise, it should provide Image's requested relief using the power provided by Rule 60(b) to relieve a party from final

judgment.  In doing so, the Court may still allow the parties to avoid an unnecessary appeal that will follow completion of the accounting procedure and final determination of infringement damages.

A.    **Applying the Injunction Barring Image From Distributing *Spawn* Issue 26 and Reprints is No Longer Equitable in the Face of *Dastar***

Pursuant to Rule 60(b)(5), the Court may provide relief from a judgment when "applying it prospectively is no longer equitable . . . ."  Fed. R. Civ. P. 60(b)(5).  The Court may properly lift a continuing injunction under Rule 60(b)(5) when faced with a "bona fide, significant change in subsequent law."  *Agostini v. Felton*, 521 U.S. 203, 239 (1997).  Indeed, Rule 60(b)(5) "specifically contemplates the grant of relief" in such circumstances.  *Id.*  An injunction "will be vacated or modified where the law has been changed making acts enjoined legal."  *Western Union Tel. Co. v. Int'l Broth. of Elec. Workers, Local Union No. 134*, 133 F.2d 955, 957 (7th Cir. 1943).

This is exactly what happened here.  The reverse passing-off injunction is continuing – it prohibits Image from distributing *Spawn* Issue 26 comics and reprints and requires Image to include an author's credit to Gaiman on all later published versions.  The injunction is also burdensome, as Image is currently in possession of 2,020 trade paperbacks worth $20,099.00 that it cannot sell or distribute.  *See* Stephenson Decl. at ¶ 2.  And the Supreme Court's unanimous *Dastar* decision prohibiting reverse passing-off claims for attribution such as Gaiman's is clearly the type of significant intervening change in law for which Rule 60(b)(5) provides relief.  While the Court's decision may have been in accord with Seventh Circuit precedent when issued, what Image did – publishing *Spawn* Issue 26 without a credit to a content author – is no longer a violation of the Lanham Act.  *See Dastar*, 539 U.S. at 34.  Continuing to prohibit Image from distributing and/or republishing these comic books is entirely inequitable and flies in the face of

*Dastar*.  This Court should therefore lift the reverse passing-off injunction in the Second

Amended Judgment under Rule 60(b)(6), if it determines that it cannot do so under Rule 54(b).

   **B.    Exceptional Circumstances and Changed Law Justify Awarding Image
          Attorneys' Fees Under Rule 60(b)(6)**

   Should the Court deny Image's motion brought under Rule 54(b) to amend the Fees

Order to award Image's attorneys' fees, Rule 60(b)(6) may permit the same relief.

Rule 60(b)(6), the so-called "catchall provision,"  allows the Court to relieve a party from a final

judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Generally,

"[a] change in applicable law after judgment (and the time to appeal) is . . . not by itself enough

to justify upsetting the finality of that judgment."  *Artis v. United States Indus.*, 805 F. Supp. 609,

610 (N.D. Ill. 1992).  That is, there ordinarily must exist some exceptional circumstances, such

as a grievous wrong, a conflict with altered statutory objectives, or unique factual circumstances.

*Id*. (internal citations omitted).  The circumstances here uniquely justify application of

Rule 60(b)(6) for several reasons.

   *First*, the time for appeal has not passed.  Without the stipulated accounting complete, an

appeal would be impossible as damages are unknown.  Therefore, Image need not prove

exceptional circumstances under *Artis* and its ilk.

   *Second*, Image has been in limbo because of the actions of other parties for over seven

years.  During that time, not one, not two, but **four** Seventh Circuit opinions on attorneys' fees

unmistakably demonstrate that Image is entitled to an award of attorneys' fees.  *See supra*

Section IV.

   *Third*, and perhaps most important, this Court has the opportunity to prevent an appeal

where, based on recent case history, there is little doubt the denial of fees will be reversed by the

Seventh Circuit.  As the Supreme Court has echoed almost since its inception, "[i]f subsequent to

the judgment and before the decision of the appellate court, a law intervenes and positively

changes the rule which governs, the law must be obeyed, or its obligation denied." *United States*

*v. Schooner Peggy*, 5 U.S. 103 (1801).  This rule applies to judicial changes in law as well.  *See*

*Thorpe v. Housing Authority*, 393 U.S. 268, 282 (1961).  Because the time for appeal of these

issues has not yet come, this Court must consider the changed law and either obey it or deny that

it applies.

Furthermore, the Supreme Court has expressly declined from holding that "relief under

Rule 60(b) is inflexibly to be withheld when there has later been a clear and authoritative change

in governing law." *Polites v. United States*, 364 U.S. 426, 433 (1960).  Image's situation – a

mixture of unquestionably altered legal interpretation and an unprecedented seven-year inability

to appeal that was in no way the result of any error by Image – is one where the catchall

provision of Rule 60(b)(6) is properly applied.  Under the legal authority described above in

Section IV and the power provided by Rule 60(b)(6), this Court should amend the Fees Order to

award Image its previously sought attorneys' fees.

**C.**      **Right of Publicity Injunction is Inequitable in Light of Changing First
          Amendment Law**

The Court's ruling for Gaiman on the right of publicity cause of action and the

subsequent finding of damages, fees, and issuance of an injunction prohibiting Image from using

any publicly available information about the author of *Angela's Hunt* to describe that book

should be reversed under either Rule 60(b)(5) or (6).  The Federal Circuit's *Rentrop* decision

requires that a trial court be given every opportunity to evaluate relevant changes in law to

possibly obviate the need for an appeal.  550 F.3d at 1117.  While the *C.B.C. Distribution*

decision is not binding it is certainly relevant, for as described in Section V, it represents a

significant step towards protecting First Amendment rights over the right of publicity.  Out of an

abundance of caution to provide the Court a full and fair chance to assess its prior order limiting

First Amendment rights in light of new case law, Image moves to lift the right of publicity

injunction and reverse the Court's ruling that Image is liable for violating Gaiman's right of

publicity under Rules 60(b)(5) and (6) of the Federal Rules.

      1.     **Right of Publicity Injunction and Ruling are Inequitable and Contrary to *C.B.C. Distribution* Allowing Amendment Under Rule 60(b)(5)**

Coupled with the inequity of permitting Gaiman to stifle expressive speech, the

*C.B.C. Distribution* decision is the type of "bona fide, significant change in subsequent law,"

*Agostini*, 521 U.S. at 239, that provides this Court with a basis for amending its Second

Amended Judgment to lift the right of publicity injunction.  As described *supra* in Section V,

*C.B.C. Distribution* leaves little doubt that Image's descriptive use of Gaiman biographical facts

freely available on Gaiman's webpage is protected First Amendment speech.  And this vital

constitutional right trumps any right of publicity violation.  Thus, there is legally no basis to

leave the injunction in place.

Image has already described the inequities of the injunction fully in Section V.  First, it

prohibits Image from selling the 3,764 *Angela's Hunt* trade paperbacks on hand, a loss of

$29,923.80 for Image.  *See* Stephenson Decl. at ¶ 3.  Second, Image cannot reprint new copies of

this publication without paying Gaiman for his permission to fully describe the book.  Third, and

most importantly, the injunction and the Court's ruling on the right of publicity allows Gaiman

free rein to remove from the public domain any speech about him that he subjectively feels was

used for undefined "marketing" or "promotional" purposes.

For instance, even if Image were to reprint *Angela's Hunt* with a new cover, could it put

Gaiman's name on the front to show he was the author?  Would size 12 font be all that Gaiman

would allow?  Could Image keep Gaiman's biography on the inside back cover even though

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES

Plaintiffs at times (but not always) argued that this biography also violated Gaiman's publicity rights?  What about a Gaiman biography on the back cover if Image also included biographies of Todd McFarlane and Greg Capullo, the others involved in creating *Angela* comics?  Despite this Court's finding that Gaiman co-created the characters in *Angela's Hunt* and wrote the script for every comic therein, Image would be forced to return to Gaiman for consent on even the most miniscule publishing decisions.  Gaiman has effectively muzzled Image from putting any description of the author or any background on the *Angela* comic's creation anywhere on *Angela's Hunt* or on any other publication.

Were the Court's ruling upheld in the Seventh Circuit and beyond, it would create a dangerous precedent.  Any celebrity who *subjectively thought* his or her name or public information was being used for *any* purpose the celebrity did not like or was not being paid for could simply claim it was a "marketing" or "promotional" use and force removal of the speech. If splashing Angelina Jolie's name and truthful, publicly available information about her across the cover of *Us Weekly* without her permission helped the publication's sales, Ms. Jolie could cite to *Gaiman v. Image* and squash the publisher's once-defensible free speech.  This result is untenable and contrary to basic Constitutional rights.  To obviate the need for an appeal where the Court's ruling and injunction will likely be reversed, Image moves the Court under Rule 60(b)(5) to:  (1) lift the right of publicity injunction, and (2) reverse the related portion of the Second Amended Judgment granting damages and fees for Gaiman's alleged right of publicity violation.

> **2.      The Court's Right of Publicity Ruling and Injunction Severely Impinge on Free Speech Providing "Exceptional Circumstances" for Reversing Both Under Rule 60(b)(6)**

The massive encroachment into what was once free speech by the Court's right of publicity ruling and injunction for Gaiman, together with the *C.B.C. Distribution* decision,

provide sufficient "exceptional circumstances" for the Court to reverse its ruling and lift the injunction under the Rule 60 catchall provision. Image therefore also moves under Rule 60(b)(6) for the Court to reverse its right of publicity ruling and accompanying grant of damages and fees and lift the *Angela's Hunt* injunction. If ever there was a reason "justif[ying] relief" from an order and judgment (if the Court finds a final judgment), it is Gaiman's successful suppression of the all-important right to free speech.

## CONCLUSION

The Court's Second Amended Judgment and Fees Order are now contrary to unanimous Supreme Court precedent, four Seventh Circuit decisions, and a persuasive Eighth Circuit opinion on essential First Amendment rights. Because the Second Amended Judgment incorporated the accounting stipulation and the accounting is not complete and no final judgment has been entered as stipulated, the Court has plenary power under Rule 54(b) to modify the orders for any reason. It should exercise that power to conform its prior orders to current law and to obviate the need for an appeal where the Court's rulings would likely be reversed. Even if the Court determines that it did issue a prior final judgment, circumstances here warrant lifting both injunctions, awarding Image its attorneys' fees, and reversing the right of publicity ruling as permitted under Rule 60(b).

DATED: January 13, 2010                    Respectfully submitted,

                                           CROWELL & MORING LLP


                                           /s/ R. Scott Feldmann
                                           _____
                                           R. Scott Feldmann
                                           Thomas E. Dietrich

                                           Attorneys for Defendant
                                           Image Comics, Inc.

IR4263326.8

IMAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES