IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NEIL GAIMAN, et al., | ) |
|       Plaintiffs, | ) |
| v. | ) Case No. 3:02-cv-00048-bbc |
| TODD McFARLANE, et al., | ) |
|       Defendants. | ) |

---

**THE McFARLANE DEFENDANTS' JOINDER
TO PARTS 1 AND 3 OF IMAGE COMICS' MOTION
TO AMEND THE SECOND AMENDED JUDGMENT**

---

Defendants Todd McFarlane and Todd McFarlane Productions, Inc. ("TMP") hereby join Parts 1 and 3 of the Motion Of Defendant Image Comics, Inc. to Amend Second Amended Judgment And Order Denying Fees (the "Motion to Amend Judgment") (Docket #272) and, accordingly, adopt as if fully stated herein the corresponding portions of the brief filed by Image Comics in support of its Motion to Amend Judgment (Docket #273). In further support of this joinder, Mr. McFarlane and TMP (together, the "McFarlane Defendants") state as follows:

**I.     THE McFARLANE DEFENDANTS ARE SIMILARLY AGGRIEVED BY THE ERRONEOUS SECOND AMENDED JUDGMENT.**

The McFarlane Defendants are subject to the same injunctions and monetary award at issue in Image Comic's Motion to Amend Judgment. Specifically, Part 1 of the Motion to Amend Judgment addresses the injunction in the judgment requiring Image Comics <u>and the McFarlane Defendants</u> to provide Mr. Gaiman with an author's credit on *Spawn* Issue 26 and on reprints of that comic book. In addition, Part 3 of the Motion addresses the $77,639.48 monetary award (damages and attorney's fees) entered against Image Comics <u>and the McFarlane Defendants</u>, as well as the injunction prohibiting Image Comics <u>and the McFarlane Defendants</u>

from publishing or distributing the *Angela's Hunt* trade paperback using Mr. Gaiman's name and biographical information without his consent.

As set forth in the Image Comics' motion papers, these injunctions have prohibited Image Comics from distributing thousands of existing issues of these publications having a value in excess of $50,000. The owner of these publications is TMP, which has already paid all publication costs associated with their creation. Thus the financial and First Amendment impact of the injunctions on TMP is at least as severe as the impact on Image Comics. As more fully discussed in Section III, below, the First Amendment interests here clearly override whatever possible claim Mr. Gaiman may have over the use of accurate and publicly available biographical information on a publication where he is identified, in accordance with his demand, as an author.

The only portion of the Motion to Amend Judgment that the McFarlane Defendants do not join is Part 2, which addresses the denial of an award of attorney's fees and costs to a prevailing defendant in a copyright infringement lawsuit. Because the McFarlane Defendants are not—at least yet—prevailing defendants on the copyright claims, Part 2 has no relevance to their present situation in the lawsuit.

## II. THE EFFICIENT AND ORDERLY ADMINISTRATION OF JUSTICE FAVORS GRANTING IMAGE COMICS' MOTION.

Image Comics' motion papers present compelling reasons to grant Parts 1 and 3 of its Motion to Amend Judgment, including (a) the need to eliminate an improper prior restraint resulting from a Lanham Act injunction that is now directly contrary to the Supreme Court's subsequent unanimous decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and (b) the need to eliminate a damage award and an injunction contrary to the First Amendment guarantees of freedom of speech and the press, as recognized in a subsequent and

persuasive decision by the U.S. Court of Appeals for the Eighth Circuit.  As Image Comics' motion papers make clear, these are sufficient grounds to grant its Motion to Amend Judgment.

This court should correct these serious errors now instead of forcing the defendants to wait for Mr. Gaiman to finally take the necessary steps to wrap up the copyright accounting and render the judgment final for purposes of appeal.  That is because Mr. Gaiman's conduct since entry of the Second Amended Judgment more than seven years ago has been dilatory and contrary to the efficient and orderly administration of justice.

One example of Mr. Gaiman's failure to prosecute should suffice to underscore the need for the relief sought by the Motion to Amend Judgment.  During TMP's Chapter 11 bankruptcy proceeding, attorneys for Mr. Gaiman and the McFarlane Defendants entered into a stipulation establishing an alternative copyright accounting procedure (the "Protocol") that would permit the accounting ordered in the Second Amended Judgment to proceed under the auspices of the bankruptcy court.  The bankruptcy court entered an order approving the Protocol on November 15, 2005.  (*See* recitations in Bankruptcy Court "Order Re: Relief from the Automatic Stay to Raise Discovery Dispute in District Court" (the "Bankruptcy Court Order") attached as Exhibit A.)

In the fall of 2007, a dispute arose between the parties as to the scope of the Second Amended Judgment, and thus the scope of the Protocol (and the accounting).  Specifically, the Second Amended Judgment ordered an accounting regarding profits on five comic book issues and three comic book characters.  The subsequent dispute involved Mr. Gaiman's claim that certain additional comic book characters – not mentioned in the Second Amended Judgment – should be deemed "derivative" works of Medieval Spawn and Angela and thus included within the Protocol (and the accounting).  Because the Protocol ground to a halt over that disagreement, the parties took their dispute to the Bankruptcy Court.

3

On December 14, 2007, the Bankruptcy Court entered the Order attached as Exhibit A. That Order modified the automatic stay to allow the parties to return to this Court solely "to litigate their dispute over whether certain characters are derivative works of the three characters in which Gaiman holds a co-copyright interest, and thus included within the scope of the Accounting for determination of amounts owed to Gaiman pursuant to the terms and provisions of [the Second Amended Judgment]." That Bankruptcy Court Order was entered more than two years ago. Nevertheless, Mr. Gaiman has filed no motion in this Court or taken any other action to resolve his "derivative works" claim.

In short, we are now entering the 26th month since Mr. Gaiman was given leave to present his "derivative works" claim to this Court. Until that claim is resolved, neither the Protocol nor the Accounting can move forward on that issue. Thus even assuming that this court filing will rouse Mr. Gaiman from his two-year slumber, resolution of the "derivative works" claim and then the resumption and eventual completion of the Protocol and the Accounting will take months or even years. Accordingly, correcting the serious errors in the Second Amended Judgment now, rather than waiting until Mr. Gaiman elects to purse the dispute related to derivative characters, will facilitate the goals of efficient and orderly administration of justice.

**III.   THE USE OF PUBLICALLY AVAILABLE BIOGRAPHICAL INFORMATION IS PROTECTED BY THE FIRST AMENDMENT AND CANNOT FORM THE BASIS OF A CLAIM FOR VIOLATION OF THE RIGHT OF PUBLICITY.**

In addition to dismissing the Lanham Act portion of the Second Amended Judgment, this Court should vacate the ruling in favor of Gaiman on his right of publicity claim and accordingly amend the Second Amended Judgment. The McFarlane Defendants join in Image's motion and reliance on a seminal Eighth Circuit opinion issued after the trial in this action, which clarifies the status of public biographical facts in the balance of the state law right of publicity against the First Amendment. *See C.B.C. Distribution & Market., Inc. v. Major League Baseball Advanced*

4

*Media, L.P*. 505 F.3d 818, 823-24 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 2872 (June 2, 2008). In particular, *C.B.C. Distribution* holds that the First Amendment trumps professional athletes' rights of publicity in the use of the athletes' names and biographical information for fantasy baseball products.

*C.B.C. Distribution* illustrates the competing principles underlying the First Amendment on the one hand, and the right of publicity on the other, and helps to clarify a muddy area of law involving the intersection of copyright law, unfair competition, and free speech. All of these issues are at issue in the instant case. Indeed, as other courts have recognized, the First Amendment prevents a person from having an exclusive right to their own biographical information. "Unlike the goodwill associated with one's name or likeness, the facts of an individual's life possess no intrinsic value that will deteriorate with repeated use." *Matthews v. Wozencraft*, 15 F.3d 432, 439 (5th Cir. 1994) (explaining that such facts lack "the value of a name or likeness that the [right of publicity] protects"); *see also Restatement 2d Torts* § 652C ("The interest protected by the rule stated in this Section is the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness . . "). The First Amendment also tempers an individual's purported right of publicity in allowing an exemption for incidental use of another's personality in promotional material that proves the worth and shows the content of the works being promoted. *See Kane v. Comedy Partners*, 68 U.S.P.Q.2d 1748 (S.D.N.Y. 2003), *aff'd*, 98 Fed. Appx. 73 (2d Cir. 2004) (not selected for publication) (no violation of right of publicity for use of plaintiff's video clips in commercial because use was designed to illustrate type of humor in Defendants' show, and not primarily for advertising purposes).

In addition to the important clarification regarding First Amendment limitations on the right of publicity provided by *C.B.C. Distribution*, the facts of the instant case render the Eighth

5

Circuit case highly persuasive.  Here, the use of Gaiman's name and publicly available biographical facts to identify the author of the *Angela's Hunt* trade paperback is equivalent to the use of an athlete's biographical information and statistics to identify the athlete, and should be similarly protected by the First Amendment.  Indeed, Gaiman's biographical information here was limited to accurate factual information that (a) has no intrinsic value that will be compromised through its use, and (b) did not even include a photo or likeness of Mr. Gaiman.  A proper balancing of the right of publicity with the First Amendment protects use of Gaiman's biographical information to describe the author of *Angela's Hunt*.

      Accordingly, the McFarlane Defendants respectfully request that this Court grant Parts 1 and 3 of Image Comics' Motion to Amend Judgment.

                            Respectfully submitted

                            s/ Todd G. Smith
                            Todd G. Smith
                            GODFREY & KAHN
                            One East Main Street, Suite 500
                            Madison, WI  53701
                            Tel:  (608) 284-2653
                            Fax: (608) 257-0609
                            tsmith@gklaw.com

                            —and—

                            Michael A. Kahn
                            BRYAN CAVE, LLP
                            211 North Broadway, Suite 3600
                            St. Louis, MO 63102-2750
                            Tel:  (314) 259-2251
                            Fax: (314) 259-2020
                            mike.kahn@bryancave.com

                            Attorneys for Todd McFarlane and Todd McFarlane Productions, Inc.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon counsel of record on this 5th day of February, 2010. The ECF System will send notification of such filing to the following:

| | |
|---|---|
| Thomas Dietrich | R. Scott Feldmann |
| tdietrich@crowell.com | sfeldmann@crowell.com |
| | |
| Michael Kahn | Jeffrey A. Simmons |
| mike.kahn@bryancave.com | jsimmons@foley.com,ballen@foley.com |

I hereby certify that I have caused the foregoing to be mailed by U.S. Mail to the following non ECF participants:

Kenneth F. Levin
Kenneth F. Levin and Associates
20 N. Wacker Dr., Ste. 2200
Chicago, IL 60606

/s/ Todd G. Smith_____

4647631_1

7