UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **NEIL GAIMAN and** | ) | |
| **MARVELS AND MIRACLES, L.L.C.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 02-C-0048-S** |
| | ) | |
| **TODD MCFARLANE,** | ) | |
| **TODD MCFARLANE PRODUCTIONS,** | ) | |
| **INC., TMP INTERNATIONAL, INC.,** | ) | |
| **MCFARLANE WORLDWIDE, INC., and** | ) | |
| **IMAGE COMICS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT IMAGE COMICS, INC.'S
MOTION TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING
FEES PURSUANT TO RULE 54(b) OR, IN THE ALTERNATIVE, RULE 60(b)**

## I.     INTRODUCTION

More than seven years after losing a jury verdict on all claims against it, and losing all of its post-trial motions, defendant Image Comics, Inc. ("Image") returns to this Court seeking to overturn every aspect of those decisions.  Image is far too late.  The January 9, 2003 Second Amended Judgment (Dkt. 253) was a final judgment as to all claims involving Image. While defendants appealed certain aspects of the Second Amended Judgment immediately after its entry (*see* Dkt. 257; *Gaiman v. McFarlane*, 360 F.3d 644 (7th Cir. 2004)), Image elected not to appeal the issues it raises here and, therefore, has waived its right to assert them now.

As to one portion of Image's motion, plaintiff concedes that, absent waiver, the U.S. Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), would affect the viability of the judgment awarded him under the Lanham Act. However, Image has not presented any legitimate grounds for rescinding the remaining portions

of the Court's judgment.  With regard to Image's request that this Court reverse its denial of Image's motion for an award of attorney fees, the record shows that Judge Shabaz properly applied the controlling Supreme Court and Seventh Circuit authority on this issue.  The Court denied both Image *and Gaiman's* requests for fees, despite Gaiman prevailing on his copyright claims at trial.  That decision properly reflects the Supreme Court's directive that courts treat plaintiffs and defendants alike with regard to awards of attorney fees under the Copyright Act. Any purported change in the law since then would not have altered this Court's decision.

Image's request to overturn on First Amendment grounds Gaiman's right of publicity victory fares no better.  The one, Eighth Circuit case that Image cites as a basis for its argument is not controlling authority, made no change in the law, dealt with a Missouri statute, and is highly distinguishable on its facts.  In short, it would be an extraordinarily weak basis for issuing a decision having significant implications for Wisconsin's statutory and common law.

## II.    FACTS

Plaintiff Neil Gaiman[1] is a world famous novelist, screenwriter, and comic book author.  During the time relevant to Gaiman's claims, he was one of the world's foremost comic book authors and had won numerous awards for his work in that industry.  (Am. Compl. ¶ 29.)

The defendants are Todd McFarlane and several companies solely owned by or closely affiliated with him.  McFarlane is a comic book artist and publisher who created the *Spawn* comic book series that is at the center of this lawsuit.  At the time of the litigation, McFarlane was the sole shareholder of defendants Todd McFarlane Productions, Inc., TMP, Int'l, and McFarlane Worldwide, Inc.  (*See* Dkt. 133, Agreed Stmt. of Facts ¶ 5.)  Todd

---

[1] Plaintiff Marvels and Miracles, LLC was a party to discrete claims unrelated to the issues implicated by the present motion.  (*See* Am. Compl. ¶¶ 105-108 [Dkt. 28].)

McFarlane Productions was in the business of producing comic books and related works of entertainment.  (*See id.* ¶ 8.)

McFarlane was also the president, founder, and major shareholder of defendant Image.  (*See id.* ¶¶ 12-13.)  Image is in the business of comic book publishing and it published the various *Spawn* and *Angela* comic books and graphic novels at issue in this case.  (*See id.* ¶¶ 32, 33, 47, 49, 51.)  Image's executive director reported to McFarlane.  (*See id.* ¶ 56.)

Gaiman's claims arose from work that he performed at McFarlane's request for the *Spawn* comic book series.  (*See* Am. Compl. [Dkt. 28] ¶¶ 29-38.)  Gaiman wrote the entire scripts for *Spawn* Issue 9 and a portion of the script for *Spawn* Issue 26.  (*See* Dkt. 133, Agreed Stmt. of Facts ¶¶ 9, 31.)  Gaiman also wrote the entire scripts for three issues of a *Spawn* spin-off entitled *Angela*.  (*See id.* ¶ 36.)  Image later reprinted the entire *Angela* series in a graphic novel entitled *Angela's Hunt*.  (*See* Dkt. 28 ¶ 42; Trial Ex. 205.)  Image never asked Gaiman for his permission to use his name in connection with it.  (*See* Dkt. 28 ¶ 43; *see also* Jury Verdict [Dkt. 196] question 14.)  Nevertheless, Image published the work and printed the following statement on the back cover:

> NEIL GAIMAN, best known for his comic book cult classic *Sandman*, wrote this popular mini-series about the warrior angel Angela.  Gaiman, who has won several awards for his fantasy fiction books, now writes screen adaptations including the critically acclaimed *Princess Mononoke* animated feature and *Neverwhere*, a six-part series for BBC television.

(Trial Ex. 205.)  Image also printed the following statement inside the back cover:

> NEIL GAIMAN
>
> Neil Gaiman was born in November 1960, and currently divides his free time between the U.K. and the U.S.  Starting out as a journalist, Neil switched to writing fiction and comics in 1986.  *Sandman*, Gaiman's comic book cult classic, won not only the prestigious Eisner Award for best writer from 1991 to 1994, but also the World Fantasy Award for the story in *Sandman* #19, the only comic to have ever been so honored.  He has also authored the

3

Eisner-winning *Signal to Noise* and *Death: The High Cost of Living*. Having left comic writing in 1996, Gaiman has since written many books, as well as the screen adaptation for the critically acclaimed *Princess Mononoke* animated feature and *Neverwhere*, a six-part series for BBC television.

(Trial Ex. 205.)[2]

In this action Gaiman contended that, for purposes of copyright protection, he and McFarlane are joint authors of the comics and the characters that were created in those works. (*See* Am. Compl. ¶¶ 64-68 [Dkt. 28].) Gaiman also contended, in the alternative, that he had a contract with McFarlane governing the compensation and royalties Gaiman was supposed to receive for his work authoring those comics and for revenue earned from action figures and other products based upon the characters he had created for those comics. (*See id.* ¶¶ 75-78 [Dkt. 28].) Gaiman brought claims against McFarlane for, among other things, declaratory judgment of copyright ownership and accounting for profits, breach of contract, and promissory estoppel. (*See id.* ¶¶ 64-68, 75-83.) Gaiman also brought claims against Image, TMP, TMP II, and McFarlane Worldwide, for copyright infringement stemming from those companies' reproducing Gaiman's works and characters without his permission. (*See id.* ¶ 69-74.) Gaiman also

---

[2] In its brief, Image suggests that Gaiman had no right to complain about its use of this material because "[h]e took no issue" (Br. at 24) with a letter that appeared in another version of *Angela's Hunt* and which suggests Gaiman was "more than happy" to be involved in its publication. (*See* Dietrich Decl., Ex. H at 2.) Image's argument is both a sharp practice and baffling. First, Image's evidence consists of a document that was not introduced into evidence during trial but which, instead, appears to have been plucked from the voluminous document production in the case. (*Id.*) This explains why Image's brief contains no record citation for this contention. (*See* Br. at 24-25.) Second, the letter appears to be an even more blatant violation of Gaiman's right to publicity than the documents presented to the jury. Thus, Image's position is akin to arguing that a person can't be guilty of assault because they succeeded in getting away with murder.

contended that the defendants had violated his right of publicity in violation of Wis. Stat. § 895.50[3] and Wisconsin common law.[4]

For his part, McFarlane claimed he had no obligation to perform any contract because of alleged fraud by Gaiman. (McFarlane Ans. to Am. Compl. [Dkt. 29], Affirm. Def. ¶ 9.) McFarlane also denied that Gaiman was a joint author of, or had a copyright interest in, any of the publications or characters at issue. (*Id.* ¶ 65.) Despite that denial by McFarlane, Image claimed that it could not be liable for copyright infringement because Gaiman *was* a co-owner of the works at issue and that he could not sue Image because it was McFarlane's licensee. (*See* Image Ans. to Am. Compl. [Dkt. 37], Aff. Def. ¶ 4.) Early in the case, McFarlane filed a declaration with the Court making the bald statement that Image was his licensee, but without describing the terms of the purported license or submitting a copy of any contract or other documents memorializing those terms. (*See* Dkt. 17.)

At the same time, Image filed a motion to dismiss all of the claims Gaiman had filed against it. (*See* Dkt. 15.) In response, Judge Shabaz granted Gaiman leave to file an amended complaint (Dkt. 26) and denied Image's motion to dismiss in its entirety. (*See* Dkt 32.) Gaiman's amended complaint eliminated its moral rights claim against Image but retained Gaiman's claims against Image for copyright infringement. (*See* Am. Compl. ¶¶ 69-74 [Dkt. 28].) It was logical to retain the copyright infringement claims against Image at that early stage of the litigation given McFarlane's ambiguous assertions about Image's supposed license (*see*

---

[3] The statute was renumbered in 2005 as Wis. Stat. § 995.50.

[4] In Gaiman's Amended Complaint these claims are described as "Right of Privacy" and "misappropriation". Those are the proper terms for these claims under Wisconsin law. However, they correspond to the "right of publicity" claim described by Image in this motion.

MADI_2168942.3

Dkt. 37 ¶ 4) and the fact that Gaiman had not consented to Image's use of his works.  (*See* Dkt. 28 ¶¶ 70, 73.)

On May 21, 2002, McFarlane moved for judgment on the pleadings, asking the Court to dismiss, among other things, Gaiman's claims for a declaration that he was a co-owner of the copyrights at issue.  (*See* Dkt. 34.)  Before the Court could issue an order deciding the motion for judgment on the pleadings, McFarlane filed a motion for partial summary judgment, asking the Court to dismiss, among other things, Gaiman's copyright ownership claims on the ground that they were barred by the statute of limitations.  (*See* Dkt. 56 at 4.)  Gaiman opposed that portion of McFarlane's motion.  (*See* Dkt. 69 at 9.)

McFarlane also argued that Gaiman's claims for copyright infringement against his related companies should be dismissed because they were his licensees.  (*See* Dkt. 56 at 15.) Notably, Image did *not* join in that part of McFarlane's motion.  (*See* Dkt. 48.)  Nevertheless, having by this time conducted discovery into the tangled relationships between McFarlane and the other defendants, including deposition testimony by McFarlane admitting to errors in the registrations he had filed with the Copyright Office (*see* Dkt. 56 at 14), Gaiman voluntarily withdrew his copyright infringement claims against Image and the other McFarlane corporate entities.  (*See* Dkt. 69 at 9.)

On July 18, 2002, the Court issued an order denying McFarlane's motion for judgment on the pleadings regarding all of Gaiman's copyright-related claims.  (*See* Dkt. 64.) On August 22, 2002, the Court issued an order denying McFarlane's motion for summary judgment on Gaiman's claims for a declaration of copyright ownership and a related accounting of profits.  (*See* Dkt. 100.)

The case was tried to a jury starting on September 30, 2002.  (*See* Dkt. 186.)  The jury returned a verdict in Gaiman's favor on all of his claims and the defendants' counterclaims.

6

(See Dkt. 196.)  During the damages phase of the trial, Gaiman testified about a contract he had entered into with a comic book company which paid him a $45,000 advance so that the company could "use my name to launch a comic book line."  (Tr. 4-29.)  The jury subsequently awarded Gaiman $45,000 in damages for Image's unauthorized use of Gaiman's name and biographical information to promote *Angela's Hunt*.  (Dkt. 197.)

McFarlane and Image filed post-trial motions seeking to overturn the verdicts.  (*See* Dkt. 215, 219.)  The Court denied those motions.  (*See* Dkt. 252.)

All of the parties moved to recover their attorney's fees for the various copyright issues on which they claimed to have prevailed.  (*See* Dkt 252 at 12.)  The Court denied both Gaiman's and all of the defendants' motions for attorney's fees on copyright issues stating, "this is an excellent example of a case where the American Rule should prevail."  (Dkt. 252 at 14.)  The Court did, however, award Gaiman attorneys fees on his claim for violation of his right of publicity under Wis. Stat. § 895.50.  (*See id.*)

Prior to trial, on September 27, 2002, the parties had stipulated to a procedure governing an accounting of profits ("the Accounting") in the event Gaiman prevailed on his copyright ownership claims.  (*See* Dkt. 182.)  The Court incorporated that stipulation into its Second Amended Judgment, which is the last judgment entered by this Court in the case.  (*See* Dkt. 253.)

On February 6, 2003, all of the defendants, including Image, filed a notice of appeal as to certain issues relating the copyright verdicts in the case.  (*See* Dkt. 257.)  The Seventh Circuit affirmed this Court on all issues.  *See Gaiman v. McFarlane*, 360 F.3d 644 (7th Cir. 2004).

On December 17, 2004, defendant Todd McFarlane Productions, Inc. filed a petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Arizona.

7

(Case No. 04-bk-217755.)  That petition resulted in an automatic stay of the proceedings in this

lawsuit, including the Accounting which had been in progress.

### III.    ARGUMENT

**A.**    **The Second Amended Judgment Is A Final Judgment As To All Claims Concerning Image Under Federal Rule Of Civil Procedure 54(b).**

The Second Amended Judgment reads, in relevant part:

That Second Amended Judgment is entered in favor of Plaintiff Neil Gaiman against Defendants Todd McFarlane, Todd McFarlane Productions, Inc., and Image Comics, Inc. in the amount of $45,000.00 with costs, and attorneys fees in the amount of $33,639.40, and in favor of Plaintiffs against the McFarlane Defendants for a declaration that Plaintiff Neil Gaiman is an owner of the copyrights to the publications and characters at issue in this case:

Medieval Spawn

Cogliostro

Spawn Issue 26

Angela

Angela Issues 1, 2, and 3

Spawn Issue 9

for which an accounting for profits by Defendants Todd McFarlane and Todd McFarlane Productions, Inc. is ordered pursuant to the stipulation entered into between the parties, which stipulation marked 182 is attached and made a part of this judgment.

That judgment is further entered enjoining Defendants and their officers, agent and employees from publishing or distributing *Angeal's Hunt* using the name of biographical information of Plaintiff Neil Gaiman for purposes of trade without his written consent and requiring Defendants and their agent and employees to credit Neil Gaiman as co-author of *Spawn* Issue 26, *Spawn* Volume 6 and *Pathway to Judgement* and to appropriately designate Neil Gaiman as a copyright owner on all publications or other media which have not yet been distributed by Defendants and for which Neil Gaiman has been found a copyright owner.

8

> That judgment is further entered dismissing all remaining claims and counterclaims with prejudice.

(Dkt. 253). There are three components of the judgment: 1) a damages judgment, including costs and attorneys fees, against all Defendants; 2) an accounting for profits order just as to the McFarlane Defendants; and 3) an injunction as to all Defendants.

The Second Amended Judgment explicitly incorporates the stipulation regarding accounting of profits ("Stipulation" (Dkt. 182)) which provides:

> Subject to the limitations set forth in the previous paragraphs, the parties agree that the Court <u>may enter a final judgment</u> regarding any verdicts, decisions, or orders, including any order ordering an accounting of profits, at any time the Court deems appropriate and that any party <u>may appeal such final judgment prior to the completion of the accounting</u>.

(emphasis added).

1.      **The Second Amended Judgment is a final judgment as to all claims involving Image under Rule 54(b).**

Rule 54(b) allows the "entry of a final judgment as to one or more, but fewer than all, claims or parties" in an action involving multiple claims or multiples parties where there is no just reason for delay. Fed. R. Civ. P. 54(b). The Court entered a final judgment as to Image. The Second Amended Judgment resolves all claims as to Image. Damages, attorneys fees and costs, and injunctive relief have been fully determined. The only outstanding issue to be resolved is the accounting of profits of the McFarlane Defendants. As the Court made clear in both the Second Amended Judgment, and in the decisions which confirmed the scope of the Accounting, this does not include any claims against Image. (*See* Dkt. 251 (Order For Accounting) at 5 ("There is no basis for any accounting against or participation by defendant Image Comics…") and Dkt. 252 (Order Amending Judgment) at 16 ("It is further ordered that judgment be amended to reflect that an accounting is ordered only as to defendants Todd McFarlane and Todd McFarlane Productions, Inc.").)

9

The Stipulation further demonstrates that the Second Amended Judgment is a final judgment pursuant to Rule 54(b) as to Image. The Stipulation provides that the Court "may enter a final judgment regarding any verdicts, decisions, or orders, including any order ordering an accounting of profits, at any time the Court deems appropriate." (Dkt. 182 at 3-4.) The Second Amended Judgment constitutes such a judgment. Moreover, the Stipulation further provides "that any party may appeal such final judgment prior to the completion of the accounting." (*Id.* at 4.)

The fact that the Second Amended Judgment does not mention Rule 54(b) does not undermine its status as a final judgment as to Image Comics. *See, e.g.*, *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1217-18 (7th Cir. 1990) ("The district court's failure to mention Rule 54(b) does not defeat our jurisdiction. This court has allowed appeals under Rule 54(b) despite the district court's failure to mention the rule.").

Further, the Stipulation's provision that a party may appeal a final judgment prior to the completion of the Accounting supports a finding that there is no just reason for delay. The Seventh Circuit has repeatedly held that the district court need not expressly provide its reasons for finding no just reason for delay if the reasons are apparent from the record. *See, e.g.*, *Cooper Power Systems, Inc. v. Union Carbide Chems. & Plastics Co.*, 123 F.3d 675, 679 (7th Cir. 1997) ("Although the court did not explicitly set forth its reasons for that finding in its order, its reasons are apparent from the record insofar as the court incorporated by reference the rationale of Cooper's motion in the Rule 54(b) order."); *Ettrick Wood Prods.*, 916 F.2d at 128 (noting that the lack of explanation does not defeat appellate jurisdiction when reasons are apparent from record); *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 948-49 (7th Cir. 1980) (same).

10

Image cites a 1943 case for the proposition that the Second Amended Judgment constitutes a "conditional judgment." (Image's Br. in Support of Mot. to Amend ("Image Br.") at 10 (citing *In re Roney,* 139 F.2d 175, 177 (7th Cir. 1943)).) Given that this case was decided prior to the adoption of Rule 54(b), its relevance is unclear. But, even if this concept of a "conditional judgment" had some meaning today, the condition of the Second Amended Judgment – that an accounting of profits is to be completed – only applies to the McFarlane Defendants, and, moreover, the issues surrounding the accounting are further limited by the Stipulation.[5]

Lastly, Image attempts to rely on Rule 54(b) to reopen issues already fully adjudicated, thereby questioning the preclusive character of the Second Amended Judgment. The Seventh Circuit has repeatedly recognized that even if a judgment pursuant to Rule 54(b) is not technically perfect for appeal purposes, the order can still have preclusive effects. "A decision need not be 'final' in the strict sense of 28 U.S.C. § 1291 in order to prevent the involved parties from relitigating contested issues." *Coleman v. C.I.R.*, 16 F.3d 821, 830-31 (7th Cir. 1994) (holding that the findings in the judgment could not be relitigated where only outstanding issue was computation of the dollar deficiency); *see also Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854-55 (7th Cir. 1985) (acknowledging that order "did not technically comply with Rule 54(b)" but still finding it had res judicata effect); *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) ("'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a

---

[5] The Stipulation provides that "the Parties waive the right to appeal any accounting decisions, procedures or actions by the Accountant relating to the Accounting, including the amount of the Final Accounting." (Dkt. 182 at 3.)

court sees no really good reason for permitting it to be litigated again.") (internal citation omitted).

The Second Amended Judgment is a final judgment as to Image, and as such, the Judgment can only be amended pursuant to Fed. R. Civ. P. 60(b).

**B.      The Court Should Deny Any Request To Amend The Judgment Under Rule 60.**

Image's request to amend the Second Amended Judgment pursuant to Rule 60 is both untimely and fails on the merits.

**1.      Image failed to file its Rule 60(b) motion within a reasonable time.**

Fed. R. Civ. P. 60(c)(1) provides that "[a] motion under Rule 60(b) must be made within a <u>reasonable time</u> . . . ."  The intervening law forming the primary basis for Image's motion, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), was issued just six months after the Second Amended Judgment was entered.  Yet, Image Comics waited over six years to bring a motion to amend the judgment based on this intervening case.  In its motion to amend the judgment, Image provides no explanation for its extreme delay in raising this intervening law.

Courts routinely deny Rule 60(b) motions where parties have failed to timely move after a change in decisional law, and with significantly shorter delays than the over six year delay here.  *See, e.g.*, *National Org. for Women v. Operation Rescue*, 47 F.3d 667, 669 (4th Cir. 1995) ("[T]he defendants should be denied relief because they failed to take action for over a year after the *Bray* [*v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)] decision and then only when the plaintiffs were seeking to enforce their judgment."); *Fed. Land Bank of St. Louis v. Cupples Bros.*, 889 F.2d 764, 766-67 (8th Cir. 1989) (affirming district court's denial of Rule 60(b) motion when party offered no explanation for failing to "bring the motion in the twelve months between the Act's effective date, when the basis for the motion arose, and

12

affirmance of the foreclosure judgment"); *Conway v. Takoma Park Volunteer Fire Dept., Inc.*, Nos. Civ.A. DKC 86-1611, Civ.A. DKC 88-65, 2001 WL 194081, at *3 (D. Md. Feb. 26, 2001) ("[T]he *Benshoff* decision was handed down on June 8, 1999, and Association filed this motion more than a year later with absolutely no explanation for the time lapse. Consequently, Association's motion for relief from judgment is untimely.").

> **2.      Image's motion does not meet the requirements of any of the six available grounds for relief under Rule 60(b).**

Even assuming that Image's motion were timely, it would still fail because it does not meet any of the six grounds for relief enumerated under Rule 60(b), including subsections (5) and (6) discussed in Image's brief.  (Image Br. at 30-33.)

> **a.      Image's motion for relief under subsection (5) fails to meet the Rule's exacting standard.**

Image first seeks relief from the Second Amended Judgment's injunction order under subsection (5), which allows for amending the judgment where "applying it prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5).  Cases in which Courts have found that a judgment applied prospectively, for example an injunction, is no longer equitable typically involve cases concerning public interests.  The case cited by Image – *Agostini v. Felton*, 521 U.S. 203, 239 (1997) – in support of their argument that a "bona fide, significant change in subsequent law" supports lifting an injunction under Rule 60(b)(5) concerned the impact of subsequent Supreme Court Establishment Clause cases on a permanent injunction barring public school teachers from providing remedial instruction in parochial schools.  *See also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 381(1992) (noting that "the public interest is a particularly significant reason" for granting relief under Rule 60(b)(5)).  This case, on the other hand, concerns private interests.  *See W.L. Gore & Assocs. v. C.R. Bard, Inc.*, 977 F.2d 558, 563

(Fed. Cir. 1992) (affirming district court's denial of Rule 60(b) modification of a private consent decree because "any ensuing inequity does not warrant judicial intervention").

Moreover, relief under subsection (5) requires a strong showing. *See, e.g.*, *Petition of Boeing Airplane Co.*, 23 F.R.D. 264, 265 (D. D.C. 1959) ("The power, naturally, should be very cautiously and sparingly invoked by the Court and only in unusual and exceptional instances."), *rev'd in part on other grounds*, 280 F.2d 654 (D.C. Cir. 1960). Because of this strict standard, courts have rejected requests for amending prospective orders similar to that requested by Image. *See, e.g.*, *W.L. Gore & Assocs.*, 977 F.2d at 561 (holding that change in patent law did not constitute "extreme and unexpected hardship" necessary to modify injunction); *Sunbeam Corp. v. Charles Appliances, Inc.*, 119 F. Supp. 492, 494 (S.D.N.Y. 1953) (denying Rule 60(b)(5) motion to dissolve an injunction concerning trademark protection based on a change in decisional law due to subsequent Supreme Court cases).

> **b.      Change in decisional law is not a valid basis for granting relief under subsection (6)'s catch-all ground.**

Image also seeks relief under subsection (6) of Rule 60(b) which allows for amending of a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Despite the seemingly broad reach of this provision, courts have limited it by requiring that this provision applies only where there are reasons for relief other than those set out in the other subsections of Rule 60(b) (*see, e.g.*, *Brandon v. Chicago Bd. of Ed.*, 143 F.3d 293, 295 (7th Cir. 1998)), and have required a showing of "extraordinary circumstances" justifying relief. *See, e.g.*, *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008).

In interpreting Rule 60(b)(6), the majority of courts have held that a change in decisional law is not a valid basis for relief. *See generally* 12 James Wm. Moore, *Moore's Federal Practice* § 60.48[5][b] (3d ed. 2009). In *McKnight v. U.S. Steel Corp.*, 726 F.2d 333, 336 (7th Cir. 1984), the Seventh Circuit affirmed the district court's denial of a Rule 60(b)(6)

14

motion where the caselaw on which the district court had relied in dismissing the movant's complaint was overruled by a subsequent Supreme Court case. "[A] change in the applicable law after entry of judgment does not, by itself, justify relief under 60(b)." *Id.*; *see also Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 629 (7th Cir. 1997) "The fact that our prediction--and the prediction of the district court--was contrary to the conclusion later reached by the Indiana Supreme Court does not constitute an extraordinary circumstance warranting the reopening of this case to achieve a similar result."); *see also Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990) (finding that intervening Supreme Court opinion alone did not constitute an extraordinary circumstance to warrant relief from a final judgment).

Image has failed to make a showing under Rule 60(b) to support their motion to amend the judgment.

## C.      This Court Correctly Applied The Law Governing Awards Of Attorney Fees.

In its challenge to Judge Shabaz's decision denying attorneys fees on copyright claims, Image omits the key fact that this denial was mutual as to all parties and denied Gaiman's substantial attorneys fees request (*see* Dkt. 211-14) that was based upon the jury verdict for Gaiman on all copyright claims. Judge Shabaz's decision as to attorneys fees (Dkt. 252 at 12-14) both cites to, and properly applies governing Supreme Court and Seventh Circuit precedent.

Image contends that the Court's denial of its request for an award of attorney fees should be overturned because of subsequent changes in Seventh Circuit law and because the Court "misapplied" the Supreme Court's decision in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Neither is true.

The Copyright Act provides that a district court, "in its discretion," may "award a reasonable attorney's fee to the prevailing party" in a copyright infringement action. 17 U.S.C. §

15

505. In *Fogerty*, the Supreme Court held that "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." 510 U.S. at 534. The *Fogerty* Court expressly rejected the argument that "defendants should be awarded attorney's fees as a matter of course, absent exceptional circumstances." *Id.* at 533.

The *Fogerty* Court also listed factors that district courts could use in determining whether an award of fees was appropriate in a particular case, including: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n. 19. Subsequently, in *Gonzales v. Transfer Technologies, Inc.*, 301 F.3d 608 (7th Cir. 2002), the Seventh Circuit stated "that the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees." *Id.* at 610.

In its brief, Image fails to mention that this Court expressly considered all of the factors set forth by the Supreme Court in *Fogerty* and cited to *Gonzales* when it denied both parties' motions for attorney fees. (*See* Dkt. 252 at 12-13.) The Court stated that, "[c]onsidering these factors [described in *Fogerty* and *Gonzales*], and the particular circumstances of this case the Court now concludes that no fees should be awarded to any party for prevailing on the copyright claims." (*Id.* at 13.) Moreover, the Court discussed at length its analysis of why the defendants should not receive an award of fees, writing:

> Regarding the claims on which defendants prevailed, it was reasonable and appropriate for plaintiff to name all defendants given their close relationships with McFarlane and each other, the uncertainty regarding the nature of those relationships and the licensing arrangements between them. . . .

16

> Considerations of motivation and the need for deterrence or
> compensation make it apparent that fees should not be awarded.
> The principal litigants, plaintiff Gaiman and defendant McFarlane,
> are highly successful as author and artist both financially and
> artistically.  The underlying dispute arose from divergent
> expectations of the parties at the time the works were created and
> their inability to reduce an agreement on copyright ownership to
> writing. . . .  No party is likely to be deterred or encouraged in this
> litigation or in his behavior by the payment or recovery of attorney
> fees.  *In short, this is an excellent example of a case where the
> American Rule should prevail.*

(Order at 13 (emphasis added).)  There is no basis for Image's suggestion that this Court

"misapplied" the Supreme Court's decision in *Fogerty* or any other case law.  (Br. at 18.)

Image claims that the Seventh Circuit's later decisions in *Assessment*

*Technologies v. Wiredata, Inc.*, 361 F.3d 434 (7th Cir. 2004), and others wrought such a

significant change in the law that this Court must revisit its earlier decision.  But that is a gross

overstatement.  *Assessment Tech.* was at most a refinement of the basic principles laid down in

*Fogerty* and *Gonzales* which, as shown above, this Court applied.

Regardless, Image would not have prevailed even under a more stringent

standard.  All of the cases cited by Image involved a lone defendant who prevailed on a single

claim of copyright infringement.  In this case, by contrast, Image lost on Lanham Act and right

of publicity claims that were directly linked to the same publications at issue in Gaiman's

copyright claims.  Moreover, Image's defenses to Gaiman's copyright infringement claims were

intertwined with the thicket of contract and copyright ownership claims involving McFarlane and

his other companies.  For example, Image argues that Gaiman's copyright claims against Image

were "groundless" because "[a]s a licensee of the copyright co-owner, TMP . . . Image could not

have been liable for the infringement of the other co-owner, Gaiman."  (Br. at 19.)  But Image

fails to mention that throughout the litigation McFarlane and TMP steadfastly *denied* that

17

Gaiman was a co-owner of the copyrights in any of the works at issue.  (*See* Ans. to Am. Compl. [Dkt. 29], Affirm. Def. ¶ 65.)

In addition, requiring Gaiman to pay Image's fees would not further any of the policies that motivate the rules established in *Fogerty* and by the Seventh Circuit.  The *Fogerty* Court reasoned that allowing fee awards to defendants served the purpose of "enriching the general public through access to creative works" and encouraging "further creative pieces."  510 U.S. at 527.  The Seventh Circuit built on this, stating that "without the prospect of such an award, the [defendant] might be forced into a nuisance settlement or deterred altogether from enforcing his rights."  *Assessment Tech.*, 361 F.3d at 437.  In this case, nothing about Gaiman's claims threatened to hinder the creation of further creative pieces.  Image was not a creator or author.  It was just a publishing entity set up to print and distribute works for McFarlane.  There was never a dispute that Gaiman authored the publications at issue in this case.  The only real question was who owned them.  In addition, given Image's close association with McFarlane, both with regard to these publications and in general, there was never a reason to believe that Image might be forced into a nuisance settlement or deterred from enforcing its purported rights.  As the docket in this case shows, the parties aggressively asserted their purported rights throughout this litigation.

Finally, when one examines the case as a whole, Gaiman was the prevailing party on copyright issues.  The purpose of all of Gaiman's copyright claims was to establish his copyright ownership interests with respect to McFarlane and all of the companies involved in his businesses, and to determine which of them was responsible for compensating Gaiman for their use of his work.  Gaiman prevailed in that effort.  Image, as McFarlane's publisher, was an essential part of that determination.

**D.    The Eighth Circuit Decision Cited By Image Is No Basis For Reversing The Jury's Verdict And Related Injunction On Gaiman's Wisconsin Law Right Of Publicity Claims.**

Image's challenge to the jury's verdict finding it liable for violating Gaiman's right of publicity, and the Court's order permanently enjoining that violation, is both untimely and unsupported by the case law on which it relies.  Gaiman's right of publicity claims were based upon Wis. Stat. § 895.50 (now § 995.50) and Wisconsin common law.  (*See* Am. Compl. [Dkt. 28] ¶¶ 99-104.)  Image asks the Court to issue as decision having a significant impact on that Wisconsin law, yet it fails to cite any Wisconsin or Seventh Circuit legal authority.  For a long list of reasons, Image has provided the Court with an extraordinarily weak basis for making a decision of this magnitude.[6]

Image never challenged the constitutionality of Gaiman's right of publicity claim at any time during the original proceedings in this case, despite having plenty of opportunities to do so.  Image filed a motion to dismiss, a motion for partial summary judgment, and a post-trial motion for Judgment as Matter of Law.  (*See* Dkt. Nos. 15, 48, 219.)  Never once did Image raise the issue it raises here.  As a result, Image has waived its right to raise this issue now.  *See Harris Trust and Sav. Bank v. E-II Holdings, Inc.,* 926 F.2d 636, 642 (7th Cir. 1991) ("Motions to alter or amend a judgment cannot be used to raise arguments which could, and should, have been made before the judgment issued[.]")  (internal citation and quotation marks omitted).

Regardless, for numerous reasons, the Eighth Circuit's decision in *C.B.C. Distribution and Marketing, Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818

---

[6] The scope of Image's challenge to Wisconsin's right of privacy/publicity statute is unclear.  However, if Image is seeking to overturn the statute on First Amendment grounds, then it was required to notify the Wisconsin Attorney General of that fact.  *See* Wis. Stat. § 806.04(1).  Something Image has not done.

MADI_2168942.3

(8th Cir. 2007), is not a basis for overturning the jury's verdict and this Court's injunction. First, *C.B.C.* is a decision by the Eighth Circuit and is not binding on this Court.

Second, *C.B.C.* did nothing to alter existing law regarding the right of publicity. The holding and analysis in *C.B.C.* are straightforward applications of the legal principles laid down by the Supreme Court in *Zacchini v. Scripps-Howard Broad.*, 433 U.S. 562 (1977), more than 32 years ago. *See C.B.C.*, 505 F.3d at 823-24. If Image wanted to argue that the rule of *Zacchini* bars Gaiman's right of publicity claim, the time to do so was more than six years ago.

Third, even if *C.B.C.* were binding authority, it is a fact-specific holding that is not analogous to the present case. The court in *C.B.C.* analyzed the application of a Missouri common law claim for right of publicity, rather than the Wisconsin statute and common law claims at issue here. The case involved a company's unauthorized use of players' names and statistics in fantasy baseball games. *Id.* at 820-21. The court found that "factual data concerning the athletic performance of [Major League Baseball players] command a substantial public interest, and therefore, is a form of expression due substantial constitutional protection." *Id.* at 823-24 (quoting *Gionfriddo v. Major League Baseball*, 94 Cap. App. 4th 400, 411, 114 Cal. Rptr. 2d 307 (2001)). There is nothing in the record to suggest that there is a similar "substantial public interest" in biographical information about Gaiman.

The *C.B.C.* court emphasized the unique nature of the case before it, noting that "CBC's use does not fit neatly into the more traditional categories of commercial advantage, namely, using individual's names for advertising and merchandising purposes in a way that states or intimates that the individuals are endorsing a product." *Id.* at 822. The *C.B.C.* court also found that there was no danger of consumers being "misled, because the fantasy baseball games depend on the inclusion of all players and thus cannot create a false impression that some particular player with 'star power' is endorsing CBC's products." *Id.* at 824.

20

In this case, the facts are exactly the opposite. Image prominently displayed Gaiman's name and biographical information on both the outside and inside back covers of *Angela's Hunt*, and touted the fact that Gaiman, a famous, award-winning author, had written this book. (*See* Trial Ex. 205.) Any consumer reading the book would assume that Gaiman had authorized its publication, was being compensated for its sales, and was probably proud to see it on store shelves. When, in fact, Gaiman was not receiving a cent and McFarlane and Image were denying that he even had a copyright interest in the work.

Image's suggestion that *C.B.C.* establishes a bright-line rule that "use of a celebrity's name and biographical information that is readily available in the public domain is protected by the First Amendment, which trumps any right of publicity claim" is a gross distortion of the Eighth Circuit's holding. The court explained that each case must be decided based upon a balancing of the right of publicity against first amendment considerations and stated that "here" – *i.e.*, in that specific case – "the former must give way to the latter." *C.B.C.*, 505 F.3d at 823. The sweeping rule that Image suggests makes no sense. The right of publicity is designed largely to protect celebrities. Yet, if all information about celebrities that is in the public domain were granted absolute First Amendment protection the right of publicity would virtually disappear. If that had been the Eighth Circuit's intent, it would have said so clearly.

Image's contention that failing to amend Gaiman's right of publicity would "generate a host of troubles for publishers" and "give any celebrity the special power to erase from the public domain any information he or she chose" is to put it mildly, hyperbolic. (*See* Image's Br. at 26, 27, 32.) American media will not descend into chaos if Image is prohibited from creating the impression that Gaiman endorses its unauthorized sales of his works. Contrary to what Image contends (*see* Br. at 26-27), publishers and celebrities are perfectly capable of

21

drafting written agreements that govern the use of a celebrity's name and biographical information; they do it all the time.

Given all the infirmities of Image's position, the present motion is an inappropriate vehicle for making a ruling that could have a significant impact on a Wisconsin statute and Wisconsin common law.

### IV.    CONCLUSION

For all of the above reasons, plaintiffs Neil Gaiman and Marvels and Miracles, LLC, respectfully request that the Court deny defendant Image Comics, Inc.'s motion.

Dated this 5th day of February, 2010.

FOLEY & LARDNER

By:  /s/ Jeffrey A. Simmons_____
     Allen A. Arntsen
     Jeffrey A. Simmons
     *Attorneys for Plaintiffs*

Foley & Lardner
150 East Gilman Street
Madison, WI 53703-2808
Tel: (608) 257-5035
Fax: (608) 258-4258

Co-Counsel:
Kenneth F. Levin
20 North Wacker Drive, Suite 2200
Chicago, IL 60606
Tel: (312) 984-6000
Fax: (312) 977-2990

MADI_2168942.3