# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NEIL GAIMAN and MARVELS AND MIRACLES, LLC,<br><br>*Plaintiffs,*<br><br><br>v.<br><br>TODD MCFARLANE; TODD MCFARLANE PRODUCTIONS, INC.; TMP INTERNATIONAL, INC.; MCFARLANE WORLDWIDE, INC.; and IMAGE COMICS, INC.,<br><br>*Defendants.* | Case No.   02-C-0048-S<br>             (Judge Shabaz)<br><br>**DEFENDANT IMAGE COMICS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES PURSUANT TO RULE 54(b) OR, IN THE ALTERNATIVE, RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |

CROWELL & MORING LLP
R. Scott Feldmann
(*pro hac vice*)
Thomas E. Dietrich
(*pro hac vice*)
3 Park Plaza, 20th Floor
Irvine, California  92614-8505
Telephone:   (949) 263-8400
Facsimile:    (949) 263-8414

Attorneys for Defendant
Image Comics, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

I.  THE SEVENTH CIRCUIT AND GAIMAN HAVE STATED THAT NO FINAL
    JUDGMENT HAS ENTERED IN THIS CASE ALLOWING MODIFICATION
    BY THE COURT UNDER RULE 54(b) "AT ANY TIME" ...............................3

    A.  Gaiman Admitted No Final Judgment Has Been Entered ......................4

    B.  Cases Cited By Gaiman Show That The Second Amended Judgment
        Cannot Be A Partial Final Judgment Under Rule 54(b) ..........................4

    C.  The Stipulation To Which Image Was Not A Party Does Not Demonstrate
        Judgment's Finality...............................................................................6

    D.  Image Did Not Waive Any Arguments ..................................................7

II. GAIMAN'S PRECLUSION ARGUMENT IS CIRCULAR AND
    INAPPLICABLE ...........................................................................................7

III. IMAGE'S MOTION IS TIMELY AND PROPERLY BROUGHT UNDER RULE
     60 BUT CONSIDERATION SHOULD BE UNNECESSARY AS JUDGMENT
     IS CLEARLY NOT FINAL..............................................................................8

     A.  Image Informed Court of Changed Law Only Months After *Rentrop*
         Decision Which Stated Appellate Arguments Could Be Waived If Not
         Raised In Trial Court ...........................................................................9

     B.  No Public Interest Is Required To Modify Inequitable Reverse Passing-
         Off Injunction Under Rule 60(b)(5).........................................................9

     C.  Image's Opening Brief Clearly Pointed Out Other Equitable Factors
         Supporting Modification Under Rule 60(b)(6) In Addition To Changed
         Law ....................................................................................................10

     D.  Important Public Interest In Protecting Free Speech And Inequity In Light
         Of *C.B.C. Distribution* Supports Vacating Right Of Publicity Injunction
         Under Rule 60(b) .................................................................................11

IV.  GAIMAN CONCEDES THAT THE LANHAM ACT CLAIM IS NOT
     "VIABL[E]".................................................................................................11

     A.  Image Has Not Waived Its Right To Appeal The Lanham Act Claim .................12

         1.  Image Complied With *Rentrop,* Giving Notice And Moving The
             Court .........................................................................................12

IMAGE'S REPLY BRIEF IN SUPPORT OF MOTION TO AMEND SECOND AMENDED JUDGMENT AND
ORDER DENYING FEES

## TABLE OF CONTENTS

**Page**

2.    The Seventh Circuit Previously Rejected Gaiman's Assertion That Judgment Was Final, Holding Instead That The Prior Interlocutory Appeal Was On A Predicate Copyright Ownership Issue ........................13

3.    Even If Image Had Somehow Waived Its Right – Which It Did Not – Lifting An Erroneous Prior Restraint Against Publications Merits Relief ............................................................................................................13

V.    GAIMAN IGNORES NEW SEVENTH CIRCUIT GUIDANCE THAT A COURT MUST APPLY A "VERY STRONG" PRESUMPTION THAT PREVAILING COPYRIGHT DEFENDANTS SHOULD RECEIVE THEIR FEES ...............................................................................................................14

A.    Judge Shabaz Could Not, And Did Not, Apply The Correct Standard Because It Was Not Then Available To Guide Him And Inform Proper Judicial Weighing ...........................................................................14

B.    It Is Not True That "When One Examines The Case As A Whole, Gaiman Was The Prevailing Party On Copyright Issues" As He Lost On All Claims ................................................................................................15

C.    Denial Of Copyright Fees To Gaiman As A Plaintiff Is Irrelevant As Image's Motion Rests Solely On New Authority Regarding Prevailing *Defendants* ..................................................................................15

VI.    IMAGE'S FIRST AMENDMENT RIGHTS TO PUBLISH FACTS IN THE PUBLIC DOMAIN OUTWEIGH GAIMAN'S RIGHT OF PUBLICITY CLAIM .........16

A.    The Constitution's Supremacy Clause Does Not Require That A Federal Court Await State Notification Before Vindication Of The First Amendment .........................................................................................17

B.    Gaiman Again Errs – Image Did Raise A First Amendment Challenge To Application Of The Right Of Publicity In Briefing Image's Motion To Dismiss ..............................................................................................18

C.    Gaiman Does Not Dispute That He Seeks To Continue An Injunction Against Use Of Biographical Facts Already In The Public Domain ....................19

D.    Gaiman Does Not Dispute That Right Of Publicity Provides No Incentive For Him To Produce New Works .......................................................21

E.    Gaimain's False Advertising Claim Was Dismissed And There Was Nothing "Misleading" About The Information About Gaiman That Image Used To Describe A Work He Authored ............................................................22

## TABLE OF CONTENTS

**Page**

F.    *C.B.C. Distribution* Is Not An Outlier – Decisions From Many Other
      Courts Support Publisher's Right To Use Public Domain Facts ..........................23

G.    Existence Of A Contract Is Irrelevant To First Amendment Protection...............26

H.    Footnote 2 Of The Opposition Brief Shows Gaiman Seeks To Block *Any*
      Mention Of Himself No Matter How Newsworthy Or Fleeting..........................28

CONCLUSION..................................................................................................................30

IMAGE'S REPLY BRIEF IN SUPPORT OF MOTION TO AMEND SECOND AMENDED JUDGMENT AND
ORDER DENYING FEES

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>CASES</u>

*Alexander v. Chicago Park Dist.*,
    773 F.2d 850 (7th Cir. 1985) ........................................................................... 7

*Assessment Tech. of WI, LLC v. Wiredata, Inc.*,
    361 F.3d 434 (7th Cir. 2004) ........................................................... 14, 15, 16

*Bailey v. Ryan Stevedoring Co.*,
    894 F.2d 157 (5th Cir. 1990) ....................................................................... 10

*Bank of Lincolnwood v. Fed. Leasing, Inc.*,
    622 F.2d 944 (7th Cir. 1980) ......................................................................... 5

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
    906 F.2d 1185 (7th Cir. 1990) .............................................................. 3, 8, 11

*C.B.C. Distrib. & Market., Inc. v. Major League Baseball Advanced Media, L.P.*,
    505 F.3d 818 (8th Cir. 2007) ................................................................ passim

*C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*,
    443 F. Supp. 2d 1077 (E.D. Mo. 2006) ........................................................ 27

*Cardtoons, L.C. v. Major League Baseball Players Ass'n.*,
    95 F.3d 959 (10th Cir. 1996) ................................................. 21, 22, 23, 26

*Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*,
    131 F.3d 625 (7th Cir. 1997) ....................................................................... 10

*Coleman v. Comm'r of Internal Revenue*,
    16 F.3d 821 (7th Cir. 1994) ........................................................................... 7

*Cooper Power Sys., Inc. v. Union Carbide Chem. & Plastics*,
    123 F.3d 675 (7th Cir. 1997) ......................................................................... 5

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) .................................................................................. passim

*Eagle Serv. Corp. v. H2O Indus. Serv., Inc.*,
    532 F.3d 620 (7th Cir. 2008) ....................................................................... 16

*Gaiman v. McFarlane*,
    360 F.3d 644 (7th Cir. 2004) .............................................................. 3, 7, 13

*Harris Trust and Sav. Bank v. E-II Holdings, Inc.*,
    926 F.2d 636 (7th Cir. 1991) ....................................................................... 19

*Hoffman v. Capital Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001) ............................................................... 24, 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*In the Matter of Hendrix,*
   986 F.2d 195 (7th Cir. 1993) ........................................... 10

*Lear, Inc. v. Adkins,*
   395 U.S. 653 (1969) ........................................................ 27

*Lovell v. City of Griffon,*
   303 U.S. 444 (1938) ........................................... 18, 23, 29

*Matthews v. Wozencraft,*
   15 F.3d 432 (5th Cir. 1994) ........................................... 26

*McKnight v. U.S. Steel Corp.,*
   726 F.2d 333 (7th Cir. 1984) ........................................ 10

*Miller Brewing Co. v. Jos. Schlitz Brewing Co.*
   605 F.2d 990 (7th Cir. 1979) .......................................... 7

*Mostly Memories, Inc. v. For Your Ease Only, Inc.,*
   526 F.3d 1093 (7th Cir. 2004) ...................................... 15

*Partmar Corp. v. Paramount Pictures Theatres Corp.,*
   347 U.S. 89 (1954) .................................................... 8, 11

*Protectoseal Co. v. Barancik,*
   23 F.3d 1184 (7th Cir. 1994) ........................................ 10

*Rand v. Hearst Corp.,*
   31 A.D. 2d 406 (N.Y. Ct. App. 1969) ........................ 23, 24

*Rentrop v. Spectranetics Corp.,*
   550 F.3d 1112 (Fed. Cir. 2008) ........................... 2, 8, 9, 12

*Riviera Distrib., Inc. v. Jones,*
   517 F.3d 926 7th Cir. 2008) .......................................... 16

*Rogers v. Grimaldi,*
   875 F.2d 994 (2d Cir. 1989) .......................................... 25

*Seale v. Gramercy Pictures,*
   949 F. Supp. 331 (E.D. Pa. 1996) ................................. 23

*Sunbeam Corp. v. Charles Appliances,*
   119 F. Supp. 492 (S.D.N.Y. 1953) ................................. 9

*United States v. Ettrick Wood Prods., Inc.*, 916 F.2d 1211 (7th Cir. 1990) ................................. 5

*W.L. Gore & Assocs. v. C.R. Bard, Inc.,*
   977 F.2d 558 (Fed. Cir. 1992) ....................................... 9

## TABLE OF AUTHORITIES

**Page**

*Winters v. N.Y.*,
    333 U.S. 507 (1948)....................................................................................... 23, 29

*Woodhaven Homes & Realty, Inc. v. Hotz*,
    396 F.3d 822 (7th Cir. 2005) ........................................................................ 2, 14

*Zacchini v. Scripps-Howard Broad.*
    433 U.S. 562 (1977)................................................................................. 2, 17, 21

## FEDERAL STATUTES

28 U.S.C. § 1292(a)(1)......................................................................................... 7

## FEDERAL RULES

Fed. R. Civ. P. 54............................................................................................. passim

Fed. R. Civ. P. 60............................................................................................. passim

Case No.  02-C-0048-S

IMAGE'S REPLY BRIEF IN SUPPORT OF MOTION TO AMEND SECOND AMENDED JUDGMENT AND
ORDER DENYING FEES

<u>**INTRODUCTION**</u>

Since post-trial motions were completed, the law has changed.  Without relief now, this Court's unlawful prior restraints under both the Lanham Act and Wisconsin right of publicity law will continue to harm free speech, suppressing publication of information that Gaiman admitted at trial was already in the public domain.  Even if the judgment were final – which Image denies – pursuant to Rule 60 of the Federal Rules of Civil Procedure the Court should still lift the unlawful prior restraints against Image's publications.  This Court should no longer use its powers to enforce an injunction contrary to U.S. Supreme Court precedent.  The status quo promises several more years of legal limbo, not of Image's own making, before Image may publish again.  Image had nothing to do with Gaiman's delay in thwarting completion of a final accounting with Image's co-defendants in bankruptcy court, which has prevented entry of a final judgment here.  The bankruptcy stay has now been lifted.  Gaiman has put Image's First Amendment rights on ice, and it is time for a complete thaw.

The judgment is not final.  Gaiman expressly argued to this Court several months ago that the judgment is not final.  Docket No. ("D.N.") 269.  At that time, Gaiman was arguing for further delay before bringing this Court's Second Amended Judgment into compliance with new law.  Now that the bankruptcy stay has been lifted, he argues the exact opposite (and not for the first time).  Gaiman admits that unless this Court decides that the judgment is final as to Image, a position contrary to Rule 54(b) and the Seventh Circuit's interlocutory appellate opinion, that his Lanham Act claim is no longer "viable."  That claim fails owing to the unanimous Supreme Court *Dastar v. Twentieth Century Fox* decision, adopting the very point of law that Image unsuccessfully argued for to this Court almost eight years ago.

Copyright law too has changed.  There is now a "very strong" presumption that defendants prevailing in copyright cases will recover their fees.  After this case was decided, the

Seventh Circuit realized that the presumption was necessary to incentivize defendants into resisting unfounded copyright claims. Unlike plaintiffs who have an incentive of receiving damages, defendants do not. In one of the new opinions, *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822 (7th Cir. 2005), the trial court applied *Fogarty* but without the proper presumption. After appeal, the Seventh Circuit remanded with instructions to reconsider denial of the defendant's copyright fees in light of the new precedent. *Id*. at 824. Even apart from the opinions' express language, the implication is clear – the Seventh Circuit has changed its guidance on proper application of the Supreme Court's *Fogarty* standard and expects trial courts to follow. This guidance was not available to Judge Shabaz in 2002, so he did not apply it. In accordance with the policy of preventing needless appeals, Image seeks relief arising out of intervening changes in law occurring after post trial motions were complete. *See Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1117 (Fed. Cir. 2008). This Court should follow Seventh Circuit precedent, apply the "very strong" presumption enjoyed by prevailing defendants, and award Image its copyright fees.

This Court should also lift the unlawful prior restraint of First Amendment rights arising out of Gaiman's right of publicity claim. A court must carefully scrutinize such a claim to prevent impingement upon the First Amendment. *C.B.C. Distrib. & Market., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 823 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 2872 (June 2, 2008) (citing *Zacchini v. Scripps-Howard Broad.*, 433 U.S. 562 (1977)). The new Eighth Circuit case holds that under the Supreme Court's required balancing test, even an otherwise valid right of publicity claim for using a person's name and biographical information on a related publication is preempted. This decision extends the protections of the First Amendment, consistent with Second, Fifth, Ninth, and Tenth Circuits, to limit overbroad right of

publicity claims.  This Court may amend the judgment and correct errors arising from a "significant" change in law, such as *C.B.C. Distribution*, and is not just limited to changes based upon controlling law.  *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).  In *C.B.C. Distribution*, plaintiff sued over information "all readily available in the public domain."  505 F.3d at 823.  The court held that "it would be strange law that a person would not have a first amendment right to use information that is available to everyone."  *Id.*  Here, Gaiman testified that all of the information was already available on his website.  This Court should apply *C.B.C. Distribution*, reject Gaiman's attempt to control publication of public facts about him used on a book written by him, and dismiss the state law right of publicity claim.

I.  **THE SEVENTH CIRCUIT AND GAIMAN HAVE STATED THAT NO FINAL JUDGMENT HAS ENTERED IN THIS CASE ALLOWING MODIFICATION BY THE COURT UNDER RULE 54(b) "AT ANY TIME"**

"The accounting is not yet complete, *and so the judgment is not final*; McFarlane's appeal is therefore limited to the injunction requiring him to acknowledge Gaiman's co-ownership."  *Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004) (emphasis added).  This sentence from the first paragraph of the prior interlocutory appellate opinion demonstrates that Gaiman is wrong: the Second Amended Judgment is not a final judgment as to McFarlane or anyone else, including Image.

Gaiman has confused the Court's power to enter final judgment with its actually having done so.  Gaiman admitted that no final judgment has been entered in this case, the Seventh Circuit stated the same, and every single case cited by Gaiman demonstrates that the Second Amended Judgment *cannot* be a final judgment as to Image.  The Court therefore has plenary power under Rule 54(b) to modify that judgment (and the Fees Order) due to intervening changes in law.  It is Image's position that Rule 54(b) clearly permits modification here and Rule 60 should only be considered as an alternative if necessary.

Rule 54(b) of the Federal Rules of Civil Procedure reads:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly determines that there is no just reason for delay*. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *does not end the action as to any of the claims or parties and may be revised at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added). No such judgment has been entered in this case.

### A.    Gaiman Admitted No Final Judgment Has Been Entered

Gaiman admitted in his very last filing to the Court (before the opposition brief) that no final judgment has been entered. *See* D.N. 269 (responding to Image's March 20, 2009 Notice of Intervening Changes in Law (the "Notice")). Specifically, Gaiman stated that it was not necessary to file a written response to the Notice because proceedings were stayed as a result of TMP's bankruptcy and "plaintiffs believe that if a response is necessary, it would be more appropriate and efficient to file it when the bankruptcy stay is lifted and this Court reopens proceedings prior to entry of final judgment." *Id*. ¶ 1. Now, having avoided answering to the substantial intervening changes in law raised by Image before, Gaiman argues that the judgment was final and should not be corrected. Gaiman is wrong, as his own case law demonstrates.

### B.    Cases Cited By Gaiman Show That The Second Amended Judgment Cannot Be A Partial Final Judgment Under Rule 54(b)

Every single case cited by Gaiman shows that the Second Amended Judgment cannot be considered final and appealable under Rule 54(b) because it did not contain both: (1) an express direction to enter final judgment under Rule 54(b) and finding that there is no just reason for delay, and (2) express determinations as to the propriety of entering such a partial final

judgment.  This Court therefore has plenary power to modify that judgment (and the Fees Order) due to intervening changes in law.  *See* Image Opening Brief ("Opening Br.") at § II.C.

Whether the Second Amended Judgment resolved all claims as to Image is not the key issue determining finality.  Because not all rights and liabilities were resolved with regard to Todd McFarlane, TMP (the "McFarlane Defendants"), or Gaiman, the only possible way the Court could have finalized the judgment as to Image but not the other parties is via Rule 54(b). It did not do so.

As stated repeatedly in the Seventh Circuit cases Gaiman cites in his opposition brief, "Rule 54(b) requires the district court to expressly find that 'there is no just reason for delay' and to expressly direct entry of final judgment."  *United States v. Ettrick Wood Prods., Inc.*, 916 F.2d 1211, 1217 (7th Cir. 1990) (per curiam); *see also Bank of Lincolnwood v. Fed. Leasing, Inc.*, 622 F.2d 944, 946 n.1 (7th Cir. 1980); *Cooper Power Sys., Inc. v. Union Carbide Chem. & Plastics*, 123 F.3d 675, 679 n.1 (7th Cir. 1997).  An order directing entry of final judgment must *at a minimum* explicitly state that final, appealable judgment is entered and that there is no just reason for delay.  *See Ettrick Wood*, 916 F.2d at 1216 (permitting, although barely, interlocutory appeal of judgment that on its face stated "It appearing that there is no just reason for delay, I direct that this final judgment be entered."); *Cooper*, 123 F.3d at 679 (allowing appeal where "[b]efore directing the entry of judgment, the district court expressly found, as Rule 54(b) requires, that there was no just reason for delay"); *Bank of Lincolnwood*, 622 F.2d at 949 n.6 (considering appeal where court order stated "The Court finds pursuant to Rule 54(b), F. R. Civ. P. that there is no just reason to delay the entry of a final enforceable judgment . . . and therefore directs the clerk to enter a final judgment.").  A district court should also expressly refer to Rule 54(b) when entering a final judgment under that section.  *Ettrick Wood*, 916 F.2d at 1218.

Here, the Second Amended Judgment contains none of the requisite explicit language demonstrating the Court's intent to enter a final, appealable order with regard to Image. Everyone but Gaiman (at least Gaiman subsequent to his prior letter) recognizes this fact. The Second Amended Judgment contains no statement that it is a final judgment, no mention of Rule 54(b), and nothing expressly providing that there is no just reason for delay. Furthermore, it is important to note that in all of the cases Gaiman cites, the Seventh Circuit *allowed* potentially premature interlocutory appeals. But in no case does the Seventh Circuit punish a party by *denying* an appeal as untimely where the lower court had not been explicit in entering final judgment. The Second Amended Judgment contains none of the necessary elements for a proper Rule 54(b) partial final judgment, and Image, the McFarlane Defendants, the Seventh Circuit, and previously Gaiman all believed correctly that judgment is not final.

### C.    The Stipulation To Which Image Was Not A Party Does Not Demonstrate Judgment's Finality

Gaiman argues contrary to his own case law that the accounting stipulation (the "Stipulation") somehow bootstrapped the Second Amended Judgment into finality. Image was not a party to the Stipulation; it had no effect on Image and no relation to Image. *See* D.N. 182 at 1 (stating stipulation was between McFarlane Defendants and Plaintiffs). Furthermore, the Stipulation was written by the parties not the Court. Given the multitude of cases Gaiman cites that require a court's express direction and determination to enter final judgment, a stipulation between the parties cannot suffice for an explicit court order.

Finally, the Stipulation merely states that the Court "*may* enter a final judgment . . . at any time the Court deems appropriate." *Id*. at 3-4 (emphasis added). Neither the Second Amended Judgment nor any other order provides that it *is* such a final judgment. The Court has not entered final judgment in this case, and thus it may now revise the Second Amended

Judgment and Fees Order to comply with changed law as Image describes in Section II.C of its Opening Brief.

### D.    **Image Did Not Waive Any Arguments**

Contrary to Gaiman's assertions, the prior interlocutory appeal regarding Gaiman's copyright claims has no effect on Image's current motion.  The Seventh Circuit acknowledged that "McFarlane's appeal is . . . limited to the injunction requiring him to acknowledge Gaiman's co-ownership."  *Gaiman*, 360 F.3d at 648.  That appeal, brought under 28 U.S.C. § 1292(a)(1), of the injunction requiring Defendants to designate Gaiman as a copyright owner on all publications was necessary to obtain appellate review of the ruling granting Gaiman copyright co-ownership before beginning the accounting process.  Reversal of that decision would have rendered an accounting unnecessary.  The Seventh Circuit did not consider other sections of the Second Amended Judgment, and Image in no way waived its right to seek modification of those sections here.

## II.    **GAIMAN'S PRECLUSION ARGUMENT IS CIRCULAR AND INAPPLICABLE**

Gaiman alleges that the Second Amended Judgment has "preclusive character" that prevents the Court from correcting it to comply with current law.  This argument is nonsensical.  Every case Gaiman cites stands for the proposition that a final judgment in one action can preclude raising similar issues or claims *in another action*.  *See Coleman v. Comm'r of Internal Revenue*, 16 F.3d 821, 830-31 (7th Cir. 1994) (analyzing issue preclusion in *Coleman II* where new evidence had already been considered in *Coleman I*); *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 853-54 (7th Cir. 1985) (analyzing claim preclusion where fourth amended complaint contained same claims as previously dismissed third amended complaint); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 991 (7th Cir. 1979) (analyzing issue preclusion in one trademark action where similar issues had been decided in prior trademark action).  Nothing

Case No.  02-C-0048-S

IMAGE'S REPLY BRIEF IN SUPPORT OF MOTION TO AMEND SECOND AMENDED JUDGMENT AND
ORDER DENYING FEES

prevents the Court from correcting errors before final judgment *in the same action* and indeed it is incumbent on courts to do so to prevent unnecessary appeals. *See, e.g.*, *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1117 (Fed. Cir. 2008).

Gaiman's argument is also circular – the judgment has preclusive effect because it is final, and it is final because it has preclusive effect. As described above, the Second Amended Judgment is not a final judgment under Rule 54(b). The Court may therefore amend it "at any time" before entry of a valid final judgment. Fed. R. Civ. P. 54(b; *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 100 (1954). That is the entire point of Section II.C of Image's opening brief, which Gaiman did not dispute: "a controlling or significant change in law or facts since submission of the issue to the Court" is a proper ground to correct a prior order. *Rochester Cheese*, 906 F.2d at 1191. The Second Amended Judgment is not final and does not preclude modification to comply with present precedent.

### III.   IMAGE'S MOTION IS TIMELY AND PROPERLY BROUGHT UNDER RULE 60 BUT CONSIDERATION SHOULD BE UNNECESSARY AS JUDGMENT IS CLEARLY NOT FINAL

Image requests modification under Rule 60(b) only in the alternative to its Rule 54(b) request. Because Gaiman utterly failed to show the Second Amended Judgment constituted a valid final judgment as to Image, the Court should amend the judgment and the Fees Order under the less-exacting Rule 54(b) standard. Image's motion under Rule 60(b) is properly brought however, and while Image will not restate its entire Opening Brief here, several corrections to Gaiman's arguments are necessary.

**A.**     **Image Informed Court of Changed Law Only Months After *Rentrop* Decision Which Stated Appellate Arguments Could Be Waived If Not Raised In Trial Court**

Even under the Rule 60(b) standard, Image's motion was timely.  Image did not bring its motion earlier because it was waiting for Gaiman to complete the accounting and intended to raise these points on appeal when final judgment issued.  The *Rentrop* decision changed that.

*Rentrop*, issued December 18, 2008, found that a party who had failed to bring an intervening Supreme Court opinion to the trial court's attention prior to final judgment had waived appellate arguments based on that change of law.  550 F.3d at 1117.  To avoid waiver, Image filed its Notice of Intervening Changes in Law with this Court three months later.  *See* D.N. 267.  Gaiman answered that he would not fully respond because of the bankruptcy stay.  D.N. 269.  Upon learning that the bankruptcy had been confirmed and conducting appropriate research to ensure that the stay was lifted, Image filed the instant motion.  There was no six-year delay.  Image acted promptly to protect its appellate arguments in a case where, as the Seventh Circuit stated, appealable judgment has not issued.

**B.**     **No Public Interest Is Required To Modify Inequitable Reverse Passing-Off Injunction Under Rule 60(b)(5)**

Gaiman's only argument against application of Rule 60(b)(5) to modify the reverse passing-off injunction overruled by *Dastar* is that applying this rule "typically involve[s] cases concerning public interests."  Opp. Br. at § III.B.2.a.[1]  But the position that private interest cases

---

[1]     The other cases cited by Gaiman are inapposite.  *W.L. Gore & Assocs. v. C.R. Bard, Inc.*, 977 F.2d 558 (Fed. Cir. 1992) related to a consent decree, which because it was entered into voluntarily required a stronger showing to modify under Rule 60(b)(5) than an injunction implemented after trial.  *Id.* at 561.  The court in *Sunbeam Corp. v. Charles Appliances*, 119 F. Supp. 492 (S.D.N.Y. 1953) refused to modify an injunction based on an intervening Supreme Court decision because Congress passed a law nullifying the decision immediately after it issued.  *Id.* at 494.  The party seeking modification in *Sunbeam* was admittedly attempting to have the injunction vacated so that it could violate the newly enacted law.  *Id.*

IMAGE'S REPLY BRIEF IN SUPPORT OF MOTION TO AMEND SECOND AMENDED JUDGMENT AND
ORDER DENYING FEES

ought to be reviewed under some stricter Rule 60(b)(5) standard has been explicitly rejected by the Seventh Circuit. *See Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994) (explaining that the same Rule 60(b)(5) standard applies in public and private interest cases and that "a court can modify an injunction that it has entered previously whenever the principles of equity require it to do so.") (citing *In the Matter of Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993)). Indeed, "[w]hen a change in the law authorizes what had previously been forbidden it is an abuse of discretion for a court to *refuse* to modify an injunction founded on the superseded law." *Barancik*, 23 F.3d at 1187 (emphasis added). While the change in law here was rendered by the Supreme Court, and not by Congress as in *Barancik*, it has the same effect. The formerly forbidden activity is now authorized. This Court may therefore properly vacate the reverse passing-off injunction under Rule 60(b)(5).

## C.    Image's Opening Brief Clearly Pointed Out Other Equitable Factors Supporting Modification Under Rule 60(b)(6) In Addition To Changed Law

Image pointed out in its Opening Brief that many factors *in addition to* the multitude of intervening Seventh Circuit decisions support application of Rule 60(b)(6) to amend the Fees Order and award Image its attorneys' fees. *See* Opening Br. at § VI.B. Gaiman ignores this and provides the tired quote that changed law "does not, *by itself*, justify relief under 60(b)." Opp. Br. at III.B.2.b (emphasis added) (quoting *McKnight v. U.S. Steel Corp.*, 726 F.2d 333, 336 (7th Cir. 1984)); *see also Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990) (same).[2]

This is not a case of changed law by itself. This is a case where the Seventh Circuit has declared the judgment unfinalized meaning Image could not appeal, Image has waited in limbo

---

[2]    The *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625 (7th Cir. 1997) case cited by Gaiman is completely inapplicable. It merely states that "[g]enerally a change in *state* decisional law is insufficient to constitute an extraordinary circumstance warranting relief under Rule 60(b)." *Id.* at 629 (emphasis added). Image is not raising changes in state law; its motion is based on Supreme Court and Federal Circuit decisions.

for over seven years due to the actions of other parties, and because the Seventh Circuit would apply current binding law on appeal, there is no doubt the prior decision to deny fees to Image as prevailing defendant would be reversed.  To prevent a needless appeal with a predetermined outcome, this is a situation where the Court should apply the Rule 60(b)(6) catchall.

     **D.**     **Important Public Interest In Protecting Free Speech And Inequity In Light Of _C.B.C. Distribution_ Supports Vacating Right Of Publicity Injunction Under Rule 60(b)**

Gaiman presently seeks to maintain control over a massive amount of publicly available speech – any and all factual information regarding a celebrity, even that in the public domain.  If allowed to his own devices, he would even stifle the Fitzgerald letter to readers in _Angela_ trade paperback, in which one paragraph mentions Gaiman's name in relation to development of the _Angela_ miniseries.  _See_ Opp. Br. at 4 n.2; D.N. 276 (Declaration of Thomas E. Dietrich ("Dietrich Decl.")), Exhibit ("Ex.") H.  This is celebrity image control run amok.  There is a strong public interest in seeing the First Amendment vindicated and permitting descriptive use of public domain facts by all.  For this and the other reasons cited in Image's Opening Brief, including the change in law wrought by _C.B.C. Distribution_, the Court may properly vacate the right of publicity injunction under Rule 60(b)(5) or (6).

## IV.     GAIMAN CONCEDES THAT THE LANHAM ACT CLAIM IS NOT "VIABL[E]"

In the face of a unanimous Supreme Court decision, Gaiman concedes, as he must, that _Dastar Corp. v. Twentieth Century Fox Film Corp._, 539 U.S. 23 (2003), "affect[s] the viability of the judgment awarded him under the Lanham Act."  Opp. Br. at 1 ¶ 2.  Gaiman contests the reverse passing-off Lanham Act claim's viability solely upon the grounds of waiver.  For the reasons given above, the judgment (as expressly conceded by Gaiman in his last representation to the Court) is not final.  The Court may, and should, correct its own errors before final judgment.  _See Partmar_, 347 U.S. at 100; _Rochester Cheese_, 906 F.2d at 1191.

**A.    Image Has Not Waived Its Right To Appeal The Lanham Act Claim**

Image has not waived its rights.  Regarding Gaiman's unconstitutional Lanham Act and

right of publicity claims, Image raised in 2002 what were then novel points of law, and the Court

rejected them.  The judgment could not become final until an accounting between the other

parties in the case was complete, and not being a party to the accounting, Image had no control

over the procedure.  There has been an intervening change in law and lifting of the bankruptcy

stay.  *See* Opening Br. at § I.  Even absent those two justifications, there is a third.  Until a case

of first impression was resolved by the Federal Circuit, Image reasonably believed that after

post-trial motions were decided, any further relief had to await appeal.  Under *Rentrop v.*

*Spectranetics*, litigants now must notify the trial court of intervening changes in law rendering

non-final judgments erroneous, else the appellant loses its right to appeal on that point of law.

*Rentrop*, 550 F.3d at 1117.

**1.    Image Complied With *Rentrop,* Giving Notice And Moving The Court**

Image notified the Court that intervening changes in law made its interim

judgment erroneous and untenable.  *See* D.N. 267.  Gaiman took the position just months ago

that the Court should do nothing because the judgment was *not yet final*, and therefore correcting

any error would be premature and a waste of judicial resources.  *See* D.N. 269.  After the

bankruptcy stay was lifted, Image followed up with the instant motion for relief.  Gaiman agilely

reverses course before the Court, now contending the *very opposite* of his prior argument!  In

Gaiman's last representation (D.N. 269) he contended that the judgment was not yet final.  Now

seeing the merits are against him, Gaiman contends that judgment is final and Image has waited

too long.

### 2. The Seventh Circuit Previously Rejected Gaiman's Assertion That Judgment Was Final, Holding Instead That The Prior Interlocutory Appeal Was On A Predicate Copyright Ownership Issue

Gaiman also fails to inform this Court that the Seventh Circuit already rejected his argument that the judgment was final. The prior appeal was only *interlocutory* and expressly limited by the Seventh Circuit to addressing points of law affecting copyright ownership. Specifically, the Seventh Circuit considered whether the Medieval Spawn and Cogliostro characters were sufficiently delineated to be copyrightable, and certain issues affecting the merits of Gaiman's co-ownership copyright claim against other co-defendants. *See Gaiman*, 360 F.3d at 648. None of these issues affected Image. As the Seventh Circuit pointed out: "[t]he accounting is not yet complete, and *so the judgment is not final*; McFarlane's appeal is therefore limited to the injunction requiring him to acknowledge Gaiman's co-ownership." *Id.* (emphasis added). Obviously if the judgment is not final as to McFarlane, absent an express order, it is not final as to Image either. Fed. R. Civ. P. 54(b); *see supra* Section I. Gaiman offers nothing to contradict the Seventh Circuit, and nowhere does he cite any express ruling that the judgment was final only as to Image.

### 3. Even If Image Had Somehow Waived Its Right – Which It Did Not – Lifting An Erroneous Prior Restraint Against Publications Merits Relief

According to the Seventh Circuit, the judgment is not final, and Image therefore has not waived any rights. *Assuming arguendo* that the judgment were final, the Court should still lift an unlawful prior restraint pursuant to Rule 60(b). *See supra* Section II.B. Gaiman's delay in finalizing the accounting cannot be charged to Image. The Court – at Gaiman's urging – wrongly issued an injunction under the Lanham Act against a publication, as Gaiman now concedes. This is an unlawful and continuing prior restraint, and the Court should lift its injunction and permit Image to publish.

V.     **GAIMAN IGNORES NEW SEVENTH CIRCUIT GUIDANCE THAT A COURT MUST APPLY A "VERY STRONG" PRESUMPTION THAT PREVAILING COPYRIGHT DEFENDANTS SHOULD RECEIVE THEIR FEES**

A.     **Judge Shabaz Could Not, And Did Not, Apply The Correct Standard Because It Was Not Then Available To Guide Him And Inform Proper Judicial Weighing**

This case was filed and tried in 2002. The case law regarding proper application of the Supreme Court's *Fogarty v. Fantasy* decision to prevailing defendants was undeveloped. Since post-trial motions were completed, the Seventh Circuit has reached a fuller understanding of how to properly apply *Fogarty*. Citing the Constitution's utilitarian underpinning, the four Seventh Circuit decisions demonstrate that in nearly every case, a prevailing defendant will receive his fees so that he will have a monetary incentive (unlike a plaintiff) to resist improper claims such as Gaiman's. *See Assessment Tech. of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004). Understandably, the "very strong" presumption standard was not applied by Judge Shabaz because the Seventh Circuit had not yet given its guidance. Nowhere in the Court's Fees Order (D.N. 252) is there any reference to use of the proper standard for weighing such a request. Neither does the Court's Order recite that, despite the "very strong" presumption, the Court found that it was properly overcome in denying fees.

Gaiman argues it is a "gross overstatement" that the Court must revisit its earlier decision in light of *Assessment Technologies*. Opp. Br. at 17 ¶ 2. But the Seventh Circuit has directed exactly that where the district court denied fees under the *Fogarty* factors but failed to consider the effect of *Assessment Technologies*' presumption strongly favoring prevailing defendants. *See Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005) (remanding "with instructions to evaluate [fee] request in light of *Assessment Technologies*," which had issued after the district court denied fees under *Fogarty* but before the appeal). Gaiman does not explain why this Court must not follow *Assessment Technologies* in light of *Woodhaven*.

**B.**    **It Is Not True That "When One Examines The Case As A Whole, Gaiman Was The Prevailing Party On Copyright Issues" As He Lost On All Claims**

Gaiman lost on all three copyright claims against Image.  First, he lost by asserting moral rights claims that are not cognizable under U.S. copyright law.  Contrary to Gaiman's posturing, Gaiman was forced to amend his complaint by Image's motion to dismiss.  On the two remaining claims, his stated theory of liability against Image's co-defendants – co-ownership – was completely irrelevant due to extensive precedent holding that licensees such as Image cannot be sued for infringement.  As a licensee from McFarlane, Image could not have been liable no matter if Gaiman did or did not co-own the copyrights.  Ignoring the merits, Gaiman pressed onwards to the eve of trial, where the claims were finally disposed of on summary judgment.  Even after trial, Gaiman improperly sought to force an accounting upon Image for copyright claims already dismissed.

Gaiman cites no authority for the proposition that he was entitled to sue parties on liability theories contrary to existing law.  Neither does Gaiman cite any evidence that Image could be held to be an alter-ego of Mr. McFarlane and derivative liability attached to Image. Image repeatedly sought to be dismissed from the case but was dragged through meritless litigation even beyond trial.

**C.**    **Denial Of Copyright Fees To Gaiman As A Plaintiff Is Irrelevant As Image's Motion Rests Solely On New Authority Regarding Prevailing *Defendants***

The Court's denial of Gaiman's fees is irrelevant here; Image's motion is based on intervening changes in circuit law *applicable to defendants*.  *See Assessment Tech.*, 361 F.3d at 437-38 (describing reasoning for applying "very strong" presumption in favor of prevailing defendants and granting fees award for defendant); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2004) (reversing district court's failure to award fees to defendant where proper presumption was not applied); *Riviera Distrib., Inc. v. Jones*, 517 F.3d

926, 928 (7th Cir. 2008) (same); *Eagle Serv. Corp. v. H2O Indus. Serv., Inc.*, 532 F.3d 620, 624-25 (7th Cir. 2008) (explaining that "[i]f there is an asymmetry in copyright, it is one that actually favors defendants," and reversing denial of fees to prevailing defendant). Gaiman had his incentive to pursue copyright claims – monetary compensation if he won. Image, on the other hand, received nothing for successfully defending itself against Gaiman's objectively unreasonable claims. Seventh Circuit stated that such circumstances are the "best illustration" of why a court should grant a prevailing defendant's request for fees. *See Assessment Tech.*, 361 F.3d at 437.

Furthermore, Gaiman cites no case supporting his position that only "a lone defendant who prevailed on a single claim of copyright infringement" is entitled to his fees. *See* Opp. Br. at 17 ¶ 3. This conjured-up limitation is illogical. Image successfully defeated Gaiman on three copyright counts and is just as (if not more) deserving of a fees award than a defendant who won on a single claim.[3] The Court did not apply the correct standard in 2002 because it was not available. It is available now and should be applied. Image is a small company, stood to gain nothing in contesting Gaiman's unwarranted claims except vindication of Image's rights, and under present Seventh Circuit precedent Image should be awarded its fees.

## VI.    IMAGE'S FIRST AMENDMENT RIGHTS TO PUBLISH FACTS IN THE PUBLIC DOMAIN OUTWEIGH GAIMAN'S RIGHT OF PUBLICITY CLAIM

Proper balancing results in dismissal of Gaiman's right of publicity claim. The purpose of the right of publicity tort is to "provide incentives to encourage a person's productive

---

[3]    Gaiman inexplicably tries to detract from Image's winning on all copyright claims by pointing out that Image initially lost on the Lanham Act and right of publicity counts. First, *Gaiman has conceded* that the Lanham Act claim is no longer "viabl[e]" in light of *Dastar*. Opp. Br. at 1 ¶ 2. Second, Image contends that the right of publicity claim too is flawed. But even if it were not, Gaiman was awarded his fees on that claim, and denying Image's copyright fees in addition is not supported by the federal copyright law. Denying fees to vindicate a state right of publicity would run afoul of the Supremacy Clause.

activities and to protect consumers from misleading advertising." *C.B.C. Distrib. & Market., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 824 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 2872 (June 2, 2008) (citing *Zacchini v. Scripps-Howard Broad.*, 433 U.S. 562, 573 (1977)). Gaiman does not dispute that the former element is not present here, and his argument regarding the latter is unfounded. His surprisingly overbroad interpretation of publicity rights, as further indicated by footnote 2 of the opposition brief, does more than chip away at First Amendment rights, it demolishes them entirely. *C.B.C. Distribution* extends the First Amendment shield, consistent with prior decisions, to protect a "related" publication whose content uses public domain facts about a public figure, including name, biography, and likeness. The scope of *C.B.C. Distribution*'s holding is broad, and it sweeps away Gaiman's claim.

### A.    The Constitution's Supremacy Clause Does Not Require That A Federal Court Await State Notification Before Vindication Of The First Amendment

As a preliminary matter, Gaiman's argues that because Image did not first notify a state official, Image may not seek relief under federal law against an unlawful prior restraint issued by a branch of the federal government. Opp. Br. at 19 n.6. Gaiman overlooks the Supremacy Clause, which states:

> *This Constitution*, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, *shall be the supreme Law of the Land*; and the Judges in every State shall be bound thereby, any Thing in the Constitution *or Laws of any State to the Contrary notwithstanding*.

U.S. Constitution Art. VI, Cl. 2 (emphasis added). Wisconsin is powerless to enjoin seeking of proper relief under federal law. There can be no justification for requiring Image to notify a state official before it may seek redress of federal rights in a federal court. Not since John C. Calhoun argued for the doctrine of nullification has any state claimed the right to nullify federal law. Whatever the merits of Messrs. Calhoun's and Gaiman's position, it was settled by the Civil

War.  Image concedes that it has not notified the Wisconsin Attorney General of this case, but Image need not do so.  There is nothing in the Bill of Rights requiring that Wisconsin be notified before those Rights are enforced.

Were the law otherwise, the scope of the First Amendment's protections would be left to the interests of state officials who presumably would be tempted to give primacy to their own states' laws.  Under Gaiman's reading of the law, the keys to the federal courthouse are held by Wisconsin state officials, not the federal judiciary.  It is black letter law that federal courts may properly interpret the First Amendment.  *See Lovell v. City of Griffon*, 303 U.S. 444, 450 (1938) (explaining that freedom of speech and the press are federal questions).  The state notification provision no doubt was designed as a safeguard of proper state separation of powers and is not applicable here.

Gaiman misconstrues Image's motion as one to strike down Wisconsin's statute in its entirety in every case.  This is a straw man.  Nowhere does Image raise such a challenge. Instead, Image is only challenging the *application* of the Wisconsin statute on these facts, not arguing that the entire statute in every circumstance is unconstitutional.

**B.    Gaiman Again Errs – Image Did Raise A First Amendment Challenge To Application Of The Right Of Publicity In Briefing Image's Motion To Dismiss**

Gaiman badly misstates the facts in arguing waiver by Image.  Gaiman stated, "Image never challenged the constitutionality of Gaiman's right of publicity claim at any time during the original proceedings in this case . . . ."  Opp. Br. at 19 ¶ 2.  Not true.  Image argued the following during its briefing on a motion to dismiss:

> [T]he First Amendment protects publication of truthful biographical facts about Gaiman.  Nowhere does the right of publicity encompass such facts, and Plaintiffs provide no authority for the proposition that they must give consent to others' use of such "biographical information."  To the contrary, Wisconsin's

> statute protects only the "name, portrait or picture" of a living
> person.  Wis. Stat. § 895.50(2).  The right of publicity claims must
> therefore be dismissed, as they would otherwise trench upon the
> First Amendment.

D.N. 27 at 9 ¶ 3.  Intervening law, as *C.B.C. Distribution* demonstrates, agrees.

Gaiman's citation to *Harris Trust and Sav. Bank v. E-II Holdings, Inc.*, 926 F.2d 636 (7th Cir. 1991) is inapposite.  That case dealt with a motion to amend a final judgment, and the appealing party's statements made before final judgment indicated a "conscious, deliberate waiver" of the legal argument later raised in the motion.  *Id.* at 641-42.  Here, final judgment has not issued, and Image did raise the argument at the outset.  Image is therefore properly seeking a cure for Gaiman leading this Court into reversible error, as well as preserving Image's appeal rights.

For Image to prevail, though, it does not matter that Image early on alerted the Court that Gaiman's right of publicity claim violated the First Amendment.  What matters is that an intervening circuit opinion on very similar facts found that First Amendment rights prevail over claims that seek to remove biographical facts from the public domain.

### C.   Gaiman Does Not Dispute That He Seeks To Continue An Injunction Against Use Of Biographical Facts Already In The Public Domain

Gaiman does not dispute that he seeks continued enjoinment on publication of facts about him already in the public domain.  Neither does he dispute Image's point that the continuing injunction permits Gaiman to remove those facts from any publication.  *See C.B.C. Distrib.*, 505 F.3d at 823 (explaining that "[t]hough this dispute is between private parties, the state action necessary for first amendment protections exists because the right-of-publicity claim exists insofar as the courts enforce state-created obligations that were 'never explicitly assumed'").  Gaiman argues that Image first needs to establish "a similar 'substantial public interest' in biographical information about Gaiman," before any publication is permitted.  Opp. Br. at 20 ¶ 3.

Under Gaiman's interpretation, no First Amendment rights attach unless a defendant can show such interest in a particular author.

*C.B.C. Distribution* and the First Amendment cannot be read so narrowly.  Nowhere did the *C.B.C. Distribution* court hold that, for each individual baseball player, C.B.C. first had to demonstrate such an interest.  Instead, the court held that the interest was in the "public value of information about the game of baseball and its players . . ."  *Id.* at 823.  A fair analogue would be a common sense understanding that there is interest in authors and background information about the creation of successful works of fiction.  For example, interest in J.K. Rowling, author of the *Harry Potter* series.

Gaiman also ignores that he *has* testified that the public was interested in him.  (Trial Transcript ("Tr.") II at 66:1-15 (describing his "famous" works); 117:24-118:9 (describing public interest in himself).)  Indeed, he testified that *it was because of that public interest* that the use of his biographical information violated his right of publicity.  (Tr. 117:24-118:9.)  Gaiman tries to put Image in a catch-22 – Image allegedly must show that there is a substantial public interest in Gaiman to have a free speech right to publish facts about him, but if there is such a substantial public interest, publishing those facts allegedly violates his right of publicity.  This is untenable and contrary to law.

*C.B.C. Distribution* holds that under the First Amendment, a substantial public interest exists in being able to publish "names, nicknames, signatures, pictures, playing records, and/or biographical data" about baseball players in connection with fantasy baseball products.  *C.B.C. Distribution*, 505 F.3d at 823.  Likewise, a substantial public interest exists in permitting a publisher to publish the name and background of a book's author *on the book the author wrote*.  As the Eighth Circuit correctly observed: "the information used . . . is all readily available in the

public domain, and it would be strange law that a person would not have a first amendment right to use information that is available to everyone." *Id*. Gaiman does not contest that his name and biographical facts about him were, and are, in the public domain.

### D.   Gaiman Does Not Dispute That Right Of Publicity Provides No Incentive For Him To Produce New Works

Like *C.B.C. Distribution*, this case "barely, if at all, implicate[s] the interests that states typically vindicate by providing rights of publicity to individuals. 505 F.3d at 824. Gaiman does not dispute that use of his name and facts about him do not reduce the financial incentive for him to produce new works. The baseball players in *C.B.C. Distribution* were paid primarily for playing baseball, not selling their names. *Id*. Gaiman is paid primarily for writing books. In the field of entertainment, "the inducements generated by publicity rights are not nearly as important as those created by copyright and patent law . . . ." *Cardtoons, L.C. v. Major League Baseball Players Ass'n.*, 95 F.3d 959, 974 (10th Cir. 1996).

Contrast Gaiman's claim with *Zacchini*, where the television replay of a "human cannonball" act destroyed consumer demand to see Mr. Zacchini's live performance. Rebroadcasting "pose[d] a substantial threat to the economic value of that performance." *Zacchini*, 433 U.S. at 575. "Moreover, the broadcast of petitioner's entire performance, *unlike the unauthorized use of another's name for purposes of trade or the incidental use of a name or picture by the press*, goes to the heart of petitioner's ability to earn a living as an entertainer." *Id*. at 576 (emphasis added). Gaiman faced no similar threat. His livelihood was not put at risk by Image's use of his name and biographical facts. Any loss Gaiman may have suffered was, as the *C.B.C. Distribution* court found, outweighed by the paramount protection of free speech rights.

**E.    Gaimain's False Advertising Claim Was Dismissed And There Was Nothing "Misleading" About The Information About Gaiman That Image Used To Describe A Work He Authored**

Gaiman falls back on repetition of his claim that use of facts about him on the book he wrote constitutes "misleading advertising" and false implied sponsorship.  The argument that rights of publicity "protect against consumer deception . . . has little merit," for "the Lanham Act . . . already provides nationwide protection against false or misleading representations in connection with the sale of products."  *Cardtoons*, 95 F.3d at 975.  Furthermore, Gaiman does not point to a single fact about Gaiman included in Image's publication that was false or misleading.  Image's use of objective facts about Gaiman was not misleading: Gaiman did in fact author the book, as he admits.  Opp. Br. at 3 ¶ 3.  Whether consumers would think him "proud to see it on store shelves" (*Id*. at 21 ¶ 1) is entirely irrelevant.[4]  Gaiman offers no evidence that consumers ever consider, much less care, whether the author is pleased with the terms of his publishing contract.

In fact, Gaiman again fails to inform the Court that he initially brought a false advertising claim against Image relating to the claim seeking attribution now preempted by *Dastar.  See* D.N. 28 at 23 ¶¶ 94-98 (raising in Amended Complaint allegation of Wisconsin state law false advertising violation).  The Court granted defendants' motion for a directed verdict on that claim at trial.  *See* D.N. 204 at 3 ¶ 5.  Gaiman chose *not* to bring a false advertising claim relating to *Angela's Hunt*.  The reason is clear: Image's publication of facts that Gaiman supplied, and does not contest, is not "misleading" and there is no reason to "protect consumers" from knowing who

---

[4]    One could assume that Sarah Palin might not be "proud" to see *Going Rouge: Sarah Palin An American Nightmare* on store shelves the same day her biography, *Going Rogue: An American Life*, was released.  Gaiman's interpretation of First Amendment scope would prohibit publication of works critical of public figures that used their names and facts about them.

wrote the book they are planning to read.  It is far too late for Gaiman to shoehorn in some additional claim to bolster his right of publicity argument.

Furthermore, Image's publication is related to facts about Gaiman, such as his name and biography and thus is not unprotected "naked advertising" that uses his name on an unrelated product.  *See* Opening Br. at § V.A. n.2 (explaining that commercial speech is that which uses a person's name or likeness solely to attract attention to a work "not related to the identified person" (quoting *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 337 (E.D. Pa. 1996)); *see also Cardtoons*, 95 F.3d at 970 (finding that use of a name or likeness is commercial speech when it "merely advertise[s] another unrelated product.").  Gaiman wrote the book, and the facts listed on and inside the cover were about him.  The text provided commentary on the creation and creator of the Angela character depicted therein and qualifies as core protected First Amendment speech.  *See Winters v. N.Y.*, 333 U.S. 507, 510 (1948).  It is of "vital importance" to protect such an "essential liberty from every sort of infringement."  *Lovell*, 303 U.S. at 452.  Gaiman never responds to this argument, choosing instead to bull his way towards suppressing speech with assertions of "endorsement."  But appellate courts, in many more opinions than just *C.B.C. Distribution*, say otherwise.

F.    **_C.B.C. Distribution_ Is Not An Outlier – Decisions From Many Other Courts Support Publisher's Right To Use Public Domain Facts**

Gaiman portrays *C.B.C. Distribution* as an outlier, a "fact-specific holding that is not analogous to the present case."  Opp. Br. at 20 ¶ 3.  But Gaiman ignores the throng of other cases supporting a publisher's right to use public domain facts in the manner that Image did.

According to the New York Court of Appeals, "[u]ndoubtedly, the publisher had a right to inform the public of the nature of the book being sold."  *See Rand v. Hearst Corp.*, 31 A.D. 2d 406, 410 (N.Y. Ct. App. 1969).  In *Rand*, Eugene Vale wrote a book that, in a review by the *San*

*Francisco Examiner*, was compared with the works of novelist Ayn Rand. The book's publisher put the *Examiner* quote on the front cover of the book; it read "Ayn Rand Enjoys . . . The Same Kind of Mystique Analysis as Vale . . . Their Underlying Drive Is The Same." *Id*. at 407. Rand sued on a right of publicity claim and lost. The court found that Rand, like Gaiman, was a public figure in the literary world, and so the "right to discuss her work, to comment on it, to criticize and compare, is thrown into the public domain." *Id*. at 410. The use of her name was not the sort of clear "commercial exploitation" that supported a right of publicity allegation, and her claim impinged on "the right of a publisher in informing the public of the nature of his book . . . ." *Id*. at 411. Here, Gaiman complains about an even closer link between himself and the publication. His name and biography are not being used in relation to a book written by someone else, but one written by him.

The Ninth Circuit, in the "Tootsie case," held that a publication which mixes promotion and content related to the public figure is protected by the First Amendment against a right of publicity claim. *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001). There, after Dustin Hoffman memorably impersonated a woman in the movie "Tootsie," LAM, a women's magazine, included in an issue without authorization an altered a photo of Mr. Hoffman depicting him yet again in a dress, albeit one different than any he had worn in the movie. Mr. Hoffman sued, claiming that his image was used to drive sales and that his right of publicity was violated. He lost. The Ninth Circuit found that while the photo may have been used to "'rev up' the magazine's profile," "[a]ny commercial aspects are inextricably intertwined with expressive elements, and so they cannot be separated out from the fully protected whole." *Id.* (internal quotations omitted). "A printed article meant to draw attention to the for-profit

magazine in which it appears . . . does not fall outside of the protection of the First Amendment because it may help to sell copies." *Id*.

The Hoffman picture was not used "merely for the purpose of selling a particular product," and nor did it "simply advance a commercial message." *Id*. "There are commonsense differences betweens speech that does no more than propose a commercial transaction and other varieties, and common sense tells us this is not a simple advertisement." *Id*. at 1185-86 (internal citations omitted). The image was thus entitled to the full free speech protection accorded to noncommercial speech. *Id*. at 1186. Common sense here likewise shows that Image's use of Gaiman's name and facts about him on the book he wrote does more than advance a commercial message. Thus, even if including Gaiman on *Angela's Hunt* did help sales, Image's speech still receives full First Amendment protection which outweighs any right of publicity interest.

Likewise, the Second Circuit denied relief to Ginger Rogers on her allegation that the movie title "Ginger and Fred," about a fictional couple modeled after herself and Fred Astaire, violated her right of publicity by implying she endorsed the film. *See Rogers v. Grimaldi*, 875 F.2d 994, 1004-05 (2d Cir. 1989). The court found that the use of Rogers' name would not imply endorsement unless the title was "wholly unrelated" to the content of the work or was "simply disguised commercial advertisement for the sale of goods or services." *Id*. at 1004. Because "the title 'Ginger and Fred' is clearly related to the content of the movie and is not a disguised advertisement for the sale of goods or services or a collateral commercial product . . . the right of publicity does not provide relief for Rogers' claim." *Id*. (citing, as an example of something that hypothetically might violate the right of publicity, the publication of "Rudolph Valentino's Cookbook," where "neither the recipes nor the menus described were in any fashion related to Valentino"). Certainly Image's use of Gaiman's name is "clearly related to the

content" of *Angela's Hunt* and is not a "disguised advertisement" for some other product. Gaiman's "endorsement" exhortations fail.

As previously discussed in the opening brief, the Tenth Circuit determined that parody trading cards using names, biography, and commentary about baseball players were protected because the cards did not merely advertise another unrelated product. *Cardtoons*, 95 F.3d at 970. Here, Image did not use Gaiman's name or biography to advertise an unrelated product, but one that he created. Gaiman cannot plausibly deny that he is unrelated to Image's publication, as he is indisputably is the publication's author. *See* Opp. Br. at 3 ¶ 3. First Amendment protection therefore attaches.

Finally, the Fifth Circuit in *Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994) found that First Amendment prevents a person from having a right to their own biographical information. Biographical facts "lack[] the value of a name or likeness that the [right of publicity] protects." *Id*. at 437. Because "there is no fear that any valuable information provided by the facts of one's life will be reduced by repeated use, the law does not forbid the 'appropriation' of this information." *Id*. at 439. Gaiman's spin that publication of facts from his biography imply facts about his subjective state of mind, such as his happiness with the publication (Opp. Br. at 21 ¶ 1), is grasping sophistry. Moreover, Gaiman's latest attempt at yet another bite at the apple fails, as he chose not to raise a false advertising claim on *Angela's Hunt*. These cases demonstrate that *C.B.C. Distribution's* extension of First Amendment law is fully supported by other courts and make clear that, when weighed properly, Gaiman's right of publicity claim impinges too far on Image's First Amendment rights and should be dismissed.

### G.    Existence Of A Contract Is Irrelevant To First Amendment Protection

Gaiman reverses course for the second time on an irrelevant point of law. He now argues that Image should have relied upon a contract with him to govern use of his name and

biographical information.  Opp. Br. at 21 ¶ 3.  Before trial Gaiman conceded that, if the jury

found that a contract was formed between Gaiman and McFarlane in 1997, Defendants had

permission to use Gaiman's name.  *See* D.N. 173 at 2 ¶ 2 (Pls.' Objection to Defs.' Mot. in

Limine).  Gaiman took this position before the Court, defeating Image's motion *in limine* by

asserting (contrary to his current stance) that:

> If the jury finds for plaintiffs on the contract issues, plaintiffs will
> not present any testimony as to damages on plaintiffs' claims under
> the Wisconsin Right of Privacy and Wisconsin common law
> misappropriation of Gaiman's name and identity. . . . As
> defendants suggest in other filings, *if there is a contract between
> the parties, the defendants had permission to use Mr. Gaiman's
> name* and he will be compensated according to the terms of the
> contract.

*Id*. (emphasis added).  The jury subsequently found that there was a contract, which should have

extinguished Gaiman's right of publicity claim.  Opp. Br., Ex. 1.  But Gaiman jettisoned his prior

view and inconsistently continued to pursue his right of publicity claim.  Image has already been

down the road of attempting to rely on a contract in this matter.

Furthermore, under the *C.B.C. Distribution* district court's opinion, a contract that barred

use of public domain facts about Gaiman would run afoul of the First Amendment and be void as

a matter of public policy.  *See C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced

Media, L.P.*, 443 F. Supp. 2d 1077, 1106 (E.D. Mo. 2006) (citing *Lear, Inc. v. Adkins*, 395 U.S.

653, 670 (1969)).  That court found that because the First Amendment protected such rights, one

could not contract them away.  "[T]he strong federal policy favoring the full and free use of ideas

in the public domain as manifested in the laws of intellectual property prevails over the

challenged contractual provisions."  *Id*.  Such a provision prohibiting use of public domain

information was found "unenforceable and void as a matter of public policy."  *Id*. at 1107.  First

Amendment protection of public domain speech triumphs even over contract.  Thus, Gaiman's

argument that the Court should instead look to contract law to prevent overbroad right of publicity claims is not relevant to the First Amendment defense raised here by Image.

### H. Footnote 2 Of The Opposition Brief Shows Gaiman Seeks To Block *Any* Mention Of Himself No Matter How Newsworthy Or Fleeting

Gaiman's extreme view is that he can suppress all speech about himself and his works. *See* Opp. Br. 4 n.2.  In footnote 2 of his opposition, Gaiman asserts that the Fitzgerald letter in the *Angela* trade paperback is "an even more blatant violation of Gaiman's right to publicity" than the *Angela's Hunt* text Gaiman sued over.  *Id*.  The former is "murder" compared to the latter's "assault."  *Id*.  This over-the-top analogy will not bear constitutional scrutiny.

The Fitzgerald letter provides background facts about a work of fiction.  It appears not on the cover of *Angela*, but on the inside first page.  *See* Dietrich Decl., Ex. H at 2.  The stated reason for the letter is to tell readers "the main reasons both the [*Angela*] mini-series and now the trade paperback exist."  *Id*.  Gaiman is mentioned in one of 11 paragraphs.  This paragraph, the letter's third, reads:

> The date, March, 1993.  Spawn nine, written by Neil Gaiman and drawn by Todd McFarlane, featuring the first appearance of Angela, hits the stores.  Immediately after the book is released, the letters start pouring in begging to see more of this fierce new Spawn stalker.  Those letters, your letters, did not go unnoticed. Neil, also the award winning writer of Sandman, was consequently asked if he would be interested in writing a follow up mini-series to the Spawn issue he penned, based on this new Image character. He was more than happy to oblige.

*Id*. ¶ 3.  The letter makes no further reference to Gaiman; instead it continues to describe the production and sale of the *Angela* issues.

Gaiman alleges this written commentary informing fans of the history of the publication they are about to read is the right of publicity equivalent of murder.[5]  Gaiman's argument that he alone may authorize commentary about his works, however pleasing to the author, should not be endorsed by this Court.  For many years, the Supreme Court has guarded the right to a free press, a term which includes "every sort of publication which affords a vehicle of information and opinion."  *Lovell*, 303 U.S. at 452.  Protecting this "essential liberty from every sort of infringement" is of "vital importance."  *Id.*

Both the Fitzgerald letter and *Angela's Hunt* fit soundly within *Lovell*'s protective scope as publications bearing information and even author and artist opinion and commentary.  True, they may be for purposes of entertainment, but entertainment value does not strip free speech protections.  *See C.B.C. Distrib.*, 505 F.3d at 823 (restating black letter law that "speech that entertains, like speech that informs, is protected by the First Amendment because '[t]he line between the informing and the entertaining is too elusive for the protection of that basic right.'") (quoting *Winters v. N.Y.*, 333 U.S. 507, 510 (1948)).  In the words of *Winters*:

> Everyone is familiar with instances of propaganda through fiction.
> What is one man's amusement, teaches another's doctrine.
> Though we can see nothing of any possible value to society in
> these magazines, they are as much entitled to the protection of free
> speech as the best of literature.

---

[5]     Gaiman analogizes murder to Image's publication of his name and biographical facts to describe a book that Gaiman authored.  Opp. Br. at 4 n.2.  Ironically, during the same week, Ilich Ramírez Sánchez, a.k.a. Carlos the Jackal, who has claimed to have killed more than 2000 people, sued in France on the same right of publicity theory.  He brought suit against a French production company shooting a documentary on his life to prevent the company from using his name and "biographical image" without obtaining his prior permission.  *See* Edward Cody, "Carlos the Jackal, imprisoned for life, looks in lawsuit to protect his image," *The Washington Post*, January 26, 2010 at http://www.washingtonpost.com/wpdyn/content/article/2010/01/25/AR2010012503690.html?hpid=moreheadlines.  While Mr. Sánchez so far has only sued under French law, the issue of removing publicly available facts from the public domain is the same.

333 U.S. at 510.

Gaiman's reaction to the Fitzgerald letter boils down to: it contains my name so if they do not pay me, I will block publication.  No court should support this dangerously overbroad reach of the right of publicity, the ramifications of which are explained fully in Image's opening brief. *See* Opening Br. at III.C, IV.C.1.  And no court has permitted such complete disregard of the First Amendment.  If it had, newspapers could not print, magazines could not run, biographies could not be published, and the public would remain uninformed.

## **CONCLUSION**

For the foregoing reasons, Image respectfully requests that the Court: (1) dismiss the Lanham Act claim and lift the accompanying injunction; (2) award Image its fees on the three dismissed copyright claims; and (3) dismiss the Wisconsin statutory and common law right of publicity claims and dissolve the injunction issued under those claims.

DATED:  February 16, 2010                    Respectfully submitted,

                                            CROWELL & MORING LLP


                                            /s/ R. Scott Feldmann
                                            _____
                                            R. Scott Feldmann
                                            Thomas E. Dietrich

                                            Attorneys for Defendant
                                            Image Comics, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 3 Park Plaza, 20th Floor, Irvine, California 92614-8505.  On **February 16, 2010**, I served a copy of the following document(s) described as:

**DEFENDANT IMAGE COMICS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO AMEND SECOND AMENDED JUDGMENT AND ORDER DENYING FEES PURSUANT TO RULE 54(b) OR, IN THE ALTERNATIVE, RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

on the parties or attorneys for parties in this action who are identified on the attached service list using the means of service described on the service list.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on **February 16, 2010,** at Irvine, California.

/s/
R. Scott Feldmann

## SERVICE LIST:

**BY MAIL**

| Kenneth F. Levin, Esq.<br>Kenneth F. Levin and Associates<br>20 N. Wacker Drive<br>Suite 2200<br>Chicago, IL  60606<br><br>Telephone:    (312) 984-6000 | *Counsel for*<br>*Neil Gaiman*<br>*Marvels and Miracles, LLC* |
| --- | --- |

**BY ECF**

| Jeffrey A. Simmons, Esq.<br>Foley & Lardner LLP<br>150 East Gilman Street<br>Madison, WI  53701<br><br>Telephone:    (608) 258-4267 | *Counsel for*<br>*Neil Gaiman*<br>*Marvels and Miracles, LLC* |
| --- | --- |
| Michael Kahn, Esq.<br>Bryan Cave LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600<br>St. Louis, MO  63102-2750<br><br>Telephone:    (314) 259-2251 | *Counsel for*<br>*Todd Mcfarlane*<br>*Todd Mcfarlane Productions, Inc.*<br>*TMP International, Inc.*<br>*Mcfarlane Worldwide, Inc.* |
| Todd Smith, Esq.<br>Godfrey & Kahn S.C.<br>One East Main Street<br>Suite 5000<br>Madison, WI  53701<br><br>Telephone:    (608) 257-3911 Ext. 2653 | *Counsel for*<br>*Todd Mcfarlane*<br>*Todd Mcfarlane Productions, Inc.*<br>*TMP International, Inc.*<br>*Mcfarlane Worldwide, Inc.* |

IR4379238.4
Cam No. 100381.001