IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEIL GAIMAN and MARVELS
AND MIRACLES, LLC,

                Plaintiffs,

      v.

TODD MCFARLANE, TODD
MCFARLANE PRODUCTIONS, INC.,
TMP INTERNATIONAL, INC.,
MCFARLANE WORLDWIDE, INC.,
and IMAGE COMICS, INC.,

                Defendants.

OPINION AND
ORDER

02-cv-48-bbc[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an eight-year-old case that arose out of disagreements among the parties about plaintiff Gaiman's right to a copyright interest in certain comic-book characters, about defendants' use of plaintiff's image and biography without his permission and their passing off his works as their own, in alleged violation of the Lanham Act.  It is before the court on a motion brought by defendant Image Comics, Inc. and joined in part by the remaining

---

[1] Judge Shabaz handled this case originally.  Now that he has retired, the case has been reassigned to me.

1

defendants to amend the second amended judgment entered in the case on January 9, 2003. (Plaintiff Marvels and Miracles, LLC has no interest in the disposition of this motion and will not be referred to again.)   I conclude that the second amended judgment bars defendants' efforts to re-litigate matters decided by Judge Shabaz in 2002 and 2003 and that even if it did not, defendants' motions to amend are either without merit or untimely.

From the record, I make the following findings of fact.

## FINDINGS OF FACT

At trial in 2002, a jury found that plaintiff Neil Gaiman had a copyright interest in the works at issue, that defendants had breached plaintiff's right of publicity under Wisconsin law (for which he was due damages and mandatory attorney fees) and that defendants had passed off plaintiff's works as their own, in violation of his rights under § 43(a) of the Lanham Act.   The parties filed cross motions for attorney fees, which the court denied in all respects.   The court did not reach the matter of damages for the copyright violations because the parties had stipulated before trial to a procedure for accounting.   The court entered judgment on October 7, 2002, dkt. #178, and amended it shortly thereafter to add injunctive relief in favor of plaintiff.   Dkt. #210.

On the parties' post trial motions, the court revised the judgment again, dkt. #253, memorializing the jury's findings and its own decision on attorney fees and incorporating

2

the parties' stipulation for an accounting of damages, which included the following provision:

> the Court may enter a final judgment regarding any verdicts,
> decisions, or orders, including any order ordering an accounting
> of profits, at any time the Court deems appropriate and that
> any party may appeal such final judgment prior to the
> completion of the accounting.

Dkt. #182.

On February 6, 2003, defendants appealed the second amended judgment to the Court of Appeals for the Seventh Circuit, which noted that the judgment was not final and limited its consideration to the injunction requiring defendants to acknowledge plaintiff's co-ownership of the copyright. On June 2, 2003, the United States Supreme Court decided in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, that the Lanham Act was not intended for use by persons claiming the unauthorized copying of a work.

Defendants filed their first appellate briefs in late September 2003. The court of appeals affirmed Judge Shabaz on the copyright claims. Gaiman v. McFarlane, 360 F.3d 644 (7th Cir. 2004).

On December 7, 2004, defendant Todd McFarlane Productions, Inc. filed a petition for bankruptcy under Chapter 11, which had the effect of staying the accounting that had been in progress. The stay was lifted on November 15, 2005, but the accounting remains incomplete to this day.

OPINION

All of the defendants have joined in the motion to amend the second amended judgment as it relates to

- The ruling that defendants violated plaintiff's right of publicity under Wis. Stat. § 995.50, and the accompanying injunction prohibiting defendants from publishing or distributing <u>Angela's Hunt</u> using the name or biographical information of plaintiff for purposes of trade without his consent; and

- The ruling that defendants violated the Lanham Act provision prohibiting the passing off of another's works as one's own when they did not credit plaintiff as an author of <u>Spawn</u> Issue 26, <u>Spawn</u> Volume 6 and <u>Pathway to Judgement</u>.

In addition, defendant Image moves to amend the judgment as it relates to the denial of attorney fees to it.

A. <u>Second Amended Judgment</u>

The initial question is whether the second amended judgment is a final judgment or whether, as defendants contend, it left the case open, pending resolution of the damages accounting.  By itself, the wording of the judgment suggests that it was intended to be final. It awarded damages for defendant's violation of the state right of publicity statute, it declared plaintiff owner of the copyrights to publications listed in the judgment, it ordered

4

an accounting pursuant to the parties' stipulation and it enjoined defendants from publishing or distributing Angela's Hunt using the name or biographical information of plaintiff and it required defendants to credit plaintiff as co-author of Spawn Issue 26, Spawn Volume 6 and Pathway to Judgement and designate plaintiff as a copyright owner on all publications or other media that had not yet been distributed by defendants and for which plaintiff had been found a copyright owner.  As part of the judgment, the court dismissed "all remaining claims and counterclaims with prejudice."  The clerk of court added his signature.

Despite all these indicia of finality, I agree with defendants that the second amended judgment is not a final, appealable judgment.  Not only does it include the parties' stipulation, which provides among other things that "subject to the limitations set forth in the previous paragraph [relating to the parties' rights to appeal issues tied to the accounting], the parties agree that the Court may enter a final judgment regarding any verdicts, decisions, or orders, including any order ordering an accounting of profits, at any time the Court deems appropriate and that any party may appeal such a final judgment prior to the completion of the accounting," dkt. #182 at 3-4, but the court of appeals read the judgment as not being final.  Without discussing the nature of the judgment in any detail, the court assumed that it was not a final judgment because the accounting was not yet complete.  Gaiman v. McFarlane, 360 F.3d 644, 648 (7th Cir. 2004).  As a result, "McFarlane's appeal is . . .

5

limited to the injunction requiring him to acknowledge Gaiman's co-ownership [of the copyright to the works at issue]." Id. (28 U.S.C. § 1292 gives the courts of appeals jurisdiction of appeals from interlocutory district court orders granting, denying or modifying injunctions.)

Defendants do not seek to re-open the copyright question and could not do so now, after the court of appeals has ruled on it. This leaves for consideration the other issues that were not addressed by the court of appeals, including the jury's decision that defendants passed off plaintiff's work as their own and the court's injunction prohibiting such passing off in the future, the issues of the parties' attorney fees and plaintiff's Wisconsin state law claim. It appears that, although the notice of appeal covered all aspects of the district court's decision, defendants chose to argue only the copyright injunction and not the injunctions requiring defendants to credit plaintiff as a co-author (the Lanham Act claim) or to refrain from distributing works that included information about plaintiff without his consent (the right of publicity claim), which explains why the court of appeals limited its discussion to the copyright dispute.

Defendants do not explain why they did not pursue the other injunctions or why they sat on their rights and did not ask Judge Shabaz either to enter final judgment or a partial judgment under Fed. R. Civ. P. 54(b) promptly after he entered the second amended judgment on January 9, 2003. The bankruptcy stay would excuse defendants' inertia for the

6

eleven months from Todd McFarlane Productions' bankruptcy filing to the lifting of the stay but it does not explain why defendants waited another 3 1/2 more years before filing their notice of intervening changes in the law or why they waited another nine months before bringing this motion to amend the second amended judgment.

As a result of this dilatory behavior, the court and opposing counsel are forced to try to reconstruct judicial proceedings that were vigorously tried and carefully considered at the time but have long ago been pushed out of mind by other cases.  The parties have had their day in court and more; even if they are not barred from appealing because the judgment is not final, Rule 54(b), they are not entitled to new proceedings in this court.  The rulings that Judge Shabaz made in this case are conclusive and bar defendants from re-litigating them. Coleman v. C.I.R., 16 F.3d 821, 830-31 (7th Cir. 1994) ("[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.") (citing Restatement (Second) of Judgments § 13 (1982)).   Moreover, "[a] decision need not be 'final' in the strict sense of 28 U.S.C. § 1291 in order to prevent the involved parties from relitigating contested issues." Id. (citing Miller Brewing Co. v. Jos. Schlitz Brewing Co., 605 F.2d 990, 996 (7th Cir. 1979)).

I conclude that the judgment has preclusive effect and bars the parties from re-litigating in this court the claims that were resolved by Judge Shabaz.  This ruling does not

bar defendants from using Fed. R. Civ. P. 60(b)(5) to seek modification of the injunction against passing off stemming from their Lanham Act claim, if they are otherwise eligible to do so.  For the sake of completeness, I will explain why, even if the judgment did not have preclusive effect, defendants could not prevail on their other two contentions that current law requires reversal of Judge Shabaz's denial of defendant Image's motion for attorney fees on the copyright dispute and his finding that plaintiff was entitled to damages, attorney fees and an injunction because of defendant's violation of his right of publicity under state law.

## B. Denial of Attorney Fee Award

Even if the second amended judgment did not preclude defendants from re-litigating settled matters, defendant Image could not prevail on its effort to overturn Judge Shabaz's 2003 ruling  that neither side was entitled to attorney fees on plaintiff's copyright claims. A review of the law that defendant cites and of Judge Shabaz's decision shows that defendant overstates the post-2003 "changes" in the law that it thinks justify amendment. Nothing in the cited cases  requires reconsideration.  The cases hold that the awarding of attorney fees remains a matter of discretion for the court under the copyright law and that the court of appeals will not defer to the district court if the court does not explain its reasoning, Mostly Memories, Inc. v. For Your Ease Only, Inc., 526 F.3d 1093, 1099 (7th

8

Cir. 2008), or if the court denies fees to a side that is clearly the prevailing party.  <u>Riviera</u>

<u>Distrib., Inc. v. Jones</u>, 517 F.3d 926, 928 (7th Cir. 2008).  Neither of these circumstances

was present in this case.  Judge Shabaz explained carefully why he did not believe that

attorney fees should be awarded to either side.  He noted that the usual considerations of

the need for deterrence or compensation were not present in the case; their absence made

it "apparent that fees should not be awarded.  Jan. 9, 2003 Mem. & Order, dkt. #252, at

13.  Each of the major parties was highly successful as artist and author both financially and

artistically.  <u>Id.</u> Their dispute arose from their divergent expectations at the time the works

were created and their inability to reduce an agreement on copyright ownership to writing.

<u>Id.</u>  Each pursued the litigation out of a firm conviction that he was right in principle, rather

than in an attempt to gain economically.  <u>Id.</u> at 13-14.  (Although Judge Shabaz did not rely

on this fact, it is worth noting that the record shows that no party "clearly prevailed."

Defendant Image prevailed on one issue, which was that it was not responsible for any

copyright payments (after having taken varying positions during the litigation on why it was

not responsible).  By contrast, plaintiff prevailed on the main issue:  his right to ownership

of the copyrights to the works in question.)


C. <u>Right of Publicity</u>

All defendants contend that the decision by the Court of Appeals for the Eighth

Circuit in <u>C.B.C. Distribution and Marketing, Inc. v. Major League Baseball Advanced Media, L.L.P.</u>, 505 F.3d 818 (8th Cir. 2003), requires reversal of Judge Shabaz's finding that defendants violated plaintiff's right of privacy under Wis. Stat. § 995.50. The Wisconsin statute provides in part that it is an invasion of privacy to "use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person." As with the dispute over attorney fees, this is not an issue on which defendants would prevail if the second amended judgment had no preclusive effect.

The Eighth Circuit decision does not give defendants the support they need. The court held only that the First Amendment right of the plaintiff to use the names and statistical information of professional ball players took precedence over a Missouri statute similar to Wisconsin's. According to the court, the case before it did not implicate the usual interests that states seek to promote with statutes of the kind at issue, such as "the right of an individual to reap the rewards of his or her endeavors and an individual's right to earn a living" or the need to protect consumers from misleading advertising or endorsement. <u>Id.</u> at 824.

In this respect, the two cases are very different. Defendants used plaintiff's name and biographical information on both the outside and inside back covers of <u>Angela's Hunt</u> to tout plaintiff's authorship of the book. This information would have led consumers to

10

believe, contrary to the truth, that plaintiff endorsed the sale of the book and was being compensated for its sales.   Wis. Stat. § 995.50(2)(b) does not prohibit conveying information about a person that is in the public record; it is aimed at preserving the individual's right of control over the commercial aspects of one's identity.   Thus, it prohibits the use of that information to give a false impression of endorsement of a particular product and its sales.   Nothing in <u>C.B.C. Distribution</u> undermines the validity of the jury's verdict in favor of plaintiff on his claim for violation of his right to publicity.

### D. <u>Lanham Act Claim</u>

At trial, plaintiff prevailed on his claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), that defendants had passed off his work as their own, in essence, falsely designating the origin of the works in a manner likely to cause confusion.   Accordingly, Judge Shabaz enjoined all the defendants from distributing any copies of <u>Spawn</u> Issue 26, <u>Spawn</u> Volume 6 and <u>Pathway to Judgement</u> without crediting Gaiman as co-author and designating him as a copyright owner.

In <u>Dastar Corp.</u>, 539 U.S. 23, the Supreme Court took the position that such copying would not support a claim under the Lanham Act, which is not intended to be a supplement to copyright law or a substitute for it.   Using § 43(a) for this purpose would conflict with the carefully crafted copyright laws, which have built-in expiration periods.   <u>Id.</u> at 32-35.

11

Defendants argue that, in light of <u>Dastar</u>, it is no longer equitable to require them to refrain from distributing the written works when the basis for the injunction has been held invalid.  They rely on Fed. R. Civ. P. 60(b)(5), which allows a court to grant relief from a judgment in circumstances in which it is no longer equitable to apply a judgment prospectively.

Plaintiff does not deny that if this suit had been tried after <u>Dastar</u> was decided, plaintiff would not have prevailed on his Lanham Act claim.  He argues, however, that defendants cannot benefit from the change in the law because they took no action after <u>Dastar</u> was decided, although they could have appealed from the injunction, just as they did from the injunction pertaining to copyright ownership.  He notes that Rule 60(b) requires a party seeking relief under its provisions to do so "within a reasonable time," and says that waiting more than six years after <u>Dastar</u> was decided does not meet the Rule's requirements.  Moreover, he argues, vacating injunctions is an act reserved for injunctions that affect the public interest, not those involving the commercial interests of a few competitors.

Plaintiff's last argument has been rejected by the Court of Appeals for the Seventh Circuit.  <u>E.g.</u>, <u>Protectoseal Co. v. Barancik</u>, 23 F.3d 1184, 1187 (7th Cir. 1994) (holding that after decision in <u>Rufo v. Inmates of Suffolk County Jail</u>, 502 U.S. 367 (1992), adopting flexible standard for reviewing motions to reopen injunctions, courts may modify injunctions in commercial context as well as in cases having great public impact, whenever principles of

12

equity require) (citing <u>Matter of Hendrix</u>, 986 F.2d 195, 198 (7th Cir. 1993) (<u>Rufo</u> assimilates Rule 60(b)(5)'s standard for modification of injunction).

Thus, case law allows reconsideration of an injunction upon a showing of significant change in fact or law, but Rule 60 carries the additional prerequisite that the motion must be made within a reasonable time.  A motion under subsection (5) need not be brought within a year, as is true for motions under subsections (1), (2) and (3), but it still must be timely.  On that score, defendants fail.  <u>Dastar</u> was decided less than five months after the second amended judgment was entered in this court, yet the record shows no action of any type taken by defendants to bring the decision to the attention of this court or the court of appeals until March 20, 2009, almost six years after the <u>Dastar</u> decision.  It is too late to re-litigate matters that were resolved seven years ago.  Defendants had ample opportunity to appeal the second amended judgment, either by appealing the injunction immediately after entry of the judgment or by asking the court to enter partial judgment under Fed. R. Civ. P. 54(b), allowing them to appeal before the accounting was complete.

"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties."  <u>Federated Department Stores, Inc. v. Moitie</u>, 484 U.S. 394, 401 (1981).  By their nature, courts deal with the past.  They base their decisions on their perception of events that have concluded.  They are neither

13

equipped nor intended to be psychics or seers.  Reaching back in time to correct a judgment is a rare and exceptional circumstance not warranted in this case.

It is long past time to close this case definitively.  The parties have had more than enough time to undertake an accounting of the damages due plaintiff.  Their failure to complete this relatively simple task makes it is evident that the matter is not one to which they have given much consideration.  A short deadline may serve to focus their attention.

ORDER

IT IS ORDERED that the motions of defendants Todd McFarlane, Todd McFarlane Productions, Inc., McFarlane Worldwide, Inc. and Image Comics, Inc. to amend the second amended judgment entered in this case on January 9, 2003 are DENIED.

FURTHER, IT IS ORDERED that the parties may have until July 17, 2010 in which to complete their accounting of the damages due plaintiff Neil Gaiman.  If, by July 17, 2010, the accounting is not completed, I will enter final judgment in this case without including any award of damages for defendants' copyright violations, unless plaintiff can prove that defendants have blocked, unreasonably and without justification, plaintiff's legitimate efforts to come to a final accounting.  Counsel for plaintiff are to submit monthly reports to the

14

court on the progress of the accounting, on March 30, April 30, May 28 and June 30, 2010.

Entered this 11th day of March, 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

15