UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**NEIL GAIMAN, and**
**MARVELS AND MIRACLES, LLC,**

      Plaintiffs,

      v.                                           Case No.: 02-cv-00048-bbc

**TODD MCFARLANE, TODD**
**MCFARLANE PRODUCTIONS, INC., TMP**
**INTERNATIONAL, INC., MCFARLANE**
**WORLDWIDE, INC., and IMAGE**
**COMICS, INC.,**

      Defendants.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR ORDER DECLARING**
**GAIMAN'S INTEREST IN DERIVATIVE CHARACTERS FOR PURPOSES OF**
**ACCOUNTING OF PROFITS**

Pursuant to this Court's March 12, 2010 Opinion and Order (Dkt. 286) and its Second Amended Judgment (Dkt. 253), plaintiff Neil Gaiman[1] moves the Court for an order declaring that he is entitled to an accounting of profits earned by the McFarlane Defendants[2] on all characters and works that are derivative of the characters and works identified in the Second Amended Judgment. In particular, Gaiman seeks a ruling with regard to the characters *Dark Ages Spawn*, *Tiffany*, and *Domina*. The McFarlane Defendants have denied that Gaiman is entitled to an accounting of profits earned on derivative characters. Resolving this issue is necessary to complete the accounting ordered by this Court ("Accounting"). Moreover, because

---

[1] Plaintiff Marvels and Miracles, LLC is not party to any claims remaining in this litigation.

[2] The "McFarlane Defendants" are defendants Todd McFarlane Productions, Inc. (sometimes "TMP") and Todd McFarlane.

Gaiman's right to an accounting of profits exists for the life of his copyrights, resolving this issue now should avoid additional disputes in the future.

## FACTUAL BACKGROUND

### A.    The Jury Verdict and Second Amended Judgment

This case was tried to a jury starting on September 30, 2002. (*See* Dkt. 186.) The jury returned a verdict in Gaiman's favor on all of his claims and the defendants' counterclaims. (See Dkt. 196.) Gaiman's claims included a request for a declaratory judgment that he is a joint owner of the copyrights in: the comic books *Spawn* Issues 9 and 26, and *Angela* Issues 1, 2, and 3; and the comic book characters *Medieval Spawn*, *Angela*, and *Cogliostro* (hereafter, the three jointly-owned characters are collectively referred to as "the Characters," and the Characters and the five jointly owned comic books are collectively referred to as "the Joint Works").

After Gaiman's jury victory, on January 9, 2003, the Court entered its Second Amended Judgment ("Judgment") declaring Gaiman a joint owner of the copyright in each of the Joint Works. (*See* Dkt. No. 253.) The other joint owners are Todd McFarlane and Todd McFarlane Productions, Inc. ("TMP")(collectively the "McFarlane Defendants"). (*See id.*) The Judgment incorporated a pre-trial stipulation ("the Accounting Stipulation") that Gaiman and the McFarlane Defendants had reached to govern the post-verdict accounting of the profits earned by the McFarlane Defendants from the Joint Works. Specifically, the Judgment ordered "an accounting for profits by defendants Todd McFarlane and Todd McFarlane Productions, Inc. . . . pursuant to the stipulation entered into between the parties." (*Id.*)

### B.    This Court Addresses Accounting for Derivative Characters

Under the Accounting Stipulation, the parties were obliged to serve and file with the Court, within ten days of the Judgment, "all motions, briefs and other materials regarding any legal or factual issues the Parties believe must be resolved prior to the Accountant performing

the accounting." (Accounting Stipulation at 2.) Accordingly, the parties subsequently filed motions and briefs with this Court seeking clarification of various legal issues. (*See* Dkt. Nos. 218, 222, 229, 231, 232, 233, 235.)

In their brief, the McFarlane Defendants specifically addressed the issue of Gaiman's interest in characters derived from the original *Angela*, *Medieval Spawn* and *Cogliostro* Characters that Gaiman co-owns. (*See* Dkt. No. 232 at 5.) The McFarlane Defendants stated:

> While *Mr. Gaiman may have some copyright interest in these derivative characters*, his interest is clearly less than one-half, as they are by their very nature derivative of the characters which Mr. Gaiman owns only one half of. Put another way, *Mr. Gaiman's right to part of the profits to these derivative characters stems merely from the fact that he owns 50% of the original character*. He is therefore necessarily entitled to less than 50% of the profits from works involving derivative characters to which he contributed no additional input.

(*Id.* at 5 (emphasis added).)

In a December 11, 2002 order, this Court noted that "[t]he parties disagree on the appropriate percentage of profits to be provided in accounting for use of the characters Medieval Spawn, Cogliostro and Angela which the jury also found to be works of joint authorship. The characters were licensed for the production of toy figures and other purposes and may also have been used directly by defendants Todd McFarlane and Todd McFarlane Productions, Inc." The Court went on to hold that profits from the use and licensing of the Characters should be divided equally, that Gaiman can recover half of those profits and licensing fees, and ordered that the Accounting proceed in accordance with the stipulation and the Court's December 11, 2002 Memorandum and Order. (Dkt. No. 251 at 6-7.)[3]

---

[3] The Court further clarified that in addition to defendants Todd McFarlane and TMP, the remaining defendants can be obligated to cooperate in providing financial information for the Accounting. (Dkt. No. 251 at 5-6.)

**C.     The Issue of Derivative Characters in the Bankruptcy Court Proceedings**

On December 17, 2004, TMP filed a petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Arizona. (Case No. 04-bk-217755.) That petition resulted in an automatic stay of the proceedings in this lawsuit, including the Accounting which had been in progress.

In the bankruptcy court proceedings, the parties stipulated to produce documents relevant to the Accounting pursuant to a "Data Exchange Protocol" that was approved by the bankruptcy court. (March 30, Decl. of Susan M. Freeman, ¶ 4, Ex. 1.) Pursuant to the Protocol, on December 6, 2005, Gaiman requested that the McFarlane Defendants produce financial information about various products sold or licensed by TMP, including data about the comic book characters *Tiffany*, *Domina*, and *Dark Ages Spawn*. (*Id.*, ¶ 5, Ex. 2.) Defendants initially delivered many of the documents, including some accounting for profits from the *Tiffany*, *Domina*, and *Dark Ages Spawn* characters. (*Id.*, ¶ 5.) In May 2007, however, the McFarlane Defendants asserted that characters such as *Tiffany*, *Domina*, and *Dark Ages Spawn* were not derivative works based upon the Joint Characters. (*Id.*, ¶ 7, Ex. 5.)

The McFarlane Defendants filed a motion in the Bankruptcy Court, requesting a ruling that the Accountant has no authority to consider profits earned by characters not specifically named *Angela*, *Medieval Spawn* or *Cogliostro*. (*Id.* ¶ 8.) The Bankruptcy Court denied the motion, leaving it to the Accountant to decide the characters for which the McFarlane Defendants should provide financial information. (*Id.*) The McFarlane Defendants then sent a letter to the Accountant, asking that he resolve the dispute. (*Id.* ¶ 9.) The Accountant refused, stating, "I am not experienced in determining what is or is not a derivative work and do not feel qualified to render an opinion." (*Id.*) Immediately afterward, on September 20, 2007, the

McFarlane Defendants notified plaintiff's bankruptcy counsel that they would not produce any financial documents relating to derivative characters. (*Id.* ¶ 10.)

The parties subsequently entered into settlement discussions and agreed to stay all discovery while they negotiated. (*Id.* ¶ 12.) Those settlement negotiations failed to resolve Gaiman's copyright claims, but the McFarlane Defendants have never produced any additional documents relating to derivative characters. (*Id.* ¶ 12.) Resolving the issue of whether the *Tiffany*, *Domina*, and *Dark Ages Spawn* characters are derivative of the Joint Characters is necessary to properly complete the Accounting.

## ARGUMENT

I. **Defendants Must Account to Gaiman for <u>All</u> Uses of the Copyrighted Works, Including Derivative Characters.**

   A. **Joint Owners of Copyrighted Works Are Entitled to Profits From Derivative Works.**

The jury's verdict and the Court's judgment in this action established that Gaiman is a joint owner of the copyrights in the comic books *Spawn* Issues 9 and 26 and *Angela* Issues 1, 2 and 3, and in the comic book characters *Medieval Spawn*, *Cogliostro*, and *Angela*. (Dkt. 253.) The other joint owners are defendants Todd McFarlane and TMP. (*Id.*) As this Court stated in its December 11, 2002 order: "The undisputed general rule is that joint copyright owners must account to each other for half of <u>all</u> profits realized from the work regardless of the relative contributions of the co-authors." (Dkt. No. 251 at 5 (emphasis added).) *See also* 1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT ("NIMMER") § 6.10[A][1][b], at 6-35 (2007) ("Each joint owner may exploit the subject work, and must correspondingly account to his fellow joint owners for such uses."); H.R. Rep. No. 1476, 94th Cong., 2d Sess. 121 (1976) (Each co-author of a joint copyrighted work has "an independent right to use or license the use of a work, subject to a duty of accounting to the other co-owners for any profits.").

One of the primary ways copyright owners can realize profits is through the creation or licensing of derivative works. The right to create derivative works is one of the exclusive rights expressly granted to copyright owners under the Copyright Act. *See* 17 U.S.C. § 106(2). The Seventh Circuit has noted that the right to create derivative works "often can be more valuable than the right to the original work itself[.]" *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 618 n.12 (7th Cir. 1982).

As joint owners of the copyrights, the McFarlane Defendants could lawfully create derivative works, but they must account to Gaiman, the other joint owner, for his share of the profits from those derivatives. *See Weinstein v. Univ. of Illinois*, 811 F.2d 1091, 1095 (7th Cir. 1987) ("Each co-owner of a copyright may revise that work (that is, make a derivative work) . . . . So far as copyright law is concerned, Belsheim was entitled to do what he did. Belsheim is answerable to Weinstein for Weinstein's share of any royalties."); *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 522 (9th Cir. 1990) ("The only duty joint owners have…is to account for profits from [the joint work's] use… each author has the independent right to use or license the copyright subject only to a duty to account for any profits he earns from the licensing or use of the copyright"); *Weissmann v. Freeman*, 868 F.2d 1313, 1317 (2nd Cir. 1989).

Joint copyright owners, such as the McFarlane Defendants, cannot escape their obligation to account for profits merely by transforming their original work into a derivative, because the original work is part of the derivative as a matter of law. The Copyright Act provides that when an author creates a derivative work, his or her right in the "derivative work extends only to the material contributed by the author of such work, *as distinguished from the preexisting material employed in the work*, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(a) (emphasis added). "The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-

existing work remains on grant from the owner of the pre-existing work." *Stewart v Abend*, 495 U.S. 207, 223 (1990). In this case, the McFarlane Defendants own the rights to any new material they contributed to create derivative works, but Gaiman retains his full interest in the portion of those derivatives that consist of the preexisting Joint Works.

Indeed, the McFarlane Defendants conceded that Gaiman has a right to a share of the profits earned from derivative works based upon the Joint Characters. In a May 31, 2007 letter addressing this issue, the McFarlane Defendants' counsel wrote:

> For example, [Gaiman] has [a] cognizable copyright ownership connection to an Angela action figure because—under Section 101 of the Copyright Act, 17 U.S.C. § 101—that action figure is a ***derivative*** work based upon the Angela comic book character. His right to an accounting is thus triggered even though he had no involvement in the creation of the action figure. The same would be true, for example, if there were an Angela T-Shirt or an Angela skateboard.

(Freeman Decl., Ex. 5 at 9-10.) Thus, the McFarlane Defendants do not dispute that Gaiman is entitled to an accounting of profits earned from derivative works. Instead, they apparently contest whether the *Tiffany*, *Domina*, and *Dark Ages Spawn* characters are derivative works at all. On that point, they are plainly wrong.

### B.   Comic Characters May Be Derivative Works.

The Copyright Act defines a derivative work as "a work based upon one or more preexisting works," including "any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. When a new work "utilizes expression from a previously existing work[, it] is considered to be derivative of that work." *Dam Things From Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 563 (3rd Cir. 2002).

To determine whether a work qualifies as a "derivative work" under the Copyright Act, it is often easiest to ask whether that work would be considered an infringement of the pre-existing if it were created without the author's permission. *See* NIMMER § 3.01 at 3-3

("[A] work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of the copyright proprietor of such pre-existing work.")  Courts evaluate whether a work is derivative of a preexisting work by comparing the two, and determining whether essential characteristics of the original copyrighted character are present.  When the essential characteristics are reproduced to the extent recognizable by an ordinary observer, the new work infringes on the original copyright if the creator is not entitled to publish a derivative work.  *See Gaiman*, 360 F.3d at 661-62; *Warner Bros. v. Am. Broadcasting Companies*, 720 F.2d 231, 241 (2nd Cir. 1983); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2nd Cir. 1934); *Sapon v. DC Comics*, 2002 WL 485730 *3, 4 (S.D.N.Y. Mar. 29, 2002).

In the context of comic books characters, there is no rigid test for determining when one character is derivative of another.  Courts generally compare the characters' physical images and their personalities, abilities and other traits.  *See Gaiman*, 360 F.3d at 662; *Warner Bros.*, 720 F.2d at 242; *Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 757 (9th Cir. 1978); *Detective Comics, Inc. v. Bruns Publications, Inc.*, 111 F.2d 432, 433 (2nd Cir. 1940).  Thus, a "Wonderman" character was found to infringe "Superman" based upon closely similar attributes and antics, including concealing strength beneath ordinary clothing then appearing in a skintight acrobatic costume, and championing the oppressed and battling evil and injustice with extraordinary strength.  *Detective Comics*, 111 F.2d at 433.  As the court noted, the two characters were not mere delineations of a "benevolent Hercules," but embody an arrangement of incidents and literary expressions that are proper subjects of copyright protections. *Id*.

A doll with "the broad baby face, the large round flirting eyes, the lowplaced pouting mouth, the small nose, the imperceptible chin and the mature bosom" of character Betty Boop, depicting "a unique combination of infancy and maturity, innocence and sophistication"

infringed the Betty Boop character. *Fleischer Studios*, 73 F.2d at 278. Similarly, the totality of visual resemblance, attributes and traits of a "Black Bat" character was held to infringe the "Batman" character, despite differences in attachment of their wings and stockiness rather than slender muscularity of physique. *Sapon*, * 7, 8. The court considered in part how the Batman character had "been episodically developed through interaction with other characters, such as Robin, the Boy Wonder." *Id.* at *4. As Professor Nimmer has explained, with respect to characters, "a visual similarity (although not completely identical in appearance) plus a similarity in character traits, may prove sufficient to constitute an infringement, even where names of the plaintiff's and defendant's characters differ." NIMMER § 2.12 at 2-178.29.

### C.    *Tiffany*, *Domina*, and *Dark Ages Spawn* Are Derivative Characters Subject to the Accounting.

Here, there can be no legitimate dispute that the *Tiffany*, *Domina*, and *Dark Ages Spawn* characters are derivative works based upon the *Angela* and *Medieval Spawn* characters jointly owned by Gaiman.

#### 1.    *Dark Ages Spawn* is derivative of *Medieval Spawn*.

The Seventh Circuit provided clear guidance on the present issue in its decision on the Defendants' appeal in this case. The Seventh Circuit applied the concepts of derivative works to the *Medieval Spawn* character, holding it to be a derivative work of the original *Spawn* character. *Gaiman*, 360 F.3d at 657, 661-62. The court explained that *Medieval Spawn* was sufficiently distinct from *Spawn* to be separately copyrightable as a derivative work because of his costume, manner of speech and medieval background. *Id.* at 661. The court went on to explain how future characters could be judged as potentially infringing *Spawn* or infringing *Medieval Spawn*: "A Spawn [character] who talks medieval and has a knight's costume would infringe Medieval Spawn, and if he doesn't talk medieval and doesn't look like a knight, then he would infringe Spawn." *Id.* at 662.

Defendants' *Dark Ages Spawn* character talks medieval and wears a knight's costume. But the similarities do not stop there. The characters' names are synonymous. "Dark Ages" and "Medieval" are both terms used to describe the Middle Ages period of European history. *See* Merriam Webster's Collegiate Dictionary (10th Ed.) at 293, 722.

The characters' backgrounds are strikingly similar. TMP's SPAWN BIBLE, describes *Medieval Spawn* as "Sir John of York," a "freelance knight" "born in England in 1146" (*i.e.*, the 12th Century). (March 30, 2010 Decl. of Allen Arntsen, Ex. A.) The McFarlane Defendants' internet web site describes the *Dark Ages Spawn* character as "Lord Covenant, a 12th Century knight killed in a holy crusade far from his homeland, who returns to Earth as a HellSpawn." (*Id.*, Ex. B.) Both characters have sisters who married their enemies. (*See id.*, Exs. C and D.) And both go out of their way to help the defenseless. For example, in *Spawn* 9, *Medieval Spawn* helps a seemingly helpless maiden (*see id.*, Ex. C), while in *Spawn The Dark Ages* Issue 3, *Dark Ages Spawn* "must lead the peasants in a revolt . . . to secure their freedom." (*Id.*, Ex. D.)

As show by the images on the next page (*Medieval Spawn* (Exs. A and C) on left; *Dark Ages Spawn* (Ex. M) on right), *Medieval Spawn* and *Dark Ages Spawn* are visually similar. Both characters share distinct attributes associated with the Medieval or Dark Ages. (Compare *id.*, Ex. C (*Medieval Spawn*) and Exs. B and M (*Dark Ages Spawn*.) Both wear metal helmets and facemasks with rivets, reminiscent of armor. Both ride horses. Both carry a battle shield. *Medieval Spawn* carries a battle axe, while *Dark Ages Spawn* carries a sword.






If *Dark Ages Spawn* had been drawn by any third party and his same exploits published in an independent comic book, there can be little question that the McFarlane Defendants would sue for copyright infringement. As the Seventh Circuit pointed out, the

infringement would be of *Medieval Spawn*. *Gaiman*, 360 F.3d at 662. Thus, *Dark Ages Spawn* is derivative of *Medieval Spawn* and Gaiman is entitled to an accounting of the profits the McFarlane Defendants have earned from that derivative character.

### 2. *Tiffany* and *Domina* are derivative of the *Angela* character.

In *Spawn* Issue 9, Gaiman created the character of *Angela*, a "warrior angel". (*See* Arntsen Decl., Ex. E (Trial Tr. at 2-263).) Later, in *Angela* Issues 1, 2 and 3, Gaiman created an entire society consisting of dozens of warrior angel characters, some named and some not, all of whom share the same basic traits as *Angela*. (*See id.*, Exs. F, G, H.) After the publication of *Angela* Issues 1, 2 and 3, the McFarlane Defendants created comic books, action figures, and other products including two additional separately-named warrior angels with speaking roles in the Spawn comic book series, *Domina* and *Tiffany*. Angela is shown below.



(Arntsen Decl., Ex. C (*Spawn* 9 cover).)

Tiffany (left) and Domina (right) are shown below.




*Id.,* Exs. J and L.)

The characters are strikingly similar in appearance. It is fair to say that anyone who is not a devotee of the *Spawn* series would have a hard time telling these three characters apart. All three have a muscular, voluptuous physique and long, wild hair. All three have black, mask-like eye makeup. All three wear a fairly unusual battle uniform consisting of a thong bikini, garters, wide weapon belt, elbow-length gloves, and an ill-fitting armor bra. *Angela* and *Domina* both wear a long cloth draped between their legs. In *Spawn* 9, *Angela* wore a winged headdress, and so does *Domina*. In the *Spawn Bible*, *Angela* is portrayed with knife-like wings on her back (*see id.*, Ex. I), and so is *Tiffany*. (*See id.*, Ex. J.)

Regarding their background stories, all three are "warrior angels" who fight in Heaven's war with Hell. (*See id.*, Exs. I, J, L.) That essential and dominant aspect of all of their stories, by itself, is sufficient to show that *Tiffany* and *Domina* are derivative of *Angela*, the original "warrior angel." *Angela* and *Tiffany* share even more in common. According to the *Spawn Bible*, *Angela* is a bounty hunter, an angel granted permission to hunt Hellspawn as part of Heaven's war with Hell. (*Id.*, Ex. I.) That publication also relates that she has only failed to kill one such creature, Al Simmons, the initial Spawn, and that she hunts other impossibly dangerous creatures to keep herself challenged while waiting for permits to hunt Hellspawn. (*See id.*) The SPAWN BIBLE describes *Tiffany* as a warrior angel hunter of Hellspawn "second to only *Angela*", who likewise intends to destroy *Spawn* but also fails in the attempt. (*See id.*, Ex. J.) The similarity of their backgrounds reinforces the conclusion that *Tiffany* and *Domina* are derivative works of the *Angela* character.

### 3. *Dark Ages Spawn*, *Tiffany* and *Domina* are not merely inspired by Gaiman's "ideas".

In their May 31, 2007 letter resisting Gaiman's efforts to obtain discovery about profits earned from these characters, the McFarlane Defendants contended that the characters were outside the scope of the accounting because they were only based on Gaiman's "ideas," rather than the physical expression of those ideas. The McFarlane Defendants made essentially the same argument in their interlocutory appeal and the Seventh Circuit flatly rejected it. On appeal, the McFarlane Defendants contended that Gaiman had no copyright interest in the Joint Characters because "all that Gaiman contributed was the idea for the characters, and ideas are not copyrightable, only expression is." 360 F.3d at 658. But the Seventh Circuit reasoned that although Gaiman's verbal descriptions of the characters might not have been copyrightable on their own, once they were "drawn and named and given speech [they] became sufficiently distinctive to be copyrightable." *Id.* at 661. Gaiman is a joint owner of the copyrights in the

*Angela* and *Medieval Spawn* characters as they are visually depicted. See id. The *Dark Ages Spawn*, *Tiffany*, and *Domina* characters are unquestionably derivative works of those visual depictions. Again, if any of those derivative characters had been drawn by a third party and their same exploits published in an independent comic book, the McFarlane Defendants would have undoubtedly sued for copyright infringement and won. Accordingly, the McFarlane Defendants cannot deny Gaiman his rightful share of the profits earned from those works.

## II. Defendants Should Produce All Documents and Information Relating to Profits Earned on Characters and Works for Which Gaiman Has a Good Faith Basis to Assert Derivative Works Status.

At present, Gaiman is aware of only three comic characters that appear to be blatantly derivative of the Joint Characters. As the Seventh Circuit's opinion in this case and the Exhibits to this motion show, Gaiman has more than a good faith basis for contending that *Dark Ages Spawn*, *Tiffany* and *Domina* are derivative characters. There is a chance that Gaiman may discover additional derivative characters as the Accounting proceeds. In order to avoid serial motions on this issue, Gaiman requests that the Court order that Defendants are obligated to produce all documents and information relating to profits earned on characters and works for which Gaiman has a good faith basis to assert derivative work status.

The Accounting Stipulation provides a mechanism for the parties to challenge aspects of the Accounting – including whether particular characters or works should have been included – at the end of the Accounting process when the Court is presented with a proposed judgment. (See Dkt. No. 182 at 3). If the McFarlane Defendants wish to challenge any of Gaiman's assertions about additional derivative characters other than *Dark Ages Spawn, Tiffany* and *Domina*, they can do so at that time.

## CONCLUSION

For all the reasons stated above, plaintiff Neil Gaiman respectfully requests that the Court grant his Motion and issue an order declaring that he is entitled to an accounting of profits earned by the McFarlane Defendants on all characters and works that are derivative of the characters and works identified in the Second Amended Judgment, including the characters Dark Ages Spawn, Tiffany and Domina..  In addition, the Court should issue an order that Defendants are obligated to produce all documents and information relating to profits earned on characters and works for which Gaiman has a good faith basis to assert derivative work status, including the characters Dark Ages Spawn, Tiffany and Domina.

Dated this 30th day of March, 2010.

    s/Allen A. Arntsen
Allen A. Arntsen, WI Bar No. 1015038
Jeffrey A. Simmons, WI Bar No. 1031984

FOLEY & LARDNER LLP
150 East Gilman Street
Madison, WI 53703-2808
Tel: (608) 257-5035
Fax: (608) 258-4258
aarntsen@foley.com
jsimmons@foley.com
*Attorneys for Plaintiffs*

Of Counsel:
Kenneth F. Levin
Kenneth F. Levin & Associates, Chtd.
3100 Dundee Rd., Ste. 307
Northbrook, Illinois 60062-2459
Tel: (312) 827-9000
KenFLevin@gmail.com