UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**NEIL GAIMAN, and**
**MARVELS AND MIRACLES, LLC,**

Case No.: 02-cv-00048-bbc

Plaintiffs,

v.

**TODD MCFARLANE, TODD**
**MCFARLANE PRODUCTIONS, INC., TMP**
**INTERNATIONAL, INC., MCFARLANE**
**WORLDWIDE, INC., and IMAGE**
**COMICS, INC.,**

Defendants.

**DECLARATION OF SUSAN M. FREEMAN IN SUPPORT OF MOTION FOR ORDER DECLARING GAIMAN'S INTEREST IN DERIVATIVE CHARACTERS**

I, Susan M. Freeman, under penalty of perjury, declare as follows:

1. I am an adult, and competent to testify in court. The statements in this declaration are made upon my personal knowledge, or upon my review of documents filed of record in court proceedings. If called upon to testify, I could and would testify under oath.

2. I am a partner in the law firm of Lewis and Roca LLP, based in Phoenix, Arizona. I am one of the lawyers for Neil Gaiman, the Plaintiff in this case, in the Chapter 11 bankruptcy case filed by Todd McFarlane Productions, Inc. ("TMP") in the United States Bankruptcy Court for the District of Arizona, Case No. 04-bk-21755-CGC ("Bankruptcy Court" and "Bankruptcy Case").

3. I understand that when the Bankruptcy Case was filed, an Accounting was in process to determine the amount owed by TMP to Gaiman pursuant to a pretrial accounting stipulation and a judgment entered by this Court on January 9, 2003 declaring Gaiman a joint

owner of copyrights to the story contents appearing in the comic books *Spawn* Issues 9 and 26 and *Angela* Issues 1, 2 and 3, and a joint copyright owner in the comic book characters *Medieval Spawn*, *Cogliostro*, and *Angela* (the "Gaiman Characters").  The Accounting was immediately stayed pursuant to the automatic stay of Bankruptcy Code section 362.

4.      In the Bankruptcy Court proceedings, Defendant TMP and Defendant Todd McFarlane, TMP's sole shareholder ("Defendants"), stipulated with Gaiman to a protocol for proceeding with the Accounting, which included provisions for further exchanges of information and documents (Gaiman's interest being in the nature of copyright ownership, the amount of profits earned by Defendants from copyright use continues on an ongoing basis), and for a stay modification allowing the Accounting to go forward.  This stipulation was filed with the Bankruptcy Court (TMP BK Dkt. 154 (the "Bankruptcy Protocol Stipulation")).  The Bankruptcy Protocol Stipulation was then approved and effected by the Bankruptcy Court's order entered November 15, 2005 (TMP BK Dkt. 177 (the approval order and the Bankruptcy Protocol Stipulation, collectively, the "Protocol"), copies of which are attached hereto as Exhibit 1).

5.      Pursuant to the Protocol, on December 6, 2005, Gaiman submitted a Data Exchange listing to TMP requesting production of financial information about a list of products sold or licensed by TMP.  The request included data on *Tiffany*, *Domina*, and *Dark Ages Spawn*, each a "derivative character" derived by Defendants from the Gaiman Characters (*Tiffany* and *Domina* being "warrior angels" like *Angela*, and *Dark Ages Spawn* being either the Gaiman-created *Medieval Spawn* but given a different name by Defendants, or at minimum a character derivative from *Medieval Spawn*).  A copy of Gaiman's Data Exchange listing is attached as Exhibit 2 (See pp. 3, 4, 9).

6.      The Defendants did not respond to Gaiman's Data Exchange listing within the next 10 days contesting entitlement to any of the listed documents, as required by the Protocol. On November 23, 2005, Defendants initially delivered many of the Data Exchange documents requested and required, including documents accounting for profits from *Tiffany*, *Domina*, and *Dark Ages Spawn* characters.  Gaiman advised the Defendants that the Data Exchange

documents and information was incomplete, which they never contested. While there were some telephonic conferences to move the process forward, the Defendants did not produce biannual updates of even the documents and information initially produced voluntarily, and when Gaiman pressed for missing documents in early 2007, Defendants asserted for the first time that they need not produce any information on derivative characters.

7. On June 1, 2007, the Defendants produced additional documents supplementing their initial Data Exchange, and purporting to include all documents required by the Data Exchange through December 31, 2006. The June 1, 2007 document production did not include any documents relating to derivative characters, as TMP disputed Gaiman's contention that derivative characters were covered by the Accounting. No additional documents have been produced since that date. A copy of the June 1, 2007 letter from TMP's counsel regarding these issues is attached as Exhibit 5.

8. Defendant TMP filed a motion in the Bankruptcy Court, requesting a ruling that the Accountant has no authority to consider profits earned by characters not specifically named *Angela*, *Medieval Spawn* or *Cogliostro*. After briefing and argument, the Bankruptcy Court denied TMP's motion, leaving it for the Accountant to decide the characters and products for which TMP must provide financial information initially, and recognizing that this Court would be the one at some point to make dispositive substantive rulings on the need to account for derivative characters.

9. On September 3, 2007, counsel for TMP sent a letter to the Accountant, asking that he resolve the dispute over whether TMP must produce documents relating to characters that Gaiman claims are derivative. The Accountant responded that he would not resolve the dispute, stating:

> As an accountant, I would be willing and able to analyze the revenue earned by a derivative work once the court or other expert had informed me that a work had been classified as such. However, I am not experienced in determining what is or is not a derivative work and do not feel qualified to render an opinion.

A copy of the Accountant's response is attached hereto as Exhibit 3.

10. On September 20, 2007, Defendants' counsel sent an email to me and to Ken Levin, co-counsel for Gaiman in the TMP bankruptcy case, in which he asserted that derivative characters are "outside [this Court's] judgment and beyond the scope of the accounting" and announced that TMP is "unwilling to produce anything further without a court order." (See copy attached hereto as Exhibit 4). Gaiman moved for stay relief to allow this Court to issue such an order. TMP opposed the motion. On December 14, 2007, the Bankruptcy Court issued an order lifting the automatic stay for the limited purpose of allowing this Court to resolve the dispute between the parties regarding the scope of the Accounting and TMP's related discovery obligations. The order provides in part that the Protocol remains in full force and effect. It expressly required TMP to continue to produce documents bi-annually:

> … The Debtor shall comply with bi-annual supplementation of the Data Exchange as required by the Protocol Stipulation and with production of all other Documents and Information (as defined in the Protocol) other than that which is subject to the Dispute, and after the Wisconsin District Court enters its order on the Dispute, any additional Documents and Information that may be held producible by the Wisconsin District Court shall also be provided to Gaiman, and thereafter the procedures set forth in the Protocol Stipulation shall resume to conclusion.

11. When the order was entered, the parties were involved in negotiating the details of treatment of Gaiman's claim under TMP's proposed reorganization plan and litigation over their respective rights to another comic character, Miracleman. Gaiman undertook research and initial drafting of a motion to bring the derivative character issue to this Court, but it was not finalized and filed at that point. The parties did reach an agreement on plan treatment and the terms of an escrow agreement, segregating funds for potential payment of Gaiman's claim when ultimately determined by settlement or by this Court after conclusion of the Accounting. TMP's reorganization plan was confirmed with findings of fact and conclusions of law acceptable to Gaiman on June 23, 2008.

4

12. Once the plan was confirmed, the Miracleman litigation intensified with discovery notices and disputes and document production. On the eve of depositions, the parties met on September 22, 2008 to discuss overall settlement of all of their disputes, including the Accounting. I was not present at the meeting, which was attended by Mr. Gaiman and Mr. Levin. I did participate in email exchanges, however, where the parties agreed to a "stand-still" of their litigation while settlement was attempted. I understand that Gaiman made the last settlement offer, and have confirmed with counsel for TMP that a counter-offer from TMP is anticipated.

13. The TMP Bankruptcy Case remains open.

I verify under penalty of perjury, in Phoenix, Arizona, this 30th day of March 2010, that the foregoing statement is true and correct to the best of my information, knowledge, and belief.

                                            s/Susan M. Freeman
                                            Susan M. Freeman