UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**NEIL GAIMAN, et al.**,

      Plaintiffs,

  v.                      Case No. 02-CV-00048-bcc

**TODD McFARLANE, et al.**,

      Defendants.

---

### THE McFARLANE DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER DECLARING GAIMAN'S INTEREST IN CERTAIN COMIC BOOK CHARACTERS

---

Defendants Todd McFarlane and Todd McFarlane Productions, Inc. (together, the "McFarlane Defendants") submit this brief in opposition to plaintiff Gaiman's motion for an order declaring that he has a copyright interest in the following three comic book characters: Dark Ages Spawn, Tiffany and Domina (the "Pending Accounting Motion").

### INTRODUCTION

As more fully discussed below, there are three distinct and fully sufficient grounds on which to deny the Pending Accounting Motion:

1.      Mr. Gaiman is improperly attempting, through a post-judgment accounting procedure, to expand the judgment in this action to grant him an ownership interest in three additional copyrights despite having never asserted any such claim in the lawsuit. In particular, the three characters at issue in his motion were never raised in any fashion whatsoever—or even mentioned—in his pleadings or at trial in this case. Now, after judgment, Mr. Gaiman seeks improperly to supplement the record with hand-selected images that are misleading in their

appearance.  Due process requires that **any** adjudication of these new claims concerning additional characters be one in which the evidence can be tested, authenticated and explained to a trier of fact.  A quasi-administrative, post-judgment accounting procedure is not the proper time or place, and this Court should reject Mr. Gaiman's effort to obtain by way of motion what he has never sought by way of trial.

2.     Even if Mr. Gaiman's new claim properly could be raised as a legal issue as part of the accounting procedure (and it cannot), he failed to raise it within the time limits established by this Court.  Under the Joint Stipulation Regarding the Accounting Procedure (the "Accounting Procedure") (Doc. 182) entered as an attachment to the Second Amended Judgment (Doc. 253), the parties had ten days after issuance of the judgment to serve and file with the Court "all motions, supporting briefs and other materials regarding any legal or factual issues the Parties believe must be resolved prior to the Accountant performing the accounting."  Mr. Gaiman did indeed file such a motion, as did the McFarlane Defendants.  Neither motion raised any issue or claim regarding Dark Ages Spawn, Tiffany, Domina or any other character beyond the three characters at issue in the lawsuit—and thus Judge Shabaz's Memorandum and Order of December 11, 2002 (the "Accounting Order") (Doc. 251) makes no reference to them.[1] Accordingly, even if Mr. Gaiman could have raised these three characters as a legal issue in the accounting, he waived it by failing to do so in accordance with this Court's requirements.

3.     Finally, even if due process and this Court's orders allowed Mr. Gaiman to "litigate" a set of copyright claims he never raised at trial or in accordance with the post-trial Accounting Procedure—and even if this Court were to attempt to decide the issue despite the

---

[1] Whether intentional or inadvertent, Mr. Gaiman's brief creates the impression that the McFarlane Defendants somehow raised a copyright issue regarding Dark Ages Spawn, Tiffany and Domina.  (Doc. 289 at 3.)  They did not, as discussed below.

sparse and disputed factual record—Mr. Gaiman's claim must ultimately fail because these three comic book characters are not "derivative works" under the Copyright Act. The only similarities between those characters and the three that are the subject of the lawsuit are certain ideas, and ideas are not copyrightable.

In short, Mr. Gaiman is attempting to obtain through a quasi-administrative proceeding a copyright interest that he never asserted at any appropriate stage of the proceedings. This Court should deny his attempt to expand the scope of the judgment.

## ARGUMENT

### 1.    Mr. Gaiman's Cannot Seek Through An Accounting What He Never Sought At Trial.

This Court's January 9, 2003 Second Amended Judgment grants Mr. Gaiman a declaration that he "is an owner of the copyrights to the publications and characters at issue in this case:  Medieval Spawn; Cogliostro; Spawn Issue 26; Angela; Angela Issues 1, 2 and 3; Spawn Issue 9" and orders an accounting for profits by the McFarlane Defendants. (Doc. 253.) Mr. Gaiman now seeks improperly to expand the scope of this Court's judgment to include copyright ownership in three additional characters:  Dark Ages Spawn, Tiffany and Domina.  As even Mr. Gaiman's recitation of the proceedings makes apparent, Mr. Gaiman *first* sought information relating to these three additional characters years later in an Arizona bankruptcy proceeding on December 5, 2005.  (Doc. 289 at 4 *citing* Freeman Decl. (Doc. 291) ¶ 5, Ex. 2)) The subject of these characters, and any asserted copyright ownership therein, was not an issue at trial and is not part of this Court's judgment, which specifically lists the comic book issues and characters "at issue in this case."

Fundamental notions of due process prohibit this Court from expanding the scope of the existing judgment to include copyright interests in characters that were not at issue, or even

mentioned, in Mr. Gaiman's complaint or at the trial of this matter.  Although Mr. Gaiman makes no request to supplement the record, the truth is that the new claims he is raising as to the additional characters rely on materials that are not part of the record and should be stricken. (Arnsten Decl., Exs. B, D, J, K, L & M.)  That Mr. Gaiman must rely on evidence not properly part of the record demonstrates why these new claims should not even be considered at this time.

It bears noting that Mr. Gaiman has carefully presented only selected images of Dark Ages Spawn.  The McFarlane Defendants are entitled to a full presentation and consideration of all the evidence—something that is beyond this particular submission.  By way of example, however, attached as Exhibit B is a photograph of the Medieval Spawn action figure toy. Attached as Exhibit C is a series of images comparing common elements between Dark Ages Spawn (Lord Covenant) and the original title character Spawn (Al Simmons), all taken from issues of *Spawn* preceding Issue 9.  These images starkly demonstrate the vast differences in appearance between Medieval Spawn and Dark Ages Spawn.  Moreover, they establish that Dark Ages Spawn is a "derivative work" based upon Spawn, and not Medieval Spawn.  As discussed in Section 3(c), below, the biographies of Medieval Spawn and Dark Ages Spawn further underscore the differences between the characters.

As the Seventh Circuit recognized, Medieval Spawn's unique "expressive content" is the **combination** of "his costume and manner of speech, together with the medieval background." 360 F.3d at 661.  Whether Dark Ages Spawn shares that essential combination of characteristics requires review and consideration of more than a few isolated images.  The same is true with respect to Mr. Gaiman's effort to ply his joint interest in Angela into an interest in other characters he played no role in developing, Tiffany and Domina.  If Mr. Gaiman truly believes that he has a cognizable copyright claim in any of those characters, the McFarlane Defendants

and any other interested party have the right to have such claims raised in a complaint and properly adjudicated through trial. A post-judgment accounting procedure is not the appropriate forum for Mr. Gaiman to litigate a new claim of copyright co-ownership.

**2.      Even If A New Copyright Claim Over The Three Characters At Issue Could Be Litigated Post-Judgment, Mr. Gaiman Waived That Claim Years Ago.**

The Accounting Procedure to which the parties stipulated (Doc 182) was expressly made a part of this Court's Judgment. (Doc. 253.) As Judge Shabaz explained at page 2 of his Accounting Order (Doc. 251), the Accounting Procedure "contemplates the filing of motions 'regarding any legal and factual issues the Parties believe must be resolved prior to the Accountant performing the accounting.'" Under the Accounting Procedure, all such motions were required to be filed "[w]ithin 10 days of issuance of the Verdict or Judgment." (Doc. 182 at 2.) Following the Court's initial October 17, 2002 Judgment, the parties filed timely motions to address such legal issues. Even assuming that deadline was extended by entry of the Second Amended Judgment on January 9, 2003, it is readily apparent that the deadline for raising all such legal issues expired years ago.

In the motions that were timely filed, no issue was raised concerning Mr. Gaiman's new claim relating to these three characters. In the Accounting Order, Judge Shabaz recognized that the parties had raised three such issues: "(1) the relevant time period over which to conduct the accounting; (2) who must participate in the accounting process; (3) the percentage of profits to which plaintiffs are entitled from the various characters and publications." (*Id.*)

Judge Shabaz's discussion of that third issue—percentages of profits from various characters and publications—makes clear that the ***only*** characters at issue were "the characters Medieval Spawn, Cogliostro and Angela." (Doc. 251 at 6.) Specifically, one of the issues

involving those characters was the percentage of profit that Mr. Gaiman could seek from a toy action figure based on, say, Angela.

Contrary to Mr. Gaiman's belated effort to recharacterize the prior dispute resolved by Judge Shabaz, the *only* "derivative works" at issue in Mr. Gaiman's prior motion (Doc 221) were works qualifying as "derivative works" under the Copyright Act, namely, toy action figures, "posters, trading cards, video games, POG sets (and other toys)" based on one or more of those three characters (or any comic books, movies or animated cartoons in which one or more of those three characters appeared).  (*Id.* at 7.)  Nowhere in his prior motion does Mr. Gaiman mention any claim to a copyright interest in any other comic book character.

So, too, the McFarlane Defendants' opposition to Mr. Gaiman's prior motion (Doc. 229) similarly makes clear that the only "derivative works" at issue were toys and other "derivative works" based on the three characters that were specifically identified in the Judgment.  By artfully quoting excerpts from that brief in the Pending Accounting Motion, Mr. Gaiman implies that the McFarlane Defendants somehow raised the question of whether Dark Ages Spawn, Tiffany and Domina were "derivative works" within the scope of the Accounting Procedure. That assertion is simply untrue.  As the Court can confirm from a review of that filing, none of the characters Mr. Gaiman now seeks to adjudicate is mentioned.  Instead, the McFarlane Defendants were objecting to Mr. Gaiman's claim for 50% of the profits in an Angela toy action figure that was actually "derivative of the original Angela toy, namely, the Cosmic Angela toy." (*Id.* at 5.)  These "derivative" uses of the characters in the Judgment were the so-called "derivative characters" at issue in the parties' prior briefing.  While the McFarlane Defendants did not object to Mr. Gaiman receiving some percentage of the profits from these various Angela toy one-offs—such as Cosmic Angela and Glory Angela—they argued that he was entitled "to

less than 50% of the profits involving derivative characters to which he contributed no additional creative input." (*Id.*)  The Court rejected that argument, holding that Mr. Gaiman was entitled to 50% of the licensing revenues and profits from those toy action figures.

In short, Mr. Gaiman's ***last*** opportunity under the Accounting Procedure to raise his new claim to profits from Dark Ages Spawn, Tiffany, and Domina expired years ago.  Even if due process would have allowed such post-judgment adjudication of new claims, Mr. Gaiman's failure to raise such claims within the time limits established by this Court bars his belated attempt to do so now.[2]

### 3.  Mr. Gaiman's Untimely Attempt To Assert An Ownership Claim In The Three Additional Characters Must Fail Because Ideas Are Not Copyrightable.

Even if we assume *arguendo* that Mr. Gaiman's failure to assert this copyright claim at trial ***and*** his failure to raise that claim as required under the Accounting Procedure ***and*** his 27-month delay in asserting that claim here after the Bankruptcy Court granted him leave to do so (*see* footnote 2, *supra*) do not bar his new claim now, it still must fail for the simple reason that these three additional comic book characters are not "derivative works" under the copyright law.

a.    The Idea/Expression Divide Bars Mr. Gaiman's New Claim

Quite simply, copyright law protects the original ***expression*** of an idea, but not the idea itself.  Even on the limited evidence presently available to the Court, this distinction bars Mr.

---

[2] Mr. Gaiman's dilatory behavior concerning this particular claim has been a constant.  The issue now before this Court first arose during the bankruptcy proceedings in Arizona.  On December 14, 2007, the Bankruptcy Court entered the Order attached as Exhibit A.  That Order modified the automatic stay to allow the parties to return to this Court solely "to litigate their dispute over whether certain characters are derivative works of the three characters in which Gaiman holds a co-copyright interest, and thus included within the scope of the Accounting for determination of amounts owed to Gaiman pursuant to the terms and provisions of (the Second Amended Judgment)."  That Bankruptcy Court Order was entered more than two years ago. Only after this District Court's Opinion and Order of March 12, 2010, did Mr. Gaiman decide, at long last, to pursue this new claim.

Gaiman's new claim.  Mr. Gaiman's only alleged link to the three additional characters—none of which he worked on or contributed to—is that they are based upon the same core ideas that Medieval Spawn and Angela are based on.  There can be no dispute that the Domina, Tiffany and Angela characters are based upon the same idea—namely, that there is celestial army of female warrior angels.  So, too, Dark Ages Spawn and Medieval Spawn are based on the same idea—namely, that there were hellspawns on earth before Spawn. But while these other angel warriors and hellspawn may spring from the same *ideas* that led to the creation of Angela and Medieval Spawn, a mere commonality of ideas gives Mr. Gaiman no cognizable rights to the additional characters.  That is because the distinction between an idea and the *expression* of that idea is at the core of copyright law.  As Section 102 of the Copyright Act makes clear, "[i]n no case does copyright protection for an original work of authorship extend to any *idea* . . . or *concept* . . ., regardless of the form in which it is *described*, explained, illustrated, or *embodied* in such work." 17 U.S.C. § 102 (emphasis added).

As the Second Circuit explained in *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir. 1976), quoting NIMMER ON COPYRIGHT, "a work is not derivative unless it has substantially copied from a prior work.  If that which is borrowed consists merely of ideas and not of the expression of ideas, then although the work may have in part been derived from prior works, it is not a derivative work."  The Court continued: "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." *Id.  Accord Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) ("(S)imilarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will corner the market").

This fundamental idea/expression distinction was explained in the analogous field of

dolls in *Mattel, Inc., v. Goldberger Doll Manufacturing Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004)

(citations omitted; emphasis added):

> The protection that flows from (the) copyright (in Mattel's Barbie doll) is,
> of course, quite limited. ***The copyright does not protect ideas; it protects only
> the author's particularized expression of the idea.*** Thus, Mattel's copyright in a
> doll visage with an upturned nose, bow lips, and widely spaced eyes will not
> prevent a competitor from making dolls with upturned noses, bow lips, and
> widely spaced eyes, even if the competitor has taken the idea from Mattel's
> example, so long as the competitor has not copied Mattel's particularized
> expression. An upturned nose, bow lips, and wide eyes are the "idea" of a certain
> type of doll face. That idea belongs not to Mattel but to the public domain.

Thus Gaiman has no claim—accounting or otherwise—to any of the other hellspawn and

angel warrior characters in *Spawn*, all of which are based, at most, upon the unprotectable ideas

that (1) there were other hellspawns prior to the title character, and (2) there is a celestial army of

female angel warriors.

     b.    <u>Mr. Gaiman's Precedents Underscore Another Reason His Motion Should Be
Denied</u>.

Mr. Gaiman relies on several comic book character copyright infringement decisions on

pages 8-9 of his brief. (Doc. 289) In each of those cases, the defendant was sued for creating a

comic book with a main character that was substantially similar—in personality, appearance,

artwork and activities—to the personality, appearance, artwork and activities of the main

character in the plaintiff's comic book. For example, the Second Circuit in *Detective Comics,

Inc. v. Bruns Publications, Inc.*, 111 F.2d 432, 433 (2d Cir. 1940) concluded that the defendant's

Wonderman comic had "copied the pictures" in plaintiff's Superman comics because it had

copied many of the iconic images of Superman, including:

> Each is termed the champion of the oppressed. Each is shown running toward a
> full moon "off into the night," and each is shown crushing a gun in his powerful
> hands. "Superman" is pictured as stopping a bullet with his person and
> "Wonderman" as arresting and throwing back shells. Each is depicted as shot at

> by three men, yet as wholly impervious to the missiles that strike him. "Superman" is shown as leaping over a twenty story building, and "Wonderman" as leaping from building to building. "Superman" and "Wonderman" are each endowed with sufficient strength to rip open a steel door. Each is described as being the strongest man in the world and each as battling against "evil and injustice."

In that case, the defendant essentially copied the "world" of superman. Here, however, there is a subtle but important difference: When Mr. Gaiman agreed to write the script for *Spawn* Issue 9, he entered the ***pre-existing world*** of Spawn, which—like the preexisting world of, say, the *E.R.* or *The Simpsons* television series or the *Star Wars* or *Shrek* motion picture series—is governed by preexisting rules and fictional realities. Thus whatever Mr. Gaiman helped to create, he did ***within*** the existing world of Spawn. If there are to be other hellspawns from earlier (or future) times, their biographies and their general appearance, including their costumes and masks, are largely preordained by Spawn himself. This would be true whether the particular Spawn was from 13$^{\text{h}}$ century England, Ancient Egypt or the future. Indeed, as the side-by-side comparisons in the attached Exhibit C demonstrate, ***every key element*** of Dark Ages Spawn is dictated by, and thus derivative of, the original Spawn.

So, too, the army of female angel warriors who battle hellspawns—just like, say, the Roman Centurions who battled the barbarians—wear similar military attire, have voluptuous Amazon physiques, and have overlapping roles. Certain superficial qualities of such characters are necessarily similar, but the characters themselves have their own identities and personalities. They are not, in short, "derivative works." This becomes apparent upon a closer examination of these characters below.

      c.      <u>Medieval Spawn And Dark Ages Spawn Are Separate And Distinct Expressions Of The Same Idea; Their Only Similarities Of Expression Relate Back To The Original Spawn Character.</u>

The Medieval Spawn character Mr. Gaiman helped create for *Spawn* Issue 9 is based upon the idea that there were hellspawns before Spawn.[3] While the character's appearance was brief (just four pages of the comic book ) and his delineation sparse (just a few lines of stilted "knightly" dialogue before he was killed), the district court held, and the Seventh Circuit affirmed, that Mr. Gaiman had made a copyrightable contribution to the creation of that character.  Mr. McFarlane would eventually take that stick figure from Issue 9 and provide him with an elaborate biography for his pre-hellspawn years, including his youth in York, England, as the son of a wine merchant, his years as a freelance knight and warrior for King Henry II, his participation in political intrigue in the royal court, including the assassination of Thomas Beckett, and his own death by assassination.  He eventually returned to earth as a hellspawn, which ended in his battle with Angela in the opening pages of *Spawn* Issue 9.  (Doc. 290, Ex. A.)

By contrast, Dark Ages Spawn was a former nobleman—Lord Covenant—who "was killed in a holy crusade far from his homeland" and "returns to Earth as a HellSpawn."  (Doc. 290, Ex. B.)  Unlike Medieval Spawn—who exists for just four pages of a single issue of the comic book—Dark Ages Spawn is the title character in a separate comic book series that has reached Issue No. 27 in Exhibit B to Mr. Arntsen's Declaration.  (*Id.*)  As can be readily seen from the attached Exhibits B and C, the only features that Dark Ages Spawn shares in common with Medieval Spawn are features they both share with Spawn. More importantly, their stories are different.

---

[3] Spawn Issue 9 is Exhibit C to the Declaration of Allen A. Arntsen. (Doc. 290).

In short, although Medieval Spawn and Dark Ages Spawn are both based on the "idea" of a hellspawn from an earlier era, they are different characters, expressing the "idea" differently. That they both lived in the Middle Ages no more makes one derivative of the other than, say, Sir Lancelot is derivative of Sir Gawain.  That both Lancelot and Gawain were knights of King Arthur's Round Table would not invest the creator of Sir Lancelot with an ownership interest in Sir Gawain.  So, too, that both hellspawns wear costumes and masks that echo the costume and mask of the original Spawn merely underscores the fact that both are "derivative works" based upon Spawn—and not upon one another. (*See* Exhibit C to this Brief.)  Indeed, as is clear from Exhibit C, Dark Ages Spawn generally wears no costume and usually appears bare-chested.

> d.    <u>Angela, Domina and Tiffany Are Three Distinct Members of the Same Army of Heaven's Angels.</u>

Angela is a copyrightable expression of another *Spawn* idea, namely, that there is celestial army of female warrior angels who do battle with hellspawns.  We learn in Issue 9 that back in the thirteenth century she killed the hellspawn known as Medieval Spawn and that she is now set upon killing Spawn.  (Doc. 290, Ex. C.)  We also meet another warrior angel—Gabrielle—in Issue 9.  (*Id.*)  Additional warrior angels are introduced in the three-comic series entitled *Angela* that Mr. Gaiman wrote.  Neither Tiffany nor Domina appear in any comic book to which Mr. Gaiman contributed.

Mr. Gaiman's expression of the ***idea*** of a female warrior angel in the form of Angela does not grant him a copyright monopoly in all other expressions of that idea.  One need merely read the biographies of Angela, Tiffany and Domina (Doc. 290, Exs. I, J, K) to see that each is a separate and distinct character.  As the Second Circuit held in *Mattel, Inc. v. Asrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983), rejecting Mattel's claim that defendant infringed its

copyright in its "Masters of the Universe" dolls by copying the bodies of those dolls in its own series of action hero dolls:

> Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea — a superhuman muscleman crouching in what since Neanderthal times has been a traditional fighting pose. The rendering of such an idea is not in itself protectable; only the particularized expression of that idea, for example, the particular form created by the decision to accentuate certain muscle groups relative to others, can be protected.

In sum, Mr. Gaiman is not entitled to any copyright interest in the additional three characters based on his copyright interests as found in this Court's Judgment.  At the very least, the mixed questions of fact and law necessary to adjudicate these new claims further support the impropriety of Mr. Gaiman's overreaching effort to have those new claims adjudicated summarily as part of an accounting procedure.[4]

## CONCLUSION

Accordingly, for any one or more of the foregoing reasons, the McFarlane Defendants respectfully request that this court deny Mr. Gaiman's motion for an order declaring that he has a copyright interest in the following three comic book characters: Dark Ages Spawn, Tiffany and Domina.

---

[4] Further evidence of Mr. Gaiman's overreaching is found in his assertion (Doc. 289 at 3 n.3) that "the remaining defendants can be obligated to cooperate in providing financial information for the accounting." To the contrary, this Court previously held that TMP International, Inc. and McFarlane Worldwide, Inc. could be asked to provide limited information "if requested by the accountant."  (Doc. 251 at 5)  Moreover, the court specifically held "[t]here is no basis for any accounting against or participation by defendant Image Comics."  (*Id.*)

Respectfully submitted

_s/Todd G. Smith_
Todd G. Smith
GODFREY & KAHN
One East Main Street, Suite 500
Madison, WI 53701
Tel: (608) 284-2653
Fax: (608) 257-0609
tsmith@gklaw.com

—and—

Michael A. Kahn
BRYAN CAVE, LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
Tel: (314) 259-2251
Fax: (314) 259-2020
mike.kahn@bryancave.com

—and—

J. Alex Grimsley
BRYAN CAVE LLP
2 North Central Avenue, Suite 2200
Phoenix, AZ 85004
Tel: (602) 364-7000
Fax: (602) 364-7070
jagrimsley@bryancave.com

Attorneys for Todd McFarlane and Todd McFarlane
Productions, Inc.