IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEIL GAIMAN,[1]

        OPINION AND ORDER

              Plaintiff,

        02-cv-48-bbc

     v.

TODD McFARLANE, TODD
McFARLANE PRODUCTIONS, INC.,
and TMP INTERNATIONAL, INC.,[2]

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In October 2002, a jury found that plaintiff Neil Gaiman had a copyright interest to certain publications and to three comic book characters he had helped create. After post trial skirmishing over various aspects of the judgment, the presiding judge, the Hon. John Shabaz, entered a second amended judgment, which incorporated the parties' stipulation for an accounting of profits owing to plaintiff.

---

[1] In the original proceedings, Marvels and Miracles, LLC, was an additional plaintiff. It is asserting no interest in the determination of damages that is the subject of these proceedings.

[2] Plaintiff named Image Comics, Inc. as a defendant but is no longer seeking any relief from it.

1

Despite the stipulation, the judgment, the court of appeals' confirmation of plaintiff's copyright interests and plaintiff's presumed motivation to obtain his long withheld profits, the accounting is still incomplete.  It was stalled for almost a year after defendant Todd McFarlane Productions, Inc. filed a petition for bankruptcy under Chapter 11 on December 7, 2004 until the bankruptcy judge lifted the automatic stay in November 2005, to allow the parties to proceed with litigation in the district court, including the accounting procedure for determination of amounts owed plaintiff by defendants.  Dkt. #291-2.  It is stalled now because the parties disagree about the scope of plaintiff's copyright and whether it extends to characters that plaintiff did not create, but which he contends are derivative of those he did create.   In 2007, the bankruptcy court delegated that determination to the accountant, who declined the assignment, saying he lacked the experience and qualifications to determine "what is or is not a derivative work."  Decl. of Susan M. Freeman, dkt. #291, exhs. 4 and 5.  The parties have now briefed the dispute over the scope of the copyright for decision by this court.

## BACKGROUND

In 1992, plaintiff Neil Gaiman entered into an oral contract with defendant Todd McFarlane, who wanted plaintiff to write a script for an issue of McFarlane's comic book, *Spawn*.  Plaintiff introduced three new characters into an ongoing story involving characters

2

who "are officers in an army of the damned commanded by a devil named Malebolgia, who hopes one day to launch his army against Heaven." Gaiman v. McFarlane, 360 F.3d 644, 649 (7th Cir. 2004). One of these new characters was Spawn, later known as Medieval Spawn; one was Angela; and one was Count Nicholas Cogliostro. Defendant drew the characters to plaintiff's description; plaintiff gave each a name and wrote their dialogue. Later, plaintiff did a mini-series of three issues of *Spawn* starring Angela and wrote several pages for *Spawn* No. 26 to form a bridge to the *Angela* series.

Without any contribution by plaintiff, defendant added three additional characters to the Spawn repertory: Dark Ages Spawn, Tiffany and Domina. Plaintiff has sought discovery about profits earned from Dark Ages Spawn, Tiffany and Domina, but defendant has refused to provide it, contending that these characters are not subject to plaintiff's copyright because they were based solely on plaintiff's ideas and not on any physical expression of those ideas. Dkt. #291, exh. 6, at 10.

OPINION

The parties agree that they are co-owners of the three characters, Angela, Count Cogliostro and Medieval Spawn. Defendant does not seriously contest plaintiff's right to an accounting and division of profits for the posters, trading cards, clothing, statuettes, animated series on HBO, video games, etc. that feature those characters. The parties

3

disagree vehemently, however, about defendants' obligation to provide financial discovery about their earnings from Domina, Tiffany and Dark Ages Spawn.

At the outset, defendants argue that plaintiff is attempting improperly to expand the judgment in this case to grant him an ownership interest in three additional copyrights when he made no claim to them in the lawsuit and that he waited too long after the lawsuit to assert his claim. Neither argument is persuasive. Plaintiff has specified that he is not seeking a declaration of copyright ownership but only a decision relating to accounting for profits earned from derivative works based on Angela, Count Cogliostro and Medieval Spawn. As to the delay, plaintiff points out, he did not raise the issue at the time of the negotiations for the accounting procedure because he did not know then that defendants would raise an objection to producing discovery about the new characters. In fact, he says, defendants did not make any objection to producing information about the characters until more than four years after the accounting began. I am satisfied that if the new characters derive from those in which plaintiff has a copyright interest, his right to the profits from them is a natural consequence of his success in this lawsuit and subject to the accounting procedure.

Defendants oppose plaintiff's claims on another ground, contending that a post judgment accounting procedure is not the proper forum in which to raise such claims because it does not allow the evidence to be tested, authenticated or explained and thus violates their

4

right to due process. Defendants entered into the accounting procedure knowing that there might be factual disputes; it is too late for them to be arguing that only a new trial would be an adequate means fo resolving the disputes. The question of derivation is central to the accounting.

As the jury found, the joint contributions of plaintiff and defendant made them joint owners of the copyright in the three characters they jointly developed. As a joint owner, plaintiff is entitled to one-half the profits from these characters, including all works that derive from the characters. As a general rule, Dark Ages Spawn, Tiffany and Domina would be considered derivative if they were substantially copied from a prior work and if the borrowed material consists of the expression of ideas and not merely the ideas themselves. 1Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 3.01 at 3-3 (2009). Put another way, the question is whether the allegedly derivative character would be considered infringing if the derived material had been taken without the consent of the owner of the copyright of the pre-existing work. Id.

It appears that plaintiff has a plausible claim of derivation with respect to Dark Ages Spawn, Domina and Tiffany. Dark Ages Spawn speaks as a medieval character might be expected to and wears a knight's costume. Defendants describe Medieval Spawn as Sir John of York, a freelance knight born in England in 1146. Defendants' website describes Dark Ages Spawn as a 12th century knight killed in a holy crusade far from his homeland, who

5

returns to Earth as Hellspawn. Both versions have sisters who married their enemies and both go out of their way to help the defenseless. The two characters are visually similar; both wear metal helmets and face masks with rivets; both ride horses and carry a battle shield.

Tiffany and Domina are visually similar to Angela and share her same basic traits. All three are warrior angels with voluptuous physiques, long hair and mask-like eye makeup. All three wear battle uniform not resembling anything worn by any member of the armed forces of the United States. Their "uniforms" consist of thong bikinis, garters, wide weapon belts, elbow-length gloves and poorly adjusted armor bras. Angela and Domina each wear a long cloth draped between their legs and a winged headdress. Tiffany and Angela are shown in the *Spawn Bible* as having sharp wings. All three of these female characters are warrior angels who fight in the war between Heaven and Hell. Like Angela, Tiffany is described in the *Spawn Bible* as having failed to kill only one of the persons she intended to kill: Al Simmons, the original *Spawn.*

Although I do not agree with defendants that a trial is necessary, I am not prepared to rule on plaintiff's claims of derivation without holding an evidentiary hearing. I will schedule such a hearing for Monday, June 14, 2010 at 9:00. If this date is unworkable for counsel, they should consult the clerk of court to set a prompt new hearing date.

6

ORDER

Plaintiff Neil Gaiman's motion for an order declaring his interest in certain characters for accounting purposes will be heard on June 14, 2010, beginning at 9:00 a.m. The hearing will be evidentiary in nature.

Entered this 24th day of May, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge