UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**NEIL GAIMAN, et al.**,

    Plaintiffs,

v.                       Case No. 02-CV-0048-bcc

**TODD McFARLANE, et al.**,

    Defendants.

**POST-HEARING BRIEF
OF THE MCFARLANE DEFENDANTS**

Defendants Todd McFarlane and Todd McFarlane Productions, Inc. (collectively, "TMP") respectfully submit their post-hearing memorandum to assist the Court in its determination of Plaintiff's Motion for Order Declaring Gaiman's Interest in Derivative Characters for Purposes of Accounting for Profits ("Motion").[1]

**Introduction**

The issue this Court is being asked to decide is whether Neil Gaiman is entitled to a share of profits attributable to characters known as Dark Ages Spawn, Tiffany and Domina. A jury previously found that Mr. Gaiman co-created two other characters, known as Medieval Spawn and Angela (the "co-owned characters"). In the accounting process, there is no dispute that Mr. Gaiman is entitled to a share of profits from the comics in which the characters Medieval Spawn or Angela appeared or from derivative uses of those characters, such as action figures created of those characters. Mr. Gaiman now argues that he is entitled to a share of profits from *other*

---

[1] Citations to the Hearing Exhibits will be in the form "Ex. __." Citations to the Hearing Transcript will be in the form "Tr. at __" when referencing the morning session and in the form "Tr2. at __" when referencing the afternoon session.

characters—characters to which he did not contribute. Mr. Gaiman's theory is that these other characters—Dark Ages Spawn, Tiffany and Domina—are derivative of the co-owned characters.

The issue of whether characters are derivative of one another is often analyzed under a construct of whether the allegedly derivative character would infringe the copyright on the alleged source character. The analysis is therefore whether the allegedly derivative characters misappropriate protected elements of the co-owned characters. As counsel for Mr. Gaiman asserted at the outset of the evidentiary hearing, the question of whether one character infringes the copyright on another character requires an analysis of the "personal history" and the "personal traits" of the characters to determine if "there is a core set of character traits that's kind of present consistently throughout." [Tr. at 6] In this case, there is a further layer to add to that analysis. The characters that Mr. Gaiman co-created, Medieval Spawn and Angela, were part of the existing world of the Spawn comic book series, and many of the elements of the co-created characters are themselves derivative of the pre-existing lead character Spawn. Indeed, Mr. Gaiman, agrees and even avows that Medieval Spawn is derivative of the character Spawn, and Mr. McFarlane explained the many elements of Angela that also are derivative of the character Spawn. The law is clear that a copyright in a derivative character—like the co-owned characters at issue here—is limited:

> The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.

17 U.S.C. § 103(b).

Thus, in answering the question of whether Dark Ages Spawn is derivative of Medieval Spawn, the Court must disregard the elements of the two characters that are themselves derived from the pre-existing character Spawn because those are not protected elements co-owned by

Mr. Gaiman. When Mr. Gaiman's arguments are stripped of such comparisons, what is left is the idea of a hellspawn on earth in the broad period of history called the middle ages. That Mr. Gaiman seeks to "own" the idea of a hellspawn on earth in the middle ages is amply demonstrated by his counsel's emphasis during the hearing on the argument that there is a "rule" in the Spawn universe that there can be only one hellspawn on earth every 400 years. Mr. Gaiman's argument is apparently that any hellspawn on earth during the 400-year period allegedly allocated to the character Medieval Spawn would necessarily be the same character as Medieval Spawn.

That argument is not only premised on the creation of a non-existent "rule" but also asks the Court to brush past the very analysis proposed by Mr. Gaiman's counsel. When the history and traits of Dark Ages Spawn and Medieval Spawn are compared (putting aside the common traits derived from the pre-existing character Spawn), it is clear that they are very different characters—they are different people. Dark Ages Spawn does not misappropriate any of the protected elements of Medieval Spawn.

The same is true of the various angel characters. Despite some irrelevant superficial similarities, the history and traits of the various characters are different—meaning there is no common use of protected elements. Again, Mr. Gaiman appears to be asking the Court to ignore the analysis proposed by his own counsel. Rather than look to the history or traits of the angel characters, Mr. Gaiman's primary argument during the hearing was that he created the idea of these angels, so all of the angel characters are derivative of that idea—despite the fact that the idea of Spawn involving a war between heaven and hell pre-existed Mr. Gaiman's involvement. Again, the idea is not copyrightable—only the particularized expression of the idea.

3

When the actual expressions of the various ideas are compared, especially after one eliminates the elements that are derivative of the pre-existing Spawn, its becomes abundantly clear that these characters that Mr. Gaiman contends are derivative of the two co-owned characters are instead independent characters.

## I.   DARK AGES SPAWN IS NOT DERIVATIVE OF MEDIEVAL SPAWN.

There is no dispute that Medieval Spawn is derivative of the pre-existing character Spawn.  As was explained by Mr. McFarlane, both wear a similar living costume, with spikes, a red cloak and an "M" on the chest.  [Tr2. at 39-40]  Both have the same "Spawn logo" mask and green eyes.  [Id. at 39]  Even the particular shape of Medieval Spawn's "mask" pre-existed that character's appearance in Issue 9—in Issue 8 the living costume worn by hellspawn is shown with an identically-shaped "mask" even before attaching to any person.  [See Ex. 37; see also Tr2. at 41-42]  The physical similarity between Spawn and Medieval Spawn is amply demonstrated by comparing the two action figures of the characters—the pre-existing Spawn [Ex. 66] with Medieval Spawn [Ex. 43].  As Mr. Gaiman further agreed, both characters also made a deal with the devil to be returned to earth, are endowed by the devil with certain powers, and did not initially understand what had happened to them when they were returned to earth. [Tr. at 70-71]  To the extent Dark Ages Spawn shares any of these various traits, derived from the pre-existing Spawn, they cannot serve to support an argument that Dark Ages Spawn is derived from Medieval Spawn because those traits are not protected elements of Medieval Spawn.

That leaves the question of identifying the protected elements—the traits that make Medieval Spawn a character separate from Spawn.  In this regard, it is important to understand that the character Mr. Gaiman co-created is limited to the character appearing in Issue 9 of Spawn [Ex. 1].  As was explained during the hearing, derivative uses of this character further

4

developed the back story and other aspects of the character—such as his use in Issues 14 and 15 and the description in the Spawn Bible. [See Exs. 2, 3 and 16] Mr. Gaiman conceded [e.g., Tr. at 55] that he did not contribute to those derivative developments of the Medieval Spawn character (but there is no dispute that those derivative uses are part of the accounting). As Mr. Gaiman's counsel agreed during the hearing [id. at 105], the character that Mr. Gaiman co-owns, however, is limited to character as described and portrayed in Issue 9. That derivative uses later expanded on Medieval Spawn did not serve to enlarge the copyright co-owned by Mr. Gaiman. E.g., 17 U.S.C. § 103(b) ("The copyright in [a derivative] work is independent of, and does not affect or enlarge the scope . . . of, any copyright protection in the preexisting material"). Thus, the additional backstory and traits developed later through those derivative uses of Medieval Spawn are not part of the protected elements to be considered here.

In Issue 9, the character now known as Medieval Spawn appears only briefly and we learn relatively little about him. We do not even learn what country he was from or in what country he is ultimately found as hellspawn. [Tr. at 103] What is revealed is that: (i) he was a hellspawn on earth 800 years ago; (ii) he was destroyed by Angela; (iii) he existed as a hellspawn on earth for a relatively brief amount of time, never discovering what it is that he had become before he was destroyed; (iv) he had been a bad man before becoming a hellspawn; and (v) he had a wise and beautiful sister who was married when he returned as a hellspawn "not to the man I would have chosen." [Ex. 1]

Dark Ages Spawn shares none of those traits. Dark Ages Spawn was known in life as "Lord Ian Covenant, master of the forest of Rhyll." [Ex. 23] In life, he was "a good man." [Id.] Even after he returned as a hellspawn, five years after his death, "Lord Covenant ruled his land again having captured the hearts and souls of his people." [Ex. 26] Lord Covenant had a "secret

5

sin:" "A girl blossoming with child. Shiann was her name. The handmaiden of his sister Eloise." [Ex. 24] His sister was married to Baron Rivalen, and Lord Covenant had left his lands in the care of his brother-in-law when he left to fight in the crusades (where he was killed). [Id.][2]

Contrary to Mr. Gaiman's suggestion, the summary on the first page of Issue 15 of Spawn: The Dark Ages describes the timeframe as 901 A.D.: "It is 901 AD . . . . These are the days that a Hellspawn named Covenant walked the earth . . . ." [Ex.. 26] Mr. Gaiman also suggested that, like Medieval Spawn, Dark Ages Spawn had a sister who married his enemy. First, although we learn that Medieval Spawn had a sister who married after his human death, we do not learn that she married his enemy, only that she married a man he would not have chosen. [Ex. 1] Second, in any event, there is no indication that Lord Covenant disapproved of his sister's choice of a husband. Much to the contrary, what we learn [e.g., Ex. 24] is that Lord Covenant left his lands under the care of his sister's husband—hardly an indication that he disapproved, much less that his brother-in-law was his enemy. Indeed, his brother-in-law is described as "his trusted friend and brother by marriage." [Ex. 25] What happens in Spawn: The Dark Ages is that Lord Covenant's sister is ill and Lord Covenant's brother-in-law makes a deal with "the three sisters of Morrigan" to return his wife to health. [See Ex. 23] Lord Covenant, as a hellspawn, does battle with and maims his brother-in-law's captain-in-arms, Guy DuBlanc—if any other character could be described as Covenant's enemy, it is DuBlanc, not the brother-in-law Rivalen. [Ex. 22]. After learning of his sister's death, the hellspawn Lord Covenant leaves Rhyll "to seek his fate in the world." [Ex. 25] Moreover, Lord Covenant learns relatively early on (the first few issues) what has happened to him and that he has become a hellspawn. [E.g., Exs. 23 and 24]

---

[2] The concept of the character returning to earth in order to see a loved one was firmly established in the very first issue of Spawn [Ex. 36], when the character Al Simmons returns as the pre-existing Spawn for the love of his wife.

As can be seen, unlike the character Medieval Spawn, Lord Covenant was a good man, his sister was married to his trusted friend, and he learns of his fate and continues as a hellspawn for many, many years (centuries actually). There is no overlap between these two characters other than those aspects that are derived from the character Spawn—a deal with the devil to see a loved one and being returned to earth as a hellspawn. Beyond the absence of personality trait overlap, there also is very little physical similarity. Admittedly, both have certain physical characteristics that are derivative of the pre-existing, original character Spawn, and both have certain aspects that are derivative of a certain period of history (riding a horse, using weapons likes swords), but those similarities cannot suffice to support a holding that Dark Ages Spawn is derivative of Medieval Spawn. Neither the elements derived from the pre-existing Spawn nor the stereotypical elements are protected elements co-owned by Mr. Gaiman. E.g., Gaiman v. McFarlane, 360 F.3d 644, 659 (7th Cir. 2004) ("a copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another") (citation omitted).

Tellingly, the co-creator of Medieval Spawn, Mr. Gaiman, testified that he did not recognize the only two action figures made of Dark Ages Spawn as the character he created. Specifically, Mr. Gaiman was shown a picture of a Dark Ages Spawn action figure [Ex. 33], which depicts the image of Dark Ages Spawn shown on the cover of Issue 1 of Spawn: The Dark Ages [Tr2. at 20-21], and testified [Tr. at 49] that this figure did not depict "a knight in armor Spawn, Medieval Spawn." Similarly, when shown the Lord Covenant figure [Ex. 42], Mr. Gaiman testified that this character—the character he claims is derivative—does NOT appear to

7

be a character he created. [Tr. at 112] Again, these two toys are the only ones made of Dark Ages Spawn, and Mr. Gaiman conceded neither was derivative of his co-owned character.

Beyond all of that, Mr. Holguin, the writer for the first 14 issues of Spawn: The Dark Ages, testified that, in creating Dark Ages Spawn, he did not draw on Medieval Spawn [Tr2. at 8] and was not trying to emulate the manner of speech of Medieval Spawn [id. at 12]. And as for the manner of speech, Mr. Gaiman conceded that there is no such thing as medieval speech. [Tr. at 106][3]

All in all, the evidence demonstrated that the two characters, Medieval Spawn and Dark Ages Spawn, were independently created, do not look alike, do not speak alike and do not share common backgrounds or personality traits. All they have in common is a generalized time period several centuries in length. The same could be said of the various knights in the Arthurian legend. As Mr. Gaiman explained quite well, however, each of those Arthurian knights is a different person. [Tr. at 84] The same is true of Medieval Spawn and Dark Ages Spawn—they are very different characters. The broad time period of the middle ages is not itself a protected element.

Ultimately, Mr. Gaiman's argument appears to be that, by co-creating a hellspawn from medieval times, his copyright co-ownership extends to ANY other hellspawn appearing on earth in the same 400-year period of history. [See, e.g., id. at 109 (Mr. Gaiman testify that Dark Ages

---

[3] We anticipate that Mr. Gaiman will again seek, as he has done in the past, to rely on the Seventh Circuit's dicta that "[a] Spawn who talks medieval and has a knight's costume would infringe Medieval Spawn." Gaiman v. McFarlane, 360 F.3d 644,662 (7th Cir. 2004). That statement, however, was made in the context of explaining that Medieval Spawn was sufficiently distinct from the pre-existing Spawn to be separately copyrightable as a derivative character. The Seventh Circuit did not consider, and has never considered, the question presented to this Court—whether a third character (Dark Ages Spawn) is derivative of Medieval Spawn. Nothing in the Seventh Circuit's statement indicates that the Court had considered the extent to which a new character would need to borrow from Medieval Spawn in order to be considered derivative of Medieval Spawn, and it is beyond dispute that the Seventh Circuit was not presented with that question or the evidence that has been presented to this Court. In short, there is no "law of the case" holding that can or should be applied in this instance. Moreover, as demonstrated above, Mr. Gaiman disclaimed the Seventh Circuit's reference to medieval speech and testified that Dark Ages Spawn did not depict a "knight in armor."

Spawn is derivative of Medieval Spawn because "It's Spawn in the 12th century as a knight in armor"] Mr. Gaiman's counsel emphasized this argument by focusing on the supposed "rule" that a new hellspawn appears only once every 400 years. As Mr. McFarlane explained, however, although references to 400 years were made at various times, there is no such "rule" in the universe of Spawn. [Tr2. at 78-79] Proof of this can be seen in the numerous hellspawn toys depicted on the back packaging of the Lord Covenant toy. [Ex. 42] Moreover, in Spawn: The Dark Ages, the hellspawn Lord Covenant comes face-to-face (as it were) with the hellspawn created to replace him. [Ex. 27] As explained in that issue, when the devil Malebolgia thought the hellspawn Lord Covenant had been destroyed, a new candidate was immediately selected—despite the fact that 400 years had not passed. [Id.] In short, even in the very issues of the comic books selected by Mr. Gaiman as exhibits, we see that this alleged 400-year rule does not exist.

As a matter of law, even if there were such a "rule" in this fictional universe, that fact alone would not suffice to make the characters derivative of one another. At bottom, this argument is nothing more than an argument that Mr. Gaiman co-owns a copyright on the idea of a hellspawn within a 400-year period of history (or even more if the entirety of the middle ages—from the fall of the roman empire to the renaissance—are to be considered). Under the law, however, even if Mr. Gaiman first had the idea for a hellspawn from the middle ages, the copyright that he co-owns extends ONLY to the particular expression of that idea in Spawn Issue 9. See, e.g., 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . . or concept . . ., regardless of the form in which it is described, explained, illustrated, or embodied in such work"); Reyher v. Children's Television Workshop, 533 F.2d 87, 90 (2d Cir. 1976) ("a work is not derivative unless it has substantially copied from a prior work. If that which is borrowed consists merely of ideas and not of the expression of ideas,

9

then although the work may have in part been derived from prior works, it is not a derivative work"). The broad time period of the middle ages is not a protected element.

As amply demonstrated during the hearing and as highlighted above, Mr. Gaiman's expression of the idea of a hellspawn from the 1,000 year period called the middle ages, and the expression of that generalized idea through the character Dark Ages Spawn share nothing in common (other than stereotypical material or material derived in both instances from the pre-existing character Spawn). Applying the law to these facts, the Court should hold that Mr. Gaiman is not entitled to any accounting with respect to the character Dark Ages Spawn/Lord Covenant.

## II.    TIFFANY AND DOMINA ARE NOT DERIVATIVE OF ANGELA.

Angela is a much more developed character than Medieval Spawn. Through <u>Spawn</u> Issues 9 and 26 [Exs. 1 and 4] and the subsequent <u>Angela</u> mini-series [Exs. 17-19], we learn that: (i) Angela is 100,000 years old; and (ii) she is a huntress, one of the few members of heaven's army permitted to hunt hellspawn. In the mini-series, she is being tried for treason and the original, pre-existing Spawn character comes to her aid. She is cleared of the charges, but decides to leave heaven's army and become a freelance hunter. Ultimately, in later issues of <u>Spawn</u>, Angela is killed. [Ex. 14]

As Mr. McFarlane explained, certain of the physical aspects of Angela were derived from the pre-existing character Spawn, including the black mask-like pattern around her eyes, her blank white eyes and the Spawn-logo earrings she wears. [Tr2. at 58-59] Because those physical aspects derived from the pre-existing character Spawn, they are not part of the protected elements of the copyright Mr. Gaiman co-owns and are not relevant to the question of whether Tiffany and Domina are derived from Angela. <u>See</u> 17 U.S.C. § 103(b) (explaining limits of copyright in a derivative work).

Echoing his counsel's argument that characters' personality and traits are what is important here, Mr. Gaiman testified [Tr. at 90] that Angela's motivations and history separate her from other female warrior angels and are "what make her Angela." Viewed from this perspective, Tiffany and Domina are certainly different characters and do not misappropriate any protected character traits from Angela. Tiffany, for example, is described in the Spawn Bible [Ex. 16] as "a new angel." She is second to Angela as a hunter of hellspawn and is antagonistic to Angela—"she feels that Angela has crossed the line between Heaven and Hell. . . ." [Id.] In other words, Tiffany is hardly a knock-off of Angela in terms of personal history or motivations. The same is true of Domina. When we first meet Domina [Ex. 12] she is defying the orders of heaven and trying to lead other angels to do battle with hell. Rather than being a knock-off of Angela, she also is antagonistic to Angela—Angela appears to stop Domina, and in the next issue [Ex. 13] the two fight, with Angela gaining the upper hand before the "heavenly hosts" appear.[4]

Nor are the angel characters Tiffany and Domina physical knock-offs of Angela. They do not misappropriate any physical protected elements of Angela. For example, Mr. Gaiman agreed that Tiffany has wings on her back and does not have a winged headdress like Angela. [Tr. at 96-97] And although admitting that he never co-created an angel that uses a gun [id. at 95], Mr. Gaiman conceded that the character Tiffany does use a gun. [Id. at 96] Further, although Angela's red, flowing hair is one of her distinctive characteristics [id. at 29], Tiffany has "spikish stand-uppish hair." [Id. at 101] As for Domina, she has blond hair and wears a headpiece of a distinctively different design—not a winged headpiece at all. [Ex. 12]

---

[4] Although Mr. Gaiman did not contribute to Issue 99 [Ex. 13], he purported to opine that the phrase "heavenly hosts" in that issue was a reference to the entire army of angels. Even a cursory review of the comic shows, however, that the phrase plainly refers to a threesome who appear "at the bidding of the throne" to order Domina and her supporters to stand down.

During the hearing, there also was some discussion of the fact that all three of these angel characters are rather scantily clad. That fact, however, does not make one derivative of another. Despite Mr. Gaiman's protestations to the contrary, he was forced to concede when faced with actual images from numerous comics that numerous female characters in comics are similarly portrayed, including the iconic Wonder Woman character. [Tr. at 98-100; Ex. 38] That each of these angel characters is portrayed in a manner typical of the manner in which female fighting characters are commonly portrayed in this medium does not make all such characters derivative of each other. See Gaiman, 360 F.3d at 659-660 (rejecting notion that stereotypical elements can be the subject of copyright).

At the end of the day, Mr. Gaiman's argument boils down to an argument that, since he came up with the idea of these female warrior angels who hunt hellspawn, all such female fighting angels who hunt hellspawn are derivative of his idea (despite the preexisting idea of a war between heaven and hell). [See, e.g., Tr. at 54 (Mr. Gaiman testifying that Domina is derived from "the entire order of angels")] Mr. Gaiman testified that, in the mini-series, he created "300,000 warrior angels." [Id. at 20] The similarities he noted were: (i) that all of them have "the masky thing around the eyes;" and (ii) "the fact that they are part of this order of kick-ass lady warrior angels." [Id.] As already discussed, however, the "masky thing around the eyes" is derivative of Spawn and therefore is not a protected element of the copyright Mr. Gaiman co-owns and cannot serve to entitle Mr. Gaiman to any profits from any of the angel characters. See 17 U.S.C. § 103(b). That leaves the mere fact that all of the angel characters are part of the larger group of angels—that they are all different expressions of the same idea. Again, copyright law does not protect the idea, only the particular expression of that idea. See id. at § 102(b).

Tellingly, although he testified that he created 300,000 angels, Mr. Gaiman admitted in response to the Court's question, that none of the angels that he created were Tiffany or Domina:

> THE COURT: And did any of the angels in the series, were any of them Domina or Tiffany?
>
> THE WITNESS: No.

[Tr. at 20]

Based on that concession, and the application of copyright law to the facts, this Court should hold that Mr. Gaiman is not entitled to any accounting with respect to the characters Tiffany or Domina.

## Relief Requested

For the reasons stated, this Court should hold that Mr. Gaiman's co-ownership of the characters Medieval Spawn and Angela does not entitle him to any accounting for profits with respect to the characters Dark ages Spawn, Tiffany or Domina.

DATED this 25th day of June, 2010.

                                      Respectfully submitted,

                                      *s/Todd G. Smith*
                                      Todd G. Smith
                                      GODFREY & KAHN
                                      One East Main Street, Suite 500
                                      Madison, Wisconsin 53701
                                      Telephone: (608) 284-2653
                                      Facsimile: (608) 257-0609
                                      tsmith@gklaw.com

                                      J. Alex Grimsley
                                      BRYAN CAVE LLP
                                      Two North Central Avenue, Suite 2200
                                      Phoenix, Arizona 85004
                                      Telephone: (602) 364-7000
                                      Facsimile: (602) 364-7070
                                      jagrimsley@bryancave.com

                                      Michael A. Kahn
                                      BRYAN CAVE LLP
                                      211 North Broadway, Suite 3600
                                      St. Louis, Missouri 63102-2750
                                      Telephone: (314) 259-2251
                                      Facsimile: (314) 259-2020
                                      mike.kahn@bryancave.com

                                      Attorneys for *Todd McFarlane and Todd McFarlane Productions, Inc.*

5119122_2