IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEIL GAIMAN,

                               OPINION AND ORDER

         Plaintiff,

                               02-cv-48-bbc

    v.

TODD McFARLANE, TODD
McFARLANE PRODUCTIONS, INC.,
and TMP INTERNATIONAL, INC.,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This long-running copyright case is almost at a close. The one remaining matter for the court's determination is plaintiff Neil Gaiman's motion to compel defendants to turn over all documents in their possession relating to income attributable to three characters known as Domina, Tiffany and Dark Ages Spawn, featured in a series of comics written and published by defendants Todd McFarlane, McFarlane Productions and TMP International, Inc. The issue in dispute is whether the three characters are derivative of two characters known as Angela and Medieval Spawn that are subject to the parties' joint copyright interest.

      The parties agree that they are co-owners of Angela and Medieval Spawn. Defendants

1

do not contest plaintiff's right to an accounting and division of profits for the posters, trading cards, clothing, statuettes, animated series on HBO, video games, etc. that feature those characters. The dispute is limited to information about the profits earned from Dark Ages Spawn, Tiffany and Domina, which defendant has refused to provide to plaintiff. Defendants contend that these characters are not subject to plaintiff's copyright because they were based solely on plaintiff's ideas and not on any physical expression of those ideas. I conclude that the newer characters are derivative and that plaintiff is entitled to his share of the profits realized by these characters and to the immediate production of all documents and other information material to the calculation of the profits.

Because the parties were unable to resolve their discovery dispute without court intervention and because resolution of the dispute required the taking of evidence, I held an evidentiary hearing on June 14, 2010. From the evidence adduced at the hearing and from the record, I find the following material facts.

FACTS

A. Background

In 1992, plaintiff Neil Gaiman entered into an oral contract with defendant Todd McFarlane, who wanted plaintiff to write a script for an issue of McFarlane's comic book, *Spawn*. Plaintiff introduced three new characters into an ongoing story involving characters

2

who "are officers in an army of the damned commanded by a devil named Malebolgia, who hopes one day to launch his army against Heaven." Gaiman v. McFarlane, 360 F.3d 644, 649 (7th Cir. 2004). One of these new characters was Olden Days Spawn, later known as Medieval Spawn; one was Angela; and a third was Count Nicholas Cogliostro, who plays no role in the present dispute. Defendant McFarlane drew the characters to plaintiff's description; plaintiff gave each a name, conceived of a back story for each and wrote their dialogue.

In its earliest versions, the *Spawn* story revolved around a character, Al Simmons, who died and was recruited as a member of Malebolgia's army. Wanting to be reunited with his wife, Simmons made a pact with Malebolgia, who returned Simmons to Earth as a Hellspawn. After defendant brought in plaintiff to spice up the *Spawn* story line, plaintiff conceived of and introduced a new Hellspawn. This one was an Olden Days, or Medieval, Spawn, who was returned to Earth in the twelfth century. As a new Hellspawn, "often time-disoriented, confused and emotional," responding to "good or noble impulses as easily— or more easily—than they do to 'evil,': they are vulnerable and prey to exploitation by any experienced hunter." *Spawn, Issue* No. 9, trial exh. 1, at 3. This was the fate of Medieval Spawn. He was dispatched early in Issue No. 9 by Angela, another co-creation of the parties.

Later, plaintiff did a mini-series of three issues of *Spawn* starring Angela and wrote several pages for *Spawn* No. 26 to form a bridge to the *Angela* series. Still later, without any

3

contribution by plaintiff, defendant added to the Spawn repertory the three characters at issue: Dark Ages Spawn, Tiffany and Domina.

In 2002, a jury found in this case that plaintiff had a copyright interest in Medieval Spawn, otherwise known as Olden Days Spawn, and Angela, as well as another character, Count Cogliostro. The value of that copyright interest is the subject of an ongoing accounting.

## B. Dark Ages Spawn and Medieval Spawn

Sometime later, after plaintiff had stopped working for defendant and Brian Holguin was doing the writing, Holguin and defendant created Dark Ages Spawn. (Because it is hard to keep the two characters straight, given the similarity of the names, I will refer to Medieval Spawn as the Medieval (Gaiman) Spawn and the Dark Ages Spawn as the Dark Ages (Holguin) Spawn. In addition, I will use "defendant" to refer to Todd MacFarlane, the only defendant who plays any active role in the facts relevant to this particular controversy.) The Medieval (Gaiman) Spawn speaks as late twentieth century people expect a medieval character to speak and wears a knight's costume. Plaintiff conceived of him as Sir John of York, a freelance knight born in England in 1146. *Spawn Bible,* trial exh. 16, at 16. The Dark Ages (McFarlane) Spawn is also a twelfth century knight, referred to as The Black Knight, killed in a holy crusade far from his homeland and returned to Earth as Hellspawn.

4

(In the first issue in which he is introduced, he is described as having been born in 901, tr. exh. 26, inside front cover; in future issues and in advertising for the comics and his action figure, he is described as having been born in the twelfth century. E.g., Tr. Exh. 32 ("*Spawn: The Dark Ages* introduces Lord Covenant, a 12th Century knight killed in a holy crusade far from his homeland . . .")). In his lifetime, he was known as Lord Iain Covenant, master of the forest of Rhyll.

Both Medieval (Gaiman) Spawn and Dark Ages (McFarlane) Spawn committed bad deeds in the past for which they want to make amends, both have sisters whom they loved who married men who were or became the Hellspawn's enemies; both made a deal with the devil to let them return to Earth; and both use their powers to help the defenseless. The two characters are visually similar: both wear metal helmets and face masks with rivets; both ride horses and carry oversized swords and battle shields; both have armor shoulder pads with spikes. Both have aspects of the first Al Simmons Spawn: a "neural parasite cloak," a particularly shaped face mask, green eyes and a red "M" on the chest.

For the backstory of the Medieval (Gaiman) Spawn plaintiff hypothesized that a new Hellspawn came to earth only once every 400 years. As plaintiff testified, that "was part of the Spawn mythos" and what made the character special. Hrg. Trans., dkt. #311, at 38. It also gave succeeding writers more story opportunities.

5

B. <u>Angela, Tiffany and Domina</u>

Tiffany and Domina are visually similar to Angela and share her same basic traits. All three are warrior angels with voluptuous physiques, long hair and mask-like eye makeup. All three wear battle uniforms consisting of thong bikinis, garters, wide weapon belts, elbow-length gloves and ill-fitting armor bras. Angela and Domina each wear a long cloth draped between their legs and a winged headdress. Tiffany and Angela are shown in the *Spawn Bible* as having sharp wings. Tr. exh. 16 at 9, 20. All three of these female characters are warrior angels who fight in the war between Heaven and Hell. When plaintiff conceived of Angela, he saw her as part of an army of 300,000 "female, kick-ass warrior angels, who are hunters, merciless and not very nice." Hrg. Trans., dkt. #311, at 16. Tiffany and Domina are part of this same heavenly army. Like Angela, Tiffany is described in the *Spawn Bible* as having failed to kill only one of the persons she intended to kill: Al Simmons, the original *Spawn.*

Domina is a less developed character, but has superpowers substantially similar to Angela's. She is described as having led angels into battle against the "superpowered Hell demon Urizen." Tr. Exh. 34 at 1. Like Angela, she is headstrong and not inclined to obey Heaven's commands.

All three warrior angels wear masks designed to be the opposite of the Spawn mask; all have hollow eyes. Angela's wings are on her headpiece; Tiffany's are on her back; and Domina's are on her shoulders.

6

Angela



Tiffany



Domina-Action Figure



OPINION

As a joint owner of the copyright to Angela and Medieval (Gaiman) Spawn, plaintiff is entitled to one-half the profits from these characters, including all works that derive from the characters. "The undisputed general rule is that joint copyright owners must account to each other for half of all profits realized from the work regardless of the relative contributions of the co-authors." See id. at § 6.10[A][1][b], at 6-35 (2007) ("Each joint owner may exploit the subject work, and must correspondingly account to his fellow joint owners for such uses."); H.R. Rep. No. 1476, 94th Cong., 2d Sess. 121 (1976) (Each coauthor of a joint copyrighted work has "an independent right to use or license the use of a work, subject to a duty of accounting to the other co-owners for any profits."). If Dark Ages (McFarlane) Spawn, Tiffany and Domina are found to be derivative, plaintiff is entitled to discovery of all the information in defendant's possession that bears on the income the characters have generated.

The three contested characters will be considered derivative if they were substantially copied from a prior work and if the borrowed material consists of the expression of ideas and not merely the ideas themselves. 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 3.01 at 3-3 (2009); see also 17 U.S.C. § 101 ("[a] "derivative work" is a work based upon one or more preexisting works). The Copyright Act provides that when an author creates a derivative work, his or her right in the "derivative work extends only to the

8

material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(a). "The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work." Stewart v Abend, 495 U.S. 207, 223 (1990). The Act defines a derivative work as "a work based upon one or more preexisting works," including "any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. When a new work "utilizes expression from a previously existing work[, it] is considered to be derivative of that work." Dam Things From Denmark v. Russ Berrie & Co., 290 F.3d 548, 563 (3d Cir. 2002).

As the court of appeals found at an earlier stage of these proceedings, Medieval (Gaiman) Spawn is sufficiently distinct from Spawn to be copyrightable as a derivative work, although "[o]nly his costume and manner of speech, together with the medieval background, distinguish[ed] him . . . from other Hellspawn" as he was first portrayed in the comic *Spawn* No. 9. Gaiman v. McFarlane, 360 F.3d 644, 661 (7th Cir. 2003). In his subsequent appearances in the series as Dark Ages (McFarlane) Spawn, he retained the essential costume and visual appearance of Medieval (Gaiman) Spawn and he talked in a similar ("medieval") fashion.

Defendant argues that when the court disregards the elements of Medieval (Gaiman) Spawn that are derived from the original Spawn and the stock elements that accompany a

9

person of aristocratic lineage in the middle ages, such as traveling on horseback, wearing armor and carrying a weapon, every other aspect of Dark Ages (McFarlane) Spawn is new and different from Medieval (Gaiman) Spawn. It is true that Dark Ages (McFarlane) Spawn and Medieval (Gaiman) Spawn differ slightly in their backgrounds, but these are elements of their characters that make them individually copyrightable, not ones that prevent Dark Ages (McFarlane) Spawn from being found derivative. It is more significant that Dark Ages Spawn has the distinctive look of Medieval (Gaiman) Spawn that would cause any reader, casual or constant, to see a substantial similarity between them.

In fact, the basic concept of the *Spawn* series raises questions about the individuality of Dark Ages (McFarlane) Spawn. In *Spawn* No. 9, plaintiff conceived of a new direction in the story line, introducing a courtly Hellspawn of the middle ages, the twelfth century, to be exact, who stopped to help a damsel in distress and who spoke "medieval." According to the rules of the *Spawn* universe, only one Hellspawn could be on Earth at the same time and the Al Simmons Hellspawn was already around. Plaintiff suggested the idea of a middle ages Hellspawn in the form of a knight who existed on earth 800 years before the Al Simmons Hellspawn. After this knight made an appearance in *Spawn* No. 9, Tr. exh. 1, (and in issues Nos. 14 and 15, tr. exhs. 2 & 3, and the *Spawn Bible*, tr. exh. 16), a second knight from the same century and with many of the same characteristics then appeared in subsequent issues, albeit with more of a history. This new knight was referred to as a "Dark Ages medieval spawn" in a *Spawn* publication created to be sold with a toy, tr. exh. 28, inside front cover.

10

In both cases, the characters were knights who had committed acts in the past of which they were ashamed and took actions to help the defenseless in an apparent desire for absolution. The two characters are similar enough to suggest that either Dark Ages (McFarlane) Spawn is derivative of Medieval (Gaiman) Spawn or it is the same character to which plaintiff owns the copyright.

Much as defendant tries to distinguish the two knight Hellspawn, he never explains why, of all the universe of possible Hellspawn incarnations, he introduced two knights from the same century. Not only does this break the Hellspawn "rule" that Malebolgia never returns a Hellspawns to Earth more than once every 400 years (or possibly every 100 years, as suggested in *Spawn,* No. 9, exh. #1, at 4), it suggests that what defendant really wanted to do was exploit the possibilities of the knight introduced in issue no. 9. (This possibility is supported by the odd timing of defendant's letter to plaintiff on February 14, 1999, just before publication of the first issue of *Spawn The Dark Ages*, to the effect that defendant was rescinding their previous agreements and retaining all rights to Medieval (Gaiman) Spawn.)

If defendant really wanted to differentiate the new Hellspawn, why not make him a Portuguese explorer in the 16th century; an officer of the Royal Navy in the 18th century, an idealistic recruit of Simon Bolivar in the 19th century, a companion of Odysseus on his voyages, a Roman gladiator, a younger brother of Emperor Nakamikado in the early 18th century, a Spanish conquistador, an aristocrat in the Qing dynasty, an American Indian warrior or a member of the court of Queen Elizabeth I? It seems far more than coincidence

11

that Dark Ages (McFarlane) Spawn is a knight from the same century as Medieval (Gaiman) Spawn.

Brian Holguin, the writer of the Dark Ages (McFarlane) Spawn series, testified at trial that he made no effort to base his Dark Ages (McFarlane) Spawn on the character co-created by plaintiff and defendant. It is irrelevant whether he did or not; what is relevant is that he had access to Medieval (Gaiman) Spawn before he created his version of the middle ages knight. JCW Investments, Inc. v. Novelty, Inc., 482 F.3d 910, 915 (7th Cir. 2007) ("copying may be inferred where the defendant had access to the copyrighted work"); Bright Tunes Music Corp. v. Harrisongs Music, Ltd., 420 F Supp. 177 (S.D.N.Y. 1977) (holding that George Harrison had access to tune he used for "He's So Fine"; therefore, even if copying was subconscious, it amounted to infringement).

The small differences in the two knights do not undermine a finding of derivation. Dark Ages (McFarlane) Spawn is substantially copied from Medieval (Gaiman) Spawn. It is not, as defendant claims, a simple borrowing of an idea but a borrowing of the expression of ideas of the copyright owners. It would be considered infringing if it had been developed by anyone not working for defendant. 1 Nimmer on Copyright § 3.01, at 3-3 ("[A] work will be considered derivative only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work.")

## B. Domina and Tiffany

Domina and Tiffany are mere variations of the Angela character: members of the phalanx of Heaven's angels, "kick-ass warrior angels," conceived by plaintiff and defendant. Like Angela, Domina and Tiffany fight Hellspawns and other demons of Hell. Like her, they wear provocative and scanty costumes and glamorous hairstyles. Their family resemblance is evident. They are not identical to Angela, but substantially similar. Certainly they are similar enough to be infringing if they had been produced and sold by someone other than the copyright owners. The totality of their attributes and traits, that is, their visual appearance, their costumes, their manner of speaking, their activities and their common origin (Heaven's angelic phalanx), mark them as derivative of Angela. Warner Bros. Inc. v. American Broadcasting Companies, Inc., 720 F.2d 231, 241 (2d Cir. 1983). Domina and Tiffany capture the "total concept and feel" of Angela, id. (quoting Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1167 (9th Cir. 1977)), and are recognizable immediately by *Spawn* fans as warrior angels destined to fight Hellspawn.

In summary, for the same reasons that Dark Ages (McFarlane) Spawn is derivative of Medieval (Gaiman) Spawn, Domina and Tiffany are derivative of Angela. Therefore, plaintiff is entitled to an accounting of the profits earned by all three of the derivative characters Domina, Tiffany and Dark Ages (McFarlane) Spawn.

13

ORDER

IT IS ORDERED that plaintiff Neil Gaiman's motion for an order to compel discovery relating to the money earned from derivative characters Dark Ages (McFarlane) Spawn, Domina and Tiffany is GRANTED. Defendants Todd McFarlane, Todd McFarlane Productions, Inc. and TMP International, Inc. are to produce the requested information promptly and in no event later than September 1, 2010.

Entered this 29th day of July, 2010.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge